**LUM, DRASCO & POSITAN LLC**
103 Eisenhower Parkway, Suite 401
Roseland, New Jersey 07068-1049
T: 973.403.9000
Dennis J. Drasco, Esq.
NJ Attorney ID #002181973
ddrasco@lumlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR NEW JERSEY

| | |
|---|---|
| Lvliang Lishi Linglong Electronic Trade Co. Ltd., Lvliangshengmeijiawangluoshangmaoyouxiangongsi, Dongguanshiqiuzhiyuanmaoyiyouxiangongsi, YiWuShiDanXunDianZiShangWuYouXianGongSi, Chongqinglanhehaodianzishangwuyouxiangongsi, Hubeijinchangmaoyiyouxiangongsi, Dongguanshixueyaodianzikejiyouxiangongsi, Shenzhenshiyushanmaoyiyouxiangongsi, LvliangCity, Lishiqu, Jichengkuajin e-commerce Co., and Lvliangshilishiqufurongshangmaoyouxiangongsi | Case No. |
| Plaintiffs, | |
| v. | |
| Junpeng Wu, | |
| Defendant | |

## <u>COMPLAINT</u>

The Plaintiff Parties identified in Paragraph 13 herein hereby bring the present action against Junpeng Wu and state as follows.

## I.    JURISDICTION AND VENUE

1.    The Plaintiff Parties bring this action under Title 35 of the United States Code, and under 28 U.S.C. §§2201 and 2202, to obtain a declaratory judgement of non-infringement with respect to U.S. Patent No. 11,925,592 (the "'592 patent")(Exhibit 1), under 35 U.S.C. § 101 *et seq*.

2.    Exhibit 1 is a true and correct copy of the '592 patent.

3.      Exhibit 2 is a true and correct copy of the file history of the '592 patent.

4.      This Court has original subject matter jurisdiction over the patent-related claim pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction).

5.      Defendant is an individual.

6.      On information and belief, Defendant is a foreign national.

7.      On information and belief, Defendant is a citizen of China.

8.      On information and belief, Defendant maintains an address of Room 207, 2nd Floor, Liangji Building, Donghuan 1st Road, Fukang Community, Longhua Street, Longhua District, Shenzhen, China.

9.      Defendant has interfered with Plaintiff Parties' customers across the United States by causing the shutdown of Plaintiff Parties' e-commerce stores catering to United States residents and preventing Plaintiff Parties from selling products to their U.S. customers.

10.     Defendant is subject to the personal jurisdiction of this Court by admission and by the determination of the Court in the Northern District of Illinois.  Ex. 13, Ex. 14.

11.     Venue is proper in this Court pursuant to at least 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this forum.

12.     Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) as the Defendant is subject to this court's personal jurisdiction.

#2008313v1

## II.    THE PARTIES

13.    The Plaintiff Parties are a group of the following Chinese companies that sell products in the U.S., particularly through Amazon.com.[1]

    a.    Plaintiff Name: Lvliang Lishi Linglong Electronic Trade Co. Ltd.

        i.    Address: China, 033000, shanxisheng, lvliangshi, tianjiahuicunbentian4Sdianduimian, lishiqutianjiahuijiedao

        ii.    Amazon Store Name: detailed and fine

        iii.    Amazon Store ID: A31HEHE71RRJ7Q

        iv.    Brand Name: Jodiyece

        v.    Name of Product at Issue for Plaintiff: Maiden

        vi.    Amazon ASIN at Issue for Plaintiff: B0DHZYS3PP

        vii.    Amazon Complaint ID filed by Defendant: 17072486971

        viii.    Date of filing of Amazon Complaint by Defendant: 2/20/2025

    b.    Plaintiff Name: Lvliangshengmeijiawangluoshangmaoyouxiangongsi

        i.    Address: China, 033000, shanxisheng, lvliangshi, lishiqutianjiahuijiedaoshuzijingjichanyeyuan, zhihuichengshiyunyingzhongxinsicengCqu003hao

        ii.    Amazon Store Name: lvliangshengmeijia

        iii.    Amazon Store ID: AGVDPGWTSOOSU

        iv.    Brand Name: Cafatop

        v.    Name of Product at Issue for Plaintiff: GAME

---

[1] Collectively, the Plaintiffs identified in this paragraph are referred to herein as "Plaintiff Parties", "Plaintiffs", or alternatively "CEJ" (the acronym of the three brands Cafatop, EINSEO, and Jodiyece, utilized by the Plaintiffs).

vi.       Amazon ASIN at Issue for Plaintiff: B0D6BCLFWG

vii.     Amazon Complaint ID filed by Defendant: 17374147401

viii.    Date of filing of Amazon Complaint by Defendant: 3/11/2025

c.     Plaintiff Name: dongguanshiqiuzhiyuanmaoyiyouxiangongsi

     i.      Address: China, 523478, guangdongsheng, dongguanshi, henglizhen, henglifuminlu2hao2haolou201shi

     ii.     Amazon Store Name: shiqiuyanstore

     iii.    Amazon Store ID: AYBZ6JHEL1847

     iv.    Brand Name: Cafatop

     v.     Name of Product at Issue for Plaintiff: GAME

     vi.    Amazon ASIN at Issue for Plaintiff: B0D6BCLFWG

     vii.   Amazon Complaint ID filed by Defendant: 17374147401

     viii.  Date of filing of Amazon Complaint by Defendant: 3/11/2025

d.     Plaintiff Name: YiWuShiDanXunDianZiShangWuYouXianGongSi

     i.      Address: China, 321000, zhejiangsheng, jinhuashi, yiwushichouchengjiedaocilinxiaoqu20chuang2danyuan202

     ii.     Amazon Store Name: DANxun

     iii.    Amazon Store ID: A2POPK9C7MI45D

     iv.    Brand Name: Cafatop

     v.     Name of Product at Issue for Plaintiff: GAME

     vi.    Amazon ASIN at Issue for Plaintiff: B0D6BCLFWG

     vii.   Amazon Complaint ID filed by Defendant: 17374147401

     viii.  Date of filing of Amazon Complaint by Defendant: 3/11/2025

#2008313v1

e.   Plaintiff Name: chongqinglanhehaodianzishangwuyouxiangongsi

    i.   Address:   China,   400050,   chongqingshi,   jiulongpoqu, shixinlu156hao, 2chuangfu1zhi2cengA2-C-67

    ii.   Amazon Store Name: Blue Woahoo

    iii.   Amazon Store ID: A14UM0U838O22C

    iv.   Brand Name: EINSEO

    v.   Name of Product at Issue for Plaintiff: Martino

    vi.   Amazon ASIN at Issue for Plaintiff: B0DP9LZT22

    vii.   Amazon Complaint ID filed by Defendant: 17374147401

    viii.   Date of filing of Amazon Complaint by Defendant: 3/11/2025

f.   Plaintiff Name: hubeijinchangmaoyiyouxiangongsi

    i.   Address:   China,   432009,   hubeisheng,   xiaoganshi, gaoxinjishukaifaqu, wanliuhui2qi12dongyidanyuan205-2shi

    ii.   Amazon Store Name: Jun&amp;jie

    iii.   Amazon Store ID: AU5VY457FX5CK

    iv.   Brand Name: EINSEO

    v.   Name of Product at Issue for Plaintiff: Martino

    vi.   Amazon ASIN at Issue for Plaintiff: B0DP9LZT22

    vii.   Amazon Complaint ID filed by Defendant: 17374147401

    viii.   Date of filing of Amazon Complaint by Defendant: 3/11/2025

g.   Plaintiff Name: dongguanshixueyaodianzikejiyouxiangongsi

    i.   Address:   China,   523000,   guangdongsheng,   dongguanshi, henglizhen, cunweishichangerjie31hao302fang

#2008313v1

    ii.        Amazon Store Name: XUEYAOKEJI

    iii.       Amazon Store ID: A2WBBES5UKPYM5

    iv.       Brand Name: EINSEO

    v.        Name of Product at Issue for Plaintiff: Martino

    vi.       Amazon ASIN at Issue for Plaintiff: B0DP9LZT22

    vii.      Amazon Complaint ID filed by Defendant: 17374147401

    viii.     Date of filing of Amazon Complaint by Defendant: 3/11/2025

h.     Plaintiff Name: shenzhenshiyushanmaoyiyouxiangongsi

    i.        Address: China, 518046, guangdongsheng, shenzhenshi, fuanshequmintianlu178haohuarongdasha725D45, futianqufutianjiedao

    ii.        Amazon Store Name: Qingshan&amp;D

    iii.       Amazon Store ID: A3G8YW7LK2QK1R

    iv.       Brand Name: EINSEO

    v.        Name of Product at Issue for Plaintiff: Martino

    vi.       Amazon ASIN at Issue for Plaintiff: B0DP9LZT22

    vii.      Amazon Complaint ID filed by Defendant: 17374147401

    viii.     Date of filing of Amazon Complaint by Defendant: 3/11/2025

i.     Plaintiff Name: LvliangCity, Lishiqu, Jichengkuajin e-commerce Co.

    i.        Address: China, 033000, Shanxi, lvliangshi, lishiqulianhuachijiedaobinhenanxiluxiushuiyuanyidanyuan101shi

    ii.        Amazon Store Name: Jichengkuajin

    iii.       Amazon Store ID: A3PAXQR683WLVP

    iv.      Brand Name: Jodiyece

    v.      Name of Product at Issue for Plaintiff: Maiden

    vi.      Amazon ASIN at Issue for Plaintiff: B0DHZYS3PP

    vii.      Amazon Complaint ID filed by Defendant: 17072486971

    viii.      Date of filing of Amazon Complaint by Defendant: 2/20/2025

    j.      Plaintiff Name: lvliangshilishiqufurongshangmaoyouxiangongsi

    i.      Address: China, 033000, shanxisheng, lvliangshi, lishiqufengshanjiedao, changzhilu148hao

    ii.      Amazon Store Name: Hibiscus-Z

    iii.      Amazon Store ID: A1V8XVEC3WD60I

    iv.      Brand Name: Jodiyece

    v.      Name of Product at Issue for Plaintiff: Maiden

    vi.      Amazon ASIN at Issue for Plaintiff: B0DHZYS3PP

    vii.      Amazon Complaint ID filed by Defendant: 17072486971

    viii.      Date of filing of Amazon Complaint by Defendant: 2/20/2025

14.    Defendant, Junpeng Wu ("Wu" or "Defendant"), is an individual.

15.    On information and belief, Defendant is a foreign national.

16.    On information and belief, Defendant is a citizen of China.

17.    On information and belief, Defendant maintains an address of Room 207, 2nd Floor, Liangji Building, Donghuan 1st Road, Fukang Community, Longhua Street, Longhua District, Shenzhen, Chian.

18.  On information and belief, the address of Room 207, 2nd Floor, Liangji Building, Donghuan 1st Road, Fukang Community, Longhua Street, Longhua District, Shenzhen, China, is not a personal residence.

19.  On information and belief, Defendant does not routinely or consistently visit the address of Room 207, 2nd Floor, Liangji Building, Donghuan 1st Road, Fukang Community, Longhua Street, Longhua District, Shenzhen, China.

20.  Defendant is a named inventor of the '592 patent.

21.  Tengui Huang and Zhixu Yang are identified as the other two joint inventors of the '592 patent

22.  Defendant is the owner by assignment of the '592 patent.

23.  Exhibit 3 is a true and correct copy of the assignment of the '592 ("the Assignment") patent from Tengui Huang and Zhixu Yang to Wu.

24.  The Assignment was recorded with the USPTO at Reel/Frame 063782/0437.

25.  The '592 patent matured from US Patent Application No. 18/202,966 filed on May 29, 2023.

26.  The '592 patent is a continuation-in-part of US Patent Application No. 18/119,859.

27.  US Patent Application No. 18/119,859 matured into US Patent No. 11,730,665 ("the '665 patent").

28.  Exhibit 4 is a true and correct copy of the '665 patent.

29.  Exhibit 5 is a true and correct copy of the file history of the '665 patent.

30.  The '592 patent incorporates the '665 patent by reference.

### III.    FACTS PERTAINING TO ALL CLAIMS

31.  The adult entertainment, sexual aids, and associated product industry is enormous.

32.     According to recent market research, the sex toy market is expected to reach over $62 billion by 2023.  Exhibit 6.

33.     CEJ are in the business of selling sexual aids for adults.

34.     While there are a wide variety of such aids, the present suit deals with three particular products: GAME; Martino; and Maiden ("the Products").

35.      The Products are designed for male stimulation.

36.     Each of the Products was popular on Amazon, and CEJ enjoyed success in advertising and selling the Products throughout the United States and to customers in Illinois.

37.     Amazon is the primary sales channel for each Plaintiff's Products.

38.     To be competitive in the market for stimulation devices, it is critical that Plaintiffs have access to the US market through Amazon.com.

39.     However, Plaintiffs' access to Amazon.com stopped between February 20, 2025 and March 11, 2025 when Amazon removed the listings of Plaintiffs' Products from Amazon in response to complaints filed by the Defendant alleging that the Products infringed the '592 patent.

40.     Defendant's Amazon complaints resulted in the Products being removed from Amazon.

41.     The following is a partial reproduction of the Amazon Notice received on February 20, 2025 notifying the takedown the Maiden Product:

Hello,

We removed the listings below.

ASIN: B0DHZYS3PP
Infringement type: Patent
IP asserted: US11925592B1
Complaint ID: 17072486971
Rights owner name: amortoy
Rights owner email: yanggouyangmao@163.com

Why did this happen?
We removed some of your listings because we received a report from
a rights owner alleging they may infringe upon their patent. This is
against Amazon policies. Sellers on Amazon must comply with
Amazon listing policies and are not allowed to sell products violating
Amazon policies
(https://sellercentral.amazon.com/gp/help/external/201361070).

42.    The following is a partial reproduction of the Amazon Notice received on March

11, 2025 notifying the takedown the Martino Product:

Hello,

We removed the listings below.

ASIN: B0DP9LZT22
Infringement type: Patent
IP asserted: US11925592B1
Complaint ID: 17374147401
Rights owner name: amortoy
Rights owner email: yanggouyangmao@163.com

Why did this happen?
We removed some of your listings because we received a report from
a rights owner alleging they may infringe upon their patent. This is
against Amazon policies. Sellers on Amazon must comply with
Amazon listing policies and are not allowed to sell products violating
Amazon policies
(https://sellercentral.amazon.com/gp/help/external/201361070).

43.    The following is a partial reproduction of the Amazon Notice received on March

11, 2025 notifying the takedown the GAME Product:

#2008313v1

Hello,

We removed the listings below.

ASIN: B0D6BCLFWG
Infringement type: Patent
IP asserted: US11925592B1
Complaint ID: 17374147401
Rights owner name: amortoy
Rights owner email: yanggouyangmao@163.com


Why did this happen?
We removed some of your listings because we received a report from
a rights owner alleging they may infringe upon their patent. This is
against Amazon policies. Sellers on Amazon must comply with
Amazon listing policies and are not allowed to sell products violating
Amazon policies
(https://sellercentral.amazon.com/gp/help/external/201361070).

44.     All takedowns were submitted under the name "amortoy" utilizing the email

yanggouyangmao@163.com.

45.     On information and belief, "amortoy" and yanggouyangmao@163.com are an alias

and email used by Defendant or Defendant's agent.

46.     The only reliable means of communicating with Defendant is through use of the

email address yanggouyangmao@163.com.

47.     Due to Defendant's intentional interference with Plaintiffs, an actual case or

controversy exists as between Plaintiffs and Defendant.

48.     The removal of the Products at issue has caused considerable damage in the form

of lost sales to CEJ and such damage compounds daily.

## COUNT I
## DECLARATORY JUDGMENT OF NONINFRINGEMENT
## U.S. Patent No. 11,925,592

49.     CEJ incorporate all of the foregoing paragraphs herein.

50.     The '592 patent is directed to a "Penis Massager".

51.     It includes a housing, a sleeve mounted in the housing, and a driving device, that causes the sleeve to move, such as by vibrating, rotating, or reciprocating and the like. Ex. 1, 3:14-16.[2]

52.     The '592 patent further includes a description of handles for grasping the device. Ex. 1, 3:29-30; Figs. 2, 7-17.

53.     The disclosure relating to the handles was not included in the embodiments of the parent '662 patent but was instead added as in the continuation-in-part application of the '592 patent.

54.     Preferably, the handles are provided with buttons for controlling operation of the driving device, i.e., controlling operation of the sleeve. Ex. 1, 3:55-60.

55.     The buttons may be provided on any one of the handles, or may be provided on both of the handles. Ex. 1, 3:55-60.

56.     During use, the user may press the buttons on the handles to control operation of the drive device.  Ex. 1, 4:54-56.

57.     The specification describes multiple different embodiments of the formation of the handles.

58.     With reference to Figures 3-4, the specification states that the handles are formed separately and then fixedly assembled to the housing. Ex. 1 4:16-17.

59.     In other embodiments, the handles may be integrally formed with the housing as one piece. Ex. 1, 4:17-19.

60.     With reference to Figures 7-16, there is depicted an embodiment where the handles are rotatably connected to the housing.  Ex. 1, 5:49-52.

---

[2] References to the Column and line numbers of the patent are in the form Column:line-line.

61.    According to the specification, when handles are rotatably connected, the inclination angle α of the central axis of the handle relative to that of the housing can be adjusted according to need. Ex. 1, 5:49-52

62.    Rotatably connected handles can also be rotated to a folded state.

63.    The specification that the rotatably connected handles are attached to the housing, such that they are able to rotate through their full range of motion without becoming detached from the housing.  Ex. 1 5:63-6:26.

64.    With respect to the embodiment of Figure 17, the specification states that the handles may be fixed to the housing, rotatably connected to the housing, or slidably connected to the housing.  Ex. 1, 6:38-40.

65.    Unlike the "fixed" and "rotatably connected" which are each explained in the specification, the specification of the '592 patent does not discuss or explain what is meant by "slidably connected."

66.    However, the '662 patent explains that "slidably connected" members are such that the "slidably connected" element moves in a sliding manner with respect to the components it is connected to in normal operation but without becoming detached.  Ex. 4, 8:19-36.

67.    The '592 patent includes 17 claims.

68.    Claims 1, 14, and 15 are independent claims.

69.    To infringe a patent, an accused product must meet each and every limitation of a claim either literally or under the doctrine of equivalents.

70.    If the accused product does not meet each and every limitation of a claim either literally or under the doctrine of equivalents it cannot infringe the claim.

13

71.     If a product does not infringe an independent claim, that product cannot infringe a claim that is dependent on the independent claim that is not infringed.

72.     Claim 1 of the '592 patent states:

> 1. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and **at least one button being provided on the first end of at least one of the at least two handles**.

73.     As discussed above, the specification makes clear that a "button" allows the user to control the massager.

74.     The GAME Product is shown below:



75.     The handle of the GAME is made entirely of plastic.

76.     The handle of the GAME does not include any electronic components or connections.

77.     The handle of the GAME has no moveable parts.

78.     The handle of the GAME includes decorative molded bumps, shown below:



#2008313v1

79.    The handle of the GAME cannot control the operation of any mechanical, electrical, or electromechanical component of the GAME product.

80.    The handle of the GAME does not include any buttons.

81.    The GAME product cannot meet each and every limitation of claim 1 of the '592 patent at least because the GAME product does not include "at least one button being provided on the first end of at least one of the at least two handles" either literally or under the doctrine of equivalents.

82.    The GAME product cannot meet each and every limitation of any of claims 2-13, each of which depend, either directly or indirectly, on claim 1.

83.    The Maiden Product is shown below:



84.    The handle of the Maiden is made entirely of plastic.

85.    The handle of the Maiden does not include any electronic components or connections.

86.    With the exception of the plastic hook-and-loop strap, the handle of the Maiden has no moveable parts.

87.    The handle of the Maiden includes decorative molded ridges, shown below:



88.    The handle of the Maiden cannot control the operation of any mechanical, electrical, or electromechanical component of the Maiden product.

89.    The handle of the Maiden does not include any buttons.

90.    The Maiden product cannot meet each and every limitation of claim 1 of the '592 patent at least because the Maiden product does not include "at least one button being provided on the first end of at least one of the at least two handles" either literally or under the doctrine of equivalents.

91.    The Maiden product cannot meet each and every limitation of any of claims 2-13, each of which depend, either directly or indirectly, on claim 1.

92.    The Martino Product is shown below:

17



93.    The handle of the Martino is made entirely of plastic.

94.    The handle of the Martino does not include any electronic components or connections.

95.    With the exception of the plastic hook-and-loop strap, the handle of the Martino has no moveable parts.

96.    The handle of the Martino includes decorative molded ridges, shown below:

#2008313v1



97.    The handle of the Martino cannot control the operation of any mechanical, electrical, or electromechanical component of the Martino product.

98.    The handle of the Martino does not include any buttons.

99.    The Martino product cannot meet each and every limitation of claim 1 of the '592 patent at least because the Maiden product does not include "at least one button being provided on the first end of at least one of the at least two handles" either literally or under the doctrine of equivalents.

100.    The Martino product cannot meet each and every limitation of any of claims 2-13, each of which depend, either directly or indirectly, on claim 1.

101.    Claim 14 of the '592 patent states:

> 14. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior
> volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the
> housing; and
> at least two handles extending outwardly from an outer face of the
> housing for holding of the penis massager;

**wherein the at least two handles are slidably connected to the housing**.

102.    When the handles of the GAME product are connected to the housing, the handles are fixedly connected.

103.    The handle of the GAME includes two detents on either side of an inner ring, and the housing of the GAME includes two protrusions on either side of the housing:



104.    When connected, the detents fixedly engage the protrusions and thus preclude movement of the handle during the operation of the GAME product.

105.    When the detent and protrusions are not engaged, the handle is separate from the housing.

106.    The handle of the GAME product is not "slidably connected" to the housing of the GAME.

107.    The GAME product cannot meet each and every limitation of claim 14 of the '592 patent at least because the GAME product does not include "wherein the at least two handles are slidably connected to the housing" either literally or under the doctrine of equivalents.

108.    When the handles of the Maiden product are connected to the housing, the handles are fixedly connected.

109.    The handles of the Maiden include a plastic hook-and-loop strap:

#2008313v1



110.    The strap is pulled tight to frictionally engage the handles with the exterior of the housing.

111.    When frictionally engaged, the handles are maintained in a fixed relationship to the housing.

112.    When the strap is released, the handles are separated from the housing.

113.    When the strap is engaged, the handles are fixed and thus preclude movement of the handles during the operation of the Maiden product.

114.    The handle of the Maiden product is not "slidably connected" to the housing of the Maiden.

115.    The Maiden product cannot meet each and every limitation of claim 14 of the '592 patent at least because the Maiden product does not include "wherein the at least two handles are slidably connected to the housing" either literally or under the doctrine of equivalents.

#2008313v1

116. When the handles of the Martino product are connected to the housing, the handles are fixedly connected.

117. The handles of the Martino include a plastic hook-and-loop strap:





118. The strap is pulled tight to frictionally engage the handles with the exterior of the housing.

119. When frictionally engaged, the handles are maintained in a fixed relationship to the housing.

120. When the strap is released, the handles are separated from the housing.

22

121.    When the strap is engaged, the handles are fixed and thus preclude movement of the handles during the operation of the Martino product.

122.    The handle of the Martino product is not "slidably connected" to the housing of the Martino.

123.    The Martino product cannot meet each and every limitation of claim 14 of the '592 patent at least because the Martino product does not include "wherein the at least two handles are slidably connected to the housing" either literally or under the doctrine of equivalents.

124.    Claim 15 of the '592 patent states:

> 15. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;
> **wherein the at least two handles are rotatably connected to the housing**.

125.    When the handles of the GAME product are connected to the housing, the handles are fixedly connected.

126.    The handle of the GAME includes two detents on either side of an inner ring, and the housing of the GAME includes two protrusions on either side of the housing:



127.    When connected, the detents fixedly engage the protrusions and thus preclude movement of the handle during the operation of the GAME product.

128.    When the detent and protrusions are not engaged, the handle is separate from the housing.

129.    The handle of the GAME product is not "rotatably connected" to the housing of the GAME.

130.    The GAME product cannot meet each and every limitation of claim 15 of the '592 patent at least because the GAME product does not include "wherein the at least two handles are rotatably connected to the housing" either literally or under the doctrine of equivalents.

131.    The GAME product cannot meet each and every limitation of any of claims 16-17, each of which depend, either directly or indirectly, on claim 15.

132.    When the handles of the Maiden product are connected to the housing, the handles are fixedly connected.

133.    The handles of the Maiden include a plastic hook-and-loop strap:



134.    The strap is pulled tight to frictionally engage the handles with the exterior of the housing.

135.    When frictionally engaged, the handles are maintained in a fixed relationship to the housing.

136.    When the strap is released, the handles are separated from the housing.

137.    When the strap is engaged, the handles are fixed and thus preclude movement of the handles during the operation of the Maiden product.

138.    The handle of the Maiden product is not "rotatably connected" to the housing of the Maiden.

139.    The Maiden product cannot meet each and every limitation of claim 15 of the '592 patent at least because the Maiden product does not include "wherein the at least two handles are rotatably connected to the housing" either literally or under the doctrine of equivalents.

#2008313v1

140.    The Maiden product cannot meet each and every limitation of any of claims 16-17, each of which depend, either directly or indirectly, on claim 15.

141.    When the handles of the Martino product are connected to the housing, the handles are fixedly connected.

142.    The handles of the Martino include a plastic hook-and-loop strap:





143.    The strap is pulled tight to frictionally engage the handles with the exterior of the housing.

#2008313v1

144.    When frictionally engaged, the handles are maintained in a fixed relationship to the housing.

145.    When the strap is released, the handles are separated from the housing.

146.    When the strap is engaged, the handles are fixed and thus preclude movement of the handles during the operation of the Martino product.

147.    The handle of the Martino product is not "rotatably connected" to the housing of the Martino.

148.    The Martino product cannot meet each and every limitation of claim 15 of the '592 patent at least because the Martino product does not include "wherein the at least two handles are rotatably connected to the housing" either literally or under the doctrine of equivalents.

149.    The Martino product cannot meet each and every limitation of any of claims 16-17, each of which depend, either directly or indirectly, on claim 15.

150.    The clear and obvious lack of infringement of the Products at issue support the determination that Defendant had no reasonable basis to assert infringement of the '592 patent by any Product at issue in its complaints to Amazon.

151.    The clear and obvious lack of infringement of the Products at issue support the determination that Defendant's assertion of infringement of the '592 patent by each Product at issue in its complaints to Amazon were done with malice and an intent to harm Plaintiffs' business.

152.    The clear and obvious lack of infringement of the Products at issue support the determination that Defendant's assertion of infringement of the '592 patent by each Product at issue in its complaints to Amazon were an impermissible broadening of the scope of the '592 patent that had an anticompetitive effect.

153.    None of the Products at issue include each and every limitation of any claim of the '592 patent literally or under the doctrine of equivalents.

154.    Accordingly, none of the Products at issue could infringe the '592 patent.

155.    An assertion that any of the Products at issue infringe any claim of the '592 patent is frivolous and egregious.

156.    Defendant's complaints to Amazon that the Products at issue infringe the '592 patent are baseless and make this an exceptional case.

157.    Plaintiff Parties are entitled to permanent injunctive relief at least to preclude Defendant from asserting to any other party that any of the Products at issue infringe the '592 patent, or from otherwise utilizing the '592 patent to induce any party to alter its business relationship with any Plaintiff, including but not limited to refusing to purchase, sell, advertise, import, or offer to sell any of the Products at issue.

158.    Plaintiff Parties are entitled to attorneys' fees and costs incurred as a result of at least the conduct of Defendant set forth herein,

159.    Plaintiff Parties are entitled to a declaration that none of the GAME, Maiden, or Martino products infringe any claim of the '592 patent.

160.    Plaintiff Parties are entitled to an award of all other monetary and equitable relief that is within this Court's power to award.

## PRAYER FOR RELIEF

WHEREFORE, CEJ prays for judgment against Defendant as follows:

1) That Judgment be entered against Defendant finding that every claim of U.S. Patent No. 11,925,592 is not infringed by the GAME.

2) That Judgment be entered against Defendant finding that every claim of U.S. Patent No. 11,925,592 is not infringed by the Maiden.

3) That Judgment be entered against Defendant finding that every claim of U.S. Patent No. 11,925,592 is not infringed by the Martino.

4) A finding that this case is exceptional under 35 U.S.C. § 285.

5) Awarding CEJ its cost and reasonable attorneys' fees.

6) Awarding CEJ pre and post judgement interest on all monetary awards.

7) Enter an order enjoining Defendant or any other party working in conjunction with Defendant or that has knowledge of the injunction from asserting infringement of U.S. Patent No. 11,925,592 or otherwise using U.S. Patent No. 11,925,592 to interfere with CEJ's businesses.

8) Awarding CEJ any and all other relief that this Court deems just and proper.

Dated: May 15, 2025

/s  *Dennis J. Drasco*                           /s  *Matthew De Preter*

Dennis J. Drasco                                Matthew De Preter (*pro hac vice pending*)
LUM, DRASCO & POSITAN LLC              ARONBERG GOLDGEHN
103 Eisenhower Parkway, Suite 401        225 West Washington, Suite 2800
Roseland, New Jersey 07068-1049          Chicago, Illinois 60606
973.403.9000                                    312.828.9600
ddrasco@lumlaw.com                          cdepreter@agdglaw.com

**Co-Counsel for Plaintiffs**

#2008313v1

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

The undersigned hereby certifies that the matter in controversy in this matter is not

the subject of any other action pending in any court, or of any pending arbitration or administrative

proceeding.

/s    *Dennis J. Drasco*

Dennis J. Drasco

#2008313v1

Exhibit 1

Case 2:25-cv-04327-ES-JSA    Document 1    Filed 05/15/25    Page 32 of 611 PageID: 32



US011925592B1

(12) **United States Patent**　　(10) **Patent No.:**　　**US 11,925,592 B1**

Huang et al.　　(45) **Date of Patent:**　　**Mar. 12, 2024**

(54) **PENIS MASSAGER**

(71) Applicant: **Junpeng Wu**, Shenzhen (CN)

(72) Inventors: **Tenghui Huang**, Guangdong (CN); **Junpeng Wu**, Shenzhen (CN); **Zhixu Yang**, Guangdong (CN)

(73) Assignee: **Junpeng Wu**, Shenzhen (CN)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **18/202,966**

(22) Filed: **May 29, 2023**

### Related U.S. Application Data

(63) Continuation-in-part of application No. 18/119,859, filed on Mar. 10, 2023, now Pat. No. 11,730,665.

(51) **Int. Cl.**
　　*A61H 19/00*　　(2006.01)
　　*A61H 23/02*　　(2006.01)

(52) **U.S. Cl.**
　　CPC ............. *A61H 19/32* (2013.01); *A61H 23/02* (2013.01); *A61H 2201/0153* (2013.01); *A61H 2201/1215* (2013.01); *A61H 2201/1692* (2013.01); *A61H 2201/5025* (2013.01)

(58) **Field of Classification Search**
　　CPC ...................................................... A61H 19/32
　　See application file for complete search history.

(56)　　　　**References Cited**

U.S. PATENT DOCUMENTS

| 2021/0128400 | A1* | 5/2021 | Tindal | .................... | A61H 19/32 |
| 2023/0083660 | A1* | 3/2023 | Raju | ....................... | A61H 23/00 |
| 2023/0126338 | A1* | 4/2023 | Shao | .................. | A61H 15/0078 |
| | | | | | 600/38 |

FOREIGN PATENT DOCUMENTS

DE　　202017005314 U1 *　2/2018

* cited by examiner

*Primary Examiner* — Thaddeus B Cox

(57)　　　　**ABSTRACT**

A penis massager includes a housing defining a first space and a second space therein, a sleeve provided in the first space of the housing, a driving motor mounted in the second space of the housing, and at least two handles extending outwardly from an outer face of the housing for holding of the penis massager. The sleeve defines an interior volume for accommodating a penis therein. The driving motor is connected to the sleeve in a transmission way, configured for driving to sleeve to move and/or rotate relative to the housing, thereby providing a massaging stimulation to the penis in the sleeve.

**17 Claims, 13 Drawing Sheets**





FIG. 1

Case 2:25-cv-04327-ES-JSA   Document 1   Filed 05/15/25   Page 34 of 611 PageID: 34



FIG. 2

Case 2:25-cv-04327-ES-JSA   Document 1   Filed 05/15/25   Page 35 of 611 PageID: 35



FIG. 3

Case 2:25-cv-04327-ES-JSA   Document 1   Filed 05/15/25   Page 36 of 611 PageID: 36



FIG. 4

Case 2:25-cv-04327-ES-JSA   Document 1   Filed 05/15/25   Page 37 of 611 PageID: 37



FIG. 5

Case 2:25-cv-04327-ES-JSA   Document 1   Filed 05/15/25   Page 38 of 611 PageID: 38



FIG. 6

Case 2:25-cv-04327-ES-JSA   Document 1   Filed 05/15/25   Page 39 of 611 PageID: 39



FIG. 7



FIG. 8

Case 2:25-cv-04327-ES-JSA   Document 1   Filed 05/15/25   Page 40 of 611 PageID: 40



FIG. 9

Case 2:25-cv-04327-ES-JSA    Document 1    Filed 05/15/25    Page 41 of 611 PageID: 41



FIG. 10

Case 2:25-cv-04327-ES-JSA   Document 1   Filed 05/15/25   Page 42 of 611 PageID: 42



FIG.  11

Case 2:25-cv-04327-ES-JSA   Document 1   Filed 05/15/25   Page 43 of 611 PageID: 43



FIG. 12



FIG. 13

Case 2:25-cv-04327-ES-JSA   Document 1   Filed 05/15/25   Page 44 of 611 PageID: 44



FIG. 14



FIG. 15

Case 2:25-cv-04327-ES-JSA   Document 1   Filed 05/15/25   Page 45 of 611 PageID: 45



FIG. 16



FIG. 17

US 11,925,592 B1

**1**
**PENIS MASSAGER**

CROSS-REFERENCE TO RELATED
APPLICATIONS

This application is a continuation-in-part application of
application Ser. No. 18/119,859, filed on Mar. 10, 2023,
which claims priority to Chinese Patent Application No.
202320430037.2, filed on Mar. 8, 2023. The content of the
aforementioned applications, including any intervening
amendments thereto, are incorporated herein by reference.

TECHNICAL FIELD

The present application relates to the technical field of
massage devices, more particularly relates to a penis mas-
sager.

BACKGROUND

Penis massagers are configured for simulating a vaginal
environment to allow males, particularly the bachelordom
and long-distance separation males, to release their sex
pressure.

Generally, the penis massager includes a housing, a soft
sleeve mounted in a housing and defining a cavity therein,
and a motor configured for driving the sleeve to vibrate in
high frequency, thereby providing a massaging stimulation
to the penis inserted into the cavity of the soft sleeve.
However, a size, especially a radial size of the penis mas-
sager is limited by the soft sleeve, and cannot be designed
too small, which makes it easy to slip out of the human hand
due to vibration, which makes it inconvenient to use.

SUMMARY

An object of the present application is to provide a penis
massager which is easy to be held during in use.

In order to achieve the above-mentioned object, the
present application provides a penis massager that includes
a housing defining a space therein; a sleeve provided in the
space of the housing and defining an interior volume for
accommodating a penis therein; a driving device for driving
the sleeve to generate motion relative to the housing; and at
least two handles extending outwardly from an outer face of
the housing for holding of the penis massager.

Further, the present application provides a penis massager
that includes a housing defining a first space and a second
space therein; a sleeve provided in the first space of the
housing and defining an interior volume for accommodating
a penis therein; a driving motor mounted in the second space
of the housing and connected to the sleeve in a transmission
way, the driving motor being configured for driving the
sleeve to move and/or rotate relative to the housing; and at
least two handles extending outwardly from an outer face of
the housing for holding of the penis massager.

Compared with the prior art, the penis massager provided
by the present application has the beneficial effects that: the
penis massager is provided with at least two handles, each
handle has a size not limited by that of the sleeve and thus
can be designed ergonomically, so that the user holds the
handles instead of the housing during in use, even if the
sleeve is driven to generate strong motion, the penis mas-
sager will not slip out of the hands, which not only facilitates
the use of the present penis massager, but also makes the
design of the radial size of the sleeve more flexible.

**2**

BRIEF DESCRIPTION OF THE DRAWINGS

In order to more clearly explain technical solutions in
embodiments of the present application, accompanying
drawings required to be used in the embodiments will be
briefly introduced below. Apparently, the accompanying
drawings in the following description are only some
embodiments of the present application. For those ordinarily
skilled in the art, other accompanying drawings may be
obtained from these accompanying drawings without paying
any creative labor.

FIG. **1** is a schematic, assembled view of a penis massager
according to a first embodiment of the present application.

FIG. **2** is a plan view of the penis massager of FIG. **1**.

FIG. **3** is an exploded view of the penis massager of FIG.
**1**.

FIG. **4** is a further exploded view of the penis massager
of FIG. **1**, wherein its handles are removed.

FIG. **5** is a schematic view of a sleeve of the penis
massager of FIG. **1**.

FIG. **6** is a cross sectional view of the sleeve of FIG. **5**.

FIG. **7** is a schematic, assembled view of a penis massager
according to a second embodiment of the present applica-
tion, wherein its handles are folded.

FIG. **8** is a plan view of the penis massager of FIG. **6**.

FIG. **9** is an exploded view of the penis massager of FIG.
**6**.

FIG. **10** is an exploded view of the handle of the penis
massager of FIG. **6**.

FIG. **11** shows the exploded handle from another aspect.

FIG. **12** is a cross sectional view showing connection
between the handle and housing of the massager of FIG. **6**.

FIG. **13** is a schematic view of the penis massager of FIG.
**6**, wherein its handles are partly unfolded.

FIG. **14** is a side view of the penis massager of FIG. **13**.

FIG. **15** is a schematic view of the penis massager of FIG.
**6**, wherein its handles are fully unfolded.

FIG. **16** is a side view of the penis massager of FIG. **15**.

FIG. **17** is a schematic, assembled view of a penis
massager according to a third embodiment of the present
application.

DESCRIPTION OF THE EMBODIMENTS

In order to make technical problems, technical solutions
and beneficial effects to be solved in the present application
clearer, the present application will be further described
below in detail in conjunction with accompanying drawings
and embodiments. It should be understood that specific
embodiments described herein are only used to explain the
present application and not to limit the present application.

It should be noted that when an element is referred to as
"fixed to" or "arranged on" another element, it can be
directly or indirectly on another element. When an element
is referred to as "connected to" another element, it can be
directly or indirectly connected to another element.

It should be understood that the orientational or positional
relationship indicated by terms "length", "width", "up",
"down", "front", "back", "left", "right", "vertical", "hori-
zontal", "top", "bottom", "inside", "outside", and the like is
based on the orientational or positional relationship shown
in the accompanying drawings, and is only for the sake of
describing the present application and simplifying the
description instead of indicating or implying that the appa-
ratus or element referred to must have a specific orientation,

US 11,925,592 B1

3

and must be constructed and operated in a specific orientation, so it cannot be understood as a limitation of the present application.

Also, terms "first" and "second" are only used for describing purposes, and cannot be understood as indicating or implying relative importance or implying the number of technical features indicated. Therefore, features defined with "first" and "second" can explicitly or implicitly include one or more of these features. In the description of the present application, "a plurality of" means two or more, unless otherwise specified.

Referring to FIGS. 1-4, a penis massager according to an embodiment of the present application is shown. In this embodiment, the penis massager includes a housing 10, a sleeve 20 mounted in the housing 10 and a driving device 30 connected to the sleeve 20.

The sleeve 20 defines an interior volume 22 with an open end (such as an open front end) for simulating a vaginal environment, wherein the male genital can be inserted into the interior volume 22 through its open end to simulate sexual intercourse. The driving device 30 is configured for driving the sleeve 20 to generate motion, including but not limited to vibration, rotation, reciprocating movement and the like during the sexual intercourse, thereby producing massaging stimulation on the male genital accommodated in the sleeve 20, helping the user release his sexual pressure and thus satisfying their physiological and psychological needs to a certain extent.

As shown in FIGS. 3-4, Handles 40 are provided on an outer face of the housing 10, preferably the handles 40 are two in number and are arranged symmetrically about a central axis of the housing 10. The handles 40 are designed ergonomically, and are convenient to be held in the user's hands. Accordingly, each handle 40 has a size, especially a radial size, much less than that of the housing 10. Preferably, each handle 40 extends outwardly and obliquely from a corresponding side of the housing 10. That is, the handle 40 is angular with the housing 10, and an inclination angle α of a central axis of the handle 40 relative to that of the housing 10 may be set to range from 0-90 degrees, preferably 30-60 degrees, facilitating holding of the handle 40.

For the housing 10, its size, especially its radial size, largely depends on the size of the sleeve 20 mounted therein, and thus can not be designed too small, which makes the housing 10 not easy to be held by the user's hand, so that the conventional penis massager is easy to slip out of the hand during in use. For the present application, the user holds the handles 40 instead of the housing 10, wherein each handle 40 has a size not limited by that of the sleeve 20, so even if the sleeve 20 is driven to generate strong motion, the penis massager will not slip out of the hands, which not only facilitates the use of the present penis massager, but also makes the design of the radial size of the sleeve 20 more flexible.

Preferably, the handles 40 are provided with buttons 42 for controlling operation of the driving device 30, i.e., controlling operation of the sleeve 20. The buttons 42 may be provided on any one of the handles 40, or may be provided on both of the handles 40. In this embodiment, each handle 40 is generally column-shaped, and includes a first end connected to the housing 10 and a second end away from the housing 10. Preferably, the first end of the handle 40 is connected to an end (such as a rear end) of the housing 10 away from the open end of the sleeve 20. The buttons 42 are provided at the first end of the handle 40, which are easy to be pressed by the user's thumb when the handle 40 are held in the user's hand. Preferably, the second end of the

4

handle 40 is generally dome-shaped. During in use, the dome-shaped second end of the handle 40 abuts the palm of the hand, which is comfortable even for a long time.

In this embodiment, the housing 10 in whole is generally in a shape of a rectangular column. The handles 40 are provided on opposite sides, such as left and right sides of the housing 10, respectively. In other embodiments, the housing 10 may be shaped as a circular column, a hexagonal column and the like, which should not be limited to the specific embodiments. In addition, the shape and size of the handle 40 may be designed according to needs. For example, in an alternative embodiment, the handle 40 may be designed to have a variable diameter or variable length; and, in another embodiment, the handle 40 may be designed to extend curvedly from the housing 10.

In this embodiment, the handles 40 are formed separately and then fixedly assembled to the housing 10. In other embodiments, the handles 40 may be integrally formed with the housing 10 as one piece, thereby simplifying assembly process of the penis massager. It should be understood that the handles 40 are configured for holding the present penis massager, and should not be limited in number. In addition, the handles 40 are not limited to be held by the user's hand during in use, for example, the handles 40 may be inserted into a hole of a fixed supporting member matching with the handles 40, thereby freeing hands of the users.

The housing 10 is generally a hollow structure, and defines a mounting space 12 therein for accommodating the sleeve 20, the driving device 30, and etc. In this embodiment, a partition plate 14 is arranged in the housing 10 and separates the mounting space 12 into a first space 12a and a second space 12b. The sleeve 20 is mounted in the first space 12a; and electronic components, such as a control circuit board 50, is mounted in the second space 12b and electrically connected to the driving device 30. A battery 52, preferably a chargeable battery, is arranged in the second space 12b and electrically connected to the control circuit board 50 for providing electric power to the driving device 30.

The driving device 30 may be a rotary motor, a linear motor, a vibration motor and the like, or may be any combination of them. In this embodiment, the driving device 30 includes a vibration motor 32, which is preferably embedded in a side wall of the sleeve 20. The vibration motor 32 and the sleeve 20 may be integrally molded by injection to form an integral structure, facilitating cleaning of the sleeve 20.

A control panel 16 is provided on the outer face of the housing 10, and is electrically connected to the control circuit board 50. Several buttons 18 are set on the control panel 16 for controlling operation of the driving device 30. The buttons 18 on the control panel 16 may be power on/off button, function selection button and the like, the buttons 42 on the handle 40 may be +/− button and the like. During in use, the user may press the buttons 18 and 42 to control operation of the driving device 30, such as controlling vibration amplitude and vibration frequency of the vibration motor 32, thereby controlling vibration of the sleeve 20.

Referring to FIGS. 4-6, the sleeve 20 is made of soft material, such as soft rubber, and preferably is detachably mounted in the first space 12a of the housing 10. The interior volume 22 is concaved axially and inwardly from an end of the sleeve 20 away from the second space 12b, i.e., the front end of the sleeve 20. Preferably, a plurality of bulges 24 are provided on an interior surface of the sleeve 20 surrounding the interior volume 22 to enhance massage effect to the penis in the sleeve 20.

US 11,925,592 B1

5

In this embodiment, the housing 10 includes a top housing 10a, a bottom housing 10b and an end cover 10c. The top housing 10a and bottom housing 10b are connected to each other to form a cylinder which encircles the sleeve 20, and the end cover 10c covers an open side of the cylinder to seal the open end of the interior volume 22 for dust and water proof.

A movable cabin 60 is arranged in the first space 12a, and is capable of sliding back and forth along an axial direction of the housing 10. The sleeve 20 is detachably mounted in the movable cabin 60 to move axially along with the movable cabin 60. Preferably, guiding bars 19 are respectively provided on two side, such as left and right sides of the housing 10. The guiding bars 19 extend along the axial direction of the housing 10 and slidably penetrate through the movable cabin 60, thereby guiding the axial movement of the sleeve 20. Thus, the sleeve 20 not only generates vibration, but also produces axial reciprocating movement during in use, providing multiple stimulations on the penis.

In this embodiment, a fixing frame 62 is mounted around and fixed to the sleeve 20. Preferably, the fixing frame 62 and the sleeve 20 are integrally molded by injection. A plurality of first conductive members, such as conductive columns 64, is fixed to and extends outwardly from the fixing frame 62. The vibration motor 32 accommodated in the sleeve 20 is electrically connected to the conductive columns 64. Correspondingly, a plurality of second conductive members, such as pogo pins 66, are provided on the movable cabin 60 and electrically connected to the control circuit board 50. Contact of the conductive columns 64 and the pogo pins 66 realizes electric connection between the vibration motor 32 and the control circuit board 50.

In this embodiment, the driving device 30 may further includes a driving motor 34 for driving the sleeve 20 to do axial reciprocating movement. The driving motor 34 may be arranged in the second space 12b of the housing 10, and is connected to the control circuit board 50 electrically and connected to the sleeve 20 by a transmission mechanism. Further, the driving motor 34 may drive the sleeve 20 to rotate in the housing 10 through another transmission mechanism, thus the sleeve 20 is capable of moving axially in the housing 10 and rotating about the axis of the housing 10 at the same time, providing dual stimulation to the penis. In other embodiments, two driving motors may be provided to drive the sleeve 20 to rotate and movement, respectively.

Referring to FIGS. 7-16, a penis massager according to a second embodiment is shown, which differs from the previous embodiment mainly in the handles 40.

In this embodiment, the handles 40 are rotatably connected to the housing 10, and thus the inclination angle α of the central axis of the handle 40 relative to that of the housing 10 can be adjusted according to need, which further facilitates the use of the present penis massager. As shown in FIGS. 7-8, the handles 40 are rotated to a folded state, which attach to the outer face of the housing 10, making the penis massager easy to store and carry. As shown in FIGS. 13-14, each handle 40 is rotated away from the housing 10, which is in a partly unfolded state and its inclination angle α is adjusted to about 45 degrees. As shown in FIGS. 15-16, the handles 40 are totally unfolded, which are generally perpendicular to the housing 10 and the inclination angle α is adjusted to about 90 degrees.

Specifically, as shown in FIGS. 9-12, each handle 40 includes a fixing seat 44 and a rotating arm 46. The fixing seat 44 is fixedly and detachably connected to the housing 10. In this embodiment, the fixing seat 44 forms a cylinder 441 at a side thereof facing to the housing 10, and a fixing

6

component, such as a screw 48, extends through the housing 10 and engages into the cylinder 441 to fix the fixing seat 44 onto the housing 10. The fixing seat 44 defines a shaft hole 443 which extends along a direction parallel to the outer face of the housing 10. The rotating arm 46 is elongated, and includes opposite first and second ends, wherein the first end of the rotating arm 46 is provided with a shaft 461. The shaft 461 is rotatably mounted in the shaft hole 443 of the fixing seat 44 to rotatably connect the handle 40 to the housing 10.

In this embodiment, the rotating arm 46 is molded with two arm portions, i.e., a first arm portion 46a and a second arm portion 46b. One of the first and second arm portions 46a, 46b forms the shaft 461, and the other one defines a connecting hole 463. During assembly, the shaft 461 extends through the shaft hole 443 of the fixing seat 44, and a screw 49 extends through the connecting hole 463 and engages into the shaft 461 to fix the first and second arm portions 46a, 46b together. Preferably, a plurality of first teeth 445 are formed on an axial end face of the fixing seat 44, and a plurality of second teeth 465 are formed on a surface of the first arm portion 46a or the second arm portion 46b facing towards the first teeth 445. When the inclination angle of the handle 40 needs to be adjusted, a force can be applied to the second end of the rotating arm 46 to rotate it, and the rotating arm 46 can be locked at the required position for the engagement of the first teeth 445 and the second teeth 465.

Referring to FIG. 17, a penis massager according to a third embodiment is shown. In this embodiment, the housing 10 of the penis massager includes a first housing portion 11a and a second housing portion 11b arranged side by side. The first housing portion 11a defines the first space receiving the sleeve 20 therein, and the second housing portion 11b defines the second space receiving the driving device 30 therein. In this embodiment, the penis massager has a smaller axial length. Handles 40 are provided at opposites sides of the second housing portion 11b, and extend curvedly and outwardly from the second housing portion 11b. The handles 40 may be fixed to the housing 10, or rotatably connected to the housing 10, or slidably connected to the housing 10.

Compared with the prior art, the penis massager provided by the present application has the beneficial effects that: the penis massager is provided with at least two handles 40, each handle 40 has a size not limited by that of the sleeve 20 and thus can be designed ergonomically, so that the user holds the handles 40 instead of the housing 10 during in use, even if the sleeve 20 is driven to generate strong motion, including but not limited to vibration, rotation, reciprocating movement and the like, the penis massager will be held in the hands tightly and not slip out of the hands, which not only facilitates the use of the present penis massager, but also makes the design of the radial size of the sleeve 20 more flexible.

The above is only a better embodiment of the present application and is not intended to limit the present application. Any modification, equivalent replacement and improvement made within the spirit and principle of the present application shall be included in a scope of protection of the present application.

What is claimed is:

1. A penis massager, comprising:
a housing defining a space therein;
a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
a driving device for driving the sleeve to generate motion relative to the housing; and

at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and

at least one button being provided on the first end of at least one of the at least two handles.

**2**. The penis massager according to claim **1**, wherein the second end of each of the at least two handles is substantially dome-shaped.

**3**. The penis massager according to claim **1**, wherein the at least two handles are detachably connected to the housing.

**4**. The penis massager according to claim **1**, wherein the at least two handles are slidably connected to the housing.

**5**. The penis massager according to claim **1**, wherein the at least two handles are rotatably connected to the housing.

**6**. The penis massager according to claim **5**, wherein each of the at least two handles comprises a fixing seat fixedly connected to the housing and a rotating arm, one of the fixing seat and the rotating arm defining a shaft hole therein, and the other one of the fixing seat and the rotating arm comprising a shaft being rotatably inserted into the shaft hole.

**7**. The penis massager according to claim **6**, wherein the fixing seat forms a plurality of first teeth at an axial end face thereof, the rotating arm forms a plurality of second teeth at a surface thereof facing towards the plurality of first teeth, and the plurality of first teeth and the plurality of second teeth mesh with each other.

**8**. The penis massager according to claim **1**, wherein the driving device comprises a vibration motor embedded in the sleeve.

**9**. The penis massager according to claim **8**, wherein the driving device further comprises a driving motor for driving the sleeve to rotate relative to the housing.

**10**. The penis massager according to claim **8**, wherein the driving device further comprises a driving motor for driving the sleeve to do reciprocating axial movement relative to the housing.

**11**. The penis massager according to claim **10**, wherein a movable cabin is movably mounted in the space of the housing, the sleeve is detachably mounted into the movable

cabin, and guiding bars are provided in the housing for guiding axial movement of the movable cabin and the sleeve.

**12**. The penis massager according to claim **11**, wherein a fixing frame is arranged around the sleeve, a plurality of first conductive members is provided on the fixing frame and connected to the vibration motor electrically, and a plurality of second conductive members is provided on the movable cabin and contacts with the first conductive members.

**13**. The penis massager according to claim **1**, wherein a plurality of bulges is provided on an interior surface of the sleeve surrounding the interior volume.

**14**. A penis massager, comprising:

a housing defining a space therein;

a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;

a driving device for driving the sleeve to generate motion relative to the housing; and

at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;

wherein the at least two handles are slidably connected to the housing.

**15**. A penis massager, comprising:

a housing defining a space therein;

a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;

a driving device for driving the sleeve to generate motion relative to the housing;

at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;

wherein the at least two handles are rotatably connected to the housing.

**16**. The penis massager according to claim **15**, wherein each of the at least two handles comprises a fixing seat fixedly connected to the housing and a rotating arm, one of the fixing seat and the rotating arm defining a shaft hole therein, and the other one of the fixing seat and the rotating arm comprising a shaft being rotatably inserted into the shaft hole.

**17**. The penis massager according to claim **16**, wherein the fixing seat forms a plurality of first teeth at an axial end face thereof, the rotating arm forms a plurality of second teeth at a surface thereof facing towards the plurality of first teeth, and the plurality of first teeth and the plurality of second teeth mesh with each other.

\* \* \* \* \*

Case 2:25-cv-04327-ES-JSA   Document 1   Filed 05/15/25   Page 49 of 611 PageID: 49

Exhibit 2

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/202,966 | 05/29/2023 | Tenghui Huang | 22A1385US-CIP | 9753 |

176174          7590          03/12/2024

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

| EXAMINER |
|---|
| COX, THADDEUS B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3791 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/12/2024 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

kckclaw@yahoo.com
kevchen888@yahoo.com

PTOL-90A (Rev. 04/07)

| APPLICATION NO. | ISSUE DATE | PATENT NO. |
|---|---|---|
| 18/202,966 | 12-Mar-2024 | 11925592 |

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

# EGRANT NOTIFICATION

Your electronic patent grant (eGrant) is now available, which can be accessed via Patent Center at https://patentcenter.uspto.gov

The electronic patent grant is the official patent grant under 35 U.S.C. 153. For more information, please visit https://www.uspto.gov/electronicgrants

UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | | UNITED STATES DEPARTMENT OF COMMERCE |
|---|---|---|---|---|
| | | | | **United States Patent and Trademark Office** |
| | | | | Address: COMMISSIONER FOR PATENTS |
| | | | | P.O. Box 1450 |
| | | | | Alexandria, Virginia 22313-1450 |
| | | | | www.uspto.gov |

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/202,966 | 03/12/2024 | 11925592 | 22A1385US-CIP | 9753 |

176174          7590          02/21/2024

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above. The patent will issue electronically. The electronically issued patent is the official patent grant pursuant to 35 U.S.C. § 153. The patent may be accessed on or after the issue date through Patent Center at https://patentcenter.uspto.gov/. The patent will be available in both the public and the private sides of Patent Center. Further assistance in electronically accessing the patent, or about Patent Center, is available by calling the Patent Electronic Business Center at 1-888-217-9197.

The USPTO is implementing electronic patent issuance with a transition period, during which period the USPTO will mail a ceremonial paper copy of the electronic patent grant to the correspondence address of record. Additional copies of the patent (i.e., certified and presentation copies) may be ordered for a fee from the USPTO's Certified Copy Center at https://certifiedcopycenter.uspto.gov/index.html. The Certified Copy Center may be reached at (800)972-6382.

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Center (https://patentcenter.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Patents Stakeholder Experience (OPSE), Stakeholder Support Division (SSD) at (571)-272-4200.

IR103 (Rev. 10/09)

INVENTOR(s)  (Please see PATENT CENTER site https://patentcenter.uspto.gov for additional inventors):

Tenghui Huang, Dongguan, CHINA;
Junpeng Wu, Shenzhen, CHINA;
Zhixu Yang, Dongguan, CHINA;

APPLICANT(s)  (Please see PATENT CENTER site https://patentcenter.uspto.gov for additional applicants):

Junpeng Wu, Shenzhen, CHINA;


The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

**UNITED STATES
PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION #<br>**18/202,966** | RECEIPT DATE / TIME<br>**01/29/2024 09:06:08 PM Z ET** | ATTORNEY DOCKET #<br>**22A1385US-CIP** |
| --- | --- | --- |

## Title of Invention

PENIS MASSAGER

## Application Information

| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| --- | --- | --- | --- |
| CONFIRMATION # | 9753 | FILED BY | Kevin Chen |
| PATENT CENTER # | 64130799 | FILING DATE | 05/29/2023 |
| CUSTOMER # | 176174 | FIRST NAMED INVENTOR | Tenghui Huang |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | - |

## Documents

## TOTAL DOCUMENTS: 1

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
| --- | --- | --- | --- |
| web85b.pdf | 3 | Issue Fee Payment (PTO-85B) | 58 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
| --- | --- |
| web85b.pdf | 6CBA6859186542263F8AB70D864C0F6FB37517ACFEE0EC20B00DD12FF86B2C1DC9182EABDDA7741CF6A0CF31CA3FCFD2A70A334F38D8721C8D78EC0E7FD682CE |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

**USPTO**

UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **18/202,966** | **01/29/2024 09:06:08 PM Z ET** | **22A1385US-CIP** |

## Title of Invention

PENIS MASSAGER

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 9753 | FILED BY | Kevin Chen |
| PATENT CENTER # | 64130799 | AUTHORIZED BY | - |
| CUSTOMER # | 176174 | FILING DATE | 05/29/2023 |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Tenghui Huang |

## Payment Information

| PAYMENT METHOD | PAYMENT TRANSACTION ID | PAYMENT AUTHORIZED BY |
|---|---|---|
| **CARD / 5068** | **E20241SL06317707** | **Kevin Chen** |

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 2501 | UTILITY ISSUE FEE | 480.00 | 1 | 480.00 |
| | | | **TOTAL AMOUNT:** | **$480.00** |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Doc Code: IFEE
Description: Issue Fee Payment (PTO-85B)

PTO/85B



**UNITED STATES**
**PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ISSUE FEE TRANSMITTAL FORM

| APPLICATION # | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET # |
|---|---|---|---|
| **18202966** | **05/29/2023** | **Tenghui Huang** | **22A1385US-CIP** |

## Title of Invention

PENIS MASSAGER

## Application Information

| | | | |
|---|---|---|---|
| **APPLICATION TYPE** | Nonprovisional Application under 35 USC 111(a) | **DATE DUE** | 04/26/2024 |
| **CONFIRMATION #** | 9753 | **ISSUE FEE DUE** | $ 480 |
| **EXAMINER** | THADDEUS COX | **PUBLICATION DUE** | $ 0 |
| **GROUP ART UNIT** | 3791 | **TOTAL FEES DUE** | $480 |
| **CLASS - SUBCLASS** | 600/038000 | **PREV. PAID FEE** | $ 0 |
| **ENTITY STATUS** | Small | | |

## 1. CHANGE OF CORRESPONDENCE ADDRESS AND/OR INDICATION OF FEE ADDRESS (37 CFR 1.33 & 1.363)

### Correspondence Address

**CURRENT ADDRESS**

### Maintenance Fee Address

**CURRENT ADDRESS**

☐ Change of correspondence address requested,system generated AIA/122-PC form attached

☐ Fee address indication requested, system generatedSB/47-PC form attached

## 2. ENTITY STATUS

**Change in Entity Status**

**NEW STATUS**

## 3. THE FOLLOWING FEES ARE SUBMITTED

☑ Issue Fee

☑ Publication Fee

## 4. FEE AUTHORIZATION

☐ I authorize USPTO to apply my previously paid issue fee to the current fees due

☐ The Director is herby authorized to apply my previously paid issue fee to the current fee due and to charge deficient fees to Deposit Account Number:

☐ If in addition to the payment of the issue fee amount submitted with this form, there are any discrepencies in any amount(s) due, the Director is authorized to charge any deficiency, or credit any overpayment, to Deposit Account Number:

## 5. FIRM AND/OR ATTORNEY NAMES TO BE PRINTED

**NOTE: If no name is listed, no name will be printed**
For printing on the patent front page, list to be displayed as entered

## 6. ASSIGNEE NAME(S) AND RESIDENCE DATA TO BE PRINTED

NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a susbstitute for filing an assignment.

**Junpeng  Wu**                          Shenzhen, CHINA                          Individual

**Signature**

I certify, in accordance with 37 CFR 1.4(d)(4) that I am an attorney or agent registered to practice before the Patent and Trademark Office who has filed and has been granted power of attorney in this application. I also certify that this Fee(s) Transmittal form is being transmitted to the USPTO via Patent Center on the date indicated below.

| Signature | Name | Registration # | Date |
|---|---|---|---|
| /Kevin P. Chen/ | Kevin Chen | 76206 | 01/29/2024 |

 United States Patent and Trademark Office

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

176174    7590    01/26/2024
Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

| EXAMINER |
| --- |
| COX, THADDEUS B |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 3791 | |

DATE MAILED: 01/26/2024

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 18/202,966 | 05/29/2023 | Tenghui Huang | 22A1385US-CIP | 9753 |

TITLE OF INVENTION: PENIS MASSAGER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | SMALL | $480 | $0.00 | $0.00 | $480 | 04/26/2024 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

## HOW TO REPLY TO THIS NOTICE:

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 40% the amount of undiscounted fees, and micro entity fees are 20% the amount of undiscounted fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

PTOL-85 (Rev. 11/23)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, or via the USPTO patent electronic filing system.

| By mail, send to: | Mail Stop ISSUE FEE | By fax, send to: | (571)-273-2885 |
|---|---|---|---|
| | Commissioner for Patents | | |
| | P.O. Box 1450 | | |
| | Alexandria, Virginia 22313-1450 | | |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

176174      7590      01/26/2024

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via the USPTO patent electronic filing system or by facsimile to (571) 273-2885, on the date below.

| | |
|---|---|
| | (Typed or printed name) |
| | (Signature) |
| | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/202,966 | 05/29/2023 | Tenghui Huang | 22A1385US-CIP | 9753 |

TITLE OF INVENTION: PENIS MASSAGER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0.00 | $0.00 | $480 | 04/26/2024 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| COX, THADDEUS B | 3791 | 600-038000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☐ Issue Fee    ☐ Publication Fee (if required)

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☐ Electronic Payment via the USPTO patent electronic filing system    ☐ Enclosed check    ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

| Authorized Signature _____ | Date _____ |
|---|---|
| Typed or printed name _____ | Registration No. _____ |

PTOL-85 Part B (11/23) Approved for use through 03/31/2026    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/202,966 | 05/29/2023 | Tenghui Huang | 22A1385US-CIP | 9753 |

| | | |
|---|---|---|
| 176174        7590 | 01/26/2024 | EXAMINER |
| Kevin P. Chen | | COX, THADDEUS B |
| 255 Riverdale Dr | | |
| Fort Lee, NJ 07024 | | ART UNIT        PAPER NUMBER |
| | | 3791 |

DATE MAILED: 01/26/2024

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 11/23)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. The United States Patent and Trademark Office (USPTO) collects the information in this record under authority of 35 U.S.C. 2. The USPTO's system of records is used to manage all applicant and owner information including name, citizenship, residence, post office address, and other information with respect to inventors and their legal representatives pertaining to the applicant's/owner's activities in connection with the invention for which a patent is sought or has been granted. The applicable Privacy Act System of Records Notice for the information collected in this form is COMMERCE/PAT-TM-7 Patent Application Files, available in the Federal Register at 78 FR 19243 (March 29, 2013).

https://www.govinfo.gov/content/pkg/FR-2013-03-29/pdf/2013-07341.pdf

Routine uses of the information in this record may include disclosure to:

1) law enforcement, in the event that the system of records indicates a violation or potential violation of law;

2) a federal, state, local, or international agency, in response to its request;

3) a contractor of the USPTO having need for the information in order to perform a contract;

4) the Department of Justice for determination of whether the Freedom of Information Act (FOIA) requires disclosure of the record;

5) a Member of Congress submitting a request involving an individual to whom the record pertains, when the individual has requested the Member's assistance with respect to the subject matter of the record;

6) a court, magistrate, or administrative tribunal, in the course of presenting evidence, including disclosures to opposing counsel in the course of settlement negotiations;

7) the Administrator, General Services Administration (GSA), or their designee, during an inspection of records conducted by GSA under authority of 44 U.S.C. 2904 and 2906, in accordance with the GSA regulations and any other relevant (i.e., GSA or Commerce) directive, where such disclosure shall not be used to make determinations about individuals;

8) another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c));

9) the Office of Personnel Management (OPM) for personnel research purposes; and

10) the Office of Management and Budget (OMB) for legislative coordination and clearance.

If you do not furnish the information requested on this form, the USPTO may not be able to process and/or examine your submission, which may result in termination of proceedings, abandonment of the application, and/or expiration of the patent.

| *Notice of Allowability* | Application No.<br>18/202,966 | Applicant(s)<br>Huang et al. | |
|---|---|---|---|
| | Examiner<br>THADDEUS B COX | Art Unit<br>3791 | AIA (FITF) Status<br>Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**
All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to the Response After Final Action filed 26 December 2023.

  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are See Continuation Sheet. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov**.

4. ☑ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

  **Certified copies:**

  a) ☑ All    b) ☐ Some*    c) ☐ None of the:

  1. ☐ Certified copies of the priority documents have been received.
  2. ☑ Certified copies of the priority documents have been received in Application No. 18/119,859 .
  3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

  * Certified copies not received: _____ .

  Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
  **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

  ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

  **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☑ Other PTO-2323 form.

/THADDEUS B COX/
Primary Examiner, Art Unit 3791

Continuation of 3. The allowed claim(s) is/are: 1,4-9,11-16 and 24-27

Application/Control Number: 18/202,966                                    Page 2
Art Unit: 3791

# DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

2.      This Office Action is responsive to the Response After Final Action filed 26 December 2023.  Claims 1, 4-9, 11-16, and 24-27 are currently under consideration. The Office acknowledges the amendments to claims 1 and 4, as well as the cancellation of claims 17-23, and the addition of new claims 24-27.

### *Allowable Subject Matter*

3.      Claims 1, 4-9, 11-16, and 24-27 are allowed.

4.      The following is an examiner's statement of reasons for allowance: regarding claim 1 and its dependents, none of the prior art of record teaches or reasonably suggests the recited configuration of the handles, in combination with such a penis massager.  Regarding claims 24 and 25 and their dependents, none of the prior art of record teaches or reasonably suggests handles connected in the recited manners, in combination with such a penis massager.

        Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Application/Control Number: 18/202,966                                          Page 3
Art Unit: 3791

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to THADDEUS B COX whose telephone number is (571)270-5132. The examiner can normally be reached M-F 9am-6pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Jason M. Sims can be reached on (571)272-7540. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is available to registered users. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and https://www.uspto.gov/patents/docx for information about filing in DOCX format. For additional questions, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/THADDEUS B COX/
Primary Examiner, Art Unit 3791

| *Search Notes* | Application/Control No.<br><br>18/202,966 | Applicant(s)/Patent Under Reexamination<br><br>Huang et al. |
|---|---|---|
| | Examiner<br><br>THADDEUS B COX | Art Unit<br><br>3791 |

| CPC - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| A61H19/32 | 10/04/2023 | TC |
| A61H19$, A61H21$ | 10/04/2023 | TC |
| Updated | 11/22/2023 | TC |
| Updated | 01/18/2024 | TC |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Inventor search in DAV | 10/04/2023 | TC |
| Similarity Search and MLTD search in PE2E | 10/04/2023 | TC |
| Global Dossier search | 10/04/2023 | TC |
| Review of related applications | 10/04/2023 | TC |
| Attached PE2E search with text-limited class searching and text searching | 10/04/2023 | TC |

| /THADDEUS B COX/<br>Primary Examiner, Art Unit 3791 | |
|---|---|
| | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/202,966 | Huang et al. |
| | Examiner | Art Unit |
| | THADDEUS B COX | 3791 |

| Interference Search | | | |
|---|---|---|---|
| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
| A61H19$ | | 01/18/2024 | TC |
| A61H21$ | | 01/18/2024 | TC |

| /THADDEUS B COX/<br>Primary Examiner, Art Unit 3791 | |
|---|---|
| | |

| **Issue Classification** | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 18/202,966 | Huang et al. |
| | **Examiner** | **Art Unit** |
| | THADDEUS B COX | 3791 |

| **CPC** | | | | | | **Type** | **Version** |
|---|---|---|---|---|---|---|---|
| A61H | | 19 | | 32 | | F | 2013-01-01 |
| A61H | | 2201 | | 0153 | | A | 2013-01-01 |
| A61H | | 2201 | | 5025 | | A | 2013-01-01 |
| A61H | | 2201 | | 1215 | | A | 2013-01-01 |
| A61H | | 2201 | | 1692 | | A | 2013-01-01 |
| A61H | | 23 | | 02 | | A | 2013-01-01 |

| **CPC Combination Sets** | | | | **Type** | **Set** | **Ranking** | **Version** |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 17 | |
| /THADDEUS B COX/ Primary Examiner, Art Unit 3791 | 18 January 2024 | **O.G. Print Claim(s)** | **O.G. Print Figure** |
| (Primary Examiner) | (Date) | 1 | 2 |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/202,966 | Huang et al. |
| | Examiner | Art Unit |
| | THADDEUS B COX | 3791 |

**INTERNATIONAL CLASSIFICATION**

**CLAIMED**

| A61H19/00 | | 19 | | / | 00 |
|---|---|---|---|---|---|

**NON-CLAIMED**

| | | | | | |
|---|---|---|---|---|---|

**US ORIGINAL CLASSIFICATION**

| CLASS | SUBCLASS |
|---|---|
| | |

**CROSS REFERENCES(S)**

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 17 | |
| /THADDEUS B COX/ Primary Examiner, Art Unit 3791 | 18 January 2024 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 2 |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/202,966 | Huang et al. |
| | **Examiner** | **Art Unit** |
| | THADDEUS B COX | 3791 |

☐ Claims renumbered in the same order as presented by applicant　☐ CPA　☐ T.D.　☐ R.1.47

**CLAIMS**

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | - | 10 | - | 19 | | | | | | | | | | |
| - | 2 | 8 | 11 | - | 20 | | | | | | | | | | |
| - | 3 | 9 | 12 | - | 21 | | | | | | | | | | |
| 2 | 4 | 10 | 13 | - | 22 | | | | | | | | | | |
| 3 | 5 | 11 | 14 | - | 23 | | | | | | | | | | |
| 4 | 6 | 12 | 15 | 14 | 24 | | | | | | | | | | |
| 5 | 7 | 13 | 16 | 15 | 25 | | | | | | | | | | |
| 6 | 8 | - | 17 | 16 | 26 | | | | | | | | | | |
| 7 | 9 | - | 18 | 17 | 27 | | | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 17 | |
| /THADDEUS B COX/ Primary Examiner, Art Unit 3791 | 18 January 2024 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 2 |

U.S. Patent and Trademark Office                                                Part of Paper No.: 20240118

| **AFCP 2.0 Decision** | **Application No.** 18/202,966 | **Applicant(s)** Huang et al. | |
|---|---|---|---|
| | **Examiner** THADDEUS B COX | **Art Unit** 3791 | **AIA (FITF) Status** Yes |

This is in response to the After Final Consideration Pilot request filed <u>26 December 2023</u>.

1. **Improper Request** – The AFCP 2.0 request is improper for the following reason(s) and the after final amendment submitted with the request will be treated under pre-pilot procedure.

    ☐ An AFCP 2.0 request form PTO/SB/434 (or equivalent document) was not submitted.

    ☐ A non-broadening amendment to at least one independent claim was not submitted.

    ☐ The request is not the first proper AFCP 2.0 request submitted in response to the most recent final rejection.

    ☐ Other: _____

2. **Proper Request**

    **A.** After final amendment submitted with the request will not be treated under AFCP 2.0.
    The after final amendment cannot be reviewed and a search conducted within the guidelines of the pilot program.

    ☐ The after final amendment will be treated under pre-pilot procedure.

    **B.** Updated search and/or completed additional consideration.
    The examiner performed an updated search and/or completed additional consideration of the after final amendment within the time authorized for the pilot program. The result(s) of the updated search and/or completed additional consideration are:

    ☑ 1. All of the rejections in the most recent final Office action are overcome and a Notice of Allowance is issued herewith.

    ☐ 2. The after final amendment would not overcome all of the rejections in the most recent final Office action . See attached interview summary for further details.

    ☐ 3. The after final amendment was reviewed, and it raises a new issue(s). See attached interview summary for further details.

    ☐ 4. The after final amendment raises new issues, but would overcome all of the rejections in the most recent final Office action. A decision on determining allowability could not be made within the guidelines of the pilot. See attached interview summary for further details, including any newly discovered prior art.

    ☐ 5. Other: _____

    Examiner Note: Please attach an interview summary when necessary as described above.

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Application No. | : | 18/202,966 |
| Application Filing Date | : | May 29, 2023 |
| First Named Inventor | : | Tenghui Huang |
| Attorney Docket No. | : | 22A1385US-CIP |
| Confirmation No. | : | 9753 |
| Examiner | : | COX, THADDEUS B |
| Art Unit | : | 3791 |

Mail Stop

Commissioner for Patents

P.O. Box 1450

Alexandria, Virginia 22313-1450

### <u>RESPONSE TO FINAL OFFICE ACTION</u>

Dear Sir / Madam,

Responsive to the Final Office Action dated Nov. 29, 2023, with request for consideration under the After Final Consideration Pilot Program 2.0 being submitted concurrently herewith, applicants submit the following amendments and remarks. In light of these amendments and remarks, Applicants respectfully assert that all of the claims of patent application are patentable. Favorable reconsideration of the application and withdrawal of the rejections are respectfully requested.

**Amendments to the Claims** begin on page 2 of this paper**.**

**Remarks** begins on page 5 of this paper.

**Conclusion** begins on page 8 of this paper.

OK TO ENTER: /T.B.C/

# Bibliographic Data

Application No:    18/202,966

Foreign Priority claimed:    ⦿ Yes    ◯ No

35 USC 119 (a-d) conditions met:    ☑ Yes    ☐ No    ☐ Met After Allowance

Verified and Acknowledged:    /THADDEUS B COX/

Examiner's Signature    Initials

Title:    PENIS MASSAGER

| FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 05/29/2023 **RULE** | 600 | 3791 | 22A1385US-CIP |

**APPLICANTS**

Junpeng Wu, Shenzhen, CHINA

**INVENTORS**

Tenghui Huang, Dongguan, CHINA

Junpeng Wu, Shenzhen, CHINA

Zhixu Yang, Dongguan, CHINA

**CONTINUING DATA**

This application is a CIP of 18119859 03/10/2023 PAT 11730665

**FOREIGN APPLICATIONS**

**IF REQUIRED, FOREIGN LICENSE GRANTED\*\***

06/15/2023

**\*\* SMALL ENTITY \*\***

**STATE OR COUNTRY**

CHINA

**ADDRESS**

Kevin P. Chen

255 Riverdale Dr

Fort Lee, NJ 07024

UNITED STATES

**FILING FEE RECEIVED**

$2,400

## PE2E SEARCH - Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|-------|------|--------------|-----|------------------|---------|---------------------|------------|
| L1 | 44 | (Artificial Intelligence) Similar to: 18/202,966 with 0 CPC Selections and 0 Text Selections Text: (EP-3630041-B1 OR US-20210128395-A1 OR JP-2020521587-A OR RU-2019143122-A OR RU-2750656-C1 OR AU-2018278239-A1 OR ES-2895443-T3 OR CN-111148495-A OR WO-2018220120-A1 OR US-20230210718-A1 OR RU-2015142507-A OR DE-102013102280-A1 OR TW-201436784-A OR KR-20150129763-A OR ES-2682676-T3 OR US-20230083660-A1 OR KR-102245754-B1 OR AU-2014224947-A1 OR CA-2901794-A1 OR WO-2014135301-A1 OR EP-2964179-A1 OR CN-105120822-A OR US-20160008214-A1 OR AU-2014224947-B2 OR CA-2901794-C OR DE-202021105756-U1 OR RU-2649524-C2 OR EP-2964179-B1 OR JP-2016508802-A OR US-11419783-B2 OR ES-1217362-U OR ES-1217362-U9 OR US-11752063-B1 OR CN-113226244-A OR EP-3815667-A1 OR WO-2020002738-A1 OR DE-202023102232-U1 OR US-20210186798-A1 OR DE-202023102526-U1 OR US-10028882-B1 OR US-20150065792-A1 OR WO-2014043878-A1 OR CN-104812354-A OR WO-2018000835- | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:14 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | A1 OR EP-3474808-A1 OR US-20170367924-A1 OR DE-7520052-U OR EP-3697366-A1 OR US-20090099413-A1 OR US-8308631-B2).did. | | | | | |
| L2 | 1 | "11730665".pn. | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:15 PM |
| L3 | 49 | (Artificial Intelligence) More like doc: US-11730665-B1 Text: (DE-202023101938-U1 OR US-11737949-B1 OR US-20150196454-A1 OR US-20210113424-A1 OR CN-211934816-U OR WO-2020007120-A1 OR CN-215689724-U OR CN-113813149-A OR WO-2022078401-A1 OR DE-202017005314-U1 OR WO-2013048897-A1 OR CN-215840360-U OR CN-215781002-U OR KR-20140066403-A OR DE-102017008975-A1 OR EP-0436719-B1 OR EP-0436719-A1 OR KR-20020082809-A OR CN-219271494-U OR US-20230069573-A1).did. | (US-PGPUB;  USPAT; USOCR;  FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS;  EPO; JPO;  DERWENT; IBM_TDB) | OR | ON | ON | 2023/10/03 04:15 PM |
| L4 | 1 | "20150196454".pn. | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, | OR | ON | ON | 2023/10/03 04:19 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
| L5 | 39 | (Artificial Intelligence) More like doc: US-20150196454-A1 Text: (US-8647255-B2 OR US-20130281776-A1 OR US-20100041944-A1 OR US-20200060928-A1 OR WO-2015060717-A1 OR EP-3518859-A1 OR AU-2017337299-A1 OR WO-2018058234-A1 OR CA-3038570-A1 OR US-11547626-B2 OR CN-110198697-A OR EP-3513771-A1 OR EP-3356911-B1 OR WO-2014127528-A1 OR CN-102149361-B OR JP-5630717-B2 OR EP-3356911-A1 OR WO-2017055830-A1 OR US-10747319-B2 OR US-20180284890-A1).did. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/10/03 04:24 PM |
| L6 | 178 | 1 OR 3 OR 5 | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/10/03 04:24 PM |
| L7 | 81 | 6 AND @ad<"20230529" | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, | OR | ON | ON | 2023/10/03 04:25 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
| L8 | 2 | ("20230126338," "20050228219").pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:27 PM |
| L9 | 2 | "20180092798".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:30 PM |
| L10 | 1 | "20170231801".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:31 PM |
| L11 | 2 | "20230083660".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, | OR | ON | ON | 2023/10/03 04:34 PM |

| | | | PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
|---|---|---|---|---|---|---|---|
| L12 | 1663 | A61H19/32.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:50 PM |
| L13 | 129 | 12 AND (handle WITH (second OR two OR pair OR set)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:53 PM |
| L14 | 2 | "5,873,813".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:57 PM |
| L15 | 1 | "20050187431".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, | OR | ON | ON | 2023/10/03 05:06 PM |

| | | | PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
|---|---|---|---|---|---|---|---|
| L16 | 133 | 12 AND handles | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | OFF | ON | 2023/10/03 05:07 PM |
| L17 | 90 | 16 NOT 13 | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | OFF | ON | 2023/10/03 05:07 PM |
| L18 | 7261 | A61H19$.cpc. OR A61H21$.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 05:13 PM |
| L19 | 405 | 18 AND handles | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, | OR | OFF | ON | 2023/10/03 05:13 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
| L20 | 272 | 19 NOT (16 OR 13) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | OFF | ON | 2023/10/03 05:13 PM |
| L21 | 95 | 20 AND (handle WITH button) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 05:13 PM |
| L22 | 734 | 18 AND (handle WITH (detach$ OR de$coupl$ OR slid$ OR rotat$ OR remov$ OR releasab$ OR unfasten$ OR dis$connect$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 03:12 PM |
| L23 | 314 | 18 AND (handle WITH rotat$) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, | OR | ON | ON | 2023/10/04 03:24 PM |

| | | | PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
|---|---|---|---|---|---|---|---|
| L24 | 71 | 18 AND (handle WITH rotatab$) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 03:25 PM |
| L25 | 21 | 18 AND (handle WITH slidab$) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 03:30 PM |
| L26 | 110 | 12 AND (handle WITH (detach$ OR de$coupl$ OR slid$ OR rotat$ OR remov$ OR releasab$ OR unfasten$ OR dis$connect$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 03:44 PM |
| L27 | 2 | "20210113424".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, | OR | ON | ON | 2023/10/04 04:04 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
| L28 | 33 | 12 AND (motor$ WITH embed$) | (US-PGPUB;  USPAT;  USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 04:23 PM |
| L29 | 9 | 12 AND (motor$ WITH (encas$ OR encapsulat$)) | (US-PGPUB;  USPAT;  USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 04:26 PM |
| L30 | 2 | "20210128400".pn. | (US-PGPUB;  USPAT;  USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 04:42 PM |
| L31 | 3 | ("20230083660," "202017005314").pn. | (US-PGPUB;  USPAT;  USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, | OR | ON | ON | 2023/11/22 08:54 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
| L32 | 41 | 12 AND (motor$ WITH (encas$ OR encapsulat$ OR embed$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/11/22 08:59 AM |
| L33 | 91 | 12 AND (motor$ SAME (encas$ OR encapsulat$ OR embed$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/11/22 08:59 AM |
| L34 | 476 | 18 AND (handle WITH (rotat$ OR slid$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/11/22 09:00 AM |
| L35 | 151 | 18 AND (handle SAME (rotat$ OR slid$) SAME button) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, | OR | ON | ON | 2024/01/18 02:25 PM |

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| | | | PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
| L36 | 152 | 18 AND ((handle WITH (detach$ OR de$coupl$ OR slid$ OR rotat$ OR remov$ OR releasab$ OR unfasten$ OR dis$connect$)) SAME button) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2024/01/18 02:26 PM |

## PE2E SEARCH - Search History (Interference)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| N1 | 2458 | A61H19$.cpc. OR A61H21$.cpc. | (US-PGPUB; USPAT) | OR | ON | ON | 2024/01/18 02:25 PM |
| N2 | 143 | 1 AND (handle WITH (rotat$ OR slid$)) | (US-PGPUB; USPAT) | OR | ON | ON | 2024/01/18 02:25 PM |
| N3 | 271 | 1 AND (handle WITH (second OR two OR pair OR set)) | (US-PGPUB; USPAT) | OR | ON | ON | 2024/01/18 02:26 PM |
| N4 | 250 | 1 AND (handle WITH (detach$ OR de$coupl$ OR slid$ OR rotat$ OR remov$ OR releasab$ OR unfasten$ OR dis$connect$)) | (US-PGPUB; USPAT) | OR | ON | ON | 2024/01/18 02:26 PM |
| N5 | 193 | 1 AND handles | (US-PGPUB; USPAT) | OR | OFF | ON | 2024/01/18 02:26 PM |

Doc Code: A.NE.AFCP
Document Description: After Final Consideration Pilot Program Request

PTO/SB/434 (05-13)

| CERTIFICATION AND REQUEST FOR CONSIDERATION UNDER THE AFTER FINAL CONSIDERATION PILOT PROGRAM 2.0 | | |
|---|---|---|
| Practitioner Docket No.:<br>22A1385US-CIP | Application No.:<br>18/202,966 | Filing Date:<br>05/29/2023 |
| First Named Inventor:<br>Tenghui Huang | Title:<br>PENIS MASSAGER | |

APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS CONSIDERATION UNDER THE AFTER FINAL CONSIDERATION PILOT PROGRAM 2.0 (AFCP 2.0) OF THE ACCOMPANYING RESPONSE UNDER 37 CFR 1.116.

1. The above-identified application is (i) an original utility, plant, or design nonprovisional application filed under 35 U.S.C. 111(a) [a continuing application (*e.g.*, a continuation or divisional application) is filed under 35 U.S.C. 111(a) and is eligible under (i)], or (ii) an international application that has entered the national stage in compliance with 35 U.S.C. 371(c).

2. The above-identified application contains an outstanding final rejection.

3. Submitted herewith is a response under 37 CFR 1.116 to the outstanding final rejection. The response includes an amendment to at least one independent claim, and the amendment does not broaden the scope of the independent claim in any aspect.

4. This certification and request for consideration under AFCP 2.0 is the only AFCP 2.0 certification and request filed in response to the outstanding final rejection.

5. Applicant is willing and available to participate in any interview requested by the examiner concerning the present response.

6. This certification and request is being filed electronically using the Office's electronic filing system (EFS-Web).

7. Any fees that would be necessary consistent with current practice concerning responses after final rejection under 37 CFR 1.116, *e.g.*, extension of time fees, are being concurrently filed herewith. [There is no additional fee required to request consideration under AFCP 2.0.]

8. By filing this certification and request, applicant acknowledges the following:
   - Reissue applications and reexamination proceedings are not eligible to participate in AFCP 2.0.
   - The examiner will verify that the AFCP 2.0 submission is compliant, *i.e.*, that the requirements of the program have been met (see items 1 to 7 above). For compliant submissions:
     - The examiner will review the response under 37 CFR 1.116 to determine if additional search and/or consideration (i) is necessitated by the amendment and (ii) could be completed within the time allotted under AFCP 2.0. If additional search and/or consideration is required but cannot be completed within the allotted time, the examiner will process the submission consistent with current practice concerning responses after final rejection under 37 CFR 1.116, *e.g.*, by mailing an advisory action.
     - If the examiner determines that the amendment does not necessitate additional search and/or consideration, or if the examiner determines that additional search and/or consideration is required and could be completed within the allotted time, then the examiner will consider whether the amendment places the application in condition for allowance (after completing the additional search and/or consideration, if required). If the examiner determines that the amendment does not place the application in condition for allowance, then the examiner will contact the applicant and request an interview.
       - The interview will be conducted by the examiner, and if the examiner does not have negotiation authority, a primary examiner and/or supervisory patent examiner will also participate.
       - If the applicant declines the interview, or if the interview cannot be scheduled within ten (10) calendar days from the date that the examiner first contacts the applicant, then the examiner will proceed consistent with current practice concerning responses after final rejection under 37 CFR 1.116.

| Signature<br>/Kevin P. Chen/ | Date<br>12/26/2023 |
|---|---|
| Name<br>(Print/Typed) Kevin P. Chen | Practitioner<br>Registration No. 76206 |

*Note: This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below\*.*

[✓] * Total of __1__ forms are submitted.

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.



**UNITED STATES
PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION #<br>**18/202,966** | RECEIPT DATE / TIME<br>**12/26/2023 02:52:46 AM Z ET** | ATTORNEY DOCKET #<br>**22A1385US-CIP** |
| --- | --- | --- |

## Title of Invention

PENIS MASSAGER

## Application Information

| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| --- | --- | --- | --- |
| CONFIRMATION # | 9753 | FILED BY | Kevin Chen |
| PATENT CENTER # | 63743716 | FILING DATE | 05/29/2023 |
| CUSTOMER # | 176174 | FIRST NAMED INVENTOR | Tenghui Huang |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | - |

## Documents

## TOTAL DOCUMENTS: 2

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
| --- | --- | --- | --- |
| 22A1385US-CIP_ResponsetofinalOA.pdf | 8 | Response After Final Action | 204 KB |
| 22A1385US-CIP-sb0434.pdf | 2 | After Final Consideration Program Request | 1533 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
| --- | --- |
| 22A1385US-CIP_ResponsetofinalOA.pdf | 577024A7D4FF1346E5BA324E27BF9EDF6E6DBC268FCF5DF8<br>D1C2F480143BB8FD2671440194A8EC9027BE33C6E17370E561 |

3FF149A95395F5097557946CB399A9

22A1385US-CIP-sb0434.pdf          7FB30A71503B640AA4AF8F95987B3233086671F932E9DFA5A7
                                  F2ACC9A36637F99FB3FB106C9514B34A566CABEDE44EC9E4
                                  F7A698F40C0EC335404FC0A539BC4D

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized
by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as
described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d)
and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement
Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C.
371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage
submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an
international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the
International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security,
and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Application No. | : | 18/202,966 |
| Application Filing Date | : | May 29, 2023 |
| First Named Inventor | : | Tenghui Huang |
| Attorney Docket No. | : | 22A1385US-CIP |
| Confirmation No. | : | 9753 |
| Examiner | : | COX, THADDEUS B |
| Art Unit | : | 3791 |

Mail Stop

Commissioner for Patents

P.O. Box 1450

Alexandria, Virginia 22313-1450

## <u>RESPONSE TO FINAL OFFICE ACTION</u>

Dear Sir / Madam,

Responsive to the Final Office Action dated Nov. 29, 2023, with request for consideration under the After Final Consideration Pilot Program 2.0 being submitted concurrently herewith, applicants submit the following amendments and remarks.  In light of these amendments and remarks, Applicants respectfully assert that all of the claims of patent application are patentable.  Favorable reconsideration of the application and withdrawal of the rejections are respectfully requested.

**Amendments to the Claims** begin on page 2 of this paper**.**

**Remarks** begins on page 5 of this paper.

**Conclusion** begins on page 8 of this paper.

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions and listings of claims in the application.

**Listing of Claims:**

1. (Currently amended) A penis massager, comprising:

a housing defining a space therein;

a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;

a driving device for driving the sleeve to generate motion relative to the housing; and

at least two handles extending ~~obliquely and~~ outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and

at least one button being provided on ~~the handle~~ the first end of at least one of the least two handles.

2. (Canceled)

3. (Canceled)

4. (Currently amended) The penis massager according to claim 1, wherein ~~each of the at least two handles comprises a first end and a second end, wherein the first end is connected to an end of the housing away from an open end of the sleeve, and~~ the second end of each of the at least two handles ~~extends away from the housing and~~ is substantially dome-shaped~~, and the at least one button is provided on the first end of at least one of the at least two handles~~.

5. (Original) The penis massager according to claim 1, wherein the at least two handles are detachably connected to the housing.

6. (Original) The penis massager according to claim 1, wherein the at least two handles are slidably connected to the housing.

7. (Original) The penis massager according to claim 1, wherein the at least two handles are rotatably connected to the housing.

8. (Original) The penis massager according to claim 7, wherein each of the at least two handles comprises a fixing seat fixedly connected to the housing and a rotating arm, one of the fixing seat and the rotating arm defining a shaft hole therein, and the other one of the fixing seat and the rotating arm comprising a shaft being rotatably inserted into the shaft hole.

9. (Previously presented) The penis massager according to claim 8, wherein the fixing seat forms a plurality of first teeth at an axial end face thereof, the rotating arm forms a plurality of second teeth at a surface thereof facing towards the plurality of first teeth, and the plurality of first teeth and the plurality of second teeth mesh with each other.

10. (Canceled)

11. (Original) The penis massager according to claim 1, wherein the driving device comprises a vibration motor embedded in the sleeve.

12. (Original) The penis massager according to claim 11, wherein the driving device further comprises a driving motor for driving the sleeve to rotate relative to the housing.

13. (Original) The penis massager according to claim 11, wherein the driving device further comprises a driving motor for driving the sleeve to do reciprocating axial movement relative to the housing.

14. (Original) The penis massager according to claim 13, wherein a movable cabin is movably mounted in the space of the housing, the sleeve is detachably mounted into the movable cabin, and guiding bars are provided in the housing for guiding axial movement of the movable cabin and the sleeve.

15. (Original) The penis massager according to claim 14, wherein a fixing frame is arranged around the sleeve, a plurality of first conductive members is provided on the fixing frame and connected to the vibration motor electrically, and a plurality of second conductive members is provided on the movable cabin and contacts with the first conductive members.

16. (Original) The penis massager according to claim 1, wherein a plurality of bulges is provided on an interior surface of the sleeve surrounding the interior volume.

17-23. (Canceled)

24. (New) A penis massager, comprising:

a housing defining a space therein;

a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;

a driving device for driving the sleeve to generate motion relative to the housing; and

at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;

wherein the at least two handles are slidably connected to the housing.

25. (New) A penis massager, comprising:

a housing defining a space therein;

a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;

a driving device for driving the sleeve to generate motion relative to the housing; and

at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;

wherein the at least two handles are rotatably connected to the housing.

26. (New) The penis massager according to claim 25, wherein each of the at least two handles comprises a fixing seat fixedly connected to the housing and a rotating arm, one of the fixing seat and the rotating arm defining a shaft hole therein, and the other one of the fixing seat and the rotating arm comprising a shaft being rotatably inserted into the shaft hole.

27. (New) The penis massager according to claim 26, wherein the fixing seat forms a plurality of first teeth at an axial end face thereof, the rotating arm forms a plurality of second teeth at a surface thereof facing towards the plurality of first teeth, and the plurality of first teeth and the plurality of second teeth mesh with each other.

## REMARKS

Claims 1, 4-9, 11-16 and 24-27 are now present in this application. Claims 1 and 4 have been amended. New claims 24-27 have been introduced. No new matter is involved. As such, the Examiner is respectfully requested to enter the same. Reconsideration and allowance are respectfully requested.

### After Final Consideration Pilot Program

A certification and request for consideration under the After Final Consideration Pilot Program 2.0 is being submitted concurrently herewith. It is respectfully submitted that the present response includes a non-broadening amendment to the independent claim, and meets all other program requirements.

### *Claim Rejections*

Claim 1, 4-9 and 11-16 are rejected under 35 U.S.C.112(b) or 35 U.S.C.112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor (or for applications subject to pre-AIA 35 U.S.C.112, the applicant), regards as the invention.

Claims 1, 5, 16 and 21 are rejected under 35 U.S.C. 103 as being unpatentable over Raju (US 2023/0083660 A1) in view of Koerner (DE 202017005314 U1).

Claims 11-13 are rejected under 35 U.S.C. 103 as being unpatentable over Shao et al. (US 2023/0126338A1) in view of Koerner and further in view of Tindal (US 2021/0128400A1).

Claim 14 is rejected under 35 U.S.C. 103 as being unpatentable over Shao et al., Koerner and Tindal as applied to claim 13 above, and further in view of Raju.

### *Allowable Subject Matter*

Claims 22-23 would be allowable if rewritten in independent form including all of the limitations of the base claim andany intervening claims.

Claim 4, 6-9 and 15 would be allowable if rewritten to overcome the rejection(s) under 35 U.S.C.112(b) or 35 U.S.C.112 (pre-AIA), second paragraph.

In response to the **Rejections under 35 U.S.C.112(b) or 35 U.S.C.112 (pre-AIA)**, the limitation "the handle" in claim 1 has been amended as --at least one of the at least two handles--, and thus the rejections should be overcome.

In response to the **Rejections under 35 U.S.C. 102 & 103**, claim 1 has been amended to recite a penis massager, comprising:

"…**at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager**, wherein each of the at least two handles comprises a first end and a second end, **the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve**, and the second end of each of the at least two handles extends away from the housing; and **at least one button being provided on the first end of at least one of the at least two handles**".

In contrast, firstly, as indicated in the Office Action, Raju fais to disclose at least two handles extending outwardly from an outer face of the housing for holding of the penis massager.

Further, as understood by applicant, Koerner discloses a vibrator that includes a vibrator part 1, a handle and control panel 2 with adjustment devices 3 for adjusting functions and options of the vibrator.   As clearly shown in the Figure below, the adjustment devices 3 and mini screen 4 are provided on a middle portion of the handle and control panel 2 (i.e., control panel of the handle and control panel 2) which is on the the vibrator part 1 and can not be held, **not** on outer portions of the handle and control panel 2 (i.e., handle of the handle and control panel 2) which extend outwardly from the vibrator part 1 for holding of the vibrator. That is, Koerner does **not** disclose "at least one button being provided on the first end of at least one of the at least two handles which extend outwardly from an outer circumferential face of the housing for holding of the penis massager" as defined in amended claim 1.



Furthermore, Shao et al. and Tindal do not disclose a penis massager with handles.

For the forgoing reasons, amended claim 1 should be patentable over the cited references, and claims 4-9 and 11-16 are also allowable at least by virtue of their dependencies from claim 1 directly or indirectly.

New claim 24 is equivalent to claim 6 which is rewritten in independent form including all of the limitations of the base claim 1.

New claim 25 is equivalent to claim 7 which is rewritten in independent form including all of the limitations of the base claim 1.

New claim 26 depends on claim 25, and is equivalent to claim 8; and new claim 27 depends on claim 26, and is equivalent to claim 9.

Accordingly, new claims 24-27 should be allowable.

Page 7 of 8

## **<u>CONCLUSION</u>**

For at least the foregoing reasons, it is believed that all the pending claims of the present application are in proper condition for allowance. An action to such effect is earnestly requested.

Sincerely,

Kevin P. Chen

/Kevin P. Chen/

Reg. No. 76206

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 18/202,966 | Filing Date 05/29/2023 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE  ☑ SMALL  ☐ MICRO

### APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | x $40 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | x $ 192 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | 12/26/2023 | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | Total (37 CFR 1.16(i)) | * 17 | Minus | ** 20 | = 0 | x $40 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $ 192 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x $ 0 = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x $ 0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /SHARAIN E MORELAND/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/202,966 | 05/29/2023 | Tenghui Huang | 22A1385US-CIP | 9753 |

| | | |
|---|---|---|
| 176174 | 7590 | 11/29/2023 |

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

| EXAMINER |
|---|
| COX, THADDEUS B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3791 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 11/29/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

kckclaw@yahoo.com
kevchen888@yahoo.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 18/202,966 | Huang et al. |
| | Examiner | Art Unit | AIA (FITF) Status |
| | THADDEUS B COX | 3791 | Yes |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

   A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on <u>20 November 2023</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on ____.

2a)☑ This action is **FINAL**.    2b) ☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on ____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1,4-9 and 11-23</u> is/are pending in the application.
   5a) Of the above claim(s) <u>17-20</u> is/are withdrawn from consideration.

6) ☐ Claim(s) ____ is/are allowed.

7) ☑ Claim(s) <u>1,4-9,11-16 and 21</u> is/are rejected.

8) ☑ Claim(s) <u>22-23</u> is/are objected to.

9) ☐ Claim(s) ____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on ____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
    a)☐ All   b)☐ Some**   c)☐ None of the:
     1.☐ Certified copies of the priority documents have been received.
     2.☐ Certified copies of the priority documents have been received in Application No. ____.
     3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date ____.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date ____.

4) ☐ Other: ____.

Application/Control Number: 18/202,966                                          Page 2
Art Unit: 3791

# DETAILED ACTION

## Notice of Pre-AIA or AIA Status

1.      The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

2.      This Office Action is responsive to the Amendment filed 20 November 2023. Claims 1, 4-9, 11-16, and 21-23 are currently under consideration.  The Office acknowledges the amendments to claims 1, 4, and 9, as well as the cancellation of claims 2, 3, and 10, and the addition of new claims 21-23.

## Claim Rejections - 35 USC § 112

3.      The following is a quotation of 35 U.S.C. 112(b):

> (b)  CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

4.      Claims 1, 4-9, and 11-16 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor (or for applications subject to pre-AIA 35 U.S.C. 112, the applicant), regards as the invention.

Claim 1 recites the limitation "the handle" in line 8.  It is not clear which of the "at least two handles" is being referred to.

Claims 4-9 and 11-16 are rejected by virtue of their dependence upon claim 1.

Application/Control Number: 18/202,966                                          Page 3
Art Unit: 3791

## *Claim Rejections - 35 USC § 103*

5.      In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis (i.e., changing from AIA to pre-AIA) for the rejection will

not be considered a new ground of rejection if the prior art relied upon, and the rationale

supporting the rejection, would be the same under either status.

6.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

7.      This application currently names joint inventors. In considering patentability of the

claims the examiner presumes that the subject matter of the various claims was

commonly owned as of the effective filing date of the claimed invention(s) absent any

evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to

point out the inventor and effective filing dates of each claim that was not commonly

owned as of the effective filing date of the later invention in order for the examiner to

consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2)

prior art against the later invention.

8.      The factual inquiries for establishing a background for determining obviousness

under 35 U.S.C. 103 are summarized as follows:

        1. Determining the scope and contents of the prior art.

        2. Ascertaining the differences between the prior art and the claims at issue.

Application/Control Number: 18/202,966                                      Page 4
Art Unit: 3791

    3. Resolving the level of ordinary skill in the pertinent art.

    4. Considering objective evidence present in the application indicating

obviousness or nonobviousness.

9.    Claims 1, 5, 16, and 21 are rejected under 35 U.S.C. 103 as being unpatentable

over Raju (U.S. Pub. No. 2023/0083660 A1), in view of Koerner (DE 202017005314

U1).

    Regarding claim 1, Raju discloses a penis massager (Abstract; Fig. 1),

comprising: a housing **2** defining a space therein, a sleeve **1** provided in the space of

the housing and defining an interior volume for accommodating a penis therein, and a

driving device **17/18/19** for driving the sleeve to generate motion relative to the housing

([0022]-[0023]).  Raju fails to disclose at least two handles extending obliquely and

outwardly from an outer circumferential face of the housing for holding of the penis

massager, at least one button being provided on the handle.  Koerner discloses a

similar device (Abstract) comprising at least two handles **2** extending outwardly and

obliquely from an outer face of a circumferential housing for holding of the device, with

at least one button **3** being provided on the handle, in order to allow the device to be

held as desired and to control the device ([0032]-[0034]; [0080]; may have multiple

handles that can be curved or angled in any direction relative to the housing, thus

obliquely).  It would have been obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the invention of Raju with two

handles extending outwardly and obliquely from the housing, with at least one button

provided on a handle, as taught by Koerner, in order to allow the device to be held as

desired and to control the device.  Both Raju and Koerner teach cylindrical housings

Application/Control Number: 18/202,966                                    Page 5
Art Unit: 3791

with circumferential faces, so the handles necessarily extend from this circumferential

face.

Regarding claim 5, the combination of Raju and Koerner discloses the invention

as claimed, see rejection supra, and Koerner further discloses that the at least two

handles are detachably connected with the housing ([0080];

exchangeable/interchangeable).

Regarding claim 16, the combination of Raju and Koerner discloses the invention

as claimed, see rejection supra, and Raju further discloses a plurality of bulges **15/16** is

provided on an interior surface of the sleeve surrounding the interior volume (Fig. 4;

[0027]).

Regarding claim 21, Raju discloses a penis massager (Abstract; Fig. 1),

comprising: a housing **2** defining a space therein, a sleeve **1** provided in the space of

the housing and defining an interior volume for accommodating a penis therein, and a

driving device **17/18/19** for driving the sleeve to generate motion relative to the housing

([0022]-[0023]).  Raju fails to disclose at least two handles extending outwardly from an

outer face of the housing for holding of the penis massager, wherein the at least two

handles are movably connected to the housing.  Koerner discloses a similar device

(Abstract) comprising at least two handles **2** extending outwardly from an outer face of a

housing for holding of the device, wherein the at least two handles are movably

connected to the housing, in order to allow the device to be held as desired, to control

the device, and to allow exchange/interchange ([0032]-[0034]; [0080]; may have

multiple handles that can be curved or angled in any direction relative to the housing).  It

would have been obvious to one of ordinary skill in the art before the effective filing date

Application/Control Number: 18/202,966                                          Page 6
Art Unit: 3791

of the claimed invention to modify the invention of Raju with two handles extending

outwardly from the housing, wherein the at least two handles are movably connected to

the housing, as taught by Koerner, in order to allow the device to be held as desired, to

control the device, and to allow exchange/interchange.


10.     Claims 11-13 are rejected under 35 U.S.C. 103 as being unpatentable over Shao

et al. (U.S. Pub. No. 2023/0126338 A1), in view of Koerner and further in view of Tindal

(U.S. Pub. No. 2021/0128400 A1).

        Regarding claim 11, Shao discloses a penis massager (Abstract; Fig. 1),

comprising: a housing **2** defining a space therein, a sleeve **8** provided in the space of

the housing and defining an interior volume for accommodating a penis therein, and a

driving device **7/15** for driving the sleeve to generate motion relative to the housing

([0019]-[0025]).  Shao fails to disclose at least two handles extending outwardly and

obliquely from an outer circumferential face of the housing for holding of the penis

massager, at least one button being provided on the handle, as well as that the driving

device comprises a vibration motor embedded in the sleeve.  Koerner discloses a

similar device (Abstract) comprising at least two handles **2** extending outwardly from an

outer circumferential face of a housing for holding of the device, with at least one button

**3** being provided on the handle, in order to allow the device to be held as desired and to

control the device ([0032]-[0034]; [0080]; may have multiple handles that can be curved

or angled in any direction relative to the housing, thus obliquely).  It would have been

obvious to one of ordinary skill in the art before the effective filing date of the claimed

invention to modify the invention of Shao with two handles extending outwardly and

Application/Control Number: 18/202,966                                                    Page 7
Art Unit: 3791

obliquely from the housing, with at least one button provided on a handle, as taught by

Koerner, in order to allow the device to be held as desired and to control the device.

Both Shao and Koerner teach cylindrical housings with circumferential faces, so the

handles necessarily extend from this circumferential face.

The combination of Shao and Koerner discloses the invention as claimed, see

rejection supra, but fails to disclose that the driving device comprises a vibration motor

embedded in the sleeve.  Tindal discloses a similar device (Abstract) comprising a

driving device that comprises a vibration motor **332** embedded in a sleeve **120** in order

to provide controllable vibration ([0060]).  It would have been obvious to one of ordinary

skill in the art before the effective filing date of the claimed invention to modify the

combination of Shao and Koerner with a vibration motor embedded in the sleeve, as

taught by Tindal, in order to provide controllable vibration to the penis.

Regarding claim 12, the combination of Shao, Koerner, and Tindal discloses the

invention as claimed, see rejection supra, and Shao further discloses that the driving

device further comprises a driving motor for driving the sleeve to rotate relative to the

housing ([0025]).

Regarding claim 13, the combination of Shao, Koerner, and Tindal discloses the

invention as claimed, see rejection supra, and Shao further discloses that the driving

device further comprises a driving motor for driving the sleeve to do reciprocating axial

motion relative to the housing ([0025]).


11.    Claim 14 is rejected under 35 U.S.C. 103 as being unpatentable over Shao,

Koerner, and Tindal as applied to claim 13 above, and further in view of Raju.  The

Application/Control Number: 18/202,966                                    Page 8
Art Unit: 3791

combination of Shao, Koerner, and Tindal discloses the invention as claimed, see rejection supra, but fails to disclose that a movable cabin is movably mounted in the space of the housing, the sleeve is detachably mounted in the movable cabin, and guiding bars are provided in the housing for guiding axial movement of the movable cabin and the sleeve.  Raju discloses a similar device (Abstract; Figs. 1, 2) comprising a housing **2** defining a space therein, a movable cabin **4** movably mounted in the space of the housing, a sleeve **1** detachably mounted in the movable cabin, and guiding bars **5/6** provided in the housing for guiding axial movement of the movable cabin and the sleeve in order to limit movement of the cabin and sleeve ([0022]-[0026]).  It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the combination of Shao, Koerner, and Tindal with such a movable cabin and guiding bars, as taught by Raju, in order to guide and limit movement of the cabin and sleeve.


### *Allowable Subject Matter*

12.    Claims 22 and 23 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

13.    Claims 4, 6-9, and 15 would be allowable if rewritten to overcome the rejection(s) under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), 2nd paragraph, set forth in this Office action and to include all of the limitations of the base claim and any intervening claims.

Application/Control Number: 18/202,966                                    Page 9
Art Unit: 3791

14.    The following is a statement of reasons for the indication of allowable subject
matter: as detailed in the previous Office action, regarding claim 4, none of the prior art
of record teaches or reasonably suggests the recited configuration of the handles, in
combination with such a penis massager; regarding claims 6-9, 22, and 23, none of the
prior art of record teaches or reasonably suggests handles connected in the recited
manners, in combination with such a penis massager; and regarding claim 15, none of
the prior art of record teaches or reasonably suggests such a fixing frame with a
plurality of first and second conductive members and electrically connected to the
vibration motor, in combination with such a penis massager.

### *Response to Arguments*

15.    Applicant's arguments with respect to the objection to claim 9 and the rejection of
claim 4 under 35 U.S.C. 112 have been fully considered and are persuasive in light of
the amendments.  The objection and rejection have been withdrawn.

16.    Applicant's arguments with respect to the rejections under 35 U.S.C. 103 have
been fully considered but they are not persuasive.  Applicant argues that Koerner fails
to teach handles that extend obliquely from the housing, as well as that the handles do
not extend from the circumferential face of the housing and the button is not on the
handle portion.  The examiner disagrees.  As detailed supra, the cited portions of
Koerner teach that the handles may be curved or bent in any direction, so they may
extend obliquely from the housing when they are curved/bent.  Further, the cited
references teach cylindrical-shaped housings that have a circumferential face, so the
handle extends from this face (even in Koerner, the handle is shown to be connected to

Application/Control Number: 18/202,966                                    Page 10
Art Unit: 3791

the bottom portion of this face).  Finally, the cited portions of Koerner teach that the

device may include two or more handles on the vibrator to provide a variety of

combinations of functionality, shape, and feel.  The proposed combinations are not

interpreted in the way detailed by Applicant, with the outer portions being the handles

and the middle portion/control panel having the buttons; instead, as expressly taught by

Koerner, the proposed combinations include multiple handles that do include at least

one button.


### Conclusion

**THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.


Any inquiry concerning this communication or earlier communications from the

examiner should be directed to THADDEUS B COX whose telephone number is

(571)270-5132. The examiner can normally be reached M-F 9am-6pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Jason M. Sims can be reached on (571)272-7540. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is available to registered users. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and https://www.uspto.gov/patents/docx for information about filing in DOCX format. For additional questions, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/THADDEUS B COX/
Primary Examiner, Art Unit 3791

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/202,966 | Huang et al. |
| | **Examiner** | **Art Unit** |
| | THADDEUS B COX | 3791 |

**CPC - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| A61H19/32 | 10/04/2023 | TC |
| A61H19$, A61H21$ | 10/04/2023 | TC |
| Updated | 11/22/2023 | TC |

**CPC Combination Sets - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| | | |

**US Classification - Searched***

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

**Search Notes**

| Search Notes | Date | Examiner |
|---|---|---|
| Inventor search in DAV | 10/04/2023 | TC |
| Similarity Search and MLTD search in PE2E | 10/04/2023 | TC |
| Global Dossier search | 10/04/2023 | TC |
| Review of related applications | 10/04/2023 | TC |
| Attached PE2E search with text-limited class searching and text searching | 10/04/2023 | TC |

| /THADDEUS B COX/<br>Primary Examiner, Art Unit 3791 | |
|---|---|
| | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/202,966 | Huang et al. |
| | Examiner | Art Unit |
| | THADDEUS B COX | 3791 |

| Interference Search | | | |
|---|---|---|---|
| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
| | | | |

| /THADDEUS B COX/<br>Primary Examiner, Art Unit 3791 | |
|---|---|
| | |

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/202,966 | Huang et al. |
| | Examiner | Art Unit |
| | THADDEUS B COX | 3791 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| CLAIMS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | ☐ T.D. | ☐ R.1.47 | | | |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 07/31/2023 | 10/04/2023 | 11/22/2023 | | | | | | |
| | 1 | ÷ | ✓ | ✓ | | | | | | |
| | 2 | ÷ | ✓ | - | | | | | | |
| | 3 | ÷ | ✓ | - | | | | | | |
| | 4 | ÷ | ✓ | ✓ | | | | | | |
| | 5 | ÷ | ✓ | ✓ | | | | | | |
| | 6 | ÷ | O | ✓ | | | | | | |
| | 7 | ÷ | O | ✓ | | | | | | |
| | 8 | ÷ | O | ✓ | | | | | | |
| | 9 | ÷ | O | ✓ | | | | | | |
| | 10 | ÷ | ✓ | - | | | | | | |
| | 11 | ÷ | ✓ | ✓ | | | | | | |
| | 12 | ÷ | ✓ | ✓ | | | | | | |
| | 13 | ÷ | ✓ | ✓ | | | | | | |
| | 14 | ÷ | ✓ | ✓ | | | | | | |
| | 15 | ÷ | O | ✓ | | | | | | |
| | 16 | ÷ | ✓ | ✓ | | | | | | |
| | 17 | ÷ | N | N | | | | | | |
| | 18 | ÷ | N | N | | | | | | |
| | 19 | ÷ | N | N | | | | | | |
| | 20 | ÷ | N | N | | | | | | |
| | 21 | | | ✓ | | | | | | |
| | 22 | | | O | | | | | | |
| | 23 | | | O | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

## PE2E SEARCH – Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|-------|------|--------------|-----|------------------|---------|---------------------|------------|
| L1 | 44 | (Artificial Intelligence) Similar to: 18/202,966 with 0 CPC Selections and 0 Text Selections<br><br>Text:<br>(EP-3630041-B1 OR US-20210128395-A1 OR JP-2020521587-A OR RU-2019143122-A OR RU-2750656-C1 OR AU-2018278239-A1 OR ES-2895443-T3 OR CN-111148495-A OR WO-2018220120-A1 OR US-20230210718-A1 OR RU-2015142507-A OR DE-102013102280-A1 OR TW-201436784-A OR KR-20150129763-A OR ES-2682676-T3 OR US-20230083660-A1 OR KR-102245754-B1 OR AU-2014224947-A1 OR CA-2901794-A1 OR WO-2014135301-A1 OR EP-2964179-A1 OR CN-105120822-A OR US-20160008214-A1 OR AU-2014224947-B2 OR CA-2901794-C OR DE-202021105756-U1 OR RU-2649524-C2 OR EP-2964179-B1 OR JP-2016508802-A OR US-11419783-B2 OR ES-1217362-U OR ES-1217362-U9 OR US-11752063-B1 OR CN-113226244-A OR EP-3815667-A1 OR WO-2020002738-A1 OR DE-202023102232-U1 OR US-20210186798-A1 OR DE-202023102526-U1 OR US-10028882-B1 OR US-20150065792-A1 OR WO-2014043878-A1 OR CN-104812354-A OR WO-2018000835-A1 OR EP-3474808-A1 | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:14 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | OR US-20170367924-A1 OR DE-7520052-U OR EP-3697366-A1 OR US-20090099413-A1 OR US-8308631-B2).did. | | | | | |
| L2 | 1 | "11730665".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:15 PM |
| L3 | 49 | (Artificial Intelligence) More like doc: US-11730665-B1<br><br>Text: (DE-202023101938-U1 OR US-11737949-B1 OR US-20150196454-A1 OR US-20210113424-A1 OR CN-211934816-U OR WO-2020007120-A1 OR CN-215689724-U OR CN-113813149-A OR WO-2022078401-A1 OR DE-202017005314-U1 OR WO-2013048897-A1 OR CN-215840360-U OR CN-215781002-U OR KR-20140066403-A OR DE-102017008975-A1 OR EP-0436719-B1 OR EP-0436719-A1 OR KR-20020082809-A OR CN-219271494-U OR US-20230069573-A1).did. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/10/03 04:15 PM |
| L4 | 1 | "20150196454".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, | OR | ON | ON | 2023/10/03 04:19 PM |

| | | | PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
|---|---|---|---|---|---|---|---|
| L5 | 39 | (Artificial Intelligence) More like doc: US-20150196454-A1 ----- Text: (US-8647255-B2 OR US-20130281776-A1 OR US-20100041944-A1 OR US-20200060928-A1 OR WO-2015060717-A1 OR EP-3518859-A1 OR AU-2017337299-A1 OR WO-2018058234-A1 OR CA-3038570-A1 OR US-11547626-B2 OR CN-110198697-A OR EP-3513771-A1 OR EP-3356911-B1 OR WO-2014127528-A1 OR CN-102149361-B OR JP-5630717-B2 OR EP-3356911-A1 OR WO-2017055830-A1 OR US-10747319-B2 OR US-20180284890-A1).did. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/10/03 04:24 PM |
| L6 | 178 | 1 OR 3 OR 5 | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/10/03 04:24 PM |
| L7 | 81 | 6 AND @ad<"20230529" | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, | OR | ON | ON | 2023/10/03 04:25 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
| L8 | 2 | ("20230126338," "20050228219").pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:27 PM |
| L9 | 2 | "20180092798".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:30 PM |
| L10 | 1 | "20170231801".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:31 PM |
| L11 | 2 | "20230083660".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, | OR | ON | ON | 2023/10/03 04:34 PM |

| | | | TN, TR, TW, UA, VN, WO)) | | | | |
|---|---|---|---|---|---|---|---|
| L12 | 1663 | A61H19/32.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:50 PM |
| L13 | 129 | 12 AND (handle WITH (second OR two OR pair OR set)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:53 PM |
| L14 | 2 | "5,873,813".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:57 PM |
| L15 | 1 | "20050187431".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, | OR | ON | ON | 2023/10/03 05:06 PM |

| | | | WO)) | | | | |
|---|---|---|---|---|---|---|---|
| L16 | 133 | 12 AND handles | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | OFF | ON | 2023/10/03 05:07 PM |
| L17 | 90 | 16 NOT 13 | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | OFF | ON | 2023/10/03 05:07 PM |
| L18 | 7261 | A61H19$.cpc. OR A61H21$.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 05:13 PM |
| L19 | 405 | 18 AND handles | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | OFF | ON | 2023/10/03 05:13 PM |

| L20 | 272 | 19 NOT (16 OR 13) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | OFF | ON | 2023/10/03 05:13 PM |
| L21 | 95 | 20 AND (handle WITH button) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 05:13 PM |
| L22 | 734 | 18 AND (handle WITH (detach$ OR de$coupl$ OR slid$ OR rotat$ OR remov$ OR releasab$ OR unfasten$ OR dis$connect$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 03:12 PM |
| L23 | 314 | 18 AND (handle WITH rotat$) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 03:24 PM |
| L24 | 71 | 18 AND (handle WITH | (US-PGPUB; USPAT; | OR | ON | ON | 2023/10/04 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | rotatab$) | USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | 03:25 PM |
| L25 | 21 | 18 AND (handle WITH slidab$) | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 03:30 PM |
| L26 | 110 | 12 AND (handle WITH (detach$ OR de$coupl$ OR slid$ OR rotat$ OR remov$ OR releasab$ OR unfasten$ OR dis$connect$)) | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 03:44 PM |
| L27 | 2 | "20210113424".pn. | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 04:04 PM |
| L28 | 33 | 12 AND (motor$ WITH embed$) | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, | OR | ON | ON | 2023/10/04 04:23 PM |

| | | | AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
|---|---|---|---|---|---|---|---|
| L29 | 9 | 12 AND (motor$ WITH (encas$ OR encapsulat$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 04:26 PM |
| L30 | 2 | "20210128400".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 04:42 PM |
| L31 | 3 | ("20230083660," "202017005314").pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/11/22 08:54 AM |
| L32 | 41 | 12 AND (motor$ WITH (encas$ OR encapsulat$ OR | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, | OR | ON | ON | 2023/11/22 08:59 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | embed$)) | CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
| L33 | 91 | 12 AND (motor$ SAME (encas$ OR encapsulat$ OR embed$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/11/22 08:59 AM |
| L34 | 476 | 18 AND (handle WITH (rotat$ OR slid$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/11/22 09:00 AM |

## PE2E SEARCH – Search History (Interference)

There are no Interference searches to show.

**USPTO**

**UNITED STATES**
**PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION #<br>**18/202,966** | RECEIPT DATE / TIME<br>**11/20/2023 09:32:24 AM Z ET** | ATTORNEY DOCKET #<br>**22A1385US-CIP** |
|---|---|---|

## Title of Invention

PENIS MASSAGER

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 9753 | FILED BY | Kevin Chen |
| PATENT CENTER # | 63313329 | FILING DATE | 05/29/2023 |
| CUSTOMER # | 176174 | FIRST NAMED INVENTOR | Tenghui Huang |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | - |

## Documents

# TOTAL DOCUMENTS: 1

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| 22A1385US-CIP-Response.pdf | 8 | Amendment/Request for Reconsideration-After Non-Final Rejection | 210 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| 22A1385US-CIP-Response.pdf | E096C537C9B5745B4AE610D1AFD43F1BCF24B21BC829FB4E AAF580798AA3CFA0A909C2115E0A0343009ADB5D168C72FD4 92B055B72E4B8EB32BCEA5690488E3D |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Application No. | : | 18/202,966 |
| Application Filing Date | : | May 29, 2023 |
| First Named Inventor | : | Tenghui Huang |
| Attorney Docket No. | : | 22A1385US-CIP |
| Confirmation No. | : | 9753 |
| Examiner | : | COX, THADDEUS B |
| Art Unit | : | 3791 |

Mail Stop

Commissioner for Patents

P.O. Box 1450

Alexandria, Virginia 22313-1450

## RESPONSE TO OFFICE ACTION

Dear Sir / Madam,

Responsive to the Office Action dated Oct. 11, 2023, applicants submit the following amendments and remarks. In light of these amendments and remarks, Applicants respectfully assert that all of the claims of patent application are patentable. Favorable reconsideration of the application and withdrawal of the rejections are respectfully requested.

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks** begins on page 5 of this paper.

**Conclusion** begins on page 8 of this paper.

<u>**AMENDMENTS TO THE CLAIMS**</u>

This listing of claims will replace all prior versions and listings of claims in the application.

<u>**Listing of Claims:**</u>

1. (Currently amended) A penis massager, comprising:

a housing defining a space therein;

a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;

a driving device for driving the sleeve to generate motion relative to the housing; and

at least two handles extending <u>obliquely and</u> outwardly from an outer <u>circumferential</u> face of the housing for holding of the penis massager<u>, at least one button being provided on the handle</u>.

2. (Canceled)

3. (Canceled)

4. (Currently amended) The penis massager according to claim [[3]] <u>1</u>, wherein <u>each of the at least two handles comprises a first end and a second end, wherein</u> the first end ~~of the handle~~ is connected to an end of the housing away from an open end of the sleeve, and the second end <u>extends away from the housing and</u> ~~of the handle~~ is substantially dome-shaped, <u>and</u> the at least one button is provided on the first end of <u>at least one of the at least two handles</u> ~~the handle~~.

5. (Original) The penis massager according to claim 1, wherein the at least two handles are detachably connected to the housing.

6. (Original) The penis massager according to claim 1, wherein the at least two handles are slidably connected to the housing.

7. (Original) The penis massager according to claim 1, wherein the at least two handles are rotatably connected to the housing.

8. (Original) The penis massager according to claim 7, wherein each of the at least two handles comprises a fixing seat fixedly connected to the housing and a rotating arm, one of the fixing seat and the rotating arm defining a shaft hole therein, and the other one of the

fixing seat and the rotating arm comprising a shaft being rotatably inserted into the shaft hole.

9. (Currently amended) The penis massager according to claim 8, wherein the fixing seat forms a plurality of first teeth at an axial end face thereof, the rotating arm forms a plurality of second teeth at a surface thereof facing towards the <u>plurality of</u> first teeth, and the <u>plurality of</u> first teeth and the <u>plurality of</u> second teeth mesh with each other.

10. (Canceled)

11. (Original) The penis massager according to claim 1, wherein the driving device comprises a vibration motor embedded in the sleeve.

12. (Original) The penis massager according to claim 11, wherein the driving device further comprises a driving motor for driving the sleeve to rotate relative to the housing.

13. (Original) The penis massager according to claim 11, wherein the driving device further comprises a driving motor for driving the sleeve to do reciprocating axial movement relative to the housing.

14. (Original) The penis massager according to claim 13, wherein a movable cabin is movably mounted in the space of the housing, the sleeve is detachably mounted into the movable cabin, and guiding bars are provided in the housing for guiding axial movement of the movable cabin and the sleeve.

15. (Original) The penis massager according to claim 14, wherein a fixing frame is arranged around the sleeve, a plurality of first conductive members is provided on the fixing frame and connected to the vibration motor electrically, and a plurality of second conductive members is provided on the movable cabin and contacts with the first conductive members.

16. (Original) The penis massager according to claim 1, wherein a plurality of bulges is provided on an interior surface of the sleeve surrounding the interior volume.

17. (Withdrawn-currently amended) A penis massager, comprising:

    a housing defining a first space and a second space therein;

    a sleeve provided in the first space of the housing and defining an interior volume for accommodating a penis therein;

a driving motor mounted in the second space of the housing and connected to the sleeve in a transmission way, the driving motor being configured for driving the sleeve to move and/or rotate relative to the housing; and

at least two handles extending obliquely and outwardly from an outer circumferential face of the housing for holding of the penis massager.

18. (Withdrawn) The penis massager according to claim 17, wherein at least one button is provided on the at least two handles.

19. (Withdrawn) The penis massager according to claim 18, wherein the at least two handles are fixed to the housing and is angular with the housing.

20. (Withdrawn) The penis massager according to claim 18, wherein the at least two handles are movably or rotatably connected to an end of the housing away from an open end of the interior volume of the sleeve.

21. (New) A penis massager, comprising:

a housing defining a space therein;

a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;

a driving device for driving the sleeve to generate motion relative to the housing; and

at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;

wherein the at least two handles are movably connected to the housing.

22. (New) The penis massager according to claim 21, wherein the at least two handles are slidably connected to the housing.

23. (New) The penis massager according to claim 21, wherein the at least two handles are rotatably connected to the housing.

## REMARKS

Claims 1, 4-9 and 11-23 are now present in this application, wherein claims 17-20 are withdrawn from consideration.    Claims 2-3 and 10 have been cancelled without prejudice or disclaimer.    Claims 1, 4, 9 and 17 have been amended.    New claims 21-23 have been introduced.    No new matter is involved.    As such, the Examiner is respectfully requested to enter the same.    Reconsideration and allowance are respectfully requested.

### *Claim Objections*

Claim 9 is objected to because of the following informalities: in claim 9, lines 3-4 "the first teeth" and "the second teeth" should apparaently read -- the plurality of first teeth -- and -- the plurality of second teeth --.

### *Claim Rejections*

Claim 4 is rejected under 35 U.S.C.112(b) or 35 U.S.C.112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor (or for applications subject to pre-AIA 35 U.S.C.112, the applicant), regards as the invention.

Claims 1-3, 5, 10 and 16 are rejected under 35 U.S.C. 103 as being unpatentable over Raju (US 2023/0083660 A1) in view of Koerner (DE 202017005314 U1).

Claims 11-13 are rejected under 35 U.S.C. 103 as being unpatentable over Shao et al. (US 2023/0126338A1) in view of Koerner and further in view of Tindal (US 2021/0128400A1).

Claim 14 is rejected under 35 U.S.C. 103 as being unpatentable over Shao et al., Koerner and Tindal as applied to claim 13 above, and further in view of Raju.

### *Allowable Subject Matter*

Claim 4 would be allowable if rewritten to overcome the rejection(s) under 35 U.S.C.112(b) or 35 U.S.C.112 (pre-AIA), second paragraph.

Claims 6-9 and 15 would be allowable if rewritten in independent form including all of the limitations of the base claim andany intervening claims.

In response to the ***Objections***, claim 9 has been amended according to the indication given in the Office Action, and thus the objections to claim 9 should be overcome.

In response to the ***Rejections under 35 U.S.C.112(b) or 35 U.S.C.112 (pre-AIA)***, the limitation "the handle" in claim 4 has been deleted, and thus the rejections to claim 4 should be overcome.

In response to the ***Rejections under 35 U.S.C. 102 & 103***, claim 1 has been amended to recite a penis massager, comprising:

"...***at least two handles extending obliquely and outwardly from an outer circumferential face of the housing for holding of the penis massager, at least one button being provided on the handle***".

In contrast, firstly, as indicated in the Office Action, Raju fais to disclose at least two handles extending outwardly from an outer face of the housing for holding of the penis massager.

Further, as understood by applicant, Koerner discloses a vibrator that includes a vibrator part 1, a handle and control panel 2 arranged at a bottom of the vibrator part 1 with adjustment devices 3 for adjusting functions and options of the vibrator.   Koerner does not describe the detailed constrction of the handle and control panel 2 in the specification, but from the drawings, it can be seen that the handle and control panel 2 in whole is generally elongated and extends radially.   That is, the handle and control panel 2 is perpendicular to the vibrator part 1.   Koerner does ***not*** disclose "at least two handles extending ***obliquely*** and outwardly from the housing" as defined in amended claim 1.

In addition, as clearly shown in the Figure below, the handle and control panel 2 of Koerner may be devided into two portions, i.e., middle portion attached to the bottom of the vibrator part 1 and outer portions extending beyond the vibrator part 1.   The middle portion, on which the adjustment devices 3 and mini screen 4 are provided, may be regared as a control panel of the handle and control panel 2; and the outer portions, which can be holded by the user, may be regarded as handles of the handle and control panel 2.   However, the handle and control panel 2 in whole is attached to an end face of the vibrator part 1, and the

handles are located under the vibrator part 1 in the axial direction and does not extend from an *outer circumferential face* of the vibrator part 1; and the adjustment devices 3 and mini screen 4 are not on the handles.



That is, Koerner does not disclose "at least two handles extending obliquely and outwardly from an outer circumferential face of the housing with at least one button being provided thereon" as dedined in amended claim 1.

Furthermore, Shao et al. and Tindal do not disclose a penis massager with handles.

For the forgoing reasons, amended claim 1 should be patentable over the cited references, and claims 4-9 and 11-16 are also allowable at least by virtue of their dependencies from claim 1 directly or indirectly.

New claim 21 defines a penis massager having at least two handles being **movably** connected to the housing, which is not disclosed by the cited references.    Accordingly, new claim 21 and its depenent claims 22-23 are allowable.

## **CONCLUSION**

For at least the foregoing reasons, it is believed that all the pending claims of the present application are in proper condition for allowance. An action to such effect is earnestly requested.

Sincerely,

Kevin P. Chen

/Kevin P. Chen/

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 18/202,966 | Filing Date 05/29/2023 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE  ☑ SMALL  ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | x $40 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | x $192 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 11/20/2023 | | | | | | |
| | Total (37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | x $40 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $192 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | | | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /ZURIASHWORK ZENEBE/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/202,966 | 05/29/2023 | Tenghui Huang | 22A1385US-CIP | 9753 |

176174        7590        10/11/2023

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

| EXAMINER |
|---|
| COX, THADDEUS B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3791 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 10/11/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

kckclaw@yahoo.com
kevchen888@yahoo.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. 18/202,966 | Applicant(s) Huang et al. |
|---|---|---|
| | Examiner THADDEUS B COX | Art Unit 3791 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☑ Responsive to communication(s) filed on <u>26 September 2023</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL.**   2b) ☑ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) <u>1-20</u> is/are pending in the application.
   5a) Of the above claim(s) <u>17-20</u> is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>1-5,10-14 and 16</u> is/are rejected.

8) ☑ Claim(s) <u>6-9 and 15</u> is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

## Application Papers

10)☐ The specification is objected to by the Examiner.

11)☑ The drawing(s) filed on <u>29 May 2023</u> is/are: a)☑ accepted or b)☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12)☑ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a)☑ All   b)☐ Some**   c)☐ None of the:

   1.☐ Certified copies of the priority documents have been received.

   2.☑ Certified copies of the priority documents have been received in Application No. <u>18/119,859</u>.

   3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

Application/Control Number: 18/202,966                                        Page 2
Art Unit: 3791

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

### *Election/Restrictions*

2.      Applicant's election without traverse of Group I, claims 1-16, in the reply filed on

26 September is acknowledged.

3.      Claims 17-20 are withdrawn from further consideration pursuant to 37 CFR

1.142(b) as being drawn to a nonelected invention, there being no allowable generic or

linking claim.

4.      Applicant is reminded that upon the cancelation of claims to a non-elected

invention, the inventorship must be corrected in compliance with 37 CFR 1.48(a) if one

or more of the currently named inventors is no longer an inventor of at least one claim

remaining in the application.  A request to correct inventorship under 37 CFR 1.48(a)

must be accompanied by an application data sheet in accordance with 37 CFR 1.76 that

identifies each inventor by his or her legal name and by the processing fee required

under 37 CFR 1.17(i).

### *Claim Objections*

5.      Claim 9 is objected to because of the following informalities:

Application/Control Number: 18/202,966                                                Page 3
Art Unit: 3791

    a.      In claim 9, lines 3-4, "the first teeth" (two instances) and "the second teeth"

should apparently read --the <u>plurality of </u>first teeth-- and --the <u>plurality of </u>second

teeth--.

Appropriate correction is required.


### Claim Rejections - 35 USC § 112

6.      The following is a quotation of 35 U.S.C. 112(b):

> (b) CONCLUSION.—The specification shall conclude with one or more claims particularly
> pointing out and distinctly claiming the subject matter which the inventor or a joint inventor
> regards as the invention.

> The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
> The specification shall conclude with one or more claims particularly pointing out and distinctly
> claiming the subject matter which the applicant regards as his invention.

7.      Claim 4 is rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second

paragraph, as being indefinite for failing to particularly point out and distinctly claim the

subject matter which the inventor or a joint inventor (or for applications subject to pre-

AIA 35 U.S.C. 112, the applicant), regards as the invention.  Claim 4 recites the

limitation "the handle" in line 1, as well as in line 3 and in line 4.  It is not clear which of

the previously recited "at least two handles" this refers to.


### Claim Rejections - 35 USC § 103

8.      In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis (i.e., changing from AIA to pre-AIA) for the rejection will

not be considered a new ground of rejection if the prior art relied upon, and the rationale

supporting the rejection, would be the same under either status.

Application/Control Number: 18/202,966                                    Page 4
Art Unit: 3791

9.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

10.     This application currently names joint inventors. In considering patentability of the

claims the examiner presumes that the subject matter of the various claims was

commonly owned as of the effective filing date of the claimed invention(s) absent any

evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to

point out the inventor and effective filing dates of each claim that was not commonly

owned as of the effective filing date of the later invention in order for the examiner to

consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2)

prior art against the later invention.

11.     The factual inquiries for establishing a background for determining obviousness

under 35 U.S.C. 103 are summarized as follows:

        1. Determining the scope and contents of the prior art.

        2. Ascertaining the differences between the prior art and the claims at issue.

        3. Resolving the level of ordinary skill in the pertinent art.

        4. Considering objective evidence present in the application indicating

obviousness or nonobviousness.

12.     Claims 1-3, 5, 10, and 16 are rejected under 35 U.S.C. 103 as being

unpatentable over Raju (U.S. Pub. No. 2023/0083660 A1), in view of Koerner (DE

202017005314 U1).

Application/Control Number: 18/202,966                                           Page 5
Art Unit: 3791

Regarding claim 1, Raju discloses a penis massager (Abstract; Fig. 1),

comprising: a housing **2** defining a space therein, a sleeve **1** provided in the space of

the housing and defining an interior volume for accommodating a penis therein, and a

driving device **17/18/19** for driving the sleeve to generate motion relative to the housing

([0022]-[0023]).  Raju fails to disclose at least two handles extending outwardly from an

outer face of the housing for holding of the penis massager.  Koerner discloses a similar

device (Abstract) comprising at least two handles **2** extending outwardly from an outer

face of a housing for holding of the device in order to allow the device to be held as

desired and to control the device ([0032]-[0034]; [0080]; may have multiple handles that

can be curved or angled in any direction relative to the housing).  It would have been

obvious to one of ordinary skill in the art before the effective filing date of the claimed

invention to modify the invention of Raju with two handles extending outwardly from the

housing, as taught by Koerner, in order to allow the device to be held as desired and to

control the device.

Regarding claim 2, the combination of Raju and Koerner discloses the invention

as claimed, see rejection supra, and Koerner further discloses that each of the at least

two handles is angular with the housing ([0034]).

Regarding claim 3, the combination of Raju and Koerner discloses the invention

as claimed, see rejection supra, and Koerner further discloses that each of the at least

two handles comprises a first end connected to the housing and a second end away

from the housing, and at least one button **3** is provided on the at least two handles

([0032]-[0034]).

Application/Control Number: 18/202,966                                    Page 6
Art Unit: 3791

Regarding claim 5, the combination of Raju and Koerner discloses the invention as claimed, see rejection supra, and Koerner further discloses that the at least two handles are detachably connected with the housing ([0080]; exchangeable).

Regarding claim 10, the combination of Raju and Koerner discloses the invention as claimed, see rejection supra, and Koerner further discloses that the at least two handles comprises two handles ([0080]), and the two handles are arranged symmetrically at two sides of the housing ([0034]).

Regarding claim 16, the combination of Raju and Koerner discloses the invention as claimed, see rejection supra, and Raju further discloses a plurality of bulges **15/16** is provided on an interior surface of the sleeve surrounding the interior volume (Fig. 4; [0027]).


13.    Claims 11-13 are rejected under 35 U.S.C. 103 as being unpatentable over Shao et al. (U.S. Pub. No. 2023/0126338 A1), in view of Koerner and further in view of Tindal (U.S. Pub. No. 2021/0128400 A1).

Regarding claim 11, Shao discloses a penis massager (Abstract; Fig. 1), comprising: a housing **2** defining a space therein, a sleeve **8** provided in the space of the housing and defining an interior volume for accommodating a penis therein, and a driving device **7/15** for driving the sleeve to generate motion relative to the housing ([0019]-[0025]).  Raju fails to disclose at least two handles extending outwardly from an outer face of the housing for holding of the penis massager, as well as that the driving device comprises a vibration motor embedded in the sleeve.  Koerner discloses a similar device (Abstract) comprising at least two handles **2** extending outwardly from an

outer face of a housing for holding of the device in order to allow the device to be held as desired and to control the device ([0032]-[0034]; [0080]; may have multiple handles that can be curved or angled in any direction relative to the housing).  It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention of Shao with two handles extending outwardly from the housing, as taught by Koerner, in order to allow the device to be held as desired and to control the device.

The combination of Shao and Koerner discloses the invention as claimed, see rejection supra, but fails to disclose that the driving device comprises a vibration motor embedded in the sleeve.  Tindal discloses a similar device (Abstract) comprising a driving device that comprises a vibration motor **332** embedded in a sleeve **120** in order to provide controllable vibration ([0060]).  It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the combination of Shao and Koerner with a vibration motor embedded in the sleeve, as taught by Tindal, in order to provide controllable vibration to the penis.

Regarding claim 12, the combination of Shao, Koerner, and Tindal discloses the invention as claimed, see rejection supra, and Shao further discloses that the driving device further comprises a driving motor for driving the sleeve to rotate relative to the housing ([0025]).

Regarding claim 13, the combination of Shao, Koerner, and Tindal discloses the invention as claimed, see rejection supra, and Shao further discloses that the driving device further comprises a driving motor for driving the sleeve to do reciprocating axial motion relative to the housing ([0025]).

Application/Control Number: 18/202,966                                    Page 8
Art Unit: 3791

14.    Claim 14 is rejected under 35 U.S.C. 103 as being unpatentable over Shao, Koerner, and Tindal as applied to claim 13 above, and further in view of Raju.  The combination of Shao, Koerner, and Tindal discloses the invention as claimed, see rejection supra, but fails to disclose that a movable cabin is movably mounted in the space of the housing, the sleeve is detachably mounted in the movable cabin, and guiding bars are provided in the housing for guiding axial movement of the movable cabin and the sleeve.  Raju discloses a similar device (Abstract; Figs. 1, 2) comprising a housing **2** defining a space therein, a movable cabin **4** movably mounted in the space of the housing, a sleeve **1** detachably mounted in the movable cabin, and guiding bars **5/6** provided in the housing for guiding axial movement of the movable cabin and the sleeve in order to limit movement of the cabin and sleeve ([0022]-[0026]).  It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the combination of Shao, Koerner, and Tindal with such a movable cabin and guiding bars, as taught by Raju, in order to guide and limit movement of the cabin and sleeve.

### *Allowable Subject Matter*

15.    Claim 4 would be allowable if rewritten to overcome the rejection(s) under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), 2nd paragraph, set forth in this Office action and to include all of the limitations of the base claim and any intervening claims.

Application/Control Number: 18/202,966                                    Page 9
Art Unit: 3791

16.    Claims 6-9 and 15 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

17.    The following is a statement of reasons for the indication of allowable subject matter: regarding claim 4, none of the prior art of record teaches or reasonably suggests the recited configuration of the handle(s), in combination with such a penis massager. Regarding claims 6-9, none of the prior art of record teaches or reasonably suggests such handles that are so connected to the housing, in combination with such a penis massager.  Regarding claim 15, none of the prior art of record teaches or reasonably suggests such a fixing frame and plurality of first and second conductive members on the frame and electrically connected to the vibration motor, in combination with such a penis massager.


*Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to THADDEUS B COX whose telephone number is (571)270-5132. The examiner can normally be reached M-F 9am-6pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

Application/Control Number: 18/202,966                                                    Page 10
Art Unit: 3791

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Jason M. Sims can be reached on (571)272-7540. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be

obtained from Patent Center. Unpublished application information in Patent Center is

available to registered users. To file and manage patent submissions in Patent Center,

visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-

center for more information about Patent Center and

https://www.uspto.gov/patents/docx for information about filing in DOCX format. For

additional questions, contact the Electronic Business Center (EBC) at 866-217-9197

(toll-free). If you would like assistance from a USPTO Customer Service

Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/THADDEUS B COX/
Primary Examiner, Art Unit 3791

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| ***Notice of References Cited*** | 18/202,966 | Huang et al. |
| | Examiner | Art Unit | |
| | THADDEUS B COX | 3791 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20230083660-A1 | 03-2023 | RAJU; Praveen | A61H23/00 | 1/1 |
| * | B | US-20230126338-A1 | 04-2023 | Shao; Zhubiao | A61H15/0078 | 600/38 |
| * | C | US-20210128400-A1 | 05-2021 | Tindal; Samuel Lee | A61H19/32 | 1/1 |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | DE-202017005314-U1 | 02-2018 | DE | Name not available | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/202,966 | Huang et al. |
| | Examiner | Art Unit |
| | THADDEUS B COX | 3791 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| CLAIMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | ☐ T.D. | ☐ R.1.47 | | |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 07/31/2023 | 10/04/2023 | | | | | | |
| | 1 | ÷ | ✓ | | | | | | |
| | 2 | ÷ | ✓ | | | | | | |
| | 3 | ÷ | ✓ | | | | | | |
| | 4 | ÷ | ✓ | | | | | | |
| | 5 | ÷ | ✓ | | | | | | |
| | 6 | ÷ | O | | | | | | |
| | 7 | ÷ | O | | | | | | |
| | 8 | ÷ | O | | | | | | |
| | 9 | ÷ | O | | | | | | |
| | 10 | ÷ | ✓ | | | | | | |
| | 11 | ÷ | ✓ | | | | | | |
| | 12 | ÷ | ✓ | | | | | | |
| | 13 | ÷ | ✓ | | | | | | |
| | 14 | ÷ | ✓ | | | | | | |
| | 15 | ÷ | O | | | | | | |
| | 16 | ÷ | ✓ | | | | | | |
| | 17 | ÷ | N | | | | | | |
| | 18 | ÷ | N | | | | | | |
| | 19 | ÷ | N | | | | | | |
| | 20 | ÷ | N | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/202,966 | Huang et al. |
| | **Examiner** | **Art Unit** |
| | THADDEUS B COX | 3791 |

| CPC - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| A61H19/32 | 10/04/2023 | TC |
| A61H19$, A61H21$ | 10/04/2023 | TC |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Inventor search in DAV | 10/04/2023 | TC |
| Similarity Search and MLTD search in PE2E | 10/04/2023 | TC |
| Global Dossier search | 10/04/2023 | TC |
| Review of related applications | 10/04/2023 | TC |
| Attached PE2E search with text-limited class searching and text searching | 10/04/2023 | TC |

| Interference Search | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| | | | |

| /THADDEUS B COX/ Primary Examiner, Art Unit 3791 | |
|---|---|
| | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/202,966 | Huang et al. |
| | **Examiner** | **Art Unit** |
| | THADDEUS B COX | 3791 |

/THADDEUS B COX/
Primary Examiner, Art Unit 3791

## PE2E SEARCH – Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| L1 | 44 | (Artificial Intelligence) Similar to: 18/202,966 with 0 CPC Selections and 0 Text Selections ———————— Text: (EP-3630041-B1 OR US-20210128395-A1 OR JP-2020521587-A OR RU-2019143122-A OR RU-2750656-C1 OR AU-2018278239-A1 OR ES-2895443-T3 OR CN-111148495-A OR WO-2018220120-A1 OR US-20230210718-A1 OR RU-2015142507-A OR DE-102013102280-A1 OR TW-201436784-A OR KR-20150129763-A OR ES-2682676-T3 OR US-20230083660-A1 OR KR-102245754-B1 OR AU-2014224947-A1 OR CA-2901794-A1 OR WO-2014135301-A1 OR EP-2964179-A1 OR CN-105120822-A OR US-20160008214-A1 OR AU-2014224947-B2 OR CA-2901794-C OR DE-202021105756-U1 OR RU-2649524-C2 OR EP-2964179-B1 OR JP-2016508802-A OR US-11419783-B2 OR ES-1217362-U OR ES-1217362-U9 OR US-11752063-B1 OR CN-113226244-A OR EP-3815667-A1 OR WO-2020002738-A1 OR DE-202023102232-U1 OR US-20210186798-A1 OR DE-202023102526-U1 OR US-10028882-B1 OR US-20150065792-A1 OR WO-2014043878-A1 OR CN-104812354-A OR WO-2018000835-A1 OR EP-3474808-A1 | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:14 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | OR US-20170367924-A1 OR DE-7520052-U OR EP-3697366-A1 OR US-20090099413-A1 OR US-8308631-B2).did. | | | | | |
| L2 | 1 | "11730665".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:15 PM |
| L3 | 49 | (Artificial Intelligence) More like doc: US-11730665-B1 Text: (DE-202023101938-U1 OR US-11737949-B1 OR US-20150196454-A1 OR US-20210113424-A1 OR CN-211934816-U OR WO-2020007120-A1 OR CN-215689724-U OR CN-113813149-A OR WO-2022078401-A1 OR DE-202017005314-U1 OR WO-2013048897-A1 OR CN-215840360-U OR CN-215781002-U OR KR-20140066403-A OR DE-102017008975-A1 OR EP-0436719-B1 OR EP-0436719-A1 OR KR-20020082809-A OR CN-219271494-U OR US-20230069573-A1).did. | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/10/03 04:15 PM |
| L4 | 1 | "20150196454".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, | OR | ON | ON | 2023/10/03 04:19 PM |

| | | | PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
|---|---|---|---|---|---|---|---|
| L5 | 39 | (Artificial Intelligence) More like doc: US-20150196454-A1<br><br>Text:<br>(US-8647255-B2 OR US-20130281776-A1 OR US-20100041944-A1 OR US-20200060928-A1 OR WO-2015060717-A1 OR EP-3518859-A1 OR AU-2017337299-A1 OR WO-2018058234-A1 OR CA-3038570-A1 OR US-11547626-B2 OR CN-110198697-A OR EP-3513771-A1 OR EP-3356911-B1 OR WO-2014127528-A1 OR CN-102149361-B OR JP-5630717-B2 OR EP-3356911-A1 OR WO-2017055830-A1 OR US-10747319-B2 OR US-20180284890-A1).did. | (US-PGPUB;  USPAT;  USOCR;  FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN);  FPRS;  EPO; JPO;  DERWENT; IBM_TDB) | OR | ON | ON | 2023/10/03 04:24 PM |
| L6 | 178 | 1 OR 3 OR 5 | (US-PGPUB;  USPAT; USOCR;  FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN);  FPRS;  EPO; JPO;  DERWENT; IBM_TDB) | OR | ON | ON | 2023/10/03 04:24 PM |
| L7 | 81 | 6 AND @ad<"20230529" | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, | OR | ON | ON | 2023/10/03 04:25 PM |

| | | | SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
|---|---|---|---|---|---|---|---|
| L8 | 2 | ("20230126338," "20050228219").pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:27 PM |
| L9 | 2 | "20180092798".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:30 PM |
| L10 | 1 | "20170231801".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:31 PM |
| L11 | 2 | "20230083660".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, | OR | ON | ON | 2023/10/03 04:34 PM |

| | | | TN, TR, TW, UA, VN, WO)) | | | | |
|---|---|---|---|---|---|---|---|
| L12 | 1663 | A61H19/32.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:50 PM |
| L13 | 129 | 12 AND (handle WITH (second OR two OR pair OR set)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:53 PM |
| L14 | 2 | "5,873,813".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 04:57 PM |
| L15 | 1 | "20050187431".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, | OR | ON | ON | 2023/10/03 05:06 PM |

| | | | WO)) | | | | |
|---|---|---|---|---|---|---|---|
| L16 | 133 | 12 AND handles | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | OFF | ON | 2023/10/03 05:07 PM |
| L17 | 90 | 16 NOT 13 | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | OFF | ON | 2023/10/03 05:07 PM |
| L18 | 7261 | A61H19$.cpc. OR A61H21$.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 05:13 PM |
| L19 | 405 | 18 AND handles | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | OFF | ON | 2023/10/03 05:13 PM |

| L20 | 272 | 19 NOT (16 OR 13) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | OFF | ON | 2023/10/03 05:13 PM |
| L21 | 95 | 20 AND (handle WITH button) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/03 05:13 PM |
| L22 | 734 | 18 AND (handle WITH (detach$ OR de$coupl$ OR slid$ OR rotat$ OR remov$ OR releasab$ OR unfasten$ OR dis$connect$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 03:12 PM |
| L23 | 314 | 18 AND (handle WITH rotat$) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 03:24 PM |
| L24 | 71 | 18 AND (handle WITH | (US-PGPUB; USPAT; | OR | ON | ON | 2023/10/04 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | rotatab$) | USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | 03:25 PM |
| L25 | 21 | 18 AND (handle WITH slidab$) | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 03:30 PM |
| L26 | 110 | 12 AND (handle WITH (detach$ OR de$coupl$ OR slid$ OR rotat$ OR remov$ OR releasab$ OR unfasten$ OR dis$connect$)) | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 03:44 PM |
| L27 | 2 | "20210113424".pn. | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 04:04 PM |
| L28 | 33 | 12 AND (motor$ WITH embed$) | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, | OR | ON | ON | 2023/10/04 04:23 PM |

| | | | AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | | | | |
|---|---|---|---|---|---|---|---|
| L29 | 9 | 12 AND (motor$ WITH (encas$ OR encapsulat$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 04:26 PM |
| L30 | 2 | "20210128400".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/10/04 04:42 PM |

## PE2E SEARCH - Search History (Interference)

There are no Interference searches to show.

# Bibliographic Data

Application No: 18/202,966

Foreign Priority claimed: ⦿ Yes ◯ No

35 USC 119 (a-d) conditions met: ☑ Yes ☐ No ☐ Met After Allowance

Verified and Acknowledged: /THADDEUS B COX/

Examiner's Signature | Initials

Title: PENIS MASSAGER

| FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 05/29/2023 **RULE** | 600 | 3791 | 22A1385US-CIP |

**APPLICANTS**

Junpeng Wu, Shenzhen, CHINA

**INVENTORS**

Tenghui Huang, Dongguan, CHINA

Junpeng Wu, Shenzhen, CHINA

Zhixu Yang, Dongguan, CHINA

**CONTINUING DATA**

This application is a CIP of 18119859 03/10/2023 PAT 11730665

**FOREIGN APPLICATIONS**

**IF REQUIRED, FOREIGN LICENSE GRANTED**

06/15/2023

**\*\* SMALL ENTITY \*\***

**STATE OR COUNTRY**

CHINA

**ADDRESS**

Kevin P. Chen

255 Riverdale Dr

Fort Lee, NJ 07024

UNITED STATES

**FILING FEE RECEIVED**

$2,400

# Patent Translate
Powered by EPO and Google

# Notice

This translation is machine-generated. It cannot be guaranteed that it is intelligible, accurate, complete, reliable or fit for specific purposes. Critical decisions, such as commercially relevant or financial decisions, should not be based on machine-translation output.

# DESCRIPTION DE202017005314U1

[0001]

13 The invention relates to the technical field of vibrators as sex toys for adults. In particular, the invention relates to a vibrator according to the preamble of claim 1. A vibrator according to the preamble of claim 1 is known from US 6,350,230 B1.

----------------------------------------------------------------------------------------------------

17 Die Erfindung betrifft das technische Gebiet der Vibratoren als Sexspielzeuge für Erwachsene. Insbesondere betrifft die Erfindung einen Vibrator nach dem Oberbegriff des Anspruchs 1. Ein Vibrator gemäß dem Oberbegriff von Anspruch 1 ist aus der US 6,350,230 B1 bekannt.

[0002]

25 A variety of more or less lifelike replicas of a male member have long been known from the prior art as sex toys for adults.

----------------------------------------------------------------------------------------------------

28 Aus dem Stand der Technik sind seit langem vielfältige mehr oder weniger naturgetreue Nachbildungen eines männlichen Gliedes als Sexspielzeuge für Erwachsene bekannt.

32 Such devices exist in the prior art both as passive devices without a vibrator function as so-called "dildos" and as devices with an integrated vibrator function implemented electrically or electromechanically as so-called "vibrators".

----------------------------------------------------------------------------------------------------

36 Derartige Vorrichtungen gibt es im Stand der Technik sowohl als passive Vorrichtungen ohne Vibratorfunktion als sogenannte „Dildos", als auch als Vorrichtungen mit integrierter, auf

elektrischem bzw. elektromechanischem Wege realisierter Vibratorfunktion als sogenannte „Vibratoren".

[0003]

45 Various technical implementation options for the vibrator function as such for the above-mentioned vibrators are known to those skilled in the art from the prior art and therefore do not need to be discussed in further detail here.

----------------------------------------------------------------------------------------------------

49 Verschiedene technische Realisierungsmöglichkeiten der Vibratorfunktion als solcher für die vorstehend genannten Vibratoren sind dem Fachmann aus dem Stand der Technik geläufig und brauchen daher hier nicht weiter vertieft erörtert zu werden.

54 In such vibrators, the vibration is often caused, for example, by a weight with strong unbalance arranged on a drive shaft of an electric motor. Another way to generate vibrations, which is often used in vibrators, is to use a type of direct current relay with self-interrupting, similar to an electromechanical bell, whereby a coil armature or a coil itself is caused to mechanically vibrate using direct current. In addition, the person skilled in the art is familiar with various other different types of vibration generation in connection with vibrators as sex toys for adults from the prior art.

----------------------------------------------------------------------------------------------------

62 Häufig wird bei derartigen Vibratoren die Vibration beispielsweise durch ein auf einem Antriebsschaft eines Elektromotors angeordnetes Gewicht mit starker Unwucht hervorgerufen. Eine andere bei Vibratoren vielfach verwendete Möglichkeit der Vibrationserzeugung besteht in der Verwendung einer Art Gleichstromrelais mit Selbstunterbrechung, ähnlich wie bei einer elektromechanischen Klingel, wobei ein Spulenanker oder eine Spule selbst mittels Gleichstroms in mechanische Schwingungen versetzt wird. Darüber hinaus sind dem Fachmann diverse weitere unterschiedliche Arten der Vibrationserzeugung im Zusammenhang mit Vibratoren als Sexspielzeuge für Erwachsene aus dem Stand der Technik geläufig.

[0004]

75 Such vibrators are available in the prior art as simple designs in very different shapes, colors and sizes and without any additional functions beyond the simple vibrator function.

----------------------------------------------------------------------------------------------------

78 Derartige Vibratoren gibt es im Stand der Technik als einfache Ausführungen in ganz unterschiedlichen Formen, Farbgestaltungen und Größen und ohne irgendwelche über die

einfache Vibratorfunktion hinausgehende Zusatzfunktionen.

*83* However, vibrators are also known from the prior art, which offer the user one or another additional function in addition to the simple basic vibrator function.

-------------------------------------------------------------------------------------------------

*86* Allerdings sind aus dem Stand der Technik auch Vibratoren bekannt, welche über die einfache Basis-Vibratorfunktion hinaus der Nutzerin oder dem Nutzer die eine oder andere Zusatzfunktion bieten.

[0005]

*94* For example, there are flexible vibrators in the prior art in which the vibration strength and/or the vibration speed can be adjusted in steps or even continuously.

-------------------------------------------------------------------------------------------------

*97* Beispielsweise gibt es im Stand der Technik biegsame Vibratoren, bei denen die Vibrationsstärke und/oder die Vibrationsgeschwindigkeit in Stufen oder auch stufenlos verstellbar sind.

*102* There are also vibrators in the prior art that heat up to a preset temperature during operation - but not freely selectable by the user. Furthermore, vibrators are known from the prior art in which the user can choose between continuous vibration and pulsating vibration - possibly with different pulsation rhythms - using a corresponding switching device. There are vibrators in the prior art in which the electrical energy is supplied by batteries or Accumulators and / or can be done via a power supply. In addition, there are vibrators in the prior art that can be controlled using a wired or wireless remote control.

-------------------------------------------------------------------------------------------------

*110* Auch gibt es im Stand der Technik Vibratoren, die sich im Betrieb auf eine voreingestellte – aber von der Nutzerin oder dem Nutzer nicht frei wählbare – Temperatur erwärmen. Ferner sind aus dem Stand der Technik Vibratoren bekannt, bei denen die Nutzerin bzw. der Nutzer mittels einer entsprechenden Umschalteinrichtung zwischen Dauervibration und pulsierender Vibration – ggf. mit unterschiedlichen Pulsationsrhythmen – wählen kann. Es gibt im Stand der Technik Vibratoren, bei denen die Elektroenergieversorgung mittels Batterien bzw. Akkumulatoren und/oder über ein Netzteil erfolgen kann. Darüber hinaus gibt es im Stand der Technik Vibratoren, die mittels einer kabelgebundenen oder einer kabellosen Fernbedienung steuerbar sind.

**[0006]**

*124* Furthermore, there are vibrators in the prior art which, in addition to their vibrator function, also have a so-called shock function, by means of which brief, shock-like increases in length of the vibrator can be caused in a telescopic or bellows-like manner, but which does not allow the initial length or the base length of the vibrator to be increased Adjust the vibrator permanently.

---------------------------------------------------------------------------------------------------------------------

*129* Ferner gibt es im Stand der Technik Vibratoren, welche zusätzlich zu ihrer Vibratorfunktion auch über eine sogenannte Stoßfunktion verfügen, mittels welcher zwar in teleskopartiger oder faltenbalgartiger Weise kurzzeitige stoßartige Längenvergrößerungen des Vibrators hervorgerufen werden können, die aber nicht erlaubt, die Ausgangslänge bzw. die Basislänge des Vibrators auf permanente Weise zu verstellen.

*136* A dildo with a thrust function is disclosed in DE 10 2009 038 448 A1. Although there are also inflatable embodiments of dildos and vibrators in the prior art, which allow a permanent change in length and thickness of the vibrator - although only to an extremely limited extent in terms of size - these vibrators then lack a shock function and the length and thickness of the corresponding vibrator cannot be adjusted independently. An example of such a dildo is disclosed in DE 201 19 660 U1, and an example of such a vibrator is disclosed in WO 2009/087627 A2.

---------------------------------------------------------------------------------------------------------------------

*144* Ein Dildo mit Stoßfunktion ist in der DE 10 2009 038 448 A1 offenbart. Zwar gibt es im Stand der Technik auch aufblasbare Ausführungsformen von Dildos und Vibratoren, welche in – allerdings größenmäßig nur außerordentlich eingeschränkter Weise – eine permanente Längen- und Dickenänderung des Vibrators erlauben, jedoch fehlt bei diesen Vibratoren dann eine Stoßfunktion, und die Länge und die Dicke des entsprechenden Vibrators können nicht unabhängig voneinander eingestellt werden. Ein Beispiel für einen derartigen Dildo ist in der DE 201 19 660 U1 offenbart, und ein Beispiel für einen derartigen Vibrator ist in der WO 2009/087627 A2 offenbart.

**[0007]**

*157* In addition, there are vibrators with lubricant dispensers in the prior art and even dildos and vibrators that are provided with a liquid chamber and an associated pump device and thus provide a squirting function as a simulation of ejaculation.

---------------------------------------------------------------------------------------------------------------------

*161* Darüber hinaus gibt es im Stand der Technik Vibratoren mit Gleitgelspender und sogar auch solche Dildos und Vibratoren, die mit einer Flüssigkeitskammer und einer zugehörigen Pumpeinrichtung versehen sind und so eine Spritzfunktion als Simulation einer Ejakulation

bereitstellen.

*167* A vibrator with a built-in lubricant dispenser is disclosed in EP 2 735 299 B1. A vibrator with a built-in liquid chamber and an associated pump device for the purpose of implementing a spray function as a simulation of ejaculation is known from US 6,350,230 B1. The vibrator according to US 6,350,230 B1 is also provided with a time control device, via which the user can either set the start time of ejaculation or leave the selection of the ejaculation start time to an electronic random generator. In addition, the vibrator according to US 6,350,230 B1 has an electrical heating device including gel or liquid heat storage, which can be switched on by the user to heat the vibrator.

-------------------------------------------------------------------------------------------------

*176* Ein Vibrator mit eingebautem Gleitmittelspender ist in der EP 2 735 299 B1 offenbart. Ein Vibrator mit eingebauter Flüssigkeitskammer und einer zugehörigen Pumpeinrichtung zwecks Realisierung einer Spritzfunktion als Simulation einer Ejakulation ist aus der US 6,350,230 B1 bekannt. Der Vibrator gemäß der US 6,350,230 B1 ist ferner mit einer Zeitsteuerungseinrichtung versehen, über welche die Nutzerin oder der Nutzer den Startzeitpunkt der Ejakulation wahlweise fest einstellen oder die Auswahl des Ejakulations-Startzeitpunktes einem elektronischen Zufallsgenerator überlassen kann. Darüber hinaus weist der Vibrator gemäß der US 6,350,230 B1 eine elektrische Heizungseinrichtung samt Gel- oder Flüssigkeits-Wärmespeicher auf, welche von der Nutzerin oder dem Nutzer wahlweise zum Erwärmen des Vibrators eingeschaltet werden kann.

[0008]

*191* Furthermore, dildos and vibrators with built-in or attached mini camera devices - some including LED lighting devices - are also known from the prior art, which can be used both for professional film recordings and as pure pleasure toys.

-------------------------------------------------------------------------------------------------

*195* Ferner sind aus dem Stand der Technik auch Dildos und Vibratoren mit eingebauter oder aufgesetzter Mini-Kameraeinrichtung – teilweise inklusive LED-Beleuchtungseinrichtung – bekannt, die sowohl für professionelle Filmaufnahmen als auch als reines Vergnügungsspielzeug verwendbar ist.

*201* Such devices are described, for example, in DE 20 2011 104 946 U1 and in DE 20 2010 013 764 U1.

-------------------------------------------------------------------------------------------------

*204* Derartige Vorrichtungen sind beispielsweise in der DE 20 2011 104 946 U1 und in der DE 20 2010 013 764 U1 beschrieben.

[0009]

*211* There are also vibrators in the prior art that are equipped with a special vacuum suction device for clitoral stimulation.

-------------------------------------------------------------------------------------------------------

*214* Daneben gibt es im Stand der Technik Vibratoren, die mit einer besonderen Vakuum-Ansaugeinrichtung zur Klitoris-Stimulation versehen sind.

[0010]

*221* From WO 2009/146840 A1 a vibrator is also known which has at least one sensor for measured values of the body surface.

-------------------------------------------------------------------------------------------------------

*224* Aus der WO 2009/146840 A1 ist ferner ein Vibrator bekannt, welcher mindestens einen Sensor für Messwerte der Körperoberfläche aufweist.

*228* US 7,946,977 B2 discloses a vibrator in which the user can regulate the speed of vibration as well as the rhythm or pulsation of the vibration and which is also provided with a device for playing music and with an LED device for generating light effects is.

-------------------------------------------------------------------------------------------------------

*232* Die US 7,946,977 B2 offenbart einen Vibrator, bei dem der Nutzer bzw. die Nutzerin die Vibrationsgeschwindigkeit sowie den Rhythmus oder die Pulsation der Vibration regulieren kann und der darüber hinaus mit einer Einrichtung zum Abspielen von Musik und mit einer LED-Einrichtung zur Erzeugung von Lichteffekten versehen ist.

[0011]

*241* As explained above, there is a very large variety of vibrators in the prior art, each with one or the other additional function.

-------------------------------------------------------------------------------------------------------

*244* Wie vorstehend dargelegt, gibt es im Stand der Technik eine sehr große Vielfalt von Vibratoren mit jeweils der einen oder der anderen Zusatzfunktion.

248 However, if a lover of such sex toys would like to try out or use various different additional functions while playing, he or she is currently forced to purchase several different vibrators - each with one or the other additional function.

----------------------------------------------------------------------------------------------------

252 Wenn jedoch eine Liebhaberin oder ein Liebhaber von derartigem Sexspielzeug beim Spielen gerne diverse unterschiedliche Zusatzfunktionen ausprobieren oder verwenden möchte, so ist sie oder er derzeit gezwungen, mehrere verschiedene Vibratoren – jeweils versehen mit der einen oder der anderen Zusatzfunktion – zu erwerben.

258 On the one hand, this is expensive and, on the other hand, it affects the pleasure of sex play if the user has to constantly switch back and forth between different vibrators.

----------------------------------------------------------------------------------------------------

261 Das ist zum einen teuer und beeinträchtigt zum anderen das Vergnügen beim Sexspiel, wenn die Nutzerin oder der Nutzer ständig zwischen verschiedenen Vibratoren hin und her wechseln muß.

[0012]

269 The invention is therefore based on the object of providing a vibrator as a sex toy for adults, which overcomes the disadvantage of the vibrators known from the prior art mentioned in the previous paragraph.

----------------------------------------------------------------------------------------------------

273 Der Erfindung liegt deshalb die Aufgabe zugrunde, einen Vibrator als Sexspielzeug für Erwachsene bereitzustellen, welcher den im vorangegangenen Absatz genannten Nachteil der aus dem Stand der Technik bekannten Vibratoren überwindet.

278 Furthermore, the invention is based on the object of providing a set which contains the above-mentioned novel vibrator as a component.

----------------------------------------------------------------------------------------------------

281 Ferner liegt der Erfindung die Aufgabe zugrunde, ein Set bereitzustellen, welches den vorstehend genannten neuartigen Vibrator als Bestandteil enthält.

[0013]

288 According to the invention, this object is achieved by a vibrator according to claim 1, by a vibrator according to claim 2, by a set according to claim 40, by a set according to claim 46

and by a set according to claim 50.

---

*292* Erfindungsgemäß wird diese Aufgabe gelöst durch einen Vibrator nach Anspruch 1, durch einen Vibrator nach Anspruch 2, durch ein Set nach Anspruch 40, durch ein Set nach Anspruch 46 und durch ein Set nach Anspruch 50.

[0014]

*300* The vibrator according to the invention according to claim 1 and also the vibrator according to the invention according to claim 2 have the advantage that they each give the user a multifunctional vibrator, which saves the user from having to buy a whole drawer full of different vibrators to have to.

---

*305* Der erfindungsgemäße Vibrator nach Anspruch 1 und auch der erfindungsgemäße Vibrator nach Anspruch 2 haben den Vorteil, dass sie jeweils der Nutzerin oder dem Nutzer einen multifunktionalen Vibrator an die Hand geben, was der Nutzerin oder dem Nutzer erspart, sich eine ganz Schublade voller unterschiedlicher Vibratoren anschaffen zu müssen.

*311* The respective vibrator according to the invention saves costs and space and is quickly at hand.

---

*314* Der jeweilige erfindungsgemäße Vibrator spart also Kosten und Platz und ist schnell zur Hand.

*317* The user does not have to spend a long time searching for which vibrator with which function. Size she or he needs right now. A single vibrator - and you're done.

---

*320* Die Nutzerin bzw. der Nutzer müssen nicht erst lange suchen, welchen Vibrator mit welcher Funktion bzw. Größe sie bzw. er gerade braucht. Ein einziger Vibrator – und fertig.

[0015]

*327* Advantageous and preferred embodiments of the vibrator according to the invention according to claim 1 are the subject of claims 3 and 5 to 39.

---

*330* Vorteilhafte und bevorzugte Ausführungsformen des erfindungsgemäßen Vibrators nach Anspruch 1 sind Gegenstand der Ansprüche 3 und 5 bis 39.

*334* Advantageous and preferred embodiments of the vibrator according to the invention according to claim 2 are the subject of claims 4 to 39. Advantageous and preferred embodiments of the set according to the invention according to claim 40 are the subject of claims 41 to 45, 47 to 49 and 51 to 61. Advantageous and preferred embodiments of the set according to the invention according to claim 46 are the subject of claims 48, 49 and 51 to 61. Advantageous and preferred embodiments of the set according to the invention according to claim 50 are the subject of claims 52 to 61.

---------------------------------------------------------------------------------------------------

*342* Vorteilhafte und bevorzugte Ausführungsformen des erfindungsgemäßen Vibrators nach Anspruch 2 sind Gegenstand der Ansprüche 4 bis 39. Vorteilhafte und bevorzugte Ausführungsformen des erfindungsgemäßen Sets nach Anspruch 40 sind Gegenstand der Ansprüche 41 bis 45, 47 bis 49 und 51 bis 61. Vorteilhafte und bevorzugte Ausführungsformen des erfindungsgemäßen Sets nach Anspruch 46 sind Gegenstand der Ansprüche 48, 49 und 51 bis 61. Vorteilhafte und bevorzugte Ausführungsformen des erfindungsgemäßen Sets nach Anspruch 50 sind Gegenstand der Ansprüche 52 bis 61.

## [0016]

*354* Exemplary embodiments of the invention are explained below with reference to figures.

---------------------------------------------------------------------------------------------------

*356* Ausführungsbeispiele der Erfindung werden nachfolgend anhand von Figuren erläutert.

*359* It shows:

---------------------------------------------------------------------------------------------------

*361* Es zeigt:

## [0017]

*367* 1a shows, purely schematically and not to scale, an exemplary embodiment of a vibrator according to the invention with the first value of a base length set and the first value of a base thickness set,

---------------------------------------------------------------------------------------------------

*371* Fig. 1a rein schematisch und nicht maßstabsgerecht ein Ausführungsbeispiel eines erfindungsgemäßen Vibrators bei eingestelltem erstem Wert einer Basis-Länge und eingestelltem erstem Wert einer Basis-Dicke,

**[0018]**

*379* 1b shows, purely schematically and not to scale, the exemplary embodiment of the vibrator according to the invention with the second value of the base length set and the first value of the base thickness set,

---------------------------------------------------------------------------------------------------------

*383* Fig. 1b rein schematisch und nicht maßstabsgerecht das Ausführungsbeispiel des erfindungsgemäßen Vibrators bei eingestelltem zweitem Wert der Basis-Länge und eingestelltem erstem Wert der Basis-Dicke,

**[0019]**

*391* 2a shows, purely schematically and not to scale, the exemplary embodiment of the vibrator according to the invention with the settings of the base length and the base thickness as in FIG. 1a,

---------------------------------------------------------------------------------------------------------

*395* Fig. 2a rein schematisch und nicht maßstabsgerecht das Ausführungsbeispiel des erfindungsgemäßen Vibrators mit den Einstellungen der Basis-Länge und der Basis-Dicke wie in Fig. 1a,

**[0020]**

*403* 2b shows, purely schematically and not to scale, the exemplary embodiment of the vibrator according to the invention with the first value of the base length set and the second value of the base thickness set,

---------------------------------------------------------------------------------------------------------

*407* Fig. 2b rein schematisch und nicht maßstabsgerecht das Ausführungsbeispiel des erfindungsgemäßen Vibrators bei eingestelltem erstem Wert der Basis-Länge und eingestelltem zweitem Wert der Basis-Dicke,

**[0021]**

*415* 3a shows, purely schematically and not to scale, the exemplary embodiment of the vibrator

according to the invention with the settings of the base length and the base thickness as in FIG. 1b,

-------------------------------------------------------------------------------

*419* Fig. 3a rein schematisch und nicht maßstabsgerecht das Ausführungsbeispiel des erfindungsgemäßen Vibrators mit den Einstellungen der Basis-Länge und der Basis-Dicke wie in Fig. 1b,

[0022]

*427* 3b shows, purely schematically and not to scale, the exemplary embodiment of the vibrator according to the invention with the second value of the base length set and the second value of the base thickness set,

-------------------------------------------------------------------------------

*431* Fig. 3b rein schematisch und nicht maßstabsgerecht das Ausführungsbeispiel des erfindungsgemäßen Vibrators bei eingestelltem zweitem Wert der Basis-Länge und eingestelltem zweitem Wert der Basis-Dicke,

[0023]

*439* 4a, b show purely schematically and not to scale a shock function of the exemplary embodiment of the vibrator according to the invention, starting from the settings of the base length and the base thickness shown in FIG. 1a

-------------------------------------------------------------------------------

*443* Fig. 4a, b rein schematisch und nicht maßstabsgerecht eine Stoßfunktion des Ausführungsbeispiels des erfindungsgemäßen Vibrators ausgehend von den in Fig. 1a gezeigten Einstellungen der Basis-Länge und der Basis-Dicke und

[0024]

*451* Fig. 5 shows purely schematically and not to scale the exemplary embodiment of the vibrator according to the invention in the state according to Fig. 4b with simultaneous actuation of a spray device.

-------------------------------------------------------------------------------

*455* Fig. 5 rein schematisch und nicht maßstabsgerecht das Ausführungsbeispiel des erfindungsgemäßen Vibrators im Zustand gemäß Fig. 4b bei gleichzeitiger Betätigung einer Spritzeinrichtung.

## [0025]

*463* In the figures, an exemplary embodiment of a vibrator according to the invention as a sex toy for adults is shown purely schematically and not to scale, with the individual figures showing the vibrator mentioned in different settings and activity states, as will be explained in more detail below.

-------------------------------------------------------------------------------------------------------

*468* In den Figuren ist rein schematisch und nicht maßstabsgerecht ein Ausführungsbeispiel eines erfindungsgemäßen Vibrators als Sexspielzeug für Erwachsene gezeigt, wobei die einzelnen Figuren den genannten Vibrator in verschiedenen Einstellungen und Aktivitätszuständen zeigen, wie im folgenden noch näher erläutert wird.

## [0026]

*477* The exemplary embodiment of the vibrator according to the invention shown in the figures has a spray device for simulating ejaculation, which is known per se from the prior art and is therefore not shown in further detail in the figures.

-------------------------------------------------------------------------------------------------------

*481* Das in den Figuren dargestellte Ausführungsbeispiel des erfindungsgemäßen Vibrators weist eine aus dem Stand der Technik an sich bekannte und daher in den Figuren nicht weiter im Detail dargestellte Spritzeinrichtung zur Simulation einer Ejakulation auf.

*486* Typically, such a spray device is provided with a liquid container, which is designed in such a way that it can be filled, and therefore refilled, as often as desired by the user of the vibrator with any liquid that is harmless to the human body, for example water.

-------------------------------------------------------------------------------------------------------

*490* Üblicherweise ist eine solche Spritzeinrichtung mit einem Flüssigkeitsbehälter versehen, welcher so ausgebildet ist, dass er beliebig oft mit beliebiger, für den menschlichen Körper unschädlicher Flüssigkeit, beispielsweise Wasser, durch die Nutzerin oder den Nutzer des Vibrators befüllbar, mithin also nachfüllbar, ist.

*496* Furthermore, a time control device can be provided for controlling the time of the spraying of the spray device, the time control device being set up so that a user can select the time of the controlled spraying of the spray device.

-------------------------------------------------------------------------------------------------------

500 Ferner kann eine Zeitsteuerungseinrichtung zur Steuerung des Zeitpunktes des Absspritzens der Spritzeinrichtung vorgesehen sein, wobei die Zeitsteuerungseinrichtung so eingerichtet ist, dass eine Nutzerin bzw. ein Nutzer den Zeitpunkt des gesteuerten Absspritzens der Spritzeinrichtung wählbar einstellen kann.

506 The spraying device mentioned for simulating ejaculation can also be set up in such a way that the spraying of the spraying device can be initiated by means of external pressure on the vibrator.

-------------------------------------------------------------------------------------------------

510 Die genannte Spritzeinrichtung zur Simulation einer Ejakulation kann aber auch so eingerichtet sein, dass das Absspritzen der Spritzeinrichtung mittels äußeren Drucks auf den Vibrator eingeleitet werden kann.

515 A combination of both a time control device and an independent triggering of the spraying of the spraying device by means of external pressure on the vibrator is also possible in other exemplary embodiments of the vibrator according to the invention.

-------------------------------------------------------------------------------------------------

519 Auch eine Kombination von sowohl Zeitsteuerungseinrichtung als auch davon unabhängiger Auslösung des Absspritzens der Spritzeinrichtung mittels äußeren Drucks auf den Vibrator ist bei anderen Ausführungsbeispielen des erfindungsgemäßen Vibrators möglich.

[0027]

527 If a time control device as mentioned above is provided, it is particularly advantageous to provide it with a random generator in addition to the normal time setting variant for triggering the ejaculation and to set up the time control device in such a way that the user can select whether the time of the Spraying of the spray device is controlled by the random generator, i.e. H. should be determined randomly by the random generator.

-------------------------------------------------------------------------------------------------

533 Sofern eine wie vorstehend genannte Zeitsteuerungseinrichtung vorgesehen ist, ist es besonders vorteilhaft, diese neben der normalen Zeiteinstellungsvariante für die Auslösung des Absspritzens außerdem auch mit einem Zufallsgenerator zu versehen und die Zeitsteuerungseinrichtung so einzurichten, dass die Nutzerin oder der Nutzer auswählen kann, ob der Zeitpunkt des Absspritzens der Spritzeinrichtung mittels des Zufallsgenerators gesteuert, d. h. von dem Zufallsgenerator nach dem Zufallsprinzip festgelegt werden soll.

[0028]

544 If an exemplary embodiment of the vibrator according to the invention is provided with a spray device for simulating ejaculation, which is set up in such a way that the spraying of the spray device can be initiated by means of external pressure on the vibrator, and provided that this exemplary embodiment of the vibrator according to the invention just mentioned can be used at least also for a female user is intended, it is particularly advantageous if the vibrator is set up and coordinated for use by the female user in such a way that the said external pressure on the vibrator is used to initiate the spraying of the spray device from the user's vaginal muscles, preferably during an orgasm ' of the user.

-----------------------------------------------------------------------------------------------------

553 Sofern ein Ausführungsbeispiel des erfindungsgemäßen Vibrators mit einer Spritzeinrichtung zur Simulation einer Ejakulation versehen ist, die so eingerichtet ist, dass das Abspritzen der Spritzeinrichtung mittels äußeren Drucks auf den Vibrator eingeleitet werden kann, und sofern dieses eben genannte Ausführungsbeispiel des erfindungsgemäßen Vibrators zur Verwendung zumindest auch für eine weibliche Nutzerin vorgesehen ist, ist es besonders vorteilhaft, wenn der Vibrator zur Verwendung für die weibliche Nutzerin so eingerichtet und abgestimmt ist, dass der genannte äußere Druck auf den Vibrator zur Einleitung des Abspritzens der Spritzeinrichtung von der Scheidenmuskulatur der Nutzerin, bevorzugterweise während eines Orgasmus' der Nutzerin, aufgebracht wird.

[0029]

567 In general, it should be noted that the external pressure, which has already been mentioned several times above, for initiating the spraying of the spraying device does not necessarily have to act as such - as is known from the prior art - mechanically directly on a liquid container of the spraying device and thus immediately bring about the spraying.

-----------------------------------------------------------------------------------------------------

572 Dabei ist ganz generell anzumerken, dass der vorstehend bereits mehrfach erwähnte äußere Druck zur Einleitung des Abspritzens der Abspritzeinrichtung keineswegs unbedingt als solcher – wie aus dem Stand der Technik bekannt – mechanisch unmittelbar auf einen Flüssigkeitsbehälter der Spritzeinrichtung einwirken und so unmittelbar das Abspritzen bewirken muss.

579 Rather, exemplary embodiments of vibrators according to the invention can, for example, also be exemplary embodiments in which the external pressure mentioned is in turn only such, possibly even relatively weak, external pressure, which is detected by a sensor device provided for this purpose, which in turn has a control device For example, a pump built into the vibrator is activated to spray the liquid out of the spray device.

---------------------------------------------------------------------------------

585 Vielmehr kann es sich bei Ausführungsbeispielen erfindungsgemäßer Vibratoren beispielsweise auch um solche Ausführungsbeispiele handeln, bei denen der genannte äußere Druck seinerseits nur ein solcher, unter Umständen sogar relativ schwacher äußerer Druck ist, welcher von einer dafür vorgesehenen Sensoreinrichtung erfasst wird, welche dann ihrerseits über eine Steuerungseinrichtung beispielsweise eine in den Vibrator eingebaute Pumpe zwecks Abspritzens der Flüssigkeit aus der Spritzeinrichtung in Betrieb setzt.

593 In this context, the term "pressure" is to be understood in a very broad sense in the context of the present invention and therefore not only necessarily means a static or short-term pressure, but it can also just as easily be understood as a "time-varying pressure curve over a specific one period of time".

---------------------------------------------------------------------------------

598 Der Begriff „Druck" ist in diesem Zusammenhang im Rahmen der vorliegenden Erfindung in einem sehr weiten Sinne zu verstehen und braucht daher nicht nur unbedingt einen statischen oder kurzzeitigen Druck bedeuten, sondern er kann genauso gut auch verstanden werden als „zeitlich veränderlicher Druckverlauf über einen bestimmten Zeitabschnitt hinweg".

604 All of this can be measured statically and/or dynamically using suitable sensor devices and can be used to control the spraying of the spraying device.

---------------------------------------------------------------------------------

607 All dies ist statisch und/oder dynamisch mit geeigneten Sensoreinrichtungen messtechnisch erfassbar und kann zur Steuerung des Abspritzens der Spritzeinrichtung verwendet werden.

611 To further refine such a control, exemplary embodiments of the vibrator according to the invention can, for example, also be provided with an integrated pulse measuring device and/or with an integrated blood pressure measuring device, the static and/or dynamic measured value characteristics of which are also used to control the spraying of the spraying device.

---------------------------------------------------------------------------------

616 Zur weiteren Verfeinerung einer solchen Ansteuerung können Ausführungsbeispiele des erfindungsgemäßen Vibrators beispielsweise auch mit einer integrierten Pulsmessungseinrichtung und/oder mit einer integrierten Blutdruckmessungseinrichtung versehen sein, deren statische und/oder dynamische Messwertcharakteristiken ebenfalls zur Steuerung des Abspritzens der Spritzeinrichtung verwendet werden.

623 Corresponding suitable sensor and evaluation devices are known as such from the prior medical technology.

---------------------------------------------------------------------------------

626 Entsprechende geeignete Sensor- und Auswerteeinrichtungen sind als solche aus dem Stand der Medizintechnik bekannt.

[0030]

633 A variety of different embodiments of the vibrator according to the invention can be produced in terms of shape, color and feel.

----------------------------------------------------------------------------------------

636 In Form, Farbe und Haptik können vielfältige verschiedene Ausführungsbeispiele des erfindungsgemäßen Vibrators hergestellt werden.

640 For example, an exemplary embodiment of a vibrator according to the invention can be realistically modeled on a male member in terms of shape, color and feel.

----------------------------------------------------------------------------------------

643 So kann ein Ausführungsbeispiel eines erfindungsgemäßen Vibrators beispielsweise in Form, Farbe und Haptik einem männlichen Glied realistisch nachgebildet sein.

647 In other exemplary embodiments, a vibrator according to the invention can, for example, be made in a bright, bright color or

----------------------------------------------------------------------------------------

650 Bei anderen Ausführungsbeispielen kann ein erfindungsgemäßer Vibrator beispielsweise in einer grellen, leuchtenden Farbe bzw.

654 Neon color, or its exterior can be vintage or

----------------------------------------------------------------------------------------

656 Neon-Farbe gehalten sein, oder sein Äußeres kann im Vintage- bzw.

659 Be designed scrapbooking style.

----------------------------------------------------------------------------------------

661 Scrapbooking-Stil gestaltet sein.

[0031]

667 In any case, a vibrator according to the invention must be a flexible vibrator.

-------------------------------------------------------------------------------------------------------

*669* In jedem Falle muss ein erfindungsgemäßer Vibrator jedoch ein biegsamer Vibrator sein.


*672* Furthermore, it must always be set up in such a way that both a base length and a base thickness of the vibrator are permanently and independently of each other in at least two different sizes L1, L2 or

-------------------------------------------------------------------------------------------------------

*676* Er muss ferner stets so eingerichtet sein, dass sowohl eine Basis-Länge als auch eine Basis-Dicke des Vibrators jeweils dauerhaft und jeweils unabhängig voneinander in jeweils mindestens zwei verschiedenen Größen L1, L2 bzw.


*681* B1, B2 can be adjusted (cf. Fig. 1 to Fig. 3). A vibrator according to the invention must also always be set up so that it has a shock function that can be switched on and off by the user of the vibrator, with the shock speed and / or the shock frequency in at least two stages, preferably in three levels that can be selected and adjusted (cf. Fig. 4). In addition, a vibrator according to the invention must always be set up in such a way that it can be operated either with a replaceable battery or with a replaceable accumulator or with a power supply unit for connection to an external power supply. In this respect, the external power grid is, for example, the public power grid or, for example, the on-board power grid of a motor vehicle or a boat or ship in question.

-------------------------------------------------------------------------------------------------------

*691* B1, B2 einstellbar sind (vgl. Fig. 1 bis Fig. 3). Ein erfindungsgemäßer Vibrator muss darüber hinaus stets so eingerichtet sein, dass er eine Stoßfunktion aufweist, die von der Nutzerin bzw. dem Nutzer des Vibrators wahlweise ein- und ausgeschaltet werden kann, wobei die Stoßgeschwindigkeit und/oder die Stoßfrequenz in mindestens zwei Stufen, vorzugsweise in drei Stufen, wählbar einstellbar ist bzw. sind (vgl. Fig. 4). Außerdem muss ein erfindungsgemäßer Vibrator stets so eingerichtet sein, dass er wahlweise entweder mit wechselbarer Batterie bzw. mit wechselbarem Akkumulator oder mit Strom-Netzteil zum Anschluss an ein externes Stromnetz betreibbar ist. Als externes Stromnetz kommt insoweit beispielsweise das öffentliche Stromnetz oder beispielsweise auch das Bord-Stromnetz eines Kraftfahrzeugs oder eines Bootes bzw. Schiffes in Frage.


[0032]

*706* The exemplary embodiment of a vibrator according to the invention shown in the figures consists of a vibrating part 1 modeled on a male member, which has in its interior a vibration generating device known from the prior art and not shown in the figures, as well as one at the base of the vibrator -Part 1 arranged handle and control part 2 with adjustment devices 3 for

setting various functions and adjustment options of the vibrator.

---------------------------------------------------------------------------------------------------------

712 Das in den Figuren gezeigte Ausführungsbeispiel eines erfindungsgemäßen Vibrators besteht aus einem einem männlichen Glied nachempfundenen Vibrier-Teil 1 , welches in seinem Inneren eine aus dem Stand der Technik an sich bekannte und in den Figuren nicht dargestellte Vibrationserzeugungseinrichtung aufweist, sowie aus einem am Fuß des Vibrier-Teils 1 angeordneten Griff- und Bedienteil 2 mit Einstelleinrichtungen 3 zur Einstellung verschiedener Funktionen und Verstellmöglichkeiten des Vibrators.

720 Furthermore, the handle and control part 2 has a mini display 4 for displaying the settings and functions. In the exemplary embodiment of the vibrator according to the invention shown in the figures, the handle and operating part 2 is replaceable. It contains a receiving compartment - not shown in the figures - for the battery or accumulator for powering the vibrator as well as a connection device for connecting the vibrator to an external power network such as the public power network.

---------------------------------------------------------------------------------------------------------

727 Ferner weist das Griff- und Bedienteil 2 ein Mini-Display 4 zur Anzeige der Einstellungen und Funktionen auf. Bei dem in den Figuren dargestellten Ausführungsbeispiel des erfindungsgemäßen Vibrators ist das Griff- und Bedienteil 2 auswechselbar. Es enthält ein – in den Figuren nicht dargestelltes – Aufnahmefach für die Batterie bzw. den Akkumulator zur Stromversorgung des Vibrators sowie auch eine Anschlusseinrichtung zum Anschließen des Vibrators an ein externes Stromnetz wie beispielsweise an das öffentliche Stromnetz.

[0033]

738 It should be expressly pointed out that the shape of the handle and control part 2 in the figures is only to be understood as a purely schematic representation and not to scale.

---------------------------------------------------------------------------------------------------------

741 Es sei ausdrücklich darauf hingewiesen, dass die Form des Griff- und Bedienteils 2 in den Figuren nur als rein schematische und nicht maßstabsgerechte Darstellung zu verstehen ist.

745 The handle and control part 2 can have any suitable shape and size, and the arrangement of the adjustment devices 3 and/or the mini display 4 as well as the number and type of adjustment devices 3 as components of the handle and control part 2 can ultimately be selected as desired . For example, the handle and control part 2 can be cylindrical with a length of 4 cm and a diameter of 3 cm and have three, four or more buttons arranged next to one another and/or one below the other as adjustment devices 3. Any mini display 4 that may be present can, for example, be designed in such a way that it realizes a 2-3 digit display

and/or a program display.

---------------------------------------------------------------------------------------------------------------

*754* Das Griff- und Bedienteil 2 kann jede beliebige geeignete Form und Größe aufweisen, und auch die Anordnung der Einstelleinrichtungen 3 und/oder des Mini-Displays 4 sowie die Anzahl und Art der Einstelleinrichtungen 3 als Bestandteile des Griff- und Bedienteils 2 sind letztlich beliebig wählbar. Beispielsweise kann das Griff- und Bedienteil 2 zylinderförmig mit einer Länge von 4 cm und einem Durchmesser von 3 cm ausgebildet sein und drei, vier oder mehr nebeneinander und/oder untereinander angeordnete Knöpfe als Einstelleinrichtungen 3 aufweisen. Das etwaig vorhandene Mini-Display 4 kann beispielsweise so ausgebildet sein, dass es eine 2-3-Ziffern-Anzeige und/oder eine Programmanzeige realisiert.

## [0034]

*767* The handle and control part 2 does not necessarily have to be a simple, straight extension of the vibrating part 1 - as shown purely schematically in the figures as one of many possible exemplary embodiments.

---------------------------------------------------------------------------------------------------------------

*771* Das Griff- und Bedienteil 2 muß auch nicht unbedingt – so wie in den Figuren lediglich als eines von vielen möglichen Ausführungsbeispielen rein schematisch dargestellt – eine simple geradlinige Verlängerung des Vibrier-Teils 1 sein.

*776* In other exemplary embodiments, the handle and control part 2 can also be designed to be curved and/or be angled in any direction to the vibrating part 1. There are no limits to the design options for exemplary embodiments of vibrators according to the invention - and also when it comes to the color design of the handle and control part 2.

---------------------------------------------------------------------------------------------------------------

*781* Das Griff- und Bedienteil 2 kann bei anderen Ausführungsbeispielen auch geschwungen gestaltet sein und/oder sich in beliebiger Richtung abgewinkelt an das Vibrier-Teil 1 anschließen. Den gestalterischen Möglichkeiten für Ausführungsbeispiele erfindungsgemäßer Vibratoren sind insofern – und auch was die farbliche Gestaltung des Griff- und Bedienteils 2 anbelangt – keine Grenzen gesetzt.

## [0035]

*791* The handle and control part 2 can be made from various materials.

---------------------------------------------------------------------------------------------------------------

*793* Das Griff- und Bedienteil 2 kann aus diversen Materialien gefertigt sein.

796 However, it is preferred that the handle and control part 2 consists entirely or partially of stainless steel and/or of noble wood sealed with clear varnish, for example of plum wood and/or of cherry wood and/or of apple wood and/or of bog oak wood and/or of Oak wood and/or pine wood and/or ebony wood and/or desert ironwood and/or pear wood and/or snakewood and/or peppermint wood and/or olive wood and/or mulberry wood and/or vinegar tree wood and/or Amaranth wood and/or eucalyptus wood and/or heavenly tree wood and/or almond tree wood and/or Bubenga Pomela.

----------------------------------------------------------------------------------------------------

804 Bevorzugt ist jedoch, dass das Griff- und Bedienteil 2 ganz oder teilweise aus Edelstahl und/oder aus edlem und mit Klarlack versiegeltem Holz besteht, beispielsweise aus Pflaumenholz und/oder aus Kirschholz und/oder aus Apfelholz und/oder aus Mooreichenholz und/oder aus Eichenholz und/oder aus Pinienholz und/oder aus Ebenholz und/oder aus Wüsteneisenholz und/oder aus Birnenbaumholz und/oder aus Schlangenholz und/oder aus Pfefferminzbaumholz und/oder aus Olivenholz und/oder aus Maulbeerbaumholz und/oder aus Essigbaumholz und/oder aus Amarant-Holz und/oder aus Eukalyptusholz und/oder aus Götterbaumholz und/oder aus Mandelbaumholz und/oder aus Bubenga Pomela.

[0036]

817 In some embodiments, the vibrator according to the invention is designed to be waterproof so that a user can use it in a bathtub or in a shower.

----------------------------------------------------------------------------------------------------

820 Bei manchen Ausführungsbeispielen ist der erfindungsgemäße Vibrator wasserdicht ausgeführt, so dass eine Nutzerin oder ein Nutzer ihn in einer Badewanne oder unter einer Dusche verwenden kann.

[0037]

828 The vibrating part 1 of the exemplary embodiment of the vibrator according to the invention shown in the figures has, in its interior, a support device 5 made of metal and/or plastic and/or carbon fiber material which extends centrally over its entire length and which is only very roughly simplified and pure in the figures shown schematically and set up so that it can be extended or shortened telescopically.

----------------------------------------------------------------------------------------------------

834 Das Vibrier-Teil 1 des in den Figuren gezeigten Ausführungsbeispiels des erfindungsgemäßen Vibrators weist in seinem Inneren eine sich zentral über seine gesamte Länge erstreckende

Stützeinrichtung 5 aus Metall und/oder Kunststoff und/oder Kohlenstofffasermaterial auf, welche in den Figuren nur ganz grob vereinfacht und rein schematisch dargestellt und so eingerichtet ist, dass sie teleskopartig verlängert bzw. verkürzt werden kann.

841 The said support device 5 also has, as can be seen in the figures, at its end facing away from the handle and operating part 2 an umbrella-like radial support 9, which can be changed in diameter and which is important for the independent adjustability of the base length of the vibrator on the one hand and the base thickness of the vibrator on the other hand.

------------------------------------------------------------------------------------------------------------

846 Die genannte Stützeinrichtung 5 hat ferner, wie in den Figuren zu sehen, an ihrem von dem Griff- und Bedienteil 2 abgewandten Ende eine schirmartige Radialstützung 9 , welche in ihrem Durchmesser veränderbar ist und welche wichtig ist, um die voneinander unabhängige Verstellbarkeit von Basis-Länge des Vibrators einerseits und Basis-Dicke des Vibrators andererseits zu gewährleisten.

853 For example, the just-mentioned radial support 9 can consist of several stacked on top of each other in the manner of a camera shutter, forming a total circle, curved and radial in at least two of the respective base thickness values B1, B2 (cf. Fig. 2a and Fig. 2b as well as Fig 3a and 3b) corresponding full circle diameters of adjustable plates made of metal and / or plastic and / or carbon fiber material can be formed.

------------------------------------------------------------------------------------------------------------

859 Beispielsweise kann die eben genannte Radialstützung 9 aus mehreren nach Art ähnlich eines Kameraverschlusses übereinander gelagerter, insgesamt einen Vollkreis bildender, gebogener und radial in mindestens zwei den jeweiligen Basis-Dickenwerten B1, B2 (vgl. die Fig. 2a und Fig. 2b sowie die Fig. 3a und Fig. 3b) entsprechenden Vollkreis-Durchmessern einstellbarer Plättchen aus Metall und/oder Kunststoff und/oder Kohlenstofffasermaterial ausgebildet sein.

[0038]

869 The said support device 5 is designed so that its base length can be permanently adjusted or determined at least in a first length size L1 and in a second length size L2, which is larger than the first length size L1 (see Fig. 1a and Fig. 1b ), however, starting from each of the two mentioned sizes L1, L2 of the base length and unaffected by their respective setting, the shock function of the vibrator, which causes a further pulse-like short-term extension of the support device 5 and thus of the vibrator as a whole, can be carried out and remains.

------------------------------------------------------------------------------------------------------------

876 Die genannte Stützeinrichtung 5 ist so ausgelegt, dass ihre Basis-Länge mindestens in einer ersten Längengröße L1 und in einer zweiten Längengröße L2, die größer als die erste

Längengröße L1 ist, dauerhaft einstellbar bzw. feststellbar ist (siehe Fig. 1a und Fig. 1b), wobei jedoch jeweils ausgehend von jeder der beiden genannten Größen L1, L2 der Basis-Länge und unberührt von deren jeweiliger Einstellung die Stoßfunktion des Vibrators, welche jeweils eine weitere impulsartige kurzzeitige Verlängerung der Stützeinrichtung 5 und damit des Vibrators insgesamt bewirkt, ausführbar ist und bleibt.

*885* In this context, consider FIGS. 4a, b, in which this shock function of the vibrator is indicated purely schematically and not to scale. During a pulse-like shock symbolized by the vertical arrow with the double tip between FIGS. 4a and 4b, the pulse-like shock extends, i.e. H. briefly, the length of the support device 5. Accordingly, during the pulse-like shock, the length of a bellows part of the vibrating part 1 shown in the figures also extends in a pulse-like manner, but not permanently, from the value L3 to the value L4, which is greater than the value L3.

-----------------------------------------------------------------------------------------------------

*893* Man betrachte in diesem Zusammenhang die Fig. 4a, b, in welchen diese Stoßfunktion des Vibrators rein schematisch und nicht maßstabsgerecht angedeutet ist. Während eines durch den vertikalen Pfeil mit der Doppelspitze zwischen Fig. 4a und Fig. 4b symbolisierten impulsartigen Stoßes verlängert sich impulsartig, d. h. kurzzeitig, die Länge der Stützeinrichtung 5 . Dementsprechend verlängert sich während des impulsartigen Stoßes auch impulsartig, jedoch eben nicht dauerhaft, die Länge eines in den Figuren zu sehenden Faltenbalgteils des Vibrier-Teils 1 vom Wert L3 auf den Wert L4, welcher größer als der Wert L3 ist.

[0039]

*906* In order to ensure the flexibility of the vibrator, which is absolutely necessary for every vibrator according to the invention, the support device 5 mentioned is also designed to be flexible.

-----------------------------------------------------------------------------------------------------

*909* Zwecks Sicherstellung der bei jedem erfindungsgemäßen Vibrator unbedingt notwendigen Biegsamkeit des Vibrators ist die genannte Stützeinrichtung 5 ferner biegsam ausgeführt.

*913* This flexibility can be achieved, for example, by constructing the support device 5 from a large number of individual telescopic elements, each individual telescopic element being coupled to the adjacent telescopic elements by means of spherical end parts. The flexibility of the support device 5 mentioned can also be achieved, for example, simply by making the individual telescopic elements of the support device 5 themselves from stable, but nevertheless flexible material. For example, certain wire meshes, certain plastic fiber meshes, certain carbon fiber meshes or certain glass fiber meshes are suitable for this. However, all of this is not shown in

detail in the figures.

---

*922* Diese Biegsamkeit lässt sich beispielsweise dadurch erreichen, dass die Stützeinrichtung 5 aus einer Vielzahl einzelner Teleskopelemente aufgebaut wird, wobei jedes einzelne teleskopartige Element mittels kugelartiger Endteile an die jeweils benachbarten Teleskopelemente gekoppelt ist. Die Biegsamkeit der genannten Stützeinrichtung 5 kann aber beispielsweise auch einfach dadurch erreicht werden, dass die einzelnen Teleskopelemente der Stützeinrichtung 5 jeweils selbst aus zwar stabilem, gleichwohl jedoch biegsamem Material hergestellt werden. Geeignet sind hierfür beispielsweise bestimmte Drahtgeflechte, bestimmte Kunststofffasergeflechte, bestimmte Kohlenstofffasergeflechte oder bestimmte Glasfasergeflechte. Dies alles ist allerdings im Detail in den Figuren nicht weiter dargestellt.

[0040]

*936* Surrounding the support device 5 mentioned is a space 6, which serves to accommodate the vibration generating device (not shown in the figures) as well as to accommodate the liquid container of the spray device (not shown in the figures) and to the outside of an outer shell of the vibrating part 1 is limited.

---

*941* Rings um die genannte Stützeinrichtung 5 herum schließt sich ein Raum 6 an, welcher zur Aufnahme der in den Figuren nicht dargestellten Vibrationserzeugungseinrichtung sowie zur Aufnahme des in den Figuren nicht dargestellten Flüssigkeitsbehälters der Spritzeinrichtung dient und nach außen hin von einer äußeren Hülle des Vibrier-Teils 1 begrenzt wird.

*947* The outer shell of the vibrating part 1 consists of a stretchable material, for example silicone or latex, which is partially designed like a bellows - as already known from the prior art - in order to implement the shock function of the vibrator. 1 to 3 and in FIG. 4a, that bellows part of the outer shell of the vibrating part 1 is shown in its basic state, and its length in this basic state is given as a length with the value L3. As was already explained above with reference to FIG. 4b, when the shock function of the vibrator is activated, the length of the bellows-like part of the outer shell of the vibrating part 1 increases from the value L3 to the value L4 during a shock, which is greater than the value L3 is.

---

*956* Die äußere Hülle des Vibrier-Teils 1 besteht aus einem dehnbaren Material, beispielsweise aus Silikon oder aus Latex, welches teilweise – wie bereits aus dem Stand der Technik bekannt – zwecks Realisierung der Stoßfunktion des Vibrators faltenbalgartig ausgelegt ist. In den Fig. 1 bis Fig. 3 sowie in Fig. 4a ist jener Faltenbalgteil der äußeren Hülle des Vibrier-Teils 1 in seinem Grundzustand dargestellt, und seine Länge in diesem Grundzustand ist als Länge mit dem Wert L3 angegeben. Wie weiter oben bereits unter Bezugnahme auf die Fig. 4b erläutert

wurde, vergrößert sich bei aktivierter Stoßfunktion des Vibrators während eines Stoßes die Länge des faltenbalgartigen Teiles der äußeren Hülle des Vibrier-Teils 1 vom Wert L3 auf den Wert L4, welcher größer als der Wert L3 ist.

[0041]

970 The said stretchable material of the outer shell of the vibrating part 1 should not only be stretchable, but also soft and supple.

-------------------------------------------------------------------------------------------------

973 Das genannte dehnbare Material der äußeren Hülle des Vibrier-Teils 1 sollte nicht nur dehnbar, sondern auch weich und geschmeidig sein.

977 For example, silicone or latex come into consideration for this, but all other materials with the properties mentioned above are also suitable in principle.

-------------------------------------------------------------------------------------------------

980 Beispielsweise kommen hierfür Silikon oder Latex in Frage, aber auch alle anderen Materialien mit den vorstehend genannten Eigenschaften sind prinzipiell geeignet.

[0042]

987 Those parts of the space 6 mentioned which are not filled by other devices such as the vibration generating device or the liquid container of the spray device are filled by a fluid (air or another gas or liquid), so that the outer shell of the vibrating part 1 remains tight – but always flexible.

-------------------------------------------------------------------------------------------------

992 Diejenigen Raumteile des genannten Raumes 6 , welche nicht durch anderweitige Einrichtungen wie etwa die Vibrationserzeugungseinrichtung oder den Flüssigkeitsbehälter der Spritzeinrichtung ausgefüllt sind, werden durch ein Fluid (Luft oder ein anderes Gas oder eine Flüssigkeit) ausgefüllt, so dass die äußere Hülle des Vibrier-Teils 1 stramm – aber gleichwohl stets biegsam – bleibt.

999 A control and regulation device housed in the handle and operating part 2 of the vibrator ensures that the amount of fluid in the space 6 mentioned is adjusted when the size of the base length of the vibrator is adjusted by adjusting the length of the support device 5 by fluid supply or fluid removal is always regulated in such a way that a set size of the base thickness of the vibrator remains unaffected. This is illustrated in FIGS. 1a and 1b. In Fig. 1a, the first

length of size L1 is set as the base length of the vibrator, and a first thickness or a first diameter with the value B1 has been set by the user as the base thickness of the vibrator. In Fig. 1b, the user increases the base length of the vibrator to the second - larger - length value L2, but the set base thickness remains unaffected at its original value B1. To achieve this effect, the control and regulation device mentioned ensures that during the process of increasing the base length of the vibrator from the value L1 to the value L2, a corresponding amount of fluid is pumped into the space mentioned via a suitable pump and valve system 6 is tracked.

-------------------------------------------------------------------------------------------------------------

1013 Eine im Griff- und Bedienteil 2 des Vibrators untergebrachte Steuerungs- und Regelungseinrichtung stellt sicher, dass die Fluidmenge in dem genannten Raum 6 bei einer Verstellung der Größe der Basis-Länge des Vibrators mittels einer Verstellung der Länge der Stützeinrichtung 5 durch Fluidzufuhr bzw. durch Fluidabfuhr stets so geregelt wird, dass eine eingestellte Größe der Basis-Dicke des Vibrators unbeeinflusst bleibt. Dies ist in den Fig. 1a und Fig. 1b verdeutlicht. In Fig. 1a ist als Basis-Länge des Vibrators die erste Länge der Größe L1 eingestellt, und als Basis-Dicke des Vibrators ist eine erste Dicke bzw. ein erster Durchmesser mit dem Wert B1 von der Nutzerin oder dem Nutzer fest eingestellt worden. In Fig. 1b vergrößert die Nutzerin bzw. der Nutzer die Basis-Länge des Vibrators auf den zweiten – größeren – Längenwert L2, jedoch bleibt die eingestellte Basis-Dicke davon unberührt auf ihrem ursprünglichen Wert B1. Zur Erreichung dieses Effektes wird mittels der genannten Steuerungs- und Regelungseinrichtung dafür gesorgt, dass während des Vorgangs der Vergrößerung der Basis-Länge des Vibrators von dem Wert L1 auf den Wert L2 eine entsprechende Menge Fluid über ein geeignetes Pump- und Ventilsystem in den genannten Raum 6 nachgeführt wird.


1030 If air is simply used as the fluid for this, no extra fluid reservoir is necessary because the air can simply be removed from the area around the vibrator using the pump and valve system. If a fluid other than air is to be used, a corresponding fluid reservoir can be provided in the handle and operating part 2 of the vibrator.

-------------------------------------------------------------------------------------------------------------

1035 Falls hierfür einfach Luft als Fluid verwendet wird, ist kein extra Fluidreservoir vonnöten, denn die Luft kann durch das Pump- und Ventilsystem einfach aus der Umgebung des Vibrators entnommen werden. Sofern ein anderes Fluid als Luft verwendet werden soll, kann in dem Griff- und Bedienteil 2 des Vibrators ein entsprechendes Fluidreservoir vorgesehen werden.


[0043]

1044 When the value of the base length of the vibrator is reduced, for example when changing from the state shown in FIG. 1b to the state shown in FIG Control device controlled and regulated

fluid pumped out of the space 6 or simply drained in such a way that the base thickness of the vibrator remains untouched at its originally set value B1.

------------------------------------------------------------------------------------------------

*1049* Bei einer Verkleinerung des Wertes der Basis-Länge des Vibrators, also beispielsweise beim Übergang von dem in Fig. 1b gezeigten Zustand in den in Fig. 1a gezeigten Zustand, wird dann durch das vorstehend genannte Pump- und Ventilsystem in durch die genannte Steuerungs- und Regelungseinrichtung gesteuerter und geregelter Weise Fluid aus dem Raum 6 abgepumpt oder einfach abgelassen derart, dass die Basis-Dicke des Vibrators unberührt auf ihrem ursprünglich eingestellten Wert B1 verbleibt.

## [0044]

*1060* Since a very important feature of the vibrator according to the invention is that both the base length and the base thickness of the vibrator are each permanently and - which is very crucial for the present invention - each can be adjusted independently of one another, the principle just presented does not work only for constant base thickness when changing the base length of the vibrator, but it also works the other way around for constant base length when changing the base thickness of the vibrator.

------------------------------------------------------------------------------------------------

*1067* Da ein sehr wesentliches Merkmal des erfindungsgemäßen Vibrators darin besteht, dass sowohl die Basis-Länge als auch die Basis-Dicke des Vibrators jeweils dauerhaft und – was für die vorliegende Erfindung ganz entscheidend ist – jeweils unabhängig voneinander einstellbar sind, funktioniert das eben dargestellte Prinzip nicht nur für konstante Basis-Dicke bei Veränderung der Basis-Länge des Vibrators, sondern es funktioniert andersherum auch für konstante Basis-Länge bei Veränderung der Basis-Dicke des Vibrators.

*1075* This is shown purely schematically in FIGS. 2 and 3.

------------------------------------------------------------------------------------------------

*1077* Dies ist rein schematisch in den Fig. 2 und Fig. 3 dargestellt.

*1080* In the representation of FIG. 2, the support device 5 is fixed by the user to the base length with the value L1, as in the representation of FIG. 1a. In the representation of FIG. 3, the support device 5 is fixed by the user to the base length with the value L2, as in the representation of FIG. 1b, where L2 is greater than L1. The representation of Fig. 2a corresponds to the representation of Fig. 1a, and the representation of Fig. 3a corresponds to the representation of Fig. 1b, i.e. H. In these two representations mentioned, the user has selected the diameter with size B1 as the base thickness of the vibrator. However, if the user now wishes to increase the base thickness of the vibrator to a larger value B2 while keeping the basic length

of the vibrator constant (cf. Fig. 2b or Fig. 3b), this can be achieved by means of the control and regulation device mentioned, in that the control and regulation device mentioned causes the pump and valve system mentioned to pump so much fluid into the space 6 that the outer shell of the vibrating part 1 expands until the base thickness of the vibrator has reached the value B2.

------------------------------------------------------------------------------------------------------------

*1094* Die Stützeinrichtung 5 ist bei der Darstellung von Fig. 2 durch die Nutzerin bzw. durch den Nutzer fest auf die Basis-Länge mit dem Wert L1 eingestellt, so wie bei der Darstellung von Fig. 1a. Die Stützeinrichtung 5 ist bei der Darstellung von Fig. 3 durch die Nutzerin bzw. durch den Nutzer fest auf die Basis-Länge mit dem Wert L2 eingestellt, so wie bei der Darstellung von Fig. 1b, wobei L2 größer ist als L1. Die Darstellung von Fig. 2a entspricht dabei der Darstellung von Fig. 1a, und die Darstellung von Fig. 3a entspricht der Darstellung von Fig. 1b, d. h. bei diesen beiden genannten Darstellungen hat die Nutzerin bzw. der Nutzer jeweils als Basis-Dicke des Vibrators den Durchmesser mit der Größe B1 gewählt. Wünscht die Nutzerin bzw. der Nutzer nun jedoch bei konstanter Basis-Länge des Vibrators eine Vergrößerung der Basis-Dicke des Vibrators auf einen größeren Wert B2 (vgl. Fig. 2b bzw. Fig. 3b), so kann dies mittels der genannten Steuerungs- und Regelungseinrichtung erreicht werden, indem die genannte Steuerungs- und Regelungseinrichtung das genannte Pump- und Ventilsystem veranlasst, soviel Fluid in den Raum 6 hineinzupumpen, dass sich die äußere Hülle des Vibrier-Teils 1 soweit ausdehnt, bis die Basis-Dicke des Vibrators den Wert B2 erreicht hat.

*1111* Due to the support device 5, which remains unchanged in length (length L1 in FIG. 2 or Length L2 in Fig. 3) as well as by suitable material selection for the outer shell of the vibrating part 1 and its coordination with the construction of the support device 5, in particular with the construction of the variably adjustable radial support 9, which has already been explained above in terms of its function and mode of operation ensures that the base thickness of the vibrator can be adjusted independently of the base length of the vibrator. In this context, we would like to expressly refer again to the explanations given above regarding the radial support 9.

------------------------------------------------------------------------------------------------------------

*1120* Durch die in ihrer Länge dabei jeweils unverändert bleibende Stützeinrichtung 5 (Länge L1 in Fig. 2 bzw. Länge L2 in Fig. 3) sowie durch geeignete Materialauswahl für die äußere Hülle des Vibrier-Teils 1 und deren Abstimmung mit der Konstruktion der Stützeinrichtung 5 , insbesondere mit der Konstruktion der weiter oben in ihrer Funktion und Wirkungsweise bereits erläuterten variabel einstellbaren Radialstützung 9 , ist sichergestellt, dass die Basis-Dicke des Vibrators unabhängig von der Basis-Länge des Vibrators eingestellt werden kann. In diesem Zusammenhang sei an dieser Stelle nochmals ausdrücklich auf die bereits weiter oben getätigten Erläuterungen zur Radialstützung 9 verweisen.

[0045]

*1133* In summary, each vibrator according to the invention ensures that the base thickness of the vibrator can be adjusted independently of the base length of the vibrator and that the base length of the vibrator can be adjusted independently of the base thickness of the vibrator.

----------------------------------------------------------------------------------------------------

*1137* Zusammenfassend ist also bei jedem erfindungsgemäßen Vibrator sichergestellt, dass die Basis-Dicke des Vibrators unabhängig von der Basis-Länge des Vibrators eingestellt werden kann und dass die Basis-Länge des Vibrators unabhängig von der Basis-Dicke des Vibrators eingestellt werden kann.

[0046]

*1146* The vibrator according to the invention is always set up in such a way that the user can permanently adjust the base length of the vibrator in at least two different sizes and that the user can also permanently adjust the base thickness in at least two different sizes. whereby the base length and the base thickness can each be adjusted separately and independently of one another.

----------------------------------------------------------------------------------------------------

*1152* Der erfindungsgemäße Vibrator ist dabei stets so eingerichtet, dass die Nutzerin oder der Nutzer die Basis-Länge des Vibrators in mindestens zwei verschiedenen Größen dauerhaft einstellen kann und dass die Nutzerin oder der Nutzer auch die Basis-Dicke in mindestens zwei verschiedenen Größen dauerhaft einstellen kann, wobei die Basis-Länge und die Basis-Dicke jeweils separat und jeweils unabhängig voneinander einstellbar sind.

[0047]

*1162* Preferably, the vibrator according to the invention is set up in most of its exemplary embodiments in such a way that both the base length and the base thickness of the vibrator are each electrically or electromechanically, i.e. H. by means of an electrically operated drive, are adjustable - for example at the push of a button by the user, the last-mentioned push of a button setting in motion a suitable electrical or electromechanical control process for adjusting the value of the base length or the value of the base thickness of the vibrator .

----------------------------------------------------------------------------------------------------

*1169* Bevorzugterweise ist der erfindungsgemäße Vibrator in den meisten seiner Ausführungsbeispiele so eingerichtet, dass sowohl die Basis-Länge als auch die Basis-Dicke des Vibrators jeweils elektrisch oder elektromechanisch, d. h. mittels elektrisch betriebenen

Antriebs, verstellbar sind – beispielsweise auf Knopfdruck durch die Nutzerin oder den Nutzer, wobei der letztgenannte Knopfdruck einen geeigneten elektrischen bzw. elektromechanischen Steuerungsprozess zur Verstellung des Wertes der Basis-Länge bzw. des Wertes der Basis-Dicke des Vibrators in Gang setzt.

## [0048]

1181 In a preferred embodiment of the vibrator according to the invention it is provided that its base thickness or its base diameter can be adjusted continuously or in steps between 3 cm and 10 cm.

------------------------------------------------------------------------------------------------

1185 Bei einem bevorzugten Ausführungsbeispiel des erfindungsgemäßen Vibrators ist vorgesehen, dass seine Basis-Dicke bzw. sein Basis-Durchmesser zwischen 3 cm und 10 cm stufenlos oder in Stufen verstellbar ist.

1190 It is particularly preferred to provide stepwise adjustability of the base thickness or the base diameter of the vibrator, preferably in steps of 0.5 cm or 1.0 cm.

------------------------------------------------------------------------------------------------

1193 Besonders bevorzugt ist es, eine stufenweise Verstellbarkeit der Basis-Dicke bzw. des Basis-Durchmessers des Vibrators, vorzugsweise in Stufen von 0,5 cm oder von 1,0 cm, vorzusehen.

1198 Furthermore, in the preferred embodiment of the vibrator according to the invention just mentioned, it is provided that it is set up in such a way that its base length can be adjusted continuously or in steps between 15 cm and 30 cm.

------------------------------------------------------------------------------------------------

1202 Ferner ist bei dem eben genannten bevorzugten Ausführungsbeispiel des erfindungsgemäßen Vibrators vorgesehen, dass er so eingerichtet ist, dass seine Basis-Länge zwischen 15 cm und 30 cm stufenlos oder in Stufen verstellbar ist.

1207 It is particularly preferred to provide stepwise adjustability of the base length of the vibrator, preferably in steps of 0.5 cm or 1.0 cm.

------------------------------------------------------------------------------------------------

1210 Besonders bevorzugt ist es, eine stufenweise Verstellbarkeit der Basis-Länge des Vibrators, vorzugsweise in Stufen von 0,5 cm oder von 1,0 cm, vorzusehen.

1214 However, and this should be expressly emphasized at this point, the limit values and step values mentioned here are only given here as example values. Other exemplary embodiments of the vibrator according to the invention can have other limit values and/or other step values or can even be infinitely adjustable.

---------------------------------------------------------------------------------------------------

1219 Die hier genannten Grenzwerte und Stufenwerte sind allerdings, und das sei an dieser Stelle ausdrücklich betont, hier nur als Beispielwerte angeführt. Andere Ausführungsbeispiele des erfindungsgemäßen Vibrators können andere Grenzwerte und/oder andere Stufenwerte aufweisen oder überhaupt stufenlos verstellbar sein.

[0049]

1228 The terms "base length" and "base thickness" mentioned repeatedly above are to be understood as meaning that they each represent a property of the vibrator that is unaffected and independent of the impact function of the vibrator and which is based on a permanently fixed - but through the user of the vibrator can be switched between at least two values, variable but permanently adjustable - length or

---------------------------------------------------------------------------------------------------

1234 Die vorstehend immer wiederkehrend genannten Begriffe „Basis-Länge" und „Basis-Dicke" sind so zu verstehen, dass sie jeweils eine von der Stoßfunktion des Vibrators unberührte und unabhängige Eigenschaft des Vibrators darstellen, welche sich auf eine jeweils dauerhaft fest eingestellte – aber durch die Nutzerin bzw. den Nutzer des Vibrators zwischen mindestens jeweils zwei Werten umschaltbar variabel, aber jeweils dauerhaft einstellbare – Länge bzw.

1242 Thickness of the vibrating part 1 of the vibrator relates. The difference between the term "permanent" used in this context and the pulse-like length or Changes in thickness while the shock function is switched on during shock operation of the vibrator will be illustrated in more detail with reference to FIG. 4. Fig. 4a corresponds to Fig. 1a and Fig. 2a and shows the exemplary embodiment of the vibrator in its basic state, i.e. H. in a state in which there is currently no impact of the vibrator in the direction of the vibrator tip - i.e. in the direction away from the handle and control part 2 of the vibrator. The base length of the vibrator in this state - as explained above - has the value L1, and the base thickness of the vibrator in this state - as also already explained above - has the value B1. The bellows part of the outer shell of the vibrating part 1, which is important for realizing the shock function of the vibrator, is also in its basic state in FIG. 4a, and its length in this basic state has the value L3.

---------------------------------------------------------------------------------------------------

1254 Dicke des Vibrier-Teils 1 des Vibrators bezieht. Der Unterschied des in diesem Zusammenhang verwendeten Begriffes „dauerhaft" zu den davon zu unterscheidenden

impulsartigen Längen- bzw. Dickenänderungen während eingeschalteter Stoßfunktion beim Stoßbetrieb des Vibrators soll anhand der Fig. 4 näher verdeutlicht werden. Die Fig. 4a entspricht der Fig. 1a und der Fig. 2a und zeigt das Ausführungsbeispiel des Vibrators in seinem Grundzustand, d. h. in einem Zustand, bei der gerade kein Stoß des Vibrators in Richtung Vibratorspitze – also in Richtung weg von dem Griff- und Bedienteil 2 des Vibrators – erfolgt. Die Basis-Länge des Vibrators hat in diesem Zustand – wie oben erläutert – den Wert L1, und die Basis-Dicke des Vibrators hat in diesem Zustand – wie oben ebenfalls bereits erläutert – den Wert B1. Der für die Realisierung der Stoßfunktion des Vibrators wichtige Faltenbalgteil der äußeren Hülle des Vibrier-Teils 1 ist in Fig. 4a ebenfalls in seinem Grundzustand, und seine Länge in diesem Grundzustand hat den Wert L3.

[0050]

*1271* When realizing the thrusting function of the vibrator, as is already known as such from the prior art of vibrators as sex toys for adults, the length of the vibrating part 1 of the vibrator is increased, reduced, increased again, etc., etc. in pulse-like shocks .

-------------------------------------------------------------------------------------------------------

*1275* Bei der Realisierung der Stoßfunktion des Vibrators, so wie sie als solche aus dem Stand der Technik der Vibratoren als Sexspielzeuge für Erwachsene bereits bekannt ist, wird die Länge des Vibrier-Teils 1 des Vibrators in impulsartigen Stößen vergrößert, verkleinert, wieder vergrößert usw. usf.

*1281* This jerky back-and-forth movement of the vibrating part 1 of the vibrator is indicated by the vertical double-headed arrow between FIGS. 4a and 4b. In the shock, the length of the bellows part of the vibrating part 1 of the vibrator increases from the value L3 to the value L4, which is greater than the value L3, and accordingly the length of the vibrating part 1 in the shock increases above the permanent value L1 set value of the base length L1. At the end of each individual shock, however, the bellows part of the vibrating part 1 of the vibrator returns to its initial length value L3 and the length of the vibrating part 1 accordingly returns to the value L1. With the next impact, the length of the bellows part of the vibrating part 1 of the vibrator increases again to the value L4 - with the corresponding consequence for the length of the vibrating part 1 etc. etc. Accordingly, you can switch on the shock function based on the basic length setting with the value L2 from Fig. 1b or from Fig. 3a.

-------------------------------------------------------------------------------------------------------

*1293* Diese stoßartige Hin-und-Her-Bewegung des Vibrier-Teils 1 des Vibrators ist durch den vertikalen Pfeil mit Doppelspitze zwischen der Fig. 4a und Fig. 4b angedeutet. Dabei vergrößert sich im Stoß die Länge des Faltenbalgteils des Vibrier-Teils 1 des Vibrators von dem Wert L3 auf den Wert L4, welcher größer ist als der Wert L3, und dementsprechend wächst die Länge des Vibrier-Teils 1 im Stoß über den als dauerhaften Wert L1 eingestellten

Wert der Basis-Länge L1 hinaus. Am Ende jedes einzelnen Stoßes nimmt der Faltenbalgteil des Vibrier-Teils 1 des Vibrators jedoch wieder seinen Ausgangs-Längenwert L3 an und die Länge des Vibrier-Teils 1 nimmt dementsprechend wieder den Wert L1 an. Beim nächsten Stoß vergrößert sich die Länge des Faltenbalgteils des Vibrier-Teils 1 des Vibrators wieder auf den Wert L4 – mit der entsprechenden Folge für die Länge des Vibrier-Teils 1 usw. usf. Ganz entsprechend kann man die Stoßfunktion basierend auf der Basis-Längeneinstellung mit dem Wert L2 von Fig. 1b bzw. von Fig. 3a einschalten.

1307 To make this clear, one only needs to mentally replace the value L1 of the base length in Fig. 4 with the value L2 of the base length. This does not change the basic setting of the length of the bellows part of the vibrating part 1 of the vibrator - this value remains at the length L3, as can already be seen from Fig. 1b and Fig. 3a (see also Fig. 1a for comparison purposes) . Only during the impact process itself does the bellows part expand again to the length with the value L4, exactly as already described above starting from the basic length with the value L1. Starting from the base length with the value L2, the length of the vibrating part 1 in the joint increases accordingly beyond the value L2 of the base length. At the end of each individual shock, however, the bellows part of the vibrating part 1 of the vibrator returns to its initial length value L3, and the length of the vibrating part 1 accordingly returns to the value L2. With the next impact, the length of the bellows part of the vibrating part 1 of the vibrator increases again to the value L4 - with the corresponding consequence for the length of the vibrating part 1 etc. etc.

-------------------------------------------------------------------------------------------------------

1321 Um sich dies zu verdeutlichen, braucht man in Fig. 4 nur gedanklich den Wert L1 der Basis-Länge durch den Wert L2 der Basis-Länge zu ersetzen. An der Grundeinstellung der Länge des Faltenbalgteils des Vibrier-Teils 1 des Vibrators ändert sich dadurch nichts – dieser Wert bleibt auf der Länge L3, so wie auch schon aus den Fig. 1b und Fig. 3a ersichtlich (siehe zu Vergleichszwecken auch Fig. 1a). Nur im Stoßvorgang selbst dehnt sich der genannte Faltenbalgteil wieder auf die Länge mit dem Wert L4 aus, ganz genau wie oben bereits ausgehend von der Basis-Länge mit dem Wert L1 beschrieben. Ausgehend von der Basis-Länge mit dem Wert L2 wächst dementsprechend die Länge des Vibrier-Teils 1 im Stoß über den Wert L2 der Basis-Länge hinaus. Am Ende jedes einzelnen Stoßes nimmt der Faltenbalgteil des Vibrier-Teils 1 des Vibrators jedoch wieder seinen Ausgangs-Längenwert L3 an, und die Länge des Vibrier-Teils 1 nimmt dementsprechend wieder den Wert L2 an. Beim nächsten Stoß vergrößert sich die Länge des Faltenbalgteils des Vibrier-Teils 1 des Vibrators wieder auf den Wert L4 – mit der entsprechenden Folge für die Länge des Vibrier-Teils 1 usw. usf.

[0051]

1340 In the exemplary embodiment of the vibrator according to the invention shown in FIG. 4, the value of the base thickness B1 is retained even during the impact, as shown schematically in FIGS. 4a, b.

---------------------------------------------------------------------------------------------------------------

1344 Bei dem in Fig. 4 gezeigten Ausführungsbeispiel des erfindungsgemäßen Vibrators bleibt der Wert der Basis-Dicke B1 auch während des Stoßes erhalten, so wie es in Fig. 4a, b schematisch gezeigt ist.

1349 As in the case of maintaining the value of the base thickness constant regardless of the value of the base length of the vibrator, this is achieved by means of the controlled rapid pumping of fluid into the space 6. Accordingly, at the end of the impact process, the fluid is quickly removed from the space 6 in a controlled manner.

---------------------------------------------------------------------------------------------------------------

1354 Dies wird, wie schon im Falle des konstanten Beibehaltens des Wertes der Basis-Dicke unabhängig von dem Wert der Basis-Länge des Vibrators, mittels des gesteuerten schnellen Einpumpens von Fluid in den Raum 6 erreicht. Dementsprechend wird zum Ende des Stoßvorganges hin das Fluid gesteuert aus dem Raum 6 schnell wieder entfernt.

[0052]

1363 While vibrators with a pure change in length upon impact are already known from the prior art, various exemplary embodiments of the vibrator according to the invention offer the user a functionality that goes beyond this: Some exemplary embodiments of the vibrator according to the invention are even set up in such a way that the user or the user can optionally set that when the shock function is switched on, not only a pulse-like short-term shock in the sense of a change in length takes place, but at the same time a pulse-like short-term thickening of the vibrator occurs during the shock.

---------------------------------------------------------------------------------------------------------------

1371 Während Vibratoren mit reiner Längenänderung beim Stoß aus dem Stand der Technik an sich bereits bekannt sind, bieten verschiedene Ausführungsbeispiele des erfindungsgemäßen Vibrators der Nutzerin bzw. dem Nutzer noch eine darüber hinausgehende Funktionalität: Manche Ausführungsbeispiele des erfindungsgemäßen Vibrators sind nämlich sogar derart eingerichtet, dass die Nutzerin oder der Nutzer wahlweise einstellen kann, dass bei eingeschalteter Stoßfunktion nicht nur ein impulsartiger kurzzeitiger Stoß im Sinne einer Längenänderung, sondern gleichzeitig auch eine impulsartige kurzzeitige Verdickung des Vibrators während des Stoßes erfolgt.

1381 This functionality is also technically implemented by means of the controlled rapid pumping of

fluid into the space 6, with the fluid being quickly removed from the space 6 in a controlled manner towards the end of the impact process.

-------------------------------------------------------------------------------

*1385* Auch diese Funktionalität wird technisch realisiert mittels des gesteuerten schnellen Einpumpens von Fluid in den Raum 6 , wobei ganz entsprechend zum Ende des Stoßvorganges hin das Fluid gesteuert aus dem Raum 6 schnell wieder entfernt wird.

[0053]

*1393* All exemplary embodiments of the vibrator according to the invention are set up in such a way that the shock speed and/or the shock frequency can be set in at least two stages, preferably in three stages, by the user of the vibrator.

-------------------------------------------------------------------------------

*1397* Alle Ausführungsbeispiele des erfindungsgemäßen Vibrators sind so eingerichtet, dass die Stoßgeschwindigkeit und/oder die Stoßfrequenz in mindestens zwei Stufen, vorzugsweise in drei Stufen, von der Nutzerin bzw. dem Nutzer des Vibrators wählbar einstellbar ist bzw. sind.

[0054]

*1405* The support device 5 already explained above is partially hollow in the exemplary embodiments of the vibrator according to the invention shown in the figures (cf.

-------------------------------------------------------------------------------

*1408* Die oben bereits erläuterte Stützeinrichtung 5 ist bei den in den Figuren dargestellten Ausführungsbeispielen des erfindungsgemäßen Vibrators teilweise hohl (vgl.

*1412* Reference number 8) and can in this way serve as a transport tube 8 for liquids 7 (see also FIG. 5).

-------------------------------------------------------------------------------

*1415* Bezugszeichen 8 ) und kann auf diese Weise als Transportröhre 8 für Flüssigkeiten 7 (vgl. auch Fig. 5) dienen.

*1419* As shown in the figures, the aforementioned transport tube 8 opens at the tip of the vibrator - that is, on the side of the vibrator facing away from the handle and control part 2 - and there is free communication with the environment there. This is exploited in the exemplary embodiments of the vibrator according to the invention shown in the figures for ejaculation simulation. In the exemplary embodiments shown here, the support device 5 in its further

capacity as a transport tube 8 for liquids 7 is part of the spray device already mentioned above and, for the purpose of liquid transport, is in effective connection with the liquid container already mentioned above, but not explicitly shown in the figures Spraying device. As soon as the time control device already described above or another suitable device - as already described above - initiates the spraying of the spray device, the liquid 7 from the said liquid container is released via the transport tube 8 from its above-mentioned open end into the environment, for example into the vagina Female user of the vibrator, sprayed, as shown purely schematically in Fig. 5.

----------------------------------------------------------------------------------------------------

1433 Wie in den Figuren gezeigt ist, öffnet sich die eben genannte Transportröhre 8 an der Spitze des Vibrators – also an der vom Griff- und Bedienteil 2 abgewandten Seite des Vibrators –, und es besteht dort freie Kommunikation mit der Umgebung. Dies wird bei den in den Figuren dargestellten Ausführungsbeispielen des erfindungsgemäßen Vibrators für die Ejakulationssimulation ausgenutzt. Die Stützeinrichtung 5 in ihrer weiteren Eigenschaft als Transportröhre 8 für Flüssigkeiten 7 ist bei den hier dargestellten Ausführungsbeispielen nämlich Teil der bereits oben erwähnten Spritzeinrichtung und steht zwecks Flüssigkeitstransports in wirksamer Verbindung mit dem bereits weiter oben genannten, in den Figuren jedoch nicht explizit dargestellten, Flüssigkeitsbehälter der Spritzeinrichtung. Sobald die oben bereits beschriebene Zeitsteuerungseinrichtung oder eine andere geeignete Einrichtung – wie oben bereits beschrieben – das Abspritzen der Spritzeinrichtung einleitet, wird die Flüssigkeit 7 aus dem genannten Flüssigkeitsbehälter über die Transportröhre 8 aus deren oben genannten offenen Ende in die Umgebung, beispielsweise in die Scheide einer weiblichen Nutzerin des Vibrators, abgespritzt, so wie es in Fig. 5 rein schematisch gezeigt ist.

1450 5 shows the exemplary embodiment of the vibrator according to the invention in the fully extended shock position with the length value L4 of the bellows-like part of the vibrating part 1, as already stated above with reference to FIG. 4, in particular with reference to FIG. 4b , has been explained in detail.

----------------------------------------------------------------------------------------------------

1455 Fig. 5 stellt dabei das Ausführungsbeispiel des erfindungsgemäßen Vibrators in vollständig ausgefahrener Stoßposition mit dem Längenwert L4 des faltenbalgartigen Teils des Vibrier-Teils 1 dar, so wie es bereits weiter oben mit Bezug auf die Fig. 4, insbesondere mit Bezug auf die Fig. 4b, ausführlich erläutert worden ist.

[0055]

1464 Some embodiments of vibrators according to the invention are supplied with electrical energy by means of a rechargeable battery, the above-mentioned rechargeable battery being

provided with a USB or mini-USB port for the purpose of charging and/or with a USB or mini-USB port for the purpose of charging electrical connection.

---

*1469* Einige Ausführungsbeispiele erfindungsgemäßer Vibratoren werden mittels eines wiederaufladbaren Akkumulators mit elektrischer Energie versorgt, wobei der vorstehend genannte wiederaufladbare Akkumulator mit einem USB- oder Mini-USB-Anschluss zwecks Ladefunktion versehen ist und/oder mit einem USB- oder Mini-USB-Anschluss zwecks Ladefunktion in elektrischer Verbindung steht.

## [0056]

*1479* In other exemplary embodiments of vibrators according to the invention, an inductively rechargeable battery is used as an electrical energy source.

---

*1482* Bei anderen Ausführungsbeispielen erfindungsgemäßer Vibratoren findet ein induktiv wiederaufladbarer Akkumulator als elektrische Energiequelle Verwendung.

## [0057]

*1489* In some of its embodiment variants, the vibrator according to the invention is provided with a heating device for heating the vibrator in whole or in part.

---

*1492* In einigen seiner Ausführungsvarianten ist der erfindungsgemäße Vibrator mit einer Heizeinrichtung zur gesamten oder teilweisen Erwärmung des Vibrators versehen.

*1496* In this way, for example, the entire vibrator or, in some exemplary embodiments, just the liquid 7 of the spray device can be heated to a temperature that is comfortable for the user, thereby achieving particularly good user-friendliness of the vibrator.

---

*1500* Damit können beispielsweise dann der gesamte Vibrator oder bei manchen Ausführungsbeispielen auch nur die Flüssigkeit 7 der Spritzeinrichtung auf eine für die Nutzerin bzw. den Nutzer angenehme Temperatur erwärmt und so eine ganz besonders gute Nutzerfreundlichkeit des Vibrators erreicht werden.

*1506* Very particularly preferably, many exemplary embodiments of a vibrator according to the invention are set up in such a way that at least the liquid of the spray device can be heated,

so that it is perceived as pleasant when the liquid is sprayed into the vagina of a female user of the vibrator.

---------------------------------------------------------------------------------------

*1511* Ganz besonders bevorzugt sind viele Ausführungsbeispiele eines erfindungsgemäßen Vibrators so eingerichtet, dass zumindest die Flüssigkeit der Spritzeinrichtung erwärmbar ist, so dass es beim Spritzen der Flüssigkeit in die Scheide einer weiblichen Nutzerin des Vibrators als angenehm empfunden wird.

[0058]

*1520* In some of its embodiments, the heating device mentioned is designed as an infrared heating device.

---------------------------------------------------------------------------------------

*1523* In einigen ihrer Ausführungsformen ist die genannte Heizeinrichtung als Infrarot-Heizeinrichtung ausgebildet.

[0059]

*1530* Preferably, the heating device is designed to be controllable in such a way that at least two, preferably more than two, different temperatures can be set in a selectable manner by the user of the vibrator.

---------------------------------------------------------------------------------------

*1534* Bevorzugterweise wird die Heizeinrichtung derart regelbar ausgelegt, dass mindestens zwei, vorzugsweise mehr als zwei, verschiedene Temperaturen durch die Nutzerin oder durch den Nutzer des Vibrators wählbar eingestellt werden können.

*1539* But this is not absolutely necessary.

---------------------------------------------------------------------------------------

*1541* Unbedingt notwendig ist das aber nicht.

[0060]

*1547* Preferably, most embodiments of the vibrator according to the invention are designed as sound-damped versions with only low operating noise, such that during operation they generate an operating noise with a volume of no more than 50 dB.

---

*1551* Bevorzugterweise sind die meisten Ausführungsbeispiele des erfindungsgemäßen Vibrators als schallgedämpfte Ausführungen mit nur geringem Betriebsgeräusch ausgelegt derart, dass sie im Betrieb ein Betriebsgeräusch mit einer Lautstärke von nicht mehr als 50 dB erzeugen.

## [0061]

*1559* Some embodiments of the vibrator according to the invention are set up in such a way that the vibration strength cannot be changed, i.e. there is only a single vibration strength at all times.

---

*1562* Manche Ausführungsbeispiele des erfindungsgemäßen Vibrators sind so eingerichtet, dass die Vibrationsstärke nicht veränderbar ist, es also konstant nur eine einzige Vibrationsstärke gibt.

*1567* In other of its exemplary embodiments, however, the vibrator according to the invention is set up in such a way that it can be operated in at least two different, preferably eight to ten different, vibration strengths, between which the user can freely switch.

---

*1571* Bei anderen seiner Ausführungsbeispiele ist der erfindungsgemäße Vibrator jedoch so eingerichtet, dass er in mindestens zwei verschiedenen, bevorzugterweise acht bis zehn verschiedenen, Vibrationsstärken betreibbar ist, zwischen denen die Nutzerin bzw. der Nutzer jeweils frei wählbar umschalten kann.

## [0062]

*1580* Some embodiments of the vibrator according to the invention are provided with a lubricant reservoir, which supplies a vibrator surface with lubricant continuously or temporarily or permanently at the user's discretion during operation of the vibrator.

---

*1584* Einige Ausführungsbeispiele des erfindungsgemäßen Vibrators sind mit einem Gleitgelspeicher versehen, welcher während des Betriebs des Vibrators eine Vibrator-Oberfläche dauernd oder nach Wahl der Nutzerin oder des Nutzers zeitweise oder dauernd mit Gleitgel versorgt.

[0063]

1593 Certain embodiments of vibrators according to the invention are provided with a mini camera device for recording and/or transmitting photos and/or videos, this mini camera device being designed in such a way that it can be activated and deactivated by the user.

-------------------------------------------------------------------------------

1597 Bestimmte Ausführungsbeispiele erfindungsgemäßer Vibratoren sind mit einer Minikameraeinrichtung zur Aufzeichnung und/oder Übertragung von Fotos und/oder Videos versehen, wobei diese Minikameraeinrichtung so ausgelegt ist, dass sie von der Nutzerin bzw. dem Nutzer aktivierbar und deaktivierbar ist.

1603 However, the use of corresponding mini camera devices in vibrators as sex toys for adults is already known from the prior art.

-------------------------------------------------------------------------------

1606 Die Verwendung entsprechender Minikameraeinrichtungen bei Vibratoren als Sexspielzeugen für Erwachsene ist dabei jedoch an sich aus dem Stand der Technik bereits bekannt.

[0064]

1613 If a vibrator according to the invention is provided with both a handle and operating part 2 and a mini camera device, it is provided in particularly preferred embodiments of the vibrator according to the invention that the mini camera device is integrated into the handle and operating part 2.

-------------------------------------------------------------------------------

1618 Sofern ein erfindungsgemäßer Vibrator sowohl mit einem Griff- und Bedienteil 2 als auch mit einer Minikameraeinrichtung versehen ist, ist es bei besonders bevorzugten Ausführungsbeispielen des erfindungsgemäßen Vibrators vorgesehen, dass die Minikameraeinrichtung in das Griff- und Bedienteil 2 integriert ist.

1624 In other exemplary embodiments of the vibrator according to the invention with a mini camera device, the mini camera device can also be integrated at another location in the vibrator - for example in the vibrating part 1.

-------------------------------------------------------------------------------

1628 Bei anderen Ausführungsbeispielen des erfindungsgemäßen Vibrators mit Minikameraeinrichtung kann die Minikameraeinrichtung auch an einer anderen Stelle in den Vibrator – beispielsweise auch in das Vibrier-Teil 1 – integriert sein.

1633 There are no limits to the arrangement options for the mini camera device.

1635 Den Anordnungsmöglichkeiten der Minikameraeinrichtung sind insoweit keine Grenzen gesetzt.

## [0065]

1642 In some embodiments of the vibrator according to the invention, a storage device for storing and releasing fragrances or flavorings is provided in and/or on the vibrator.

---

1645 Bei einigen Ausführungsbeispielen des erfindungsgemäßen Vibrators ist im und/oder am Vibrator eine Speichereinrichtung zur Speicherung und Abgabe von Duft- oder Aromastoffen vorgesehen.

## [0066]

1653 There are also such embodiments of the vibrator according to the invention in which an audio playback device is provided in and/or on the vibrator, via which, for example, romantic or relaxing music can be played, which is particularly appreciated by female vibrator users.

---

1657 Auch gibt es solche Ausführungsbeispiele des erfindungsgemäßen Vibrators, bei denen im und/oder am Vibrator eine Audio-Abspieleinrichtung vorgesehen ist, über die beispielsweise romantische oder entspannende Musik abgespielt werden kann, was besonders von weiblichen Vibrator-Benutzerinnen sehr geschätzt wird.

1663 However, other users may also want to play other types of music or sounds from nature or any other sounds at all or even pure speech sequences or speech sequences accompanied by sounds and/or music.

---

1667 Andere Nutzer oder Nutzerinnen wünschen sich aber vielleicht auch das Abspielen anderer Musikarten oder von Geräuschen aus der Natur oder überhaupt irgendwelcher anderer Geräusche oder sogar reiner oder mit Geräuschen und/oder Musik unterlegter Sprachsequenzen.

1673 All of this can basically be realized using the audio playback device mentioned.

---

1675 Auch das alles kann mittels der genannten Audio-Abspieleinrichtung grundsätzlich realisiert

werden.

*1679* There are no limits to the types of sounds that can be played.

--------------------------------------------------------------------------------

*1681* Den Arten der abzuspielenden Töne sind insoweit keine Grenzen gesetzt.

## [0067]

*1687* The mentioned mini camera device is preferably designed so that it has UHD resolution and is set up to take and/or transmit photos and/or videos.

--------------------------------------------------------------------------------

*1690* Die genannte Minikameraeinrichtung ist vorzugsweise so ausgelegt, dass sie UHD-Auflösung hat und zur Aufnahme und/oder zum Übertragen von Fotos und/oder Videos eingerichtet ist.

*1694* "UHD resolution" here means "Ultra HD resolution" with 3840 × 2160 pixels.

--------------------------------------------------------------------------------

*1696* „UHD-Auflösung" bedeutet hier „Ultra HD Auflösung" mit 3840 × 2160 Pixeln.

## [0068]

*1702* Further exemplary embodiments of vibrators according to the invention can be provided with a vacuum pump that can be controlled in terms of its suction strength and/or its pulsation rhythm for the purpose of suctioning and pulsating stimulation of a clitoris in a female user.

--------------------------------------------------------------------------------

*1706* Weitere Ausführungsbeispiele erfindungsgemäßer Vibratoren können mit einer in ihrer Ansaugstärke und/oder ihrem Pulsationsrhythmus steuerbaren Vakuum-Pumpe zwecks ansaugender und pulsierender Stimulation eines Kitzlers bei einer weiblichen Nutzerin versehen sein.

*1712* Such clitoris stimulation devices are already known from the prior art.

--------------------------------------------------------------------------------

*1714* Derartige Kitzlerstimulationseinrichtungen sind an sich aus dem Stand der Technik bereits bekannt.

[0069]

*1721* The vacuum pump just mentioned is preferably provided with a heating device for heating the vacuum pump.

--------------------------------------------------------------------------------

*1724* Die eben genannte Vakuum-Pumpe ist vorzugsweise mit einer Heizeinrichtung zur Erwärmung der Vakuum-Pumpe versehen.

*1728* In some exemplary embodiments of vibrators according to the invention, the heating device for heating the vacuum pump is designed to be controllable in such a way that at least two, preferably more than two, different temperatures can be set in a selectable manner by the user of the vibrator.

--------------------------------------------------------------------------------

*1733* Dabei ist die Heizeinrichtung zur Erwärmung der Vakuum-Pumpe bei manchen Ausführungsbeispielen erfindungsgemäßer Vibratoren derart regelbar ausgelegt, dass mit ihr mindestens zwei, vorzugsweise mehr als zwei, verschiedene Temperaturen durch die Nutzerin oder durch den Nutzer des Vibrators wählbar eingestellt werden können.

*1739* If there is a heating device for heating the vacuum pump, this heating device for heating the vacuum pump should be designed in such a way that it can heat the vacuum pump in such a way that it is safe for the user when the vacuum pump comes into contact with the skin doesn't feel uncomfortable.

--------------------------------------------------------------------------------

*1744* Sofern eine Heizeinrichtung zur Erwärmung der Vakuum-Pumpe vorhanden ist, sollte diese Heizeinrichtung zur Erwärmung der Vakuum-Pumpe so ausgelegt sein, dass sie die Vakuum-Pumpe derart anwärmen kann, dass es sich beim Hautkontakt der Vakuum-Pumpe für die Nutzerin oder den Nutzer nicht unangenehm anfühlt.

[0070]

*1753* In some of its exemplary embodiments, the vibrator according to the invention is set up so that it can be connected to a telecommunications network, preferably to the Internet, by means of a cable and/or wirelessly.

--------------------------------------------------------------------------------

*1757* Bei einigen seiner Ausführungsbeispiele ist der erfindungsgemäße Vibrator sind so eingerichtet, dass er mittels eines Kabels und/oder kabellos an ein Telekommunikationsnetzwerk, bevorzugterweise an das Internet, angeschlossen werden

kann.

*1763* Such a connection can be implemented, for example, by means of a USB port, preferably by means of a USB 3.0 port, and/or by means of a mini-USB port and/or by means of a Wi-Fi connection and/or by means of a Bluetooth interface .

----------------------------------------------------------------------------------------------------

*1767* Ein solcher Anschluss kann beispielsweise realisiert werden mittels eines USB-Anschlusses, bevorzugterweise mittels eines USB-3.0-Anschlusses, und/oder mittels eines Mini-USB-Anschlusses und/oder mittels einer W-LAN-Anbindung und/oder mittels einer Bluetooth-Schnittstelle.

*1773* In this way, embodiments of the vibrator according to the invention can be effectively equipped with cyber sex functionality. If a camera device is provided, which is permanently mounted on the vibrator or can at least be placed on the vibrator as an additional part, the vibrator can then be set up so that it is able to feed photos and / or videos into the telecommunications network mentioned.

----------------------------------------------------------------------------------------------------

*1779* Auf diese Weise können Ausführungsbeispiele des erfindungsgemäßen Vibrators wirksam mit einer Cyber-Sex-Funktionalität ausgestattet werden. Sofern eine Kameraeinrichtung vorgesehen ist, welche fest an dem Vibrator montiert oder zumindest als Ergänzungsteil auf den Vibrator aufsetzbar ist, kann der Vibrator dann ferner so eingerichtet werden, dass er in der Lage ist, Fotos und/oder Videos in das genannte Telekommunikationsnetzwerk einzuspeisen.

## [0071]

*1790* The above-mentioned mini camera device and/or the above-mentioned vacuum pump can be permanently mounted on the vibrator, but in other exemplary embodiments of the invention they can also be supplied as accessory devices that can be optionally mounted on the vibrator and removed again by the user .

----------------------------------------------------------------------------------------------------

*1795* Die vorstehend genannte Minikameraeinrichtung und/oder die vorstehend genannte Vakuum-Pumpe können fest auf dem Vibrator montiert sein, sie können jedoch bei anderen Ausführungsbeispielen der Erfindung auch als wahlweise von der Nutzerin bzw. von dem Nutzer auf den Vibrator aufmontierbare und wieder abmontierbare Zubehöreinrichtungen geliefert werden.

1802 In the latter case, the vibrator according to the invention, the mini camera device and the vacuum pump are then preferably provided as a set, and the individual parts of this set are stored in a case, preferably an aluminum case. Preferably, the inside of said suitcase for the individual parts of said set is designed in such a way that a storage compartment adapted to its shape and size or a storage recess adapted to its shape and size is provided in the suitcase for each individual part of said set. It is particularly preferred to design the suitcase mentioned in such a way that it is lined with velvet on the inside and has an elegant overall design. Such a case is particularly suitable for use by people who use the set mentioned professionally and at home or You can take them with you to your customers on hotel visits, but the fact that such a suitcase is easy to keep organized, clear and therefore quick and easy to find the individual parts of the set mentioned will also be appreciated by all other users.

--------------------------------------------------------------------------------------------------------

1815 In letzterem Fall werden dann bevorzugterweise der erfindungsgemäße Vibrator, die Minikameraeinrichtung und die Vakuum-Pumpe als Set bereitgestellt, und die einzelnen Teile dieses Sets werden in einem Koffer, vorzugsweise einem Aluminiumkoffer, aufbewahrt. Vorzugsweise ist der genannte Koffer für die Einzelteile des genannten Sets innen so gestaltet, dass für jedes Einzelteil des genannten Sets in dem Koffer ein an seine Form und Größe angepasstes Ablagefach bzw. eine an seine Form und Größe angepasste Ablagevertiefung vorgesehen ist. Ganz besonders bevorzugt ist es, den genannten Koffer so auszugestalten, dass er innen mit Samt ausgeschlagen ist und überhaupt insgesamt ein edles Design aufweist. Ein derartiger Koffer ist zwar insbesondere geeignet für die Verwendung durch Personen, welche das genannte Set professionell verwenden und zu Haus- bzw. Hotelbesuchen zu ihren Kunden und Kundinnen mitnehmen, jedoch wird die durch einen solchen Koffer leicht zu haltende Ordnung, Übersichtlichkeit und damit schnelle und unkomplizierte Auffindbarkeit der Einzelteile des genannten Sets auch durch alle anderen Nutzerinnen und Nutzer geschätzt werden.


1831 Instead of a suitcase, a box or box, preferably a wooden crate or box, can also be used for these purposes. This box or box can also have a storage compartment adapted to its shape and size or a storage recess adapted to its shape and size for each individual part of the set mentioned. Here too, it is particularly preferred to design the box or box mentioned in such a way that it is lined with velvet on the inside and has an overall elegant design. Preferably, care is taken to ensure that the individual components of the respective set fit precisely inside the suitcase or in the box or in the box and are each separated from one another in their very specific place. If a wooden box or a wooden box is used as a storage device, it is particularly nice if this wooden box or wooden box is made of the same wood as a wooden handle and control part 2 of the vibrator that may be stored in it.

--------------------------------------------------------------------------------------------------------

1842 Statt eines Koffers kann für diese Zwecke auch eine Kiste oder Schachtel, vorzugsweise eine Holzkiste oder Holzschachtel, genutzt werden. Auch diese Kiste oder Schachtel kann für

jedes Einzelteil des genannten Sets ein an dessen Form und Größe angepasstes Ablagefach bzw. eine an dessen Form und Größe angepasste Ablagevertiefung aufweisen. Ganz besonders bevorzugt ist es auch hier, die genannte Kiste oder Schachtel so auszugestalten, dass sie innen mit Samt ausgeschlagen ist und überhaupt insgesamt ein edles Design aufweist. Bevorzugt wird darauf geachtet, dass die einzelnen Bestandteile des jeweiligen Sets in dem Koffer oder in der Kiste oder in der Schachtel innen passgenau und jeweils abgegrenzt voneinander jeweils ihren ganz bestimmten Platz haben. Sofern eine Holzkiste oder eine Holzschachtel als Ablageeinrichtung Verwendung findet, ist es besonders schön, wenn diese Holzkiste oder Holzschachtel aus demselben Holz wie ein in ihr etwaig abzulegendes hölzernes Griff- und Bedienteil 2 des Vibrators gefertigt ist.

[0072]

1859 Different exemplary embodiments of such sets according to the invention have different numbers and different types of individual parts.

--------------------------------------------------------------------------------

1862 Verschiedene Ausführungsbeispiele derartiger erfindungsgemäßer Sets weisen unterschiedlich viele und unterschiedlich geartete Einzelteile auf.

1866 For example, further individual parts of a set according to the invention can be provided as a flexible and/or a non-flexible selfie stick, with the help of which the said mini camera device can be mounted on the vibrator, an SD card, preferably a nano SD card and/or or a micro SD card for storing photos and/or videos, a replacement battery and/or a power supply for operating the vibrator, a pulse measuring device for effectively connecting to the vibrator and a blood pressure measuring device for effectively connecting to the vibrator.

--------------------------------------------------------------------------------

1873 Beispielsweise können ferner als weitere Einzelteile eines erfindungsgemäßen Sets vorgesehen sein ein biegsamer und/oder ein nicht biegsamer Selfie-Stick, mit dessen Hilfe sich die genannte Minikamereinrichtung auf den Vibrator montieren lässt, eine SD-Karte, vorzugsweise eine Nano-SD-Karte und/oder eine Micro-SD-Karte, zum Speichern von Fotos und/oder Videos, ein Ersatz-Akkumulator und/oder ein Netzteil für den Betrieb des Vibrators, eine Pulsmesseinrichtung zum wirksamen Verbinden mit dem Vibrator sowie eine Blutdruckmesseinrichtung zum wirksamen Verbinden mit dem Vibrator.

[0073]

1885 If a pulse measuring device for effective connection to the vibrator and/or a blood pressure

measuring device for effective connection to the vibrator is or are part of an exemplary embodiment of a set according to the invention, it then makes sense to include such a vibrator according to the invention in the set, which is set up in such a way that Measurement data provided by the pulse measuring device or by the blood pressure measuring device can be used to control at least one function of the vibrator.

-----------------------------------------------------------------------------------------------

1892 Sofern eine Pulsmesseinrichtung zum wirksamen Verbinden mit dem Vibrator und/oder eine Blutdruckmesseinrichtung zum wirksamen Verbinden mit dem Vibrator Bestandteil eines Ausführungsbeispiels eines erfindungsgemäßen Sets ist bzw. sind, ist es dann sinnvoll, dem Set einen solchen erfindungsgemäßen Vibrator beizugeben, welcher so eingerichtet ist, dass von der Pulsmessungseinrichtung bzw. von der Blutdruckmessungseinrichtung bereitgestellte Messdaten zur Steuerung mindestens einer Funktion des Vibrators verwendet werden können.

## [0074]

1904 If a flexible selfie stick is present as part of an exemplary embodiment of a set according to the invention, it is particularly advantageous to design this selfie stick in such a way that it is flexible in all directions.

-----------------------------------------------------------------------------------------------

1908 Sofern ein biegsamer Selfie-Stick als Bestandteil eines Ausführungsbeispiels eines erfindungsgemäßen Sets vorhanden ist, ist es besonders vorteilhaft, diesen Selfie-Stick so auszugestalten, dass er in alle Richtungen biegsam ist.

1913 But this is not absolutely necessary.

-----------------------------------------------------------------------------------------------

1915 Unbedingt notwendig ist das aber nicht.

## [0075]

1921 If a selfie stick - whether flexible or non-flexible - is available, in most exemplary embodiments of sets according to the invention, the vibrator and selfie stick are coordinated with one another in such a way that the selfie stick can be attached to the handle and control part 2 of the vibrator.

-----------------------------------------------------------------------------------------------

1926 Sofern ein Selfie-Stick – egal ob biegsam oder nicht biegsam – vorhanden ist, sind Vibrator und Selfie-Stick bei den meisten Ausführungsbeispielen erfindungsgemäßer Sets so

aufeinander abgestimmt, dass der Selfie-Stick am Griff- und Bedienteil 2 des Vibrators befestigbar ist.

1932 However, there are also other exemplary embodiments of sets according to the invention with a selfie stick, in which the selfie stick can be attached to a different location on the vibrator.

--------------------------------------------------------------------------------

1935 Es gibt jedoch darüber hinaus auch andere Ausführungsbeispiele erfindungsgemäßer Sets mit Selfie-Stick, bei denen der Selfie-Stick an einer anderen Stelle des Vibrators befestigbar ist.

1939 In yet other exemplary embodiments of sets with a selfie stick according to the invention, the selfie stick and the vibrator are coordinated with one another in such a way that the selfie stick can be attached either to the handle and control part 2 of the vibrator or to another location on the vibrator. The size of the selfie stick as such is fundamentally not subject to any restrictions within the scope of the present invention. However, a mini selfie stick is preferred here. It should preferably also be possible to operate the mini camera device via the selfie stick.

--------------------------------------------------------------------------------

1947 Bei wieder anderen Ausführungsbeispielen erfindungsgemäßer Sets mit Selfie-Stick sind der Selfie-Stick und der Vibrator so aufeinander abgestimmt, dass der Selfie-Stick wahlweise am Griff- und Bedienteil 2 des Vibrators oder an einer anderen Stelle des Vibrators befestigt werden kann. Die Größe des Selfie-Sticks als solche ist im Rahmen der vorliegenden Erfindung grundsätzlich keinen Beschränkungen unterworfen. Bevorzugt kommt hier aber ein Selfie-Stick in Mini-Form zur Anwendung. Bevorzugt sollte über den Selfie-Stick auch die Bedienung der Minikameraeinrichtung möglich sein.

[0076]

1959 In some of its exemplary embodiments, a vibrator according to the invention can have a strap-on device, with the help of which a person can strap on the vibrator facing towards themselves and/or facing away from themselves.

--------------------------------------------------------------------------------

1963 Ein erfindungsgemäßer Vibrator kann bei einigen seiner Ausführungsbeispiele eine Umschnalleinrichtung aufweisen, mit deren Hilfe sich eine Person den Vibrator zu sich hin gewandt gerichtet und/oder von sich abgewandt gerichtet anschnallen kann.

1968 This is useful, for example, for males with erectile dysfunction or for both male and female users. Users with a physical disability and/or in connection with cyber sex functionality of the

vibrator. Although the strapping device just mentioned is firmly mounted on the vibrator in some exemplary embodiments of vibrators according to the invention, in other exemplary embodiments of vibrators according to the invention it can be optionally attached to the vibrator by the user and can also be removed from the vibrator again and in this way represent part of a set according to the invention or alone as a strap-on device as such together with a vibrator according to the invention form an exemplary embodiment of a set according to the invention.

------------------------------------------------------------------------------------------------------------

*1978* Dies ist beispielsweise nützlich für männliche Personen mit Potenzstörungen oder sowohl für männliche als auch weibliche Nutzer bzw. Nutzerinnen mit einer körperlichen Behinderung und/oder im Zusammenhang mit einer Cyber-Sex-Funktionalität des Vibrators. Obzwar die eben genannte Umschnalleinrichtung bei manchen Ausführungsbeispielen erfindungsgemäßer Vibratoren fest an dem Vibrator montiert ist, kann sie bei anderen Ausführungsbeispielen erfindungsgemäßer Vibratoren als von der Nutzerin bzw. dem Nutzer wahlweise an den Vibrator anmontierbar und auch wieder von dem Vibrator abmontierbar sein und auf diese Weise auch einen Teil eines erfindungsgemäßen Sets darstellen bzw. allein als Umschnalleinrichtung als solche zusammen mit einem erfindungsgemäßen Vibrator ein Ausführungsbeispiel für ein erfindungsgemäßes Set bilden.

## [0077]

*1993* Some exemplary embodiments of sets according to the invention have a battery charging station as a further additional part.

------------------------------------------------------------------------------------------------------------

*1996* Einige Ausführungsbeispiele erfindungsgemäßer Sets weisen als weiteres zusätzliches Teil eine Akkumulator-Ladestation auf.

*2000* In some embodiments, this battery charging station is an inductive battery charging station for wireless charging of the battery.

------------------------------------------------------------------------------------------------------------

*2003* In manchen Ausführungsbeispielen ist diese Akkumulator-Ladestation eine induktive Akkumulator-Ladestation für ein kabelloses Laden des Akkumulators.

## [0078]

*2010* Some exemplary embodiments of sets according to the invention have two or more different vibrators, with at least one vibrator having to be a vibrator according to the invention.

-------------------------------------------------------------------------------------------------------

2013 Manche Ausführungsbeispiele erfindungsgemäßer Sets weisen zwei oder mehr verschiedene Vibratoren auf, wobei zumindest ein Vibrator ein erfindungsgemäßer Vibrator sein muss.


2017 This can e.g. This can be important for professional users of such a set, for example, because some customers of these users Users may have an allergic reaction to a certain material, for example latex. Then it is important for the professional user to have an alternative selection of vibrators at hand. So can e.g. B. such an embodiment of a set according to the invention includes a vibrator in which the outer shell of the vibrating part 1 is made of latex, and another vibrator in which the outer shell of the vibrating part 1 is made of a latex-free, but still soft, supple and stretchy material, which in turn may cause some other allergic reaction in customers who are not allergic to latex. By specifically selecting the vibrator that is safe for each individual customer from an allergy perspective, a variety of customers or

-------------------------------------------------------------------------------------------------------

2027 Dies kann z. B. für professionelle Anwenderinnen und Anwender eines solchen Sets wichtig sein, denn manche Kunden oder Kundinnen dieser Anwenderinnen bzw. Anwender können auf ein bestimmtes Material, zum Beispiel auf Latex, allergisch reagieren. Dann ist es für die professionelle Anwenderin bzw. für den professionellen Anwender wichtig, eine Alternativauswahl eines Vibrators zur Hand zu haben. So kann z. B. ein derartiges Ausführungsbeispiel eines erfindungsgemäßen Sets einen Vibrator beinhalten, bei dem die äußere Hülle des Vibrier-Teils 1 aus Latex besteht, und einen weiteren Vibrator, bei dem die äußere Hülle des Vibrier-Teils 1 aus einem latexfreien, aber trotzdem weichen, geschmeidigen und dehnbaren Material besteht, das aber vielleicht seinerseits bei Kunden, die zwar keine Latexallergie haben, irgendeine andere allergische Reaktion hervorrufen mag. So kann durch gezielte Auswahl des für jeden einzelnen Kunden jeweils unter Allergiegesichtspunkten unbedenklichen Vibrators eine Vielfalt an Kunden bzw.


2041 Customers are served safely by the professional user, at least to this extent. Apart from the different materials of the outer shell of the vibrating part 1, the two vibrators mentioned purely as one of many possible exemplary embodiments can otherwise be technically completely the same, but they can also be designed differently from a technical point of view, e.g. B. have different additional functionalities.

-------------------------------------------------------------------------------------------------------

2047 Kundinnen von der professionellen Anwenderin bzw. von dem professionellen Anwender zumindest insoweit sicher bedient werden. Abgesehen von den unterschiedlichen Materialien der äußeren Hülle des Vibrier-Teils 1 können die beiden eben rein als eines von vielen möglichen Ausführungsbeispielen genannten Vibratoren ansonsten technisch völlig gleich sein, sie können aber auch technisch unterschiedlich ausgebildet sein, z. B. unterschiedliche Zusatzfunktionalitäten aufweisen.

[0079]

2058 It should be noted at this point that in the exemplary embodiments of sets according to the invention described above with several vibrators, at least one of the vibrators contained in the respective set must be a vibrator according to the invention, but the further vibrator (s) do not necessarily have to be designed according to the invention , although it is preferred to design each individual vibrator included in the set as a vibrator according to the invention.

-------------------------------------------------------------------------------------------------------------

2064 Es sei an dieser Stelle darauf hingewiesen, dass bei den vorstehend beschriebenen Ausführungsbeispielen erfindungsgemäßer Sets mit mehreren Vibratoren zwar mindestens einer der in dem jeweiligen Set enthaltenen Vibratoren ein erfindungsgemäßer Vibrator sein muss, der oder die weiteren Vibrator(en) jedoch nicht unbedingt erfindungsgemäß ausgebildet sein müssen, obwohl es allerdings bevorzugt ist, jeden einzelnen der in dem Set enthaltenen Vibratoren als erfindungsgemäßen Vibrator auszubilden.

[0080]

2075 Some exemplary embodiments of sets according to the invention have two or more different handle and control parts 2, which can be exchanged on the respective vibrator or vibrators, with adjusting devices 3 for the various functions and adjustment options of the vibrator or vibrators.

-------------------------------------------------------------------------------------------------------------

2080 Manche Ausführungsbeispiele erfindungsgemäßer Sets weisen zwei oder mehr verschiedene, an dem jeweiligen Vibrator bzw. an den jeweiligen Vibratoren auswechselbare Griff- und Bedienteile 2 mit Einstelleinrichtungen 3 für die verschiedenen Funktionen und Verstellmöglichkeiten des Vibrators bzw. der Vibratoren auf.

2086 With such exemplary embodiments of sets according to the invention, the user has a great variety of combinations both in terms of technical functionalities and in terms of the purely external design variants in terms of shape, color and/or feel.

-------------------------------------------------------------------------------------------------------------

2090 So ergibt sich bei solchen Ausführungsbeispielen erfindungsgemäßer Sets für die Nutzerin bzw. für den Nutzer eine große Kombinationsvielfältigkeit sowohl in Bezug auf technische Funktionalitäten als auch in Bezug auf die rein äußerlichen Gestaltungsvarianten in Bezug auf Form, Farbe und/oder Haptik.

2096 In this way, different handle and operating parts 2 can be combined with different vibrating parts 1 in various possible combinations.

-------------------------------------------------------------------------------------------------------

2099 Verschiedene Griff- und Bedienteile 2 können auf diese Weise jeweils mit unterschiedlichen Vibrier-Teilen 1 in diversen Kombinationsmöglichkeiten vereinigt werden.

[0081]

2106 In some of its exemplary embodiments, the vibrator according to the invention is set up so that its functions can be adjusted and/or controlled in whole or in part, exclusively or not exclusively by means of a wired and/or wireless remote control.

-------------------------------------------------------------------------------------------------------

2110 In manchen seiner Ausführungsbeispiele ist der erfindungsgemäße Vibrator so eingerichtet, dass seine Funktionen ganz oder teilweise, ausschließlich oder nicht ausschließlich mittels einer kabelgebundenen und/oder kabellosen Fernbedienung einstellbar und/oder steuerbar sind.

2116 If such an exemplary embodiment of a vibrator according to the invention is part of an exemplary embodiment of a set according to the invention, such an exemplary embodiment of a set according to the invention often also has a corresponding associated remote control device. On the other hand, such a remote control can also be designed as a remote control via the Internet that cannot be operated by the current direct user. This is particularly important in the context of the implementation of cyber sex functionalities, in which a correspondingly configured embodiment of the vibrator according to the invention is controlled remotely by a person who is not identical to the person who is in direct physical contact with the vibrator stands.

-------------------------------------------------------------------------------------------------------

2126 Sofern ein derartiges Ausführungsbeispiel eines erfindungsgemäßen Vibrators Bestandteil eines Ausführungsbeispiels eines erfindungsgemäßen Sets ist, weist ein solches Ausführungsbeispiel eines erfindungsgemäßen Sets häufig auch eine entsprechende zugehörige Fernbedienungseinrichtung auf. Andererseits kann eine solche Fernbedienung auch über das Internet als nicht von der aktuellen unmittelbaren Nutzerin oder dem aktuellen unmittelbaren Nutzer zu bedienende Fernbediendung ausgebildet sein. Dies ist vor allem im Rahmen der Realisierung von Cyber-Sex-Funktionalitäten bedeutsam, bei denen ein entsprechend eingerichtetes Ausführungsbeispiel des erfindungsgemäßen Vibrators aus der Ferne von einer Person gesteuert wird, welche nicht mit derjenigen Person identisch ist, welche in unmittelbarem körperlichem Kontakt mit dem Vibrator steht.

2138 QUOTES INCLUDED IN THE DESCRIPTION

---

2140 ZITATE ENTHALTEN IN DER BESCHREIBUNG

## [0082]

2146 This list of documents listed by the applicant was generated automatically and is included solely for the better information of the reader. The list is not part of the German patent or Utility model registration. The DPMA assumes no liability for any errors or omissions.

---

2150 Diese Liste der vom Anmelder aufgeführten Dokumente wurde automatisiert erzeugt und ist ausschließlich zur besseren Information des Lesers aufgenommen. Die Liste ist nicht Bestandteil der deutschen Patent- bzw. Gebrauchsmusteranmeldung. Das DPMA übernimmt keinerlei Haftung für etwaige Fehler oder Auslassungen.

2156 Cited patent literature

---

2158 Zitierte Patentliteratur

## [0083]

2164 US 6350230 B1

---

2166 US 6350230 B1

2169 DE 102009038448 A1

---

2171 DE 102009038448 A1

2174 DE 20119660 U1

---

2176 DE 20119660 U1

2179 WO 2009/087627 A2

---

*2181* WO 2009/087627 A2

*2184* EP 2735299 B1

---

*2186* EP 2735299 B1

*2189* DE 202011104946 U1

---

*2191* DE 202011104946 U1

*2194* DE 202010013764 U1

---

*2196* DE 202010013764 U1

*2199* WO 2009/146840 A1

---

*2201* WO 2009/146840 A1

*2204* US 7946977 B2

---

*2206* US 7946977 B2

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 48644754 |
| **Application Number:** | 18202966 |
| **International Application Number:** | |
| **Confirmation Number:** | 9753 |
| **Title of Invention:** | PENIS MASSAGER |
| **First Named Inventor/Applicant Name:** | Tenghui Huang |
| **Customer Number:** | 176174 |
| **Filer:** | Kevin P. Chen |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 22A1385US-CIP |
| **Receipt Date:** | 26-SEP-2023 |
| **Filing Date:** | 29-MAY-2023 |
| **Time Stamp:** | 23:40:41 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Response to Election / Restriction Filed | 22A1385US-CIP-ResponsetoElection.pdf | 145410 <br><br> 5963e294c21fab04bc36720da271a827e15 03580 | no | 5 |

**Warnings:**

| Information: | | |
|---|---|---|
| **Total Files Size (in bytes):** | | 145410 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Application No. | : | 18/202,966 |
| Application Filing Date | : | May 29, 2023 |
| First Named Inventor | : | Tenghui Huang |
| Attorney Docket No. | : | 22A1385US-CIP |
| Confirmation No. | : | 9753 |
| Examiner | : | COX, THADDEUS B |
| Art Unit | : | 3791 |

Mail Stop

Commissioner for Patents

P.O. Box 1450

Alexandria, Virginia 22313-1450

## <u>RESPONSE TO ELECTION/RESTRICTION</u>

Dear Sir / Madam,

In response to the Election/Restriction dated Aug. 4, 2023, Applicant respectfully requests entry of the following amendments and consideration of the following remarks.

**Amendments to the Claims** begin on page 2 of this paper**.**

**Remarks** begins on page 5 of this paper.

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions and listings of claims in the application.

**Listing of Claims:**

1. (Original) A penis massager, comprising:

a housing defining a space therein;

a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;

a driving device for driving the sleeve to generate motion relative to the housing; and

at least two handles extending outwardly from an outer face of the housing for holding of the penis massager.

2. (Original) The penis massager according to claim 1, wherein each of the at least two handles is angular with the housing.

3. (Original) The penis massager according to claim 2, wherein each of the at least two handles comprises a first end connected to the housing and a second end away from the housing, and at least one button is provided on the at least two handles.

4. (Original) The penis massager according to claim 3, wherein the first end of the handle is connected to an end of the housing away from an open end of the sleeve, and the second end of the handle is substantially dome-shaped, the at least one button is provided on the first end of the handle.

5. (Original) The penis massager according to claim 1, wherein the at least two handles are detachably connected to the housing.

6. (Original) The penis massager according to claim 1, wherein the at least two handles are slidably connected to the housing.

7. (Original) The penis massager according to claim 1, wherein the at least two handles are rotatably connected to the housing.

8. (Original) The penis massager according to claim 7, wherein each of the at least two handles comprises a fixing seat fixedly connected to the housing and a rotating arm, one of the fixing seat and the rotating arm defining a shaft hole therein, and the other one of the

fixing seat and the rotating arm comprising a shaft being rotatably inserted into the shaft hole.

9. (Original) The penis massager according to claim 8, wherein the fixing seat forms a plurality of first teeth at an axial end face thereof, the rotating arm forms a plurality of second teeth at a surface thereof facing towards the first teeth, and the first teeth and the second teeth mesh with each other.

10. (Original) The penis massager according to claim 1, wherein the at least two handles comprises two handles, and the two handles are arranged symmetrically at two sides of the housing.

11. (Original) The penis massager according to claim 1, wherein the driving device comprises a vibration motor embedded in the sleeve.

12. (Original) The penis massager according to claim 11, wherein the driving device further comprises a driving motor for driving the sleeve to rotate relative to the housing.

13. (Original) The penis massager according to claim 11, wherein the driving device further comprises a driving motor for driving the sleeve to do reciprocating axial movement relative to the housing.

14. (Original) The penis massager according to claim 13, wherein a movable cabin is movably mounted in the space of the housing, the sleeve is detachably mounted into the movable cabin, and guiding bars are provided in the housing for guiding axial movement of the movable cabin and the sleeve.

15. (Original) The penis massager according to claim 14, wherein a fixing frame is arranged around the sleeve, a plurality of first conductive members is provided on the fixing frame and connected to the vibration motor electrically, and a plurality of second conductive members is provided on the movable cabin and contacts with the first conductive members.

16. (Original) The penis massager according to claim 1, wherein a plurality of bulges is provided on an interior surface of the sleeve surrounding the interior volume.

17. (Withdrawn) A penis massager, comprising:

    a housing defining a first space and a second space therein;

    a sleeve provided in the first space of the housing and defining an interior volume for accommodating a penis therein;

a driving motor mounted in the second space of the housing and connected to the sleeve in a transmission way, the driving motor being configured for driving the sleeve to move and/or rotate relative to the housing; and

at least two handles extending outwardly from an outer face of the housing for holding of the penis massager.

18. (Withdrawn) The penis massager according to claim 17, wherein at least one button is provided on the at least two handles.

19. (Withdrawn) The penis massager according to claim 18, wherein the at least two handles are fixed to the housing and is angular with the housing.

20. (Withdrawn) The penis massager according to claim 18, wherein the at least two handles are movably or rotatably connected to an end of the housing away from an open end of the interior volume of the sleeve.

## REMARKS

Claims 1-20 are pending, wherein claims 1-16 are provisionally elected in this Response to Election/Restriction Requirement, and claims 17-20 are withdrawn. No new matter is introduced.

## Election/Restriction

In response to the Election/Restriction Requirement and in the interest of facilitating the prosecution, Applicant elects Invention I (i.e., claims 1-16) without traverse.

If the elected claims are found allowable, Applicant retains the right to rejoin non-elected claims with proper amendments to the non-elected claim(s) including all the limitations of the elected and later allowed claims. Further, Applicant retains the right to file a divisional application for non-elected claims.


Sincerely,

Kevin P. Chen

/Kevin P. Chen/

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number | Filing Date | |
|---|---|---|
| 18/202,966 | 05/29/2023 | ☐ To be Mailed |

**ENTITY:** ☐ LARGE  ☑ SMALL  ☐ MICRO

### APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | x $40 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | x $ 192 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | 09/26/2023 | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| AMENDMENT | Total (37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | x $40 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 2 | Minus | *** 3 | = 0 | x $ 192 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| AMENDMENT | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x $ 0 = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x $ 0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /SHARAIN E MORELAND/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR PATENTS
P.O. BOX
ALEXANDRIA VA 22313-1451

PRESORTED
FIRST CLASS MAIL
US POSTAGE PAID
C2M LLC

Kevin P. Chen –
255 Riverdale Dr
Fort Lee, NEW JERSEY 07024



**Courtesy Reminder for**

**Application Serial No: 18202966**

Attorney Docket No: 22A1385US-CIP

Customer Number: 176174

Date of Electronic Notification: 2023-08-04

To view your correspondence online or update your email addresses, please visit us anytime at https://patentcenter.uspto.gov/
 If you have any questions, please contact the Patent Electronic Business Center (EBC) at ebc@uspto.gov or 866-217-9197 Monday –
Friday, 6 a.m. to midnight  ET

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/202,966 | 05/29/2023 | Tenghui Huang | 22A1385US-CIP | 9753 |

| | |
|---|---|
| 176174        7590        08/04/2023 | EXAMINER |
| Kevin P. Chen | COX, THADDEUS B |
| 255 Riverdale Dr | |
| Fort Lee, NJ 07024 | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3791 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/04/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

kckclaw@yahoo.com
kevchen888@yahoo.com

PTOL-90A (Rev. 04/07)

| ***Office Action Summary*** | **Application No.** 18/202,966 | **Applicant(s)** Huang et al. | |
|---|---|---|---|
| | **Examiner** THADDEUS B COX | **Art Unit** 3791 | **AIA (FITF) Status** Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>2</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☐ This action is **FINAL.**     2b) ☐ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1-20</u> is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☐ Claim(s) _____ is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☑ Claim(s) <u>1-20</u> are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
  a)☐ All   b)☐ Some**   c)☐ None of the:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. _____.
    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
  Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
  Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

Application/Control Number: 18/202,966                                    Page 2
Art Unit: 3791

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

### *Election/Restriction*

2.      Restriction to one of the following inventions is required under 35 U.S.C. 121:

        I.      Claims 1-16, drawn to a penis massager, classified in A61H19/32.

        II.     Claims 17-20, drawn to a penis massager, classified in A61H19/32.

        The inventions are independent or distinct, each from the other because:

3.      Inventions I and II are directed to related products.  The related inventions are

distinct if: (1) the inventions as claimed are either not capable of use together or can

have a materially different design, mode of operation, function, or effect; (2) the

inventions do not overlap in scope, i.e., are mutually exclusive; and (3) the inventions as

claimed are not obvious variants.  See MPEP § 806.05(j).  In the instant case, the

inventions as claimed can have a materially different design, mode of operation,

function, or effect.  Invention I includes a housing defining a single space, as well as a

generic driving device to drive motion of the sleeve relative to the housing; Invention II

includes first and second spaces, with the sleeve in the first space and a driving motor

in the second space, wherein the driving motor can move and rotate the sleeve relative

to the house. Thus, the inventions define different structures, include components that

are differently located, and include components that are different devices that are

capable of achieving different types of motion.  Furthermore, the inventions as claimed

do not encompass overlapping subject matter and there is nothing of record to show

them to be obvious variants.

4.      Restriction for examination purposes as indicated is proper because all the

inventions listed in this action are independent or distinct for the reasons given above

and there would be a serious search and/or examination burden if restriction were not

required because one or more of the following reasons apply:

        (a) the inventions have acquired a separate status in the art due to their

recognized divergent subject matter; and

        (b) the inventions require a different field of search (for example, searching

different classes/subclasses or electronic resources, or employing different search

queries).

        **Applicant is advised that the reply to this requirement to be complete must**

**include (i) an election of an invention to be examined** even though the requirement

may be traversed (37 CFR 1.143) **and (ii) identification of the claims encompassing**

**the elected invention**.

        The election of an invention may be made with or without traverse. To reserve a

right to petition, the election must be made with traverse. If the reply does not distinctly

and specifically point out supposed errors in the restriction requirement, the election

shall be treated as an election without traverse. Traversal must be presented at the time

of election in order to be considered timely. Failure to timely traverse the requirement

will result in the loss of right to petition under 37 CFR 1.144. If claims are added after

Application/Control Number: 18/202,966                                          Page 4
Art Unit: 3791

the election, applicant must indicate which of these claims are readable upon the

elected invention.

Should applicant traverse on the ground that the inventions are not patentably

distinct, applicant should submit evidence or identify such evidence now of record

showing the inventions to be obvious variants or clearly admit on the record that this is

the case. In either instance, if the examiner finds one of the inventions unpatentable

over the prior art, the evidence or admission may be used in a rejection under 35 U.S.C.

103 or pre-AIA 35 U.S.C. 103(a) of the other invention.

5.    Applicant is reminded that upon the cancelation of claims to a non-elected

invention, the inventorship must be corrected in compliance with 37 CFR 1.48(a) if one

or more of the currently named inventors is no longer an inventor of at least one claim

remaining in the application. A request to correct inventorship under 37 CFR 1.48(a)

must be accompanied by an application data sheet in accordance with 37 CFR 1.76 that

identifies each inventor by his or her legal name and by the processing fee required

under 37 CFR 1.17(i).


***Conclusion***

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to THADDEUS B COX whose telephone number is

(571)270-5132. The examiner can normally be reached M-F 9am-6pm.

Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

Application/Control Number: 18/202,966                                          Page 5
Art Unit: 3791

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

     If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Jason M. Sims can be reached on (571)272-7540. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

     Information regarding the status of published or unpublished applications may be

obtained from Patent Center. Unpublished application information in Patent Center is

available to registered users. To file and manage patent submissions in Patent Center,

visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-

center for more information about Patent Center and

https://www.uspto.gov/patents/docx for information about filing in DOCX format. For

additional questions, contact the Electronic Business Center (EBC) at 866-217-9197

(toll-free). If you would like assistance from a USPTO Customer Service

Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/THADDEUS B COX/
Primary Examiner, Art Unit 3791

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/202,966 | Huang et al. |
| | **Examiner** | **Art Unit** |
| | THADDEUS B COX | 3791 |

| ✓ | **Rejected** | | - | **Cancelled** | | **N** | **Non-Elected** | | **A** | **Appeal** |
|---|---|---|---|---|---|---|---|---|---|---|
| = | **Allowed** | | ÷ | **Restricted** | | **I** | **Interference** | | **O** | **Objected** |

| CLAIMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | | ☐ T.D. | | ☐ R.1.47 |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 07/31/2023 | | | | | | | | |
| | 1 | ÷ | | | | | | | | |
| | 2 | ÷ | | | | | | | | |
| | 3 | ÷ | | | | | | | | |
| | 4 | ÷ | | | | | | | | |
| | 5 | ÷ | | | | | | | | |
| | 6 | ÷ | | | | | | | | |
| | 7 | ÷ | | | | | | | | |
| | 8 | ÷ | | | | | | | | |
| | 9 | ÷ | | | | | | | | |
| | 10 | ÷ | | | | | | | | |
| | 11 | ÷ | | | | | | | | |
| | 12 | ÷ | | | | | | | | |
| | 13 | ÷ | | | | | | | | |
| | 14 | ÷ | | | | | | | | |
| | 15 | ÷ | | | | | | | | |
| | 16 | ÷ | | | | | | | | |
| | 17 | ÷ | | | | | | | | |
| | 18 | ÷ | | | | | | | | |
| | 19 | ÷ | | | | | | | | |
| | 20 | ÷ | | | | | | | | |

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/202,966 | 05/29/2023 | Tenghui Huang | 22A1385US-CIP | 9753 |

| | | |
|---|---|---|
| 176174          7590          07/14/2023 | | |

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

| EXAMINER |
|---|
| CENTRAL, DOCKET |

| ART UNIT | PAPER NUMBER |
|---|---|
| OPAP | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 07/14/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

kckclaw@yahoo.com
kevchen888@yahoo.com

PTOL-90A (Rev. 04/07)

| *Decision Granting Request for Prioritized Examination (Track I)* | Application No.<br>18/202,966 | Applicant(s)<br>Huang et al. | |
|---|---|---|---|
| | Examiner<br>FIKIRTE A GEREMEW | Art Unit<br>OMBL | AIA (FITF) Status<br>Yes |

1. THE REQUEST FILED <u>29 May 2023</u> IS **GRANTED** .

   The above-identified application has met the requirements for prioritized examination
   A.  ☑ for an original nonprovisional application (Track I).
   B.  ☐ for an application undergoing continued examination (RCE).

2. **The above-identified application will undergo prioritized examination**. The application will be accorded special status throughout its entire course of prosecution until one of the following occurs:

   A.   filing a **petition for extension of time** to extend the time period for filing a reply;

   B.   filing an **amendment to amend the application to contain more than four independent claims, more than thirty total claims** , or a multiple dependent claim;

   C.   filing a **request for continued examination** ;

   D.   filing a notice of appeal;

   E.   filing a request for suspension of action;

   F.   mailing of a notice of allowance;

   G.    mailing of a final Office action;

   H.    completion of examination as defined in 37 CFR 41.102; or

   I.    abandonment of the application.

   Telephone inquiries with regard to this decision should be directed to FIKIRTE GEREMEW at (703) 756-1930. In his/her absence, calls may be directed to Petition Help Desk at (571) 272-3282.

| /FIKIRTE A GEREMEW/<br>PROGRAM SUPPORT ASSISTANT, OMBL | |
|---|---|



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 18/202,966 | 05/29/2023 | | 664 | 22A1385US-CIP | 20 | 2 |

**CONFIRMATION NO. 9753**

176174
Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

**FILING RECEIPT**

OC000000058334112

Date Mailed: 06/16/2023

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**

Tenghui Huang, Dongguan, CHINA;
Junpeng Wu, Shenzhen, CHINA;
Zhixu Yang, Dongguan, CHINA;

**Applicant(s)**

Junpeng Wu, Shenzhen, CHINA;

**Power of Attorney:** The patent practitioners associated with Customer Number 176174

**Domestic Priority data as claimed by applicant**
This application is a CIP of 18/119,859 03/10/2023

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 06/15/2023

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 18/202,966**

**Projected Publication Date:** 09/12/2024

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

PENIS MASSAGER

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

## PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 18/202,966 |

### APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 64 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 280 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), (q)) | N/A | N/A | N/A | 320 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 20 minus 20 = | * 0 | x = | 0 | OR | | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 2 minus 3 = | 0 | x = | 0 | | | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0 | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 664 | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT A | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE($) | ADDITIONAL FEE($) | OR | RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT B | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

Doc Code: TRACK1.REQ
Document Description: TrackOne Request

PTO/AIA/424 (04-14)

## CERTIFICATION AND REQUEST FOR PRIORITIZED EXAMINATION
## UNDER 37 CFR 1.102(e) (Page 1 of 1)

| First Named Inventor: | Tenghui Huang | Nonprovisional Application Number (if known): | |
| Title of Invention: | PENIS MASSAGER | | |

**APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS PRIORITIZED EXAMINATION FOR THE ABOVE-IDENTIFIED APPLICATION.**

1. The processing fee set forth in 37 CFR 1.17(i)(1) and the prioritized examination fee set forth in 37 CFR 1.17(c) have been filed with the request. The publication fee requirement is met because that fee, set forth in 37 CFR 1.18(d), is currently $0. The basic filing fee, search fee, and examination fee are filed with the request or have been already been paid. I understand that any required excess claims fees or application size fee must be paid for the application.

2. I understand that the application may not contain, or be amended to contain, more than four independent claims, more than thirty total claims, or any multiple dependent claims, and that any request for an extension of time will cause an outstanding Track I request to be dismissed.

3. The applicable box is checked below:

    **I.  ☑  Original Application (Track One) - Prioritized Examination under § 1.102(e)(1)**

    i.   (a) The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a). This certification and request is being filed with the utility application via EFS-Web.
    ---OR---
    (b) The application is an original nonprovisional plant application filed under 35 U.S.C. 111(a). This certification and request is being filed with the plant application in paper.

    ii.  An executed inventor's oath or declaration under 37 CFR 1.63 or 37 CFR 1.64 for each inventor, **or** the application data sheet meeting the conditions specified in 37 CFR 1.53(f)(3)(i) is filed with the application.

    **II.  ☐  Request for Continued Examination - Prioritized Examination under § 1.102(e)(2)**

    i.    A request for continued examination has been filed with, or prior to, this form.
    ii.   If the application is a utility application, this certification and request is being filed via EFS-Web.
    iii.  The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a), or is a national stage entry under 35 U.S.C. 371.
    iv.   This certification and request is being filed prior to the mailing of a first Office action responsive to the request for continued examination.
    v.    No prior request for continued examination has been granted prioritized examination status under 37 CFR 1.102(e)(2).

| Signature /Kevin P. Chen/ | Date 05/26/2023 |
| Name (Print/Typed) Kevin P. Chen | Practitioner Registration Number 76206 |

***Note:*** *This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required.*

☑ *Total of 1 forms are submitted.

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82A (07-13)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form. If neither form PTO/AIA/82A nor form PTO/AIA/82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| Application Number | |
|---|---|
| Filing Date | |
| First Named Inventor | Tenghui Huang |
| Title | PENIS MASSAGER |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 22A1385US |

### SIGNATURE of Applicant or Patent Practitioner

| Signature | /Kevin P. Chen/ | Date (Optional) | |
|---|---|---|---|
| Name | Kevin P. Chen | Registration Number | 76206 |
| Title (if Applicant is a juristic entity) | | | |
| Applicant Name (if Applicant is a juristic entity) | | | |

NOTE: This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

☑ *Total of ___1___ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: **Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 03/31/2021, OMB 0651-0035
U.S. Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
|  |  |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[✓] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

176174

OR

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[✓] The address associated with the above-mentioned Customer Number

OR

[ ] The address associated with Customer Number: _____

OR

| [ ] Firm or Individual Name | | | | |
|---|---|---|---|---|
| Address | | | | |
| City | | State | | Zip |
| Country | | | | |
| Telephone | | Email | | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

| |
|---|

[✓] Inventor or Joint Inventor (title not required below)
[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)
[ ] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)
[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

### SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | *Junpeng Wu* | Date (Optional) | |
|---|---|---|---|
| Name | Junpeng Wu | | |
| Title | | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[✓] Total of    1    forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: **Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/AIA/82C (07-13)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# POWER OF ATTORNEY BY APPLICANT

No more than ten (10) patent practitioners total may be appointed as set forth below by name and registration number. This page need not be submitted if appointing the Patent Practitioner(s) associated with a Customer Number (see form PTO/AIA/82B):

| Name | Registration Number |
|------|---------------------|
|      |                     |
|      |                     |
|      |                     |
|      |                     |
|      |                     |
|      |                     |
|      |                     |
|      |                     |
|      |                     |

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.
2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

1/13



FIG. 1

2/13



FIG. 2

3/13



FIG. 3

4/13



FIG. 4

5/13



FIG. 5

6/13



24

20

22

30, 32

FIG. 6

7/13



FIG. 7



FIG. 8

8/13



FIG. 9

9/13



FIG. 10

10/13



FIG. 11

11/13



FIG. 12



FIG. 13

12/13



FIG. 14



FIG. 15

13/13



FIG. 16



FIG. 17

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | PENIS MASSAGER |
| **First Named Inventor/Applicant Name:** | Tenghui Huang |
| **Filer:** | Kevin P. Chen |
| **Attorney Docket Number:** | 22A1385US-CIP |

Filed as Small Entity

**Filing Fees for**   Track I Prioritized Examination - Nonprovisional Application under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| UTILITY FILING FEE (ELECTRONIC FILING) | 4011 | 1 | 64 | 64 |
| UTILITY SEARCH FEE | 2111 | 1 | 280 | 280 |
| UTILITY EXAMINATION FEE | 2311 | 1 | 320 | 320 |
| REQUEST FOR PRIORITIZED EXAMINATION | 2817 | 1 | 1680 | 1680 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| PUBL. FEE- EARLY, VOLUNTARY, OR NORMAL | 1504 | 1 | 0 | 0 |
| PROCESSING FEE, EXCEPT PROV. APPLS. | 2830 | 1 | 56 | 56 |

**Petition:**

**Patent-Appeals-and-Interference:**

**Post-Allowance-and-Post-Issuance:**

**Extension-of-Time:**

**Miscellaneous:**

| | |
|---|---|
| **Total in USD ($)** | **2400** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 48067926 |
| **Application Number:** | 18202966 |
| **International Application Number:** | |
| **Confirmation Number:** | 9753 |
| **Title of Invention:** | PENIS MASSAGER |
| **First Named Inventor/Applicant Name:** | Tenghui Huang |
| **Customer Number:** | 176174 |
| **Filer:** | Kevin P. Chen |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 22A1385US-CIP |
| **Receipt Date:** | 29-MAY-2023 |
| **Filing Date:** | |
| **Time Stamp:** | 04:54:45 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $2400 |
| RAM confirmation Number | E20235S555516508 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal of New Application | 22A1385US-CIP-Transmittal.pdf | 1533850 <br><br> 59772b3c028bc6359da9da376e7df0d8eb210f11 | no | 2 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Application Data Sheet | 22A1385US-CIP-ADS.pdf | 5145055 <br><br> c242c4112de855d504722817fb4ce254b47f28d4 | no | 9 |

**Warnings:**

**Information:**

This is not an USPTO supplied ADS fillable form

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | | 22A1385US-CIP-Specification.pdf | 437164 <br><br> b4af0d9505603b5fc135c49a3d93c0f0b45e692c | yes | 13 |

| Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|
| Document Description | | Start | End |
| Specification | | 1 | 9 |
| Claims | | 10 | 12 |
| Abstract | | 13 | 13 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | Oath or Declaration filed | 22A1385US-CIP-Declaration.pdf | 4189546 <br><br> dd8ca23998ac0e27af2e2b7f976e9b6bf62ebdec | no | 6 |

**Warnings:**

**Information:**

| 5 | Track One Request | 22A1385US-CIP-TrackOneRequest.pdf | 1628243<br><br>e80165fb38750df45744dbfad4387619c6a8c895 | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 6 | Power of Attorney | 22A1385US-CIP-POA.pdf | 2702712<br><br>9c64392f721673b08facc5fa2a3eca1b21c77909 | no | 4 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 7 | Drawings-only black and white line drawings | 22A1385US-CIP-Drawings.pdf | 3457131<br><br>5f944289d2af90607197cede3326199443244f73 | no | 13 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 8 | Fee Worksheet (SB06) | fee-info.pdf | 50729<br><br>e78c4ccbab08ee5678216c6e7f2d9abca758c654 | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 19144430 |
|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/AIA/15 (10-17)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# UTILITY PATENT APPLICATION TRANSMITTAL

*(Only for new nonprovisional applications under 37 CFR 1.53(b))*

| | |
|---|---|
| Attorney Docket No. | **22A1385US-CIP** |
| First Named Inventor | Tenghui Huang |
| Title | PENIS MASSAGER |
| Priority Mail Express® Label No. | |

## APPLICATION ELEMENTS

*See MPEP chapter 600 concerning utility patent application contents.*

1. [ ] **Fee Transmittal Form** (PTO/SB/17 or equivalent)
2. [✓] **Applicant asserts small entity status.** See 37 CFR 1.27
3. [ ] **Applicant certifies micro entity status.** See 37 CFR 1.29. Applicant must attach form PTO/SB/15A or B or equivalent.
4. [✓] **Specification** [Total Pages 13] Both the claims and abstract must start on a new page. *(See MPEP § 608.01(a) for information on the preferred arrangement)*
5. [✓] **Drawing(s)** (35 U.S.C. 113) [Total Sheets 13]
6. [ ] **Inventor's Oath or Declaration** [Total Pages 6] *(including substitute statements under 37 CFR 1.64 and assignments serving as an oath or declaration under 37 CFR 1.63(e))*
   a. [ ] Newly executed (original or copy)
   b. [ ] A copy from a prior application (37 CFR 1.63(d))
7. [✓] **Application Data Sheet** * See note below. See 37 CFR 1.76 (PTO/AIA/14 or equivalent)
8. [ ] **CD-ROM or CD-R** in duplicate, large table, or Computer Program (Appendix)
   [ ] Landscape Table on CD
9. [ ] **Nucleotide and/or Amino Acid Sequence Submission** *(if applicable, items a. – c. are required)*
   a. [ ] Computer Readable Form (CRF)
   b. [ ] Specification Sequence Listing on:
      i. [ ] CD-ROM or CD-R (2 copies); or
      ii. [ ] Paper
   c. [ ] Statements verifying identity of above copies

**ADDRESS TO:**

**Commissioner for Patents**
P.O. Box 1450
Alexandria, VA 22313-1450

## ACCOMPANYING APPLICATION PAPERS

10. [✓] **Assignment Papers** (cover sheet & document(s))
    Name of Assignee _____
11. [ ] **37 CFR 3.73(c) Statement** (when there is an assignee)    [✓] **Power of Attorney**
12. [ ] **English Translation Document** (if applicable)
13. [ ] **Information Disclosure Statement** (PTO/SB/08 or PTO-1449)
    [ ] Copies of citations attached
14. [ ] **Preliminary Amendment**
15. [ ] **Return Receipt Postcard** (MPEP § 503) (Should be specifically itemized)
16. [ ] **Certified Copy of Priority Document(s)** (if foreign priority is claimed)
17. [ ] **Nonpublication Request** Under 35 U.S.C. 122(b)(2)(B)(i). Applicant must attach form PTO/SB/35 or equivalent.
18. [ ] **Other:** _____
    _____
    _____
    _____
    _____

**\*Note:** (1) Benefit claims under 37 CFR 1.78 and foreign priority claims under 1.55 **must** be included in an Application Data Sheet (ADS).
(2) For applications filed under 35 U.S.C. 111, the application must contain an ADS specifying the applicant if the applicant is an assignee, person to whom the inventor is under an obligation to assign, or person who otherwise shows sufficient proprietary interest in the matter. See 37 CFR 1.46(b).

## 19. CORRESPONDENCE ADDRESS

[✓] The address associated with Customer Number: 176174    **OR** [ ] Correspondence address below

| Name | |
|---|---|
| Address | |
| City | | State | | Zip Code | |
| Country | | Telephone | | Email | |

| Signature | /Kevin P. Chen/ | Date | 05/26/2023 |
|---|---|---|---|
| Name (Print/Type) | Kevin P. Chen | Registration No. (Attorney/Agent) | 76206 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 22A1385US–CIP |
|---|---|---|
| | Application Number | |

| Title of Invention | PENIS MASSAGER |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

**Inventor    1**    [Remove]
**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Tenghui | | Huang | |

| **Residence Information (Select One)** ○ US Residency ⦿ Non US Residency ○ Active US Military Service |
|---|

| City | Dongguan, Guangdong | Country of Residence [i] | CN |
|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 2nd Floor, Building B, Jisheng Factory |
|---|---|
| Address 2 | Lianxing Industrial Park, Shangjie Village, Qishi Town |
| City | Dongguan, Guangdong | State/Province | |
| Postal Code | | Country [i] | CN |

**Inventor    2**    [Remove]
**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Junpeng | | Wu | |

| **Residence Information (Select One)** ○ US Residency ⦿ Non US Residency ○ Active US Military Service |
|---|

| City | Shenzhen | Country of Residence [i] | CN |
|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | Room 207, 2nd Floor, Liangji Building |
|---|---|
| Address 2 | Donghuan 1st Road, Fukang Community, Longhua Street, Longhua District |
| City | Shenzhen | State/Province | |
| Postal Code | | Country [i] | CN |

**Inventor    3**    [Remove]
**Legal Name**

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 22A1385US-CIP |
| | Application Number | |

| Title of Invention | PENIS MASSAGER |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Zhixu | | Yang | |

| Residence Information (Select One) | ○ US Residency | ● Non US Residency | ○ Active US Military Service |

| City | Dongguan, Guangdong | Country of Residence i | | CN |

**Mailing Address of Inventor:**

| Address 1 | 2nd Floor, Building B, Jisheng Factory |
|---|---|
| Address 2 | Lianxing Industrial Park, Shangjie Village, Qishi Town |

| City | Dongguan, Guangdong | State/Province | |
|---|---|---|---|
| Postal Code | | Country i | CN |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.    [ Add ]

## Correspondence Information:

**Enter either Customer Number or complete the Correspondence Information section below.**
**For further information see 37 CFR 1.33(a).**

☐ **An Address is being provided for the correspondence Information of this application.**

| Customer Number | 176174 | | |
|---|---|---|---|
| Email Address | patent@shinyip.com | [ Add Email ] | [ Remove Email ] |
| Email Address | kckclaw@yahoo.com | [ Add Email ] | [ Remove Email ] |

## Application Information:

| Title of the Invention | PENIS MASSAGER | | |
|---|---|---|---|
| Attorney Docket Number | 22A1385US-CIP | Small Entity Status Claimed | ☒ |
| Application Type | Nonprovisional | | |
| Subject Matter | Utility | | |
| Total Number of Drawing Sheets (if any) | 13 | Suggested Figure for Publication (if any) | 1 |

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

EFS Web 2.2.13

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 22A1385US-CIP |
|---|---|---|
| | Application Number | |

| Title of Invention | PENIS MASSAGER |
|---|---|

## Publication Information:

☐ Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐ **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing.

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32).
Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ⦿ Customer Number | ◯ US Patent Practitioner | ◯ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 176174 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | Continuation in part of | 18119859 | 2023-03-10 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 22A1385US-CIP |
|---|---|---|
| | Application Number | |

| Title of Invention | PENIS MASSAGER |
|---|---|

| | | | Remove |
|---|---|---|---|
| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[j] (if applicable) |
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.

NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 22A1385US-CIP |
| | Application Number | |

| Title of Invention | PENIS MASSAGER |
| --- | --- |

# Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**: This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1. Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A. Priority Document Exchange (PDX) -** Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2) any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B. Search Results from U.S. Application to EPO -** Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2. Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐    A. Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed. If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐    B. Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:** Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 22A1385US-CIP |
|---|---|---|
| | Application Number | |

| Title of Invention | PENIS MASSAGER |
|---|---|

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant 1**

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

| ◉ Assignee | ○ Legal Representative under 35 U.S.C. 117 | ○ Joint Inventor |
|---|---|---|

| ○ Person to whom the inventor is obligated to assign. | ○ Person who shows sufficient proprietary interest |
|---|---|

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor:

If the Applicant is an Organization check here. ☐

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Junpeng | | Wu | |

**Mailing Address Information For Applicant:**

| Address 1 | Room 207, 2nd Floor, Liangji Building |
|---|---|
| Address 2 | Donghuan 1st Road, Fukang Community, Longhua Street, Longhua District |
| City | Shenzhen | State/Province | |
| Country | CN | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 22A1385US-CIP |
|---|---|---|
| | Application Number | |

| Title of Invention | PENIS MASSAGER |
|---|---|

### Assignee    1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

If the Assignee or Non-Applicant Assignee is an Organization check here. ☐

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| **Address 1** | |
|---|---|
| Address 2 | |

| **City** | | State/Province | |
|---|---|---|---|
| **Country** i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.

## Signature:

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**
    This Application Data Sheet **must** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **all** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **all** joint inventor-applicants.
    See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| Signature | /Kevin P. Chen/ | | | Date (YYYY-MM-DD) | 2023-05-26 |
|---|---|---|---|---|---|
| First Name | Kevin | Last Name | Chen | Registration Number | 76206 |

Additional Signature may be generated within this form by selecting the Add button.

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 22A1385US-CIP |
| | Application Number | |

| Title of Invention | PENIS MASSAGER |

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93–579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# PENIS MASSAGER

## CROSS-REFERENCE TO RELATED APPLICATIONS

[0001]  This application is a continuation-in-part application of application Ser. No. 18/119,859, filed on Mar. 10, 2023, which claims priority to Chinese Patent Application No. 202320430037.2, filed on Mar. 8, 2023.  The content of the aforementioned applications, including any intervening amendments thereto, are incorporated herein by reference.

## TECHNICAL FIELD

[0002]  The present application relates to the technical field of massage devices, more particularly relates to a penis massager.

## BACKGROUND

[0003]  Penis massagers are configured for simulating a vaginal environment to allow males, particularly the bachelordom and long-distance separation males, to release their sex pressure.

[0004]  Generally, the penis massager includes a housing, a soft sleeve mounted in a housing and defining a cavity therein, and a motor configured for driving the sleeve to vibrate in high frequency, thereby providing a massaging stimulation to the penis inserted into the cavity of the soft sleeve.  However, a size, especially a radial size of the penis massager is limited by the soft sleeve, and cannot be designed too small, which makes it easy to slip out of the human hand due to vibration, which makes it inconvenient to use.

## SUMMARY

[0005]  An object of the present application is to provide a penis massager which is easy to be held during in use.

[0006]  In order to achieve the above-mentioned object, the present application provides a penis massager that includes a housing defining a space therein; a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; a driving device for driving the sleeve to generate motion relative to the housing; and at least two handles extending outwardly from an outer face of the housing for holding of the penis massager..

[0007]  Further, the present application provides a penis massager that includes a housing defining a first space and a second space therein; a sleeve provided in the first space of the

housing and defining an interior volume for accommodating a penis therein; a driving motor mounted in the second space of the housing and connected to the sleeve in a transmission way, the driving motor being configured for driving the sleeve to move and/or rotate relative to the housing; and at least two handles extending outwardly from an outer face of the housing for holding of the penis massager.

[0008]    Compared with the prior art, the penis massager provided by the present application has the beneficial effects that: the penis massager is provided with at least two handles, each handle has a size not limited by that of the sleeve and thus can be designed ergonomically, so that the user holds the handles instead of the housing during in use, even if the sleeve is driven to generate strong motion, the penis massager will not slip out of the hands, which not only facilitates the use of the present penis massager, but also makes the design of the radial size of the sleeve more flexible.


**BRIEF DESCRIPTION OF THE DRAWINGS**

[0009]    In order to more clearly explain technical solutions in embodiments of the present application, accompanying drawings required to be used in the embodiments will be briefly introduced below.    Apparently, the accompanying drawings in the following description are only some embodiments of the present application.    For those ordinarily skilled in the art, other accompanying drawings may be obtained from these accompanying drawings without paying any creative labor.

[0010]    FIG. 1 is a schematic, assembled view of a penis massager according to a first embodiment of the present application.

[0011]    FIG. 2 is a plan view of the penis massager of FIG. 1.

[0012]    FIG. 3 is an exploded view of the penis massager of FIG. 1

[0013]    FIG. 4 is a further exploded view of the penis massager of FIG. 1, wherein its handles are removed.

[0014]    FIG. 5 is a schematic view of a sleeve of the penis massager of FIG. 1.

[0015]    FIG. 6 is a cross sectional view of the sleeve of FIG. 5.

[0016]    FIG. 7 is a schematic, assembled view of a penis massager according to a second embodiment of the present application, wherein its handles are folded.

[0017]    FIG. 8 is a plan view of the penis massager of FIG. 6.

[0018]    FIG. 9 is an exploded view of the penis massager of FIG. 6.

[0019]    FIG. 10 is an exploded view of the handle of the penis massager of FIG. 6.

[0020]    FIG. 11 shows the exploded handle from another aspect.

[0021]    FIG. 12 is a cross sectional view showing connection between the handle and housing of the massager of FIG. 6.

[0022]    FIG. 13 is a schematic view of the penis massager of FIG. 6, wherein its handles are partly unfolded.

[0023]    FIG. 14 is a side view of the penis massager of FIG. 13.

[0024]    FIG. 15 is a schematic view of the penis massager of FIG. 6, wherein its handles are fully unfolded.

[0025]    FIG. 16 is a side view of the penis massager of FIG. 15.

[0026]    FIG. 17 is a schematic, assembled view of a penis massager according to a third embodiment of the present application.


**DESCRIPTION OF THE EMBODIMENTS**

[0027]    In order to make technical problems, technical solutions and beneficial effects to be solved in the present application clearer, the present application will be further described below in detail in conjunction with accompanying drawings and embodiments.    It should be understood that specific embodiments described herein are only used to explain the present application and not to limit the present application.

[0028]    It should be noted that when an element is referred to as "fixed to" or "arranged on" another element, it can be directly or indirectly on another element.    When an element is referred to as "connected to" another element, it can be directly or indirectly connected to another element.

[0029]    It should be understood that the orientational or positional relationship indicated by terms "length", "width", "up", "down", "front", "back", "left", "right", "vertical", "horizontal", "top", "bottom", "inside", "outside", and the like is based on the orientational or positional relationship shown in the accompanying drawings, and is only for the sake of describing the present application and simplifying the description instead of indicating or implying that the apparatus or element referred to must have a specific orientation, and must be constructed and operated in a specific orientation, so it cannot be understood as a limitation of the present

3

application.

[0030]   Also, terms "first" and "second" are only used for describing purposes, and cannot be understood as indicating or implying relative importance or implying the number of technical features indicated.   Therefore, features defined with "first" and "second" can explicitly or implicitly include one or more of these features.   In the description of the present application, "a plurality of" means two or more, unless otherwise specified.

[0031]   Referring to FIGs. 1-4, a penis massager according to an embodiment of the present application is shown.   In this embodiment, the penis massager includes a housing 10, a sleeve 20 mounted in the housing 10 and a driving device 30 connected to the sleeve 20.

[0032]   The sleeve 20 defines an interior volume 22 with an open end (such as an open front end) for simulating a vaginal environment, wherein the male genital can be inserted into the interior volume 22 through its open end to simulate sexual intercourse.   The driving device 30 is configured for driving the sleeve 20 to generate motion, including but not limited to vibration, rotation, reciprocating movement and the like during the sexual intercourse, thereby producing massaging stimulation on the male genital accommodated in the sleeve 20, helping the user release his sexual pressure and thus satisfying their physiological and psychological needs to a certain extent.

[0033]   As shown in FIGs. 3-4, Handles 40 are provided on an outer face of the housing 10, preferably the handles 40 are two in number and are arranged symmetrically about a central axis of the housing 10.   The handles 40 are designed ergonomically, and are convenient to be held in the user's hands.   Accordingly, each handle 40 has a size, especially a radial size, much less than that of the housing 10.   Preferably, each handle 40 extends outwardly and obliquely from a corresponding side of the housing 10.   That is, the handle 40 is angular with the housing 10, and an inclination angle $\alpha$ of a central axis of the handle 40 relative to that of the housing 10 may be set to range from 0-90 degrees, preferably 30-60 degrees, facilitating holding of the handle 40.

[0034]   For the housing 10, its size, especially its radial size, largely depends on the size of the sleeve 20 mounted therein, and thus can not be designed too small, which makes the housing 10 not easy to be held by the user's hand, so that the conventional penis massager is easy to slip out of the hand during in use.   For the present application, the user holds the handles 40 instead of the housing 10, wherein each handle 40 has a size not limited by that of the sleeve 20, so even if the sleeve 20 is driven to generate strong motion, the penis massager will not slip out of the hands, which not only facilitates the use of the present penis massager, but also makes the

design of the radial size of the sleeve 20 more flexible.

[0035]  Preferably, the handles 40 are provided with buttons 42 for controlling operation of the driving device 30, i.e., controlling operation of the sleeve 20.   The buttons 42 may be provided on any one of the handles 40, or may be provided on both of the handles 40.   In this embodiment, each handle 40 is generally column-shaped, and includes a first end connected to the housing 10 and a second end away from the housing 10.   Preferably, the first end of the handle 40 is connected to an end (such as a rear end) of the housing 10 away from the open end of the sleeve 20.   The buttons 42 are provided at the first end of the handle 40, which are easy to be pressed by the user's thumb when the handle 40 are held in the user's hand.   Preferably, the second end of the handle 40 is generarlly dome-shaped.   During in use, the dome-shaped second end of the handle 40 abuts the palm of the hand, which is comfortable even for a long time.

[0036]  In this embodiment, the housing 10 in whole is generally in a shape of a rectangular column.   The handles 40 are provided on opposite sides, such as left and right sides of the housing 10, respectively.   In other embodiments, the housing 10 may be shaped as a circular column, a hexagonal column and the like, which should not be limited to the specific embodiments.   In addition, the shape and size of the handle 40 may be designed according to needs.   For example, in an alternative embodiment, the handle 40 may be designed to have a variable diameter or variable length; and, in another embodiment, the handle 40 may be designed to extend curvedly from the housing 10.

[0037]  In this embodiment, the handles 40 are formed separately and then fixedly assembled to the housing 10.   In other embodiments, the handles 40 may be integrally formed with the housing 10 as one piece, thereby simplifying assembly process of the penis massager.   It should be understood that the handles 40 are configured for holding the present penis massager, and should not be limited in number.   In addition, the handles 40 are not limited to be held by the user's hand during in use, for example, the handles 40 may be inserted into a hole of a fixed supporting member matching with the handles 40, thereby freeing hands of the users.

[0038]  The housing 10 is generally a hollow structure, and defines a mounting space 12 therein for accommodating the sleeve 20, the driving device 30, and etc.   In this embodiment, a partition plate 14 is arranged in the housing 10 and separates the mounting space 12 into a first space 12a and a second space 12b.   The sleeve 20 is mounted in the first space 12a; and electronic components, such as a control circuit board 50, is mounted in the second space 12b and electrically connected to the driving device 30.   A battery 52, preferably a chargeable battery, is arranged in the second space 12b and electrically connected to the control circuit

board 50 for providing electric power to the driving device 30.

[0039]   The driving device 30 may be a rotary motor, a linear motor, a vibration motor and the like, or may be any combination of them.   In this embodiment, the driving device 30 includes a vibration motor 32, which is preferably embedded in a side wall of the sleeve 20.   The vibration motor 32 and the sleeve 20 may be integrally molded by injection to form an integral structure, facilitating cleaning of the sleeve 20.

[0040]   A control panel 16 is provided on the outer face of the housing 10, and is electrically connected to the control circuit board 50.   Several buttons 18 are set on the control panel 16 for controlling operation of the driving device 30.   The buttons 18 on the control panel 16 may be power on/off button, function selection button and the like, the buttons 42 on the handle 40 may be +/- button and the like.   During in use, the user may press the buttons 18 and 42 to control operation of the driving device 30, such as controlling vibration amplitude and vibration frequency of the vibration motor 32, thereby controlling vibration of the sleeve 20.

[0041]   Referring to FIGs. 4-6, the sleeve 20 is made of soft material, such as soft rubber, and preferably is detachably mounted in the first space 12a of the housing 10.   The interior volume 22 is concaved axially and inwardly from an end of the sleeve 20 away from the second space 12b, i.e., the front end of the sleeve 20.   Preferably, a plurality of bulges 24 are provided on an interior surface of the sleeve 20 surrounding the interior volume 22 to enhance massage effect to the penis in the sleeve 20.

[0042]   In this embodiment, the housing 10 includes a top housing 10a, a bottom housing 10b and an end cover 10c.   The top housing 10a and bottom housing 10b are connected to each other to form a cylinder which encircles the sleeve 20, and the end cover 10c covers an open side of the cylinder to seal the open end of the interior volume 22 for dust and water proof.

[0043]   A movable cabin 60 is arranged in the first space 12a, and is capable of sliding back and forth along an axial direction of the housing 10.   The sleeve 20 is detachably mounted in the movable cabin 60 to move axially along with the movable cabin 60.   Preferably, guiding bars 19 are respectively provided on two side, such as left and right sides of the housing 10. The guiding bars 19 extend along the axial direction of the housing 10 and slidably penetrate through the movable cabin 60, thereby guiding the axial movement of the sleeve 20.   Thus, the sleeve 20 not only generates vibration, but also produces axial reciprocating movement during in use, providing multiple stimulations on the penis.

[0044]   In this embodiment, a fixing frame 62 is mounted around and fixed to the sleeve 20. Preferably, the fixing frame 62 and the sleeve 20 are integrally molded by injection.   A

plurality of first conductive members, such as conductive columns 64, is fixed to and extends outwardly from the fixing frame 62.   The vibration motor 32 accommodated in the sleeve 20 is electrically connected to the conductive columns 64.   Correspondingly, a plurality of second conductive members, such as pogo pins 66, are provided on the movable cabin 60 and electrically connected to the control circuit board 50.   Contact of the conductive columns 64 and the pogo pins 66 realizes electric connection between the vibration motor 32 and the control circuit board 50.

[0045]   In this embodiment, the driving device 30 may further includes a driving motor 34 for driving the sleeve 20 to do axial reciprocating movement.   The driving motor 34 may be arranged in the second space 12b of the housing 10, and is connected to the control circuit board 50 electrically and connected to the sleeve 20 by a transmission mechanism.   Further, the driving motor 34 may drive the sleeve 20 to rotate in the housing 10 through another transmission mechanism, thus the sleeve 20 is capable of moving axially in the housing 10 and rotating about the axis of the housing 10 at the same time, providing dual stimulation to the penis.   In other embodiments, two driving motors may be provided to drive the sleeve 20 to rotate and movement, respectively.

[0046]   Referring to FIGs. 7-16, a penis massager according to a second embodiment is shown, which differs from the previous embodiment mainly in the handles 40.

[0047]   In this embodiment, the handles 40 are rotatably connected to the housing 10, and thus the inclination angle  α  of the central axis of the handle 40 relative to that of the housing 10 can be adjusted according to need, which further facilitates the use of the present penis massager. As shown in FIGs. 7-8, the handles 40 are rotated to a folded state, which attach to the outer face of the housing 10, making the penis massager easy to store and carry.   As shown in FIGs. 13-14, each handle 40 is rotated away from the housing 10, which is in a partly unfolded state and its inclination angle  α  is adjusted to about 45 degrees.   As shown in FIGs. 15-16, the handles 40 are totally unfolded, which are generally perpendicular to the housing 10 and the inclination angle  α is adjusted to about 90 degrees.

[0048]   Specifically, as shown in FIGs. 9-12, each handle 40 includes a fixing seat 44 and a rotating arm 46.   The fixing seat 44 is fixedly and detachably connected to the housing 10.   In this embodiment, the fixing seat 44 forms a cylinder 441 at a side thereof facing to the housing 10, and a fixing component, such as a screw 48, extends through the housing 10 and engages into the cylinder 441 to fix the fixing seat 44 onto the housing 10.   The fixing seat 44 defines a shaft hole 443 which extends along a direction parallel to the outer face of the housing 10.

The rotating arm 46 is elongated, and includes opposite first and second ends, wherein the first end of the rotating arm 46 is provided with a shaft 461.    The shaft 461 is rotatably mounted in the shaft hole 443 of the fixing seat 44 to rotatably connect the handle 40 to the housing 10.

[0049]    In this embodiment, the rotating arm 46 is molded with two arm portions, i.e., a first arm portion 46a and a second arm portion 46b.    One of the first and second arm portions 46a, 46b forms the shaft 461, and the other one defines a connecting hole 463.    During assembly, the shaft 461 extends through the shaft hole 443 of the fixing seat 44, and a screw 49 extends through the connecting hole 463 and engages into the shaft 461 to fix the first and second arm portions 46a, 46b together.    Preferably, a plurality of first teeth 445 are formed on an axial end face of the fixing seat 44, and a plurality of second teeth 465 are formed on a surface of the first arm portion 46a or the second arm portion 46b facing towards the first teeth 445.    When the inclination angle of the handle 40 needs to be adjusted, a force can be applied to the second end of the rotating arm 46 to rotate it, and the rotating arm 46 can be locked at the required position for the engagement of the first teeth 445 and the second teeth 465.

[0050]    Referring to FIG. 17, a penis massager according to a third embodiment is shown.    In this embodiment, the housing 10 of the penis massager includes a first housing portion 11a and a second housing portion 11b arranged side by side.    The first housing portion 11a defines the first space receiving the sleeve 20 therein, and the second housing portion 11b defines the second space receiving the driving device 30 therein.    In this embodiment, the penis massager has a smaller axial length.    Handles 40 are provided at opposites sides of the second housing portion 11b, and extend curvedly and outwardly from the second housing portion 11b.    The handles 40 may be fixed to the housing 10, or rotatably connected to the housing 10, or slidably connected to the housing 10.

[0051]    Compared with the prior art, the penis massager provided by the present application has the beneficial effects that: the penis massager is provided with at least two handles 40, each handle 40 has a size not limited by that of the sleeve 20 and thus can be designed ergonomically, so that the user holds the handles 40 instead of the housing 10 during in use, even if the sleeve 20 is driven to generate strong motion, including but not limited to vibration, rotation, reciprocating movement and the like, the penis massager will be held in the hands tightly and not slip out of the hands, which not only facilitates the use of the present penis massager, but also makes the design of the radial size of the sleeve 20 more flexible.

[0052]    The above is only a better embodiment of the present application and is not intended to limit the present application.    Any modification, equivalent replacement and improvement made within the spirit and principle of the present application shall be included in a scope of

8

protection of the present application.

# CLAIMS

**WHAT IS CLAIMED IS:**

1. A penis massager, comprising:

    a housing defining a space therein;

    a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;

    a driving device for driving the sleeve to generate motion relative to the housing; and

    at least two handles extending outwardly from an outer face of the housing for holding of the penis massager.

2. The penis massager according to claim 1, wherein each of the at least two handles is angular with the housing.

3. The penis massager according to claim 2, wherein each of the at least two handles comprises a first end connected to the housing and a second end away from the housing, and at least one button is provided on the at least two handles.

4. The penis massager according to claim 3, wherein the first end of the handle is connected to an end of the housing away from an open end of the sleeve, and the second end of the handle is substantially dome-shaped, the at least one button is provided on the first end of the handle.

5. The penis massager according to claim 1, wherein the at least two handles are detachably connected to the housing.

6. The penis massager according to claim 1, wherein the at least two handles are slidably connected to the housing.

7. The penis massager according to claim 1, wherein the at least two handles are rotatably connected to the housing.

8. The penis massager according to claim 7, wherein each of the at least two handles comprises a fixing seat fixedly connected to the housing and a rotating arm, one of the fixing seat and the rotating arm defining a shaft hole therein, and the other one of the fixing seat and the rotating arm comprising a shaft being rotatably inserted into the shaft hole.

9. The penis massager according to claim 8, wherein the fixing seat forms a plurality of first teeth at an axial end face thereof, the rotating arm forms a plurality of second teeth at a surface thereof facing towards the first teeth, and the first teeth and the second teeth mesh with each other.

10. The penis massager according to claim 1, wherein the at least two handles comprises two handles, and the two handles are arranged symmetrically at two sides of the housing.

11. The penis massager according to claim 1, wherein the driving device comprises a vibration motor embedded in the sleeve.

12. The penis massager according to claim 11, wherein the driving device further comprises a driving motor for driving the sleeve to rotate relative to the housing.

13. The penis massager according to claim 11, wherein the driving device further comprises a driving motor for driving the sleeve to do reciprocating axial movement relative to the housing.

14. The penis massager according to claim 13, wherein a movable cabin is movably mounted in the space of the housing, the sleeve is detachably mounted into the movable cabin, and guiding bars are provided in the housing for guiding axial movement of the movable cabin and the sleeve.

15. The penis massager according to claim 14, wherein a fixing frame is arranged around the sleeve, a plurality of first conductive members is provided on the fixing frame and connected to the vibration motor electrically, and a plurality of second conductive members is provided on the movable cabin and contacts with the first conductive members.

16. The penis massager according to claim 1, wherein a plurality of bulges is provided on an interior surface of the sleeve surrounding the interior volume.

17. A penis massager, comprising:

a housing defining a first space and a second space therein;

a sleeve provided in the first space of the housing and defining an interior volume for accommodating a penis therein;

a driving motor mounted in the second space of the housing and connected to the sleeve in a transmission way, the driving motor being configured for driving the sleeve to move and/or rotate relative to the housing; and

at least two handles extending outwardly from an outer face of the housing for holding of the penis massager.

18. The penis massager according to claim 17, wherein at least one button is provided on the at least two handles.

19. The penis massager according to claim 18, wherein the at least two handles are fixed to the housing and is angular with the housing.

11

20. The penis massager according to claim 18, wherein the at least two handles are movably or rotatably connected to an end of the housing away from an open end of the interior volume of the sleeve.

# ABSTRACT

A penis massager includes a housing defining a first space and a second space therein, a sleeve provided in the first space of the housing, a driving motor mounted in the second space of the housing, and at least two handles extending outwardly from an outer face of the housing for holding of the penis massager.   The sleeve defines an interior volume for accommodating a penis therein.   The driving motor is connected to the sleeve in a transmission way, configured for driving to sleeve to move and/or rotate relative to the housing, thereby providing a massaging stimulation to the penis in the sleeve.

PTO/AIA/01 (06-12)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | PENIS MASSAGER |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:
☒ The attached application, or
☐ United States application or PCT international application number _____
filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Tenghui Huang                                    Date (Optional) : _____

Signature: _Tenghui Huang_

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant ( *i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/AIA/01 (06-12)
Approved for use through 11/30/2025. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | PENIS MASSAGER |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X] The attached application, or

[ ] United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Junpeng Wu                    Date (Optional) : _____

Signature: _Junpeng Wu_

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application or application referenced by either a published application, an application open to public inspection or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/AIA/01 (06-12)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | PENIS MASSAGER |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:
- ☒ The attached application, or
- ☐ United States application or PCT international application number _____
  filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Zhixu Yang                                    Date (Optional) : _____

Signature: *Zhixu Yang*

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant ( *i.e.,* GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

**507930255    05/29/2023**

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1                                                                                    EPAS ID: PAT7977382
Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| TENGHUI HUANG | 03/08/2023 |
| ZHIXU YANG | 03/08/2023 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | JUNPENG WU |
| Street Address: | ROOM 207, 2ND FLOOR, LIANGJI BUILDING |
| Internal Address: | DONGHUAN 1ST ROAD, FUKANG COMMUNITY, LONGHUA STREET, LONGHUA DISTRICT |
| City: | SHENZHEN |
| State/Country: | CHINA |

**PROPERTY NUMBERS Total: 1**

| Property Type | Number |
|---|---|
| Application Number: | 18202966 |

**CORRESPONDENCE DATA**

**Fax Number:**

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| **Email:** | kckclaw@yahoo.com |
| **Correspondent Name:** | KEVIN P. CHEN |
| **Address Line 1:** | 255 RIVERDALE DR |
| **Address Line 4:** | FORT LEE, NEW JERSEY 07024 |

| ATTORNEY DOCKET NUMBER: | 22A1385US-CIP |
|---|---|
| NAME OF SUBMITTER: | KEVIN P. CHEN |
| SIGNATURE: | /Kevin P. Chen/ |
| DATE SIGNED: | 05/29/2023 |
| | This document serves as an Oath/Declaration (37 CFR 1.63). |

**Total Attachments: 2**
source=22A1385US-CIP-Assignment#page1.tif
source=22A1385US-CIP-Assignment#page2.tif

## ASSIGNMENT

<u>Tenghui Huang</u> having a mailing address <u>2nd Floor, Building B, Jisheng Factory, Lianxing</u> <u>Industrial Park, Shangjie Village, Qishi Town, Dongguan City, Guangdong Province,</u> <u>China</u>

<u>Zhixu Yang</u> having a mailing address <u>2nd Floor, Building B, Jisheng Factory, Lianxing</u> <u>Industrial Park, Shangjie Village, Qishi Town, Dongguan City, Guangdong Province,</u> <u>China</u> (hereafter referred to as the undersigned), are the inventors of the U.S. patent application to be filed entitled:

### <u>PENIS MASSAGER</u>

The above U.S. application was assigned serial no.  18202966 and was filed on 5/29/2023 .  The undersigned hereby authorizes assignee or assignee's representative to insert the Application Number and the filing date of this application if they are unknown at the time of execution of this assignment.

<u>Junpeng Wu</u> having a mailing address <u>Room 207, 2nd Floor, Liangji Building, Donghuan 1st</u> <u>Road, Fukang Community, Longhua Street, Longhua District, Shenzhen, China</u> (hereafter referred to as  the assignee), is desirous of the entire right, title and interest in the above-identified application,  in said invention described therein, all applications for and all letters patent issued on said invention.

For good and valuable consideration, the receipt and sufficiency of which is acknowledged, the undersigned, intending to be legally bound, does hereby sell, assign and transfer to the assignee and assignee's successors, assigns and legal representatives the entire right, title and interest in said invention and all patent applications thereon, including, but not limited to, the application for United States Letters Patent entitled as above, in any subsequent nonprovisional applications filed for this invention or improvements thereto, and all divisions and continuations thereof, any Registered Community Design applications, and in all letters patent, including all reissues and reexaminations thereof, throughout the world, including the right to claim priority under the Paris Convention or other treaty.

It is agreed that the undersigned shall be legally bound, upon request of the assignee, to supply all information and evidence relating to the making and practice of said invention, to testify in any legal proceeding relating thereto, to execute all instruments proper to patent the invention

1

throughout the world for the benefit of the assignee, and to execute all instruments proper to carry out the intent of this instrument.

The undersigned warrant that the rights and property herein conveyed are free and clear of any encumbrance.    EXECUTED under seal on the following date    03/08/2023

| Typed or printed name | Signature |
| --- | --- |
| Tenghui Huang | *Tenghui Huang* |
| Zhixu Yang | *Zhixu Yang* |

2

Exhibit 3

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT7977382

| SUBMISSION TYPE: | NEW ASSIGNMENT |
| --- | --- |
| NATURE OF CONVEYANCE: | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
| --- | --- |
| TENGHUI HUANG | 03/08/2023 |
| ZHIXU YANG | 03/08/2023 |

**RECEIVING PARTY DATA**

| | |
| --- | --- |
| Name: | JUNPENG WU |
| Street Address: | ROOM 207, 2ND FLOOR, LIANGJI BUILDING |
| Internal Address: | DONGHUAN 1ST ROAD, FUKANG COMMUNITY, LONGHUA STREET, LONGHUA DISTRICT |
| City: | SHENZHEN |
| State/Country: | CHINA |

**PROPERTY NUMBERS Total: 1**

| Property Type | Number |
| --- | --- |
| Application Number: | 18202966 |

**CORRESPONDENCE DATA**

**Fax Number:**

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
| --- | --- |
| **Email:** | kckclaw@yahoo.com |
| **Correspondent Name:** | KEVIN P. CHEN |
| **Address Line 1:** | 255 RIVERDALE DR |
| **Address Line 4:** | FORT LEE, NEW JERSEY 07024 |

| ATTORNEY DOCKET NUMBER: | 22A1385US-CIP |
| --- | --- |
| NAME OF SUBMITTER: | KEVIN P. CHEN |
| SIGNATURE: | /Kevin P. Chen/ |
| DATE SIGNED: | 05/29/2023 |
| | This document serves as an Oath/Declaration (37 CFR 1.63). |

**Total Attachments: 2**
source=22A1385US-CIP-Assignment#page1.tif
source=22A1385US-CIP-Assignment#page2.tif

## ASSIGNMENT

<u>Tenghui Huang</u> having a mailing address <u>2nd Floor, Building B, Jisheng Factory, Lianxing</u> <u>Industrial Park, Shangjie Village, Qishi Town, Dongguan City, Guangdong Province,</u> <u>China</u>

<u>Zhixu Yang</u> having a mailing address <u>2nd Floor, Building B, Jisheng Factory, Lianxing</u> <u>Industrial Park, Shangjie Village, Qishi Town, Dongguan City, Guangdong Province,</u> <u>China</u> (hereafter referred to as the undersigned), are the inventors of the U.S. patent application to be filed entitled:

### <u>PENIS MASSAGER</u>

The above U.S. application was assigned serial no. <u>18202966</u> and was filed on <u>5/29/2023</u>. The undersigned hereby authorizes assignee or assignee's representative to insert the Application Number and the filing date of this application if they are unknown at the time of execution of this assignment.

<u>Junpeng Wu</u> having a mailing address <u>Room 207, 2nd Floor, Liangji Building, Donghuan 1st</u> <u>Road, Fukang Community, Longhua Street, Longhua District, Shenzhen, China</u> (hereafter referred to as the assignee), is desirous of the entire right, title and interest in the above-identified application, in said invention described therein, all applications for and all letters patent issued on said invention.

For good and valuable consideration, the receipt and sufficiency of which is acknowledged, the undersigned, intending to be legally bound, does hereby sell, assign and transfer to the assignee and assignee's successors, assigns and legal representatives the entire right, title and interest in said invention and all patent applications thereon, including, but not limited to, the application for United States Letters Patent entitled as above, in any subsequent nonprovisional applications filed for this invention or improvements thereto, and all divisions and continuations thereof, any Registered Community Design applications, and in all letters patent, including all reissues and reexaminations thereof, throughout the world, including the right to claim priority under the Paris Convention or other treaty.

It is agreed that the undersigned shall be legally bound, upon request of the assignee, to supply all information and evidence relating to the making and practice of said invention, to testify in any legal proceeding relating thereto, to execute all instruments proper to patent the invention

1

throughout the world for the benefit of the assignee, and to execute all instruments proper to carry out the intent of this instrument.

The undersigned warrant that the rights and property herein conveyed are free and clear of any encumbrance.    EXECUTED under seal on the following date    03/08/2023

| Typed or printed name | Signature |
|---|---|
| Tenghui Huang | *Tenghui Huang* |
| Zhixu Yang | *Zhixu Yang* |

2

**PATENT
REEL: 063782 FRAME: 0439**

Exhibit 4

US011730665B1

## (12) United States Patent
Huang et al.

(10) Patent No.: **US 11,730,665 B1**
(45) Date of Patent: **Aug. 22, 2023**

(54) **PENIS MASSAGER**

(71) Applicant: **Junpeng Wu**, Shenzhen (CN)

(72) Inventors: **Tenghui Huang**, Guangdong (CN);
**Junpeng Wu**, Shenzhen (CN); **Zhixu
Yang**, Guangdong (CN)

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 0 days.

(21) Appl. No.: **18/119,859**

(22) Filed: **Mar. 10, 2023**

(30) **Foreign Application Priority Data**

Mar. 8, 2023 (CN) .......................... 202320430037.2

(51) **Int. Cl.**
*A61H 19/00* (2006.01)

(52) **U.S. Cl.**
CPC ..... *A61H 19/32* (2013.01); *A61H 2201/0153*
(2013.01); *A61H 2201/0207* (2013.01); *A61H
2201/1654* (2013.01)

(58) **Field of Classification Search**
None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2015/0196454 A1* | 7/2015 | Levy ..................... | A61H 19/32 600/38 |
| 2021/0113424 A1* | 4/2021 | Yates ........................ | A61F 5/41 |

FOREIGN PATENT DOCUMENTS

DE        202017005314 U1 *  2/2018

* cited by examiner

*Primary Examiner* — Thaddeus B Cox

(57) **ABSTRACT**

A penis massager includes a housing and an sleeve. The
housing is provided with an accommodating space, and a
power source and a circuit board electrically connected to
the power source are received in the accommodating space.
The sleeve is removably mounted in the accommodating
space, one end of the sleeve is concaved to form a interior
volume for containing the penis. A vibrating apparatus is
arranged in the sleeve and electrically connected to the
circuit board for generating a mechanical vibration.

**20 Claims, 13 Drawing Sheets**



Case 2:25-cv-04337-ES-JSA   Document 1   Filed 05/15/25   Page 301 of 611 PageID: 301



FIG. 1

Case 2:25-cv-04337-ES-JSA   Document [   Filed 05/15/25   Page 302 of 611 PageID: 302



FIG. 2

Case 2:25-cv-04337-ES-JSA   Document 1   Filed 05/15/25   Page 303 of 611 PageID: 303



FIG. 3

Case 2:25-cv-04337-ES-JSA   Document 1   Filed 05/15/25   Page 304 of 611 PageID: 304



FIG. 4



FIG. 5

Case 2:25-cv-04337-ES-JSA   Document 1   Filed 05/15/25   Page 306 of 611 PageID: 306



FIG. 6



FIG. 7

Case 2:25-cv-04337-ES-JSA   Document 1   Filed 05/15/25   Page 308 of 611 PageID: 308



FIG. 8

Case 2:25-cv-04327-ES-JSA   Document 1   Filed 05/15/25   Page 309 of 611 PageID: 309



FIG. 9



FIG. 10



FIG. 11

Rear ⟷ Front



FIG. 12

Rear ⟷ Front



FIG. 13

Case 2:25-cv-04337-ES-JSA   Document 1   Filed 05/15/25   Page 314 of 611 PageID: 314

**1**

## PENIS MASSAGER

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application claims priority to Chinese Patent Application No. 202320430037.2 filed on Mar. 8, 2023, the entire contents of which are hereby incorporated by reference.

### TECHNICAL FIELD

The present invention relates to the technical field of massage devices, more particularly relates to a penis massager.

### BACKGROUND

Penis massagers are configured for simulating a vaginal environment and providing a massaging stimulation to the male genitalia. Generally, the penis massager includes a housing, a soft sleeve being movably mounted in a housing, and a vibrating apparatus for driving the sleeve to vibrate during the sexual intercourse. However, the sleeve needs to be cleaned after use and the vibrating apparatus should be removed from the sleeve during clean the sleeve, which is relatively troublesome. Further, a vibration range of the vibrating apparatus is relatively narrow, and the stimulation to the user is insufficient, and the user experience is poor.

### SUMMARY

An object of an embodiment of the present invention is to provide a penis massager which is easy to clean and is better in user experience.

In order to achieve the above-mentioned object, the present invention provides a penis massager, including:

a housing provided with an accommodating space, a power source and a circuit board electrically connected to the power source being received in the accommodating space;

a sleeve being removably mounted in the accommodating space, one end of the sleeve being concaved to form an interior volume for accommodating the penis; and

a vibrating apparatus being provided in the sleeve, the vibrating apparatus being electrically connected to the circuit board for generating a mechanical vibration.

Compared with the prior art, the penis massager provided by the present invention has the beneficial effects that: the penis massager of the present invention is configured to set the vibrating apparatus in the sleeve, so that the vibrating apparatus and sleeve are integral, which makes the vibrating apparatus and sleeve are integral, which makes the vibrating apparatus need not to be removed when the sleeve is cleaned. Thus, the penis massager is more convenient to clean after being used. In addition, the vibrating apparatus arranged in the sleeve, compared with a structure that the vibrating apparatus is arranged externally, is wider and more obvious in vibration range, thereby forming stronger stimulation and improving the user experience.

### BRIEF DESCRIPTION OF THE DRAWINGS

In order to more clearly explain technical solutions in embodiments of the present invention, accompanying drawings required to be used in the embodiments or the description of the prior art will be briefly introduced below. Apparently, the accompanying drawings in the following description are only some embodiments of the present

**2**

invention. For those ordinarily skilled in the art, other accompanying drawings may be obtained from these accompanying drawings without paying any creative labor.

FIG. **1** is a perspective view of a penis massager according to an embodiment of the present invention;

FIG. **2** is a top view of the penis massager of FIG. **1**;

FIG. **3** is a first schematic partially-exploded view of the penis massager of FIG. **1**;

FIG. **4** is a second schematic partially-exploded view of the penis massager of FIG. **1**;

FIG. **5** is a perspective view of a sleeve of the penis massager of FIG. **4**;

FIG. **6** is an exploded view of the sleeve of FIG. **5**;

FIG. **7** is a sectional view of the sleeve of FIG. **5**;

FIG. **8** is a perspective view of the sleeve of from another aspect;

FIG. **9** is a perspective view of a movable cabin of the penis massager of FIG. **4**;

FIG. **10** is an exploded view of the movable cabin of FIG. **9**;

FIG. **11** is a side view of the movable cabin of FIG. **9**;

FIG. **12** is a schematic, assembled view of the sleeve and the movable cabin; and

FIG. **13** is a schematic view showing an operation of removing the sleeve from the movable cabin.

### DESCRIPTION OF THE EMBODIMENTS

In order to make technical problems, technical solutions and beneficial effects to be solved in the present invention clearer, the present invention will be further described below in detail in conjunction with accompanying drawings and embodiments. It should be understood that specific embodiments described herein are only used to explain the present invention and not to limit the present invention.

It should be noted that when an element is referred to as "fixed to" or "arranged on" another element, it can be directly or indirectly on another element. When an element is referred to as "connected to" another element, it can be directly or indirectly connected to another element.

It should be understood that the orientational or positional relationship indicated by terms "length", "width", "up", "down", "front", "back", "left", "right", "vertical", "horizontal", "top", "bottom", "inside", "outside", and the like is based on the orientational or positional relationship shown in the accompanying drawings, and is only for the sake of describing the present invention and simplifying the description instead of indicating or implying that the apparatus or element referred to must have a specific orientation, and must be constructed and operated in a specific orientation, so it cannot be understood as a limitation of the present invention.

Also, terms "first" and "second" are only used for describing purposes, and cannot be understood as indicating or implying relative importance or implying the number of technical features indicated. Therefore, features defined with "first" and "second" can explicitly or implicitly include one or more of these features. In the description of the present invention, "a plurality of" means two or more, unless otherwise specified.

With reference to FIG. **1** to FIG. **4** together, a penis massager provided by an embodiment of the present invention is shown. The penis massager includes a housing **10** and a sleeve **20**. Preferably, the sleeve **20** is made of soft material, such as soft rubber. The housing **10** is provided with an accommodating space **110**, and a power source **120** and a circuit board **130** are arranged in the accommodating

3

space **110**. The circuit board **130** is electrically connected to the power source **120**. The sleeve **20** is removably mounted in the accommodating space **110**. One end of the sleeve **20** is concaved inwards to form an interior volume **210** for accommodating the penis. An opening **201** communicating with the interior volume **210** is formed on a front end of the sleeve **20** for inserting of the penis therein, and a rear end of the sleeve **20** is closed. The sleeve **20** is provided with a plurality of bulges on an inner wall surface of the interior volume **210** to enhance massage to the penis.

The housing **10** includes a top housing **140**, a bottom housing **141** and an end cover **142**. The top housing **140** and bottom housing **141** are connected to each other and cooperatively form an outer housing which encircles the opening at the front end, and the end cover **142** covers the opening of the outer housing. When the end cover **142** is opened, the opening **201** in the front end of the sleeve **20** is exposed out of the outer housing. An aperture **143** for picking-and-placing the sleeve **20** is defined in the top of the top housing **140**, and a top cover **150** is removably connected to the aperture **143**. The top cover **150** is in snap-fit connection with the top housing **140**, and an avoidance slot **145** for facilitating detaching of the top cover **150** from the top housing **140** is defined in a top surface of the top housing **140**. An fixing member **220** is mounted at a position close to a front end of the sleeve **20**, and the fixing member **220** may be held and rotate downwards after the top housing **140** is taken out of the top cover **150**, so that the sleeve **20** may be pulled out of the housing **10**.

With further reference to FIG. **5** to FIG. **7**, a vibrating apparatus **30** is provided in the sleeve **20**. The vibrating apparatus **30** may be specifically arranged in a side wall of the sleeve **20** and is close to a rear end of the sleeve **20**. The vibrating apparatus **30** may also be arranged on other positions of the sleeve **20**, such as the top of the sleeve **20**. The vibrating apparatus **30** may be a motor **31**, which is electrically connected to the circuit board **130** and is used for generating a mechanical vibration to drive the sleeve **20** to vibrate together.

In the present embodiment, the motor **31** is embedded in the side wall of the sleeve **20**. During production, the motor **31** and the sleeve **20** are integrally molded by injection to form an integral structure. Thus, the penis massager after being used may be cleaned without removing the motor **31** from the sleeve **20**, facilitating cleaning operation. At the same time, by means of the integral structure that the vibrating apparatus **30** is embedded in the side wall of the sleeve **20**, the sleeve **20** is wider in vibration range and more obvious in vibration effect, and thus the user experience is improved.

With reference to FIG. **3** and FIG. **4**, a partition plate **113** is arranged in the housing **10** and separates the accommodating space **110** into a first space **111** and a second space **112**. The sleeve **20** is located in the first space **111**, and the power source **120** and the circuit board **130** are located in the second space **112**. The top housing **140** of the housing **10** is provided with a control panel **170** which is electrically connected to the circuit board **130**, and corresponding functions of the penis massager may be started or stopped by pressing functional keys on the control panel **170**. The power source **120** may be one or more rechargeable batteries.

Compared with the prior art, the penis massager provided by the present invention has the beneficial effects that: the penis massager of the present invention is configured to set the vibrating apparatus in the sleeve, so that the vibrating apparatus and the sleeve are integral, which makes the

4

vibrating apparatus need not to be removed when the sleeve is cleaned. Thus, the penis massager is more convenient to clean after being used. In addition, the vibrating apparatus arranged in the sleeve, compared with a structure that the vibrating apparatus is arranged externally, is wider and more obvious in vibration range, thereby forming stronger stimulation and improving the user experience.

In a comparative example, a rear end of the interior volume of the sleeve is set to be narrower, and a rear end of the sleeve may be stretched. For such structure, the user cannot feel balanced wrap, and the head of the penis is excessively stimulated, so that the effect of massage exercise cannot be achieved. With reference to FIG. **7**, in the present embodiment, the interior volume **210** in the sleeve **20** includes a first section **211**, a second section **212** and a third section **213** in sequence, and widths of the first section **211** and the third section **213** both are set to be greater than the width of the second section **212**. The second section **212** is used for encircling at least one part of the middle of the penis. In other words, a portion at a middle of the interior volume **210** in the sleeve **20** is narrower, in this way, the effect of holding the middle section to push and pull during real use may be imitated, the whole penis may be completely wrapped by the sleeve **20** for friction, and thus, it is easier to achieve massage exercise.

With reference to FIG. **1**, FIG. **2** and FIG. **7**, preferably, two handles **160** to be held by human hands are symmetrically arranged on left and right sides of the housing **10**. The handles **160** are generally column-shaped, with domes provided at front ends thereof. A connecting portion between a rear end of the handle**160** and the housing **10** is in smooth transition. The rear ends of the handles **160** are inclined to an axis direction of the housing **10**, and included angles therebetween may be set to range from 30 degrees to 45 degrees. The handles **160** are arranged on two sides of the housing **10**, and the user can adjust a placement angle of the penis massager through the handles **160**, so that the penis massager is adjusted to an appropriate posture to bright convenience for the user.

The handles **160** are provided with keys **161** for adjusting a vibration amplitude of the vibrating apparatus **30**. At least two keys **161** are arranged on one of the handles **160**, and the vibration amplitude of the vibrating apparatus **30** may be adjusted to increase by one of the keys **161** and may be adjusted to decrease by the other one of the keys **161**.

In the present embodiment, with reference to FIG. **3** and FIG. **5** to FIG. **7**, a fixed frame **40** is arranged in the sleeve **20**. That is, the fixed frame **40** and the sleeve **20** are integrally molded by injection. The fixed frame **40** may be specifically arranged in the side wall of the sleeve **20**. A plurality of conductive columns **410** are arranged on the fixed frame **40**. The vibrating apparatus **30** includes the motor **31**. An outer housing is mounted around the motor **31**, and includes a housing body **32** and a housing cover **33**. The vibrating apparatus **30** is electrically connected to the conductive columns **410** through a first wire. A plurality of conductive members **61** are arranged in the accommodating space **110** of the housing **10**. The conductive members **61** may be but are not limited to conductive pogo pins, conductive springs or magnetic attraction members. The conductive members **61** are electrically connected to the circuit board **130**. One end of each conductive column **410** is electrically connected to one of the conductive members **61** after extending out of the sleeve **20**, thereby realizing electric conduction between the vibrating apparatus **30** and the circuit board **130**.

US 11,730,665 B1

5

In a comparative example, a heating element is arranged on an outer side wall of the sleeve and is fixed by a mounting frame. Thus, the heating element is attached to the outer side wall of the sleeve. Such construction with the heating member out of the sleeve has problems of slow rising in heating temperature and uneven temperature distribution. With reference to FIG. 6 and FIG. 7, in the present embodiment, the sleeve 20 is internally provided with a heating plate 50, that is, the sleeve 20 and the heating plate 50 are set to be integral, and specifically the heating plate 50 may be embedded into the side wall of the sleeve 20. The heating plate 50 at least covers a part of a side wall of a middle area of the sleeve 20. The heating plate 50 is arranged in the sleeve 20, so that the heating plate 50 may be wrapped inside the side wall of the sleeve 20, and then, heat of the heating plate 50 can be transfer to the sleeve 20 rapidly.

When a heating function of the penis massager is started, the sleeve 20 may be kept at a constant temperature within a certain range, and thus, the user can achieve more realistic experience and a better effect during massage exercise and sperm extraction. The heating plate 50 is electrically connected to the rest of the conductive columns 410 through a second wire, one end of each conductive column 410 is electrically connected to the conductive members 61, and thus, a circuit between the heating plate 50 and the circuit board 130 is conducted. In the present embodiment, the conductive members 61 and the conductive columns 410 are wirelessly connected, either between the motor 31 and the circuit board 130 or between the heating plate 50 and the circuit board 130, so that wire connection is reduced, and it is convenience in use. Moreover, the sleeve 20 has no wires exposed for connection, and thus, after being used, the sleeve 20 is more conveniently taken out to clean without restrictions of the wires.

Preferably, a longitudinal cross section of the heating plate 50 is set to be C-shaped. The width of the heating plate 50 may be set according to the overall length of the sleeve 20. A position of the heating plate 50 corresponds to an area of the interior volume 210 of the sleeve 20 in which the second section 212 is located.

Specifically, the heating plate 50 is fixed on an inner wall surface of the fixed frame 40. A longitudinal cross section of the fixed frame 40 is also C-shaped, and an overall dimension of the fixed frame 40 is slightly greater than that of the heating plate 50. The heating plate 50 and the fixed frame 40 may be fixed by a snap-fit structure or fixed together by a connecting member or in other ways. Locating protrusions 441 are arranged on the inner wall surface of the fixed frame 40, and locating gaps 510 are defined in positions of the heating plate 50 corresponding to the locating protrusions 441. The heating plate 50 is preliminarily mounted on the fixed frame 40 by cooperating of the locating protrusions 441 and the locating gaps 510, and then, the heating plate 50 is fixed on a fixing member by a connecting member. After the heating plate 50 and the fixed frame 40 are fixed together, the fixed frame 40 and the sleeve 20 are integrally molded by injection.

With reference to FIG. 4, FIG. 6 and FIG. 8, preferably, the conductive members 61 are electrified by contact with the conductive columns 410, which may be implemented by elastic conductive members. At least one of the conductive member 61 and the conductive column 410 is an elastic conductive member or provided with an elastic conductive member. In the present embodiment, the conductive members 61 are conductive pogo pins 610. Springs are arranged in the conductive pogo pins 610, so as to form elastic contact between the conductive pogo pins 610 and the conductive

6

columns 410. Therefore, power off caused by loosening of the contact during movement of the sleeve 20 may be avoided.

Preferably, the fixed frame 40 has a hollow structure, and thus, the fixed frame 40 and the sleeve 20 may be more stably combined together after being molded by injection. The fixed frame 40 is provided with a plurality of strip-shaped through holes 440, and the through holes 440 construct the hollow structure of the fixed frame 40, so that not only the structural strength of the fixed frame 40 may be ensured, but also the fixed frame 40 and the sleeve 20 may be stably combined together after being molded by injection.

With reference to FIG. 3, FIG. 4 and FIG. 9, a movable cabin 60 is arranged in the accommodating space 110, and is capable of sliding back and forth in the axial direction of the accommodating space 110. A longitudinal cross section of the movable cabin 60 is generally U-shaped, and opened at its front, rear and top ends. The sleeve 20 is removably arranged on the movable cabin 60, and the length of the movable cabin 60 is less than that of the sleeve 20. The conductive members 61 are fixed on the movable cabin 60. Specifically, sliding bars 144 are respectively arranged on left and right sides of the housing 10, close to the bottom of the first space 111, and the sliding bars 144 extend in the axial direction of the housing 10 and slidably penetrate through the movable cabin 60. In this way, the movable cabin 60 is in sliding fit with the sliding bars 144, and the movable cabin 60 is capable of sliding back and forth along the sliding bars 144. That is, the movable cabin 60 is capable of sliding for a certain distance in the first space 111.

After the vibrating apparatus 30 is started, the sleeve 20 and the movable cabin 60 move together in the first space 111 in the axial direction of the housing 10. The conductive members 61 are conductive pogo pins 610, holes for mounting the conductive pogo pins 610 are defined in the bottom of the movable cabin 60, and the conductive pogo pins 610 pass through the holes to extend into the movable cabin 60. A bottom cover 680 is arranged on an outer bottom surface of the movable cabin 60, and a screw is adopted to penetrate through the bottom cover 680 to fix it onto the movable cabin 60, and thus the conductive pogo pins 610 are locked and fixed on the movable cabin 60.

Specifically, in the present embodiment, with reference to FIG. 9 and FIG. 10, the number of the conductive columns 410 and the number of the conductive pogo pins 610 are both four, a mounting area 420 is arranged on the bottom of an outer wall surface of the fixed frame 40, a bottom surface of the mounting area 420 is a plane, and the four conductive columns 410 are fixed on the bottom surface of the mounting area 420. The motor 31 is electrically connected to two of the conductive columns 410 by the first wire, and the heating plate 50 is electrically connected to the other two conductive columns 410 by the second wire.

With reference to FIG. 6, FIG. 7 and FIG. 9, four stepped holes 421 are defined in the mounting area 420. A flange 411 protrudes radially and outwards from an outer circumferential surface of the conductive column 410 and abuts against a step surface of one corresponding stepped hole 421. The fixed frame 40 is provided with a bottom cover 430, the bottom cover 430 is fixed in the mounting area 420 by a screw 432, and thus, the conductive columns 410 are locked and fixed in the mounting area 420. Four through holes are defined in the bottom cover 430, and one end of each conductive column 410 abuts against the conductive pogo pin 610 after passing through the through hole. Preferably, an annular sealing ring is tightly pressed between the bottom

Case 2:25-cv-04337-ES-JSA    Document 1    Filed 05/15/25    Page 317 of 611 PageID: 317

7
8

cover **430** and the mounting area **420**, and thus, a waterproof effect of the mounting area **420** may be improved.

Preferably, insulating layers are provided on outer surfaces of the other ends of the conductive columns **410**, an outer surface of the first wire, an outer surface of the second wire, a connection between the first wire and each of the conductive columns **410** and a connection between the second wire and each of the conductive columns **410**, respectively. During specific operation, after the first wire is welded to the conductive columns **410** and the second wire is welded to the conductive columns **410**, insulating glue is applied to cover surfaces of the first wire, the second wire and the other ends of the conductive columns **410** as well as welding point interfaces of each wire on the conductive columns **410**, and then, the bottom cover **430** covers the mounting area **420**, the screw **432** is adopted to lock and fix the bottom cover **430** in the mounting area **420**. In this way, all the conductive columns **410** are tightly pressed, so that all the assemblies are integrated with the sleeve **20**, and the motor **31**, the heating plate **50** and the conductive columns **410** which are arranged in the sleeve **20** form a conductive path. The bottom cover **430** is further provided with an elastic sealing gasket **433**, after the screw **432** locks the bottom cover **430**, the sealing gasket **433** is inserted into a hole corresponding to the screw **432**, and thus, the sealing gasket **433** shields the screw **432** and seals the hole to prevent a cleaning solution from entering the hole when the sleeve **20** is cleaned.

With reference to FIG. **4** to FIG. **6**, preferably, the fixed frame **40** is provided with clamping blocks **450** which extend out of an outer side wall of the sleeve **20**. Clamping structures switchable between a locking state and an unlocking state are formed between the movable cabin **60** and each of the clamping blocks **450**. When the clamping structures are in the locking state, the sleeve **20** is clamped and fixed in the movable cabin **60** by the clamping blocks **450**. When the clamping structures are in the unlocking state, the sleeve **20** may be taken out of the movable cabin **60**.

With reference to FIG. **3**, FIG. **5**, FIG. **9** and FIG. **10**, linkage assemblies **62** are symmetrically arranged on left and right sides of the movable cabin **60**. Each of the linkage assemblies **62** and the clamping block **450** on the corresponding side cooperatively construct a clamping structure. The linkage assembly **62** includes a toggling member **620**, an elastic member **630** and a bent lever **640**. The toggling members **620** are movably arranged on the movable cabin **60** and are capable of sliding or rotating relative to the movable cabin **60**. The bent levers **640** are rotatably arranged on the movable cabin **60**. The elastic members **630** are abutted between each of the toggling members **620** and the movable cabin **60**, and the clamping blocks **450** are clamped and fixed by the toggling members **620** and the bent levers **640** under the action of elasticities provided by the elastic members **630**. When the toggling members **620** are toggled in an unlocking direction, the toggling members **620** are capable of driving the bent levers **640** to rotate, so that the clamping structures are in the unlocking state, and the sleeve **20** is in a state being capable of taken out of the housing **10**.

With reference to FIG. **10** to FIG. **12**, specifically, mounting slots **650** are symmetrically defined in outer side walls of the left and right sides of the movable cabin **60**, the elastic members **630** and the bent levers **640** are accommodated in the mounting slots **650**, and parts of the toggling members **620** are accommodated in the mounting slots **650**. The mounting slots **650** are provided with gaps **651** to be penetrated by the clamping blocks **450**, and the clamping

blocks **450** extend through the gaps **651** to insert into the mounting slots **650**. Clamping positions are respectively formed near the gaps **651** in two sides of the movable cabin **60**, and when the linkage assemblies **62** are in the locking state, the clamping blocks **450** are clamped into the mounting slots **650** by the toggling members **620**, the bent levers **640** and portions of the slot walls of the mounting slots **650** at the gaps **651**. After the toggling members **620** on the left and right sides of the movable cabin **60** are toggled in the unlocking direction, the toggling members **620** leave from the clamping blocks **450**, at the moment, the toggling members **620** are spaced from the clamping blocks **450**, and thus, the clamping structures are in the unlocking state.

The toggling member **620** includes an operating portion **621**, a clamping portion **622** and a toggling portion **623**, which are connected together in sequence. One end of each operating portions **621** extends out of a top of the mounting slot **650** to form an operating end to be toggled by hands. Convex blocks **6220** and convex shafts **6221** are respectively arranged on left and right sides of the clamping portions **622**, detachable side covers **660** are arranged on positions of the movable cabin **60** corresponding to the mounting slots **650**, first sliding chutes **661** are arranged in positions of the side covers **660** corresponding to the convex shafts **6221**, the convex shafts **6221** are slidably connected to the first sliding chutes **661**, second sliding chutes **670** are arranged in positions of the movable cabin **60** corresponding to the convex blocks **6220**, the convex blocks **6220** are slidably connected to the second sliding chutes **670**, and thus, a sliding connection between each of the clamping portions **622** and the movable cabin **60** is achieved. In other words, the toggling members **620** are slidably connected to the movable cabin **60**, and when the operating ends of the operating portions **621** are toggled backwards, the toggling members **620** as a whole can backwards slide for a certain distance.

The elastic members **630** adopt first compression springs **631**. One end of each clamping portion abuts against the clamping blocks **450**, and the other end of the clamping portion **622** is provided with a fixing column. One end of each first compression spring **631** is mounted around the fixing column, and thus, the clamping portions **622** abut against the first compression springs **631**. The other ends of the first compression springs **631** abut against side walls of the mounting slots **650**. Locating slots **6230** which are generally splay-shaped are encircled by the toggling portions **623**. That is, left, right and bottom sides of the locating slots **6230** are opened, and inner side walls of the toggling portions **623** cooperatively define the locating slots therebetween. Corners of the locating slots **6230** are set to be in smooth transition. The mounting slots **650** are internally provided with mounting columns **652**. The bent lever **640** includes a first link levers **641** and second link lever **642**. Bent parts where the first link levers **641** are connected to the second link levers **642** are rotatably mounted on the mounting columns **652**, that is, the bent levers **640** are rotatably arranged in the mounting slots **650** through the mounting columns **652**, and the bent levers **640** are capable of rotating with the mounting columns **652** as fulcrums. Ends, away from the mounting columns **652**, of the first link levers **641** extend into the locating slots **6230**, and ends, away from the mounting columns **652**, of the second link levers **642** abut against the clamping blocks **450**.

With reference to FIG. **3**, FIG. **8** and FIG. **10** to FIG. **12**, specifically, the clamping blocks **450** are provided with connected large-diameter ends **451** and small-diameter ends **452**, and widths of the large-diameter ends **451** are greater

US 11,730,665 B1

9

than those of the small-diameter ends **452**. Contours of longitudinal sections of the large-diameter ends **451** are similar to ellipses, and bottom and top ends thereof are both arc surfaces. One end of each of the small-diameter ends **452** is connected to the fixed frame **40**. When the sleeve **20** is mounted in the housing **10**, the small-diameter ends **452** are tightly abutted against wall surfaces of the gaps **651** of the movable cabin **60**. The clamping portions **622** of the toggling members **620** abut against one side on the top of each of the large-diameter ends **451** under the action of elasticities of the first compression springs **631**, sides, close to the large-diameter ends **451**, of the clamping portions **622** are adaptive arc surfaces, and thus, the clamping portions **622** are fitted to one side on the top of each of the large-diameter ends **451**. As shown in FIG. **8**, FIG. **11** and FIG. **12**, the clamping structures are in the locking state, the clamping portions **622** and the second link levers **642** are both abutted against the large-diameter ends **451** of the clamping blocks **450**, the wall surfaces in the gaps **651** of the movable cabin **60** abut against the small-diameter ends **452** of the clamping blocks **450**, the clamping blocks **450** are stressed at the same time in three directions, i.e. upper left sides, lower right sides and right sides, and thus, triangular stressed structures are formed on the clamping positions, the clamping blocks **450** may be stably clamped, and then, the sleeve **20** is stably buckled together after being pressed into the movable cabin **60**.

With reference to FIG. **10** to FIG. **12**, preferably, the gaps **651** in the left and right sides of the movable cabin **60** are both U-shaped gaps. The movable cabin **60** are provided with unfilled corners on front ends of the U-shaped gaps, that is, horizontal positions on tops of wall surfaces on front ends of the U-shaped gaps are lower than horizontal positions on tops of wall surfaces on rear ends thereof. First inclined surfaces **6511** are arranged on the wall surfaces on the front ends of the U-shaped gaps, and thus, the operation of downwards pressing the sleeve **20** to be put into the movable cabin **60** is facilitated. When the sleeve **20** is mounted, the small-diameter ends **452** of the clamping blocks **450** slide into the U-shaped gaps along the first inclined surfaces **6511**, that is, the first inclined surfaces **6511** form guide surfaces by which the clamping blocks **450** are convenient to slide into the U-shaped gaps. Second inclined surfaces **6512** are arranged on bottoms of the U-shaped gaps, front ends of the second inclined surfaces **6512** are inclined upwards, clamping surfaces **6513** are connected between each of the first inclined surfaces **6511** and each of the second inclined surfaces **6512**, and the clamping surfaces **6513** are arranged vertically. In this way, when the sleeve **20** is pressed and mounted into the movable cabin **60**, the clamping blocks **450** are clamped into the bottoms of the U-shaped gaps, bottoms of the small-diameter ends **452** of the clamping blocks **450** abut against the second inclined surfaces **6512**, and one side of each of the small-diameter ends **452** abuts against the clamping surface **6513**. Each wall surface in the U-shaped gaps can adopt an arc surface, and thus, it is convenient for the clamping blocks **450** to slide in or out, and the clamping blocks **450** can also be prevented from being scratched.

With reference to FIG. **6** and FIG. **10** to FIG. **12**, when the sleeve **20** is mounted, the conductive columns **410** in the mounting area **420** on the bottom of the sleeve **20** are aligned with the conductive pogo pins **610**, the clamping blocks **450** on the left and right sides are aligned with the U-shaped gaps in the two sides of the movable cabin **60**, the sleeve **20** is downwards pressed into the movable cabin **60**, the toggling members **620** on the left and right sides of the movable cabin

10

**60** move backwards, the first compression springs **631** are compressed, after the sleeve **20** is clamped in place, the toggling members **620** automatically return due to the elasticities of the first compression springs **631**, at the same time, the toggling members **620** drive the bent levers **640** to rotate, the second link levers **642** are bounced upwards, then, triangular buckling positions are formed in the U-shaped gaps, the clamping blocks **450** are tightly clamped, the clamping structures are in the locking state, and thus, the sleeve **20** is clamped and fixed in the movable cabin **60**.

In a comparative example, a magnet is arranged in the bottom of the sleeve, a magnet is also arranged on a corresponding position of the housing, and thus, a magnetic absorption structure is formed; and when the sleeve is taken out of the housing, the sleeve is easily damaged after being stretched. With reference to FIG. **11** to FIG. **13**, in the present embodiment, when the sleeve **20** is required to be taken out of the movable cabin **60**, the toggling members **620** on the left and right sides of the movable cabin **60** are toggled to rear ends, the first compression springs **631** are compressed, the clamping portions **622** of the toggling members **620** leave from the clamping blocks **450**, the toggling members **620** drive a crankshaft to rotate counterclockwise around the mounting columns **652** through the splay locating slots **6230** in the bottoms, and the second link levers **642** upwards jack the clamping blocks **450**, so that the clamping blocks **450** come out of the gaps **651** of the movable cabin **60**, at the moment, the sleeve **20** is bounced upwards together with the fixed frame **40**, the four conductive pogo pins **610** on the bottom of the movable cabin **60** are bounced under pressures of the springs thereof, the fixing member **220** is held to rotate downwards, a buckling position of the fixing member **220** is released, and thus, the sleeve **20** may be pulled out. The sleeve **20** is relatively convenient to dismount and mount; when being pressed downwards, the sleeve **20** may be stably clamped together with the movable cabin **60**; and by backwards pushing the toggling members **620** on two sides, the sleeve **20** may be bounced from the movable cabin **60**, so that the problem that the sleeve **20** is pulled hard to be damaged may be effectively avoided.

With reference to FIG. **11** to FIG. **13**, two limiting blocks **653** are spaced on the slot wall on the bottom of each of the mounting slots **650**, and second compression springs **654** are arranged between the two limiting blocks **653**. Connecting columns are arranged on surfaces away from the second link levers **642** and abutted against the clamping blocks **450**, one end of each of the second compression springs **654** sleeves the connecting columns, and the other ends of the second compression springs **654** abut against the slot walls on the bottoms of the mounting slots **650**. The elasticities of the second compression springs **654** are smaller than those of the first compression springs **631**, and thus, the bent levers **640** may not automatically rotate under the abutment of the second compression springs **654**, i.e., the clamping structures may not switched from the locking state to the unlocking state due to the second compression springs **654**. When the clamping structures are in the locking state, the second link levers **642** abut against top ends of the two limiting blocks, and the second compression springs **654** are tightly pressed to be accommodated between the two limiting blocks **653**. When the clamping structures are in the unlocking state, the second link levers **642** leave from the two limiting blocks **653**, the second compression springs **654** stretch and provide forces for upwards ejecting the second link levers **642**, so that the toggling members **620** may be

**11**

toggled backwards with less forces before the sleeve **20** is pressed and mounted in the movable cabin **60**, and then, the toggling operation is easier.

The above is only a better embodiment of the present invention and is not intended to limit the present invention. Any modification, equivalent replacement and improvement made within the spirit and principle of the present invention shall be included in a scope of protection of the present invention.

What is claimed is:

**1**. A penis massager, comprising:

a housing provided with an accommodating space, a power source and a circuit board electrically connected to the power source being received in the accommodating space;

a sleeve being removably mounted in the accommodating space, one end of the sleeve being concaved to form an interior volume for accommodating a penis; and

a vibrating apparatus being provided in the sleeve, the vibrating apparatus being electrically connected to the circuit board for generating a mechanical vibration;

wherein the sleeve is provided with a fixed frame, at least one conductive element is provided on the fixed frame, the vibrating apparatus is electrically connected to the at least one conductive element through a first wire; at least one conductive member is provided in the accommodating space and electrically connected to the circuit board, and the at least one conductive element is connected to the at least one conductive member electrically.

**2**. The penis massager according to claim **1**, wherein the at least one conductive element comprises a plurality of conductive elements, the vibrating apparatus is electrically connected to at least one of the plurality of conductive elements through the first wire, a heating plate is provided in the sleeve and electrically connected to at least one of the plurality of conductive elements through a second wire.

**3**. The penis massager according to claim **2**, wherein the heating plate is fixed on an inner wall surface of the fixed frame.

**4**. The penis massager of claim **2**, wherein a plurality of insulating layers are covered on outer surfaces of ends of the plurality of conductive elements, an outer surface of the first wire, an outer surface of the second wire, a connection between the first wire and each of the plurality of conductive elements and a connection between the second wire and each of the plurality of conductive elements, respectively.

**5**. The penis massager according to claim **2**, wherein the at least one conductive member comprises a plurality of conductive members, the plurality of conductive members and the plurality of conductive elements are electrically connected by contact.

**6**. The penis massager according to claim **5**, wherein the electrical connection by contact is implemented by elastic conductive members.

**7**. The penis massager according to claim **6**, wherein the elastic conductive members are conductive pogo pins.

**8**. The penis massager according to claim **7**, wherein the number of the plurality of conductive elements and the number of the conductive pogo pins are both four, a mounting area is formed on a bottom of an outer wall surface of the fixed frame, the four conductive elements are fixed in the mounting area, the vibrating apparatus is electrically connected to two of the four conductive elements by the first wire, and the heating plate is electrically connected to the other two of the four conductive elements by the second wire.

**12**

**9**. The penis massager according to claim **8**, wherein four stepped holes are formed in the mounting area, a flange protrudes radially and outwards from an outer circumferential surface of each of the plurality of conductive elements and abuts against a step surface of a corresponding stepped hole; the fixed frame is provided with a bottom cover, the bottom cover is fixed in the mounting area for fixing the plurality of conductive elements in the mounting area, four through holes are formed in the bottom cover, and one end of each of the plurality of conductive elements extends through one of the four through holes to abut against one of the plurality of conductive pogo pins.

**10**. The penis massager according to claim **1**, wherein the fixed frame is a hollow structure.

**11**. The penis massager according to claim **1**, wherein a movable cabin is movably arranged in the accommodating space, the movable cabin is capable of sliding back and forth in an axial direction of the accommodating space, a longitudinal cross section of the movable cabin is U-shaped, the sleeve is removably arranged on the movable cabin, and the at least one conductive member is fixed on a bottom of the movable cabin and extend into the movable cabin.

**12**. The penis massager according to claim **11**, wherein the fixed frame is provided with a plurality of clamping blocks which extend out of an outer side wall of the sleeve; and each of the plurality of clamping blocks cooperates with the movable cabin to construct a clamping structure which has a locking state and an unlocking state, when the clamping structures are in the locking state, the sleeve is clamped and fixed in the movable cabin by the plurality of clamping blocks, and when the clamping structures are in the unlocking state, the sleeve is capable of being taken out of the movable cabin.

**13**. The penis massager according to claim **12**, wherein the plurality of clamping blocks are symmetrically arranged on two sides of the fixed frame, and when the clamping structures on the two sides are both in the unlocking state, the sleeve is capable of being taken out of the movable cabin.

**14**. The penis massager according to claim **13**, wherein a plurality of linkage assemblies are symmetrically arranged on two sides of the movable cabin, and each of the plurality of linkage assemblies and one of the plurality of clamping blocks on a corresponding side cooperatively construct the clamping structure;

each of the plurality of linkage assemblies comprise a toggling member, an elastic member and a bent lever, the toggling members are movably arranged on the movable cabin, the bent levers are rotatably arranged on the movable cabin, the elastic members are abutted between the toggling members and the movable cabin, and the plurality of clamping blocks are tightly clamped by the toggling members and the bent levers under the action of the elastic members; and when a force is applied to the toggling members in an unlocking direction, the toggling members are capable of driving the bent levers to rotate, so that the clamping structures are in the unlocking state.

**15**. The penis massager according to claim **14**, wherein a plurality of mounting slots are symmetrically arranged on outer side walls on the two sides of the movable cabin, the elastic members and the bent levers are both accommodated in the plurality of mounting slots, and parts of the toggling members are accommodated in the plurality of mounting slots; the plurality of mounting slots are provided with gaps through which the plurality of clamping blocks extend into the plurality of mounting slots; when the plurality of linkage

US 11,730,665 B1

13

assemblies are in the locking state, the plurality of clamping blocks are clamped into the plurality of mounting slots by the toggling members, the bent levers and portions of slot walls of the plurality of mounting slots at in the gaps; and when the clamping structures are in the unlocking state, the toggling members are spaced from the plurality of clamping blocks.

**16**. The penis massager according to claim **15**, wherein each of the plurality of toggling members comprises an operating portion, a clamping portion and toggling portion, one end of the operating portion extends out of a top of one of the plurality of mounting slots to form an operating end to be toggled by hands, the clamping portion is slidably connected to the movable cabin, one end of the clamping portion abuts against one of the plurality of clamping blocks, another end of the clamping portion abuts against one of the elastic members, and splay locating slots are defined by the toggling portions; and the plurality of mounting slots are internally provided with mounting elements, each of the bent levers comprises a first link lever and a second link lever which are connected to each other, a bent part where the first link lever is connected to the second link lever is

14

rotatably mounted on one of the mounting elements, one end of the first link lever extends into one of the locating slots, and one end of the second link lever abuts against one of the plurality of clamping blocks.

**17**. The penis massager according to claim **1**, wherein the interior volume comprises a first section, a second section and a third section in sequence, widths of the first section and third section both are greater than a width of the second section, and the second section is configured to encircle at least one part of a middle of the penis.

**18**. The penis massager according to claim **1**, wherein two handles to be held by human hands are symmetrically arranged on two sides of the housing, respectively.

**19**. The penis massager according to claim **18**, wherein the handles are provided with keys for adjusting a vibration amplitude of the vibrating apparatus.

**20**. The penis massager according to claim **1**, wherein the at least one conductive element is conductive column, and extends out of the sleeve to contact the at least one conductive member.

*   *   *   *   *

Exhibit 5

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/119,859 | 03/10/2023 | Tenghui Huang | 22A1385US | 2067 |

176174        7590        08/22/2023

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

| EXAMINER |
|---|
| COX, THADDEUS B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3791 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/22/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

kckclaw@yahoo.com
kevchen888@yahoo.com

PTOL-90A (Rev. 04/07)

 **United States Patent and Trademark Office**

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. |
|---|---|---|
| 18/119,859 | 22-Aug-2023 | 11730665 |

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

# EGRANT NOTIFICATION

Your electronic patent grant (eGrant) is now available, which can be accessed via Patent Center at https://patentcenter.uspto.gov

The electronic patent grant is the official patent grant under 35 U.S.C. 153. For more information, please visit https://www.uspto.gov/electronicgrants

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/119,859 | 08/22/2023 | 11730665 | 22A1385US | 2067 |

176174          7590          08/02/2023

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above. The patent will issue electronically. The electronically issued patent is the official patent grant pursuant to 35 U.S.C. § 153. The patent may be accessed on or after the issue date through Patent Center at https://patentcenter.uspto.gov/. The patent will be available in both the public and the private sides of Patent Center. Further assistance in electronically accessing the patent, or about Patent Center, is available by calling the Patent Electronic Business Center at 1-888-217-9197.

The USPTO is implementing electronic patent issuance with a transition period, during which period the USPTO will mail a ceremonial paper copy of the electronic patent grant to the correspondence address of record. Additional copies of the patent (i.e., certified and presentation copies) may be ordered for a fee from the USPTO's Certified Copy Center at https://certifiedcopycenter.uspto.gov/index.html. The Certified Copy Center may be reached at (800)972-6382.

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Patents Stakeholder Experience (OPSE), Stakeholder Support Division (SSD) at (571)-272-4200.

IR103 (Rev. 10/09)

INVENTOR(s)  (Please see PAIR WEB site http://pair.uspto.gov for additional inventors):

Tenghui Huang, Dongguan, CHINA;
Junpeng Wu, Shenzhen, CHINA;
Zhixu Yang, Dongguan, CHINA;

APPLICANT(s)  (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Junpeng Wu, Shenzhen, CHINA;


The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 176174 | 7590 | 06/30/2023 |

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

| EXAMINER |
|---|
| COX, THADDEUS B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3791 | |

DATE MAILED: 06/30/2023

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/119,859 | 03/10/2023 | Tenghui Huang | 22A1385US | 2067 |

TITLE OF INVENTION: PENIS MASSAGER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0.00 | $0.00 | $480 | 10/02/2023 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 40% the amount of undiscounted fees, and micro entity fees are 20% the amount of undiscounted fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE | By fax, send to: | (571)-273-2885 |
|---|---|---|---|
| | Commissioner for Patents | | |
| | P.O. Box 1450 | | |
| | Alexandria, Virginia 22313-1450 | | |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

176174          7590          06/30/2023

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

| | |
|---|---|
| Kevin P. Chen | (Typed or printed name) |
| /Kevin P. Chen/ | (Signature) |
| 7/4/2023 | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/119,859 | 03/10/2023 | Tenghui Huang | 22A1385US | 2067 |

TITLE OF INVENTION: PENIS MASSAGER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0.00 | $0.00 | $480 | 10/02/2023 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| COX, THADDEUS B | 3791 | 600-038000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☒ Issue Fee ☐ Publication Fee (if required)

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☒ Electronic Payment via Patent Center or EFS-Web ☐ Enclosed check ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

| Authorized Signature | /Kevin P. Chen/ | Date | 7/4/2023 |
|---|---|---|---|
| Typed or printed name | Kevin P. Chen | Registration No. | 76206 |

Page 2 of 3

PTOL-85 Part B (08-18) Approved for use through 01/31/2020          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/119,859 | 03/10/2023 | Tenghui Huang | 22A1385US | 2067 |

| | | |
|---|---|---|
| 176174        7590 | 06/30/2023 | EXAMINER |
| Kevin P. Chen | | COX, THADDEUS B |
| 255 Riverdale Dr | | |
| Fort Lee, NJ 07024 | | ART UNIT        PAPER NUMBER |
| | | 3791 |

DATE MAILED: 06/30/2023

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 18/119,859 | Applicant(s) Huang et al. | |
|---|---|---|---|
| | Examiner THADDEUS B COX | Art Unit 3791 | AIA (FITF) Status Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to the Amendment filed 02 June 2023.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are 1 and 3-21. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☑ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a) ☑All    b) ☐ Some*    c) ☐ None of the:
        1. ☑ Certified copies of the priority documents have been received.
        2. ☐ Certified copies of the priority documents have been received in Application No. _____.
        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
    * Certified copies not received: _____.

    Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.
    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____.
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____.

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/THADDEUS B COX/
Primary Examiner, Art Unit 3791

Application/Control Number: 18/119,859                                          Page 2
Art Unit: 3791

# DETAILED ACTION

## *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

2.      This Office Action is responsive to the Amendment filed 02 June 2023.  Claims 1 and 3-21 are currently under consideration.  The Office acknowledges the amendments to claims 1, 3, 5, 5, and 9-18, as well as the cancellation of claim 2, and the addition of new claim 21.

## *Priority*

3.      Receipt is acknowledged of certified copies of papers required by 37 CFR 1.55.

## *Allowable Subject Matter*

4.      Claims 1 and 3-21 are allowed.

5.      The following is an examiner's statement of reasons for allowance: none of the prior art of record teaches or reasonably suggests a removable sleeve provided with a fixed frame, at least one conductive element provided on the fixed frame, with the at least one conductive element connected to the vibrating apparatus through a wire, and at least one conductive member provided in the accommodating space of the housing and electrically connected to the circuit board, with the conductive element being electrically connected to the conductive member, in combination with the other recited components of the penis massager.

Application/Control Number: 18/119,859                                              Page 3
Art Unit: 3791

Any comments considered necessary by applicant must be submitted no later
than the payment of the issue fee and, to avoid processing delays, should preferably
accompany the issue fee.  Such submissions should be clearly labeled "Comments on
Statement of Reasons for Allowance."

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to THADDEUS B COX whose telephone number is
(571)270-5132. The examiner can normally be reached M-F 9am-6pm.

Examiner interviews are available via telephone, in-person, and video
conferencing using a USPTO supplied web-based collaboration tool. To schedule an
interview, applicant is encouraged to use the USPTO Automated Interview Request
(AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Jason M. Sims can be reached on (571)272-7540. The fax phone number
for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be
obtained from Patent Center. Unpublished application information in Patent Center is
available to registered users. To file and manage patent submissions in Patent Center,
visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-
center for more information about Patent Center and
https://www.uspto.gov/patents/docx for information about filing in DOCX format. For
additional questions, contact the Electronic Business Center (EBC) at 866-217-9197

Application/Control Number: 18/119,859                                    Page 4
Art Unit: 3791

(toll-free). If you would like assistance from a USPTO Customer Service

Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/THADDEUS B COX/
Primary Examiner, Art Unit 3791

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 18119859 |
| **Filing Date:** | 10-Mar-2023 |
| **Title of Invention:** | PENIS MASSAGER |
| **First Named Inventor/Applicant Name:** | Tenghui Huang |
| **Filer:** | Kevin P. Chen |
| **Attorney Docket Number:** | 22A1385US |

Filed as Small Entity

**Filing Fees for** **Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| UTILITY APPL ISSUE FEE | 2501 | 1 | 480 | 480 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **480** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 48247979 |
| **Application Number:** | 18119859 |
| **International Application Number:** | |
| **Confirmation Number:** | 2067 |
| **Title of Invention:** | PENIS MASSAGER |
| **First Named Inventor/Applicant Name:** | Tenghui  Huang |
| **Customer Number:** | 176174 |
| **Filer:** | Kevin P. Chen |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 22A1385US |
| **Receipt Date:** | 04-JUL-2023 |
| **Filing Date:** | 10-MAR-2023 |
| **Time Stamp:** | 23:32:40 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $480 |
| RAM confirmation Number | E202374N33397200 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | 22A1385US-NOA.pdf | 658774<br><br>b271efec8b274b0a1778e83e2ca1ac770b2 8682d | no | 8 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 37604<br><br>ffad0ef017435fbbf87bbaf07539fa708d53c 250 | no | 2 |

**Warnings:**

**Information:**

| | | Total Files Size (in bytes): | 696378 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

176174      7590      06/30/2023
Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

| EXAMINER |
|---|
| COX, THADDEUS B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3791 | |

DATE MAILED: 06/30/2023

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/119,859 | 03/10/2023 | Tenghui Huang | 22A1385US | 2067 |

TITLE OF INVENTION: PENIS MASSAGER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0.00 | $0.00 | $480 | 10/02/2023 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 40% the amount of undiscounted fees, and micro entity fees are 20% the amount of undiscounted fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE | By fax, send to: | (571)-273-2885 |
|---|---|---|---|
| | Commissioner for Patents | | |
| | P.O. Box 1450 | | |
| | Alexandria, Virginia 22313-1450 | | |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

176174          7590          06/30/2023

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

| | |
|---|---|
| | (Typed or printed name) |
| | (Signature) |
| | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/119,859 | 03/10/2023 | Tenghui Huang | 22A1385US | 2067 |

TITLE OF INVENTION: PENIS MASSAGER

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0.00 | $0.00 | $480 | 10/02/2023 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| COX, THADDEUS B | 3791 | 600-038000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☐ Issue Fee ☐ Publication Fee (if required)

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☐ Electronic Payment via Patent Center or EFS-Web ☐ Enclosed check ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. Change in Entity Status (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

PTOL-85 Part B (08-18) Approved for use through 01/31/2020     OMB 0651-0033     U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/119,859 | 03/10/2023 | Tenghui Huang | 22A1385US | 2067 |

| 176174          7590 | 06/30/2023 |
|---|---|

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

| EXAMINER |
|---|
| COX, THADDEUS B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3791 | |

DATE MAILED: 06/30/2023

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | **Application No.**<br>18/119,859 | **Applicant(s)**<br>Huang et al. | |
|---|---|---|---|
| | **Examiner**<br>THADDEUS B COX | **Art Unit**<br>3791 | **AIA (FITF) Status**<br>Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to the Amendment filed 02 June 2023.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are 1 and 3-21. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☑ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☑ All  b) ☐ Some*  c) ☐ None of the:
      1. ☑ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____.
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____.
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____.

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/THADDEUS B COX/
Primary Examiner, Art Unit 3791

Application/Control Number: 18/119,859                                        Page 2
Art Unit: 3791

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

2.      This Office Action is responsive to the Amendment filed 02 June 2023.  Claims 1 and 3-21 are currently under consideration.  The Office acknowledges the amendments to claims 1, 3, 5, 5, and 9-18, as well as the cancellation of claim 2, and the addition of new claim 21.

### *Priority*

3.      Receipt is acknowledged of certified copies of papers required by 37 CFR 1.55.

### *Allowable Subject Matter*

4.      Claims 1 and 3-21 are allowed.

5.      The following is an examiner's statement of reasons for allowance: none of the prior art of record teaches or reasonably suggests a removable sleeve provided with a fixed frame, at least one conductive element provided on the fixed frame, with the at least one conductive element connected to the vibrating apparatus through a wire, and at least one conductive member provided in the accommodating space of the housing and electrically connected to the circuit board, with the conductive element being electrically connected to the conductive member, in combination with the other recited components of the penis massager.

Application/Control Number: 18/119,859                                      Page 3
Art Unit: 3791

Any comments considered necessary by applicant must be submitted no later
than the payment of the issue fee and, to avoid processing delays, should preferably
accompany the issue fee.  Such submissions should be clearly labeled "Comments on
Statement of Reasons for Allowance."


## *Conclusion*

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to THADDEUS B COX whose telephone number is
(571)270-5132. The examiner can normally be reached M-F 9am-6pm.

Examiner interviews are available via telephone, in-person, and video
conferencing using a USPTO supplied web-based collaboration tool. To schedule an
interview, applicant is encouraged to use the USPTO Automated Interview Request
(AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Jason M. Sims can be reached on (571)272-7540. The fax phone number
for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be
obtained from Patent Center. Unpublished application information in Patent Center is
available to registered users. To file and manage patent submissions in Patent Center,
visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-
center for more information about Patent Center and
https://www.uspto.gov/patents/docx for information about filing in DOCX format. For
additional questions, contact the Electronic Business Center (EBC) at 866-217-9197

Application/Control Number: 18/119,859                                           Page 4
Art Unit: 3791

(toll-free). If you would like assistance from a USPTO Customer Service

Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/THADDEUS B COX/
Primary Examiner, Art Unit 3791

| **Issue Classification** | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 18/119,859 | Huang et al. |
| | **Examiner** | **Art Unit** |
| | THADDEUS B COX | 3791 |

| CPC | | | | | |
|---|---|---|---|---|---|
| **Symbol** | | | | **Type** | **Version** |
| A61H | / | 19 | / | 32 | F | 2013-01-01 |
| A61H | | 2201 | | 0153 | A | 2013-01-01 |
| A61H | | 2201 | | 1654 | A | 2013-01-01 |
| A61H | | 2201 | | 0207 | A | 2013-01-01 |

| CPC Combination Sets | | | | | | |
|---|---|---|---|---|---|---|
| **Symbol** | | | **Type** | **Set** | **Ranking** | **Version** |
| | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 20 | |
| /THADDEUS B COX/<br>Primary Examiner, Art Unit 3791 | 14 June 2023 | **O.G. Print Claim(s)** | **O.G. Print Figure** |
| (Primary Examiner) | (Date) | 1 | 6 |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/119,859 | Huang et al. |
| | **Examiner** | **Art Unit** |
| | THADDEUS B COX | 3791 |

**INTERNATIONAL CLASSIFICATION**

**CLAIMED**

| A61H19/00 | | 19 | | / | 00 |
|---|---|---|---|---|---|

**NON-CLAIMED**

| | | | | |
|---|---|---|---|---|

**US ORIGINAL CLASSIFICATION**

| CLASS | SUBCLASS |
|---|---|
| | |

**CROSS REFERENCES(S)**

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 20 | |
| /THADDEUS B COX/ Primary Examiner, Art Unit 3791 | 14 June 2023 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 6 |

| **Issue Classification** | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 18/119,859 | Huang et al. |
| | **Examiner** | **Art Unit** |
| | THADDEUS B COX | 3791 |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

**CLAIMS**

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 9 | 10 | 18 | 19 | | | | | | | | | | |
| - | 2 | 10 | 11 | 19 | 20 | | | | | | | | | | |
| 2 | 3 | 11 | 12 | 20 | 21 | | | | | | | | | | |
| 3 | 4 | 12 | 13 | | | | | | | | | | | | |
| 4 | 5 | 13 | 14 | | | | | | | | | | | | |
| 5 | 6 | 14 | 15 | | | | | | | | | | | | |
| 6 | 7 | 15 | 16 | | | | | | | | | | | | |
| 7 | 8 | 16 | 17 | | | | | | | | | | | | |
| 8 | 9 | 17 | 18 | | | | | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 20 | |
| /THADDEUS B COX/ | 14 June 2023 | O.G. Print Claim(s) | O.G. Print Figure |
| Primary Examiner, Art Unit 3791 | | | |
| (Primary Examiner) | (Date) | 1 | 6 |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/119,859 | Huang et al. |
| | **Examiner** | **Art Unit** |
| | THADDEUS B COX | 3791 |

| CPC - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| A61H19$ | 05/10/2023 | TC |
| A61H21$ | 05/10/2023 | TC |
| Updated | 06/14/2023 | TC |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Inventor search in DAV | 05/10/2023 | TC |
| Global Dossier search | 05/10/2023 | TC |
| Similarity Search in PE2E | 05/10/2023 | TC |
| Attached PE2E search with text-limited class searching | 05/10/2023 | TC |

| /THADDEUS B COX/<br>Primary Examiner, Art Unit 3791 | |
|---|---|
| | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/119,859 | Huang et al. |
| | **Examiner** | **Art Unit** |
| | THADDEUS B COX | 3791 |

**Interference Search**

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| A61H19$ | | 06/14/2023 | TC |
| A61H21$ | | 06/14/2023 | TC |

| /THADDEUS B COX/<br>Primary Examiner, Art Unit 3791 | |
|---|---|

## PE2E SEARCH – Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|-------|------|--------------|-----|------------------|---------|---------------------|------------|
| L1 | 46 | (Artificial Intelligence) Similar to: Unpublished Application # with 0 CPC Selections and 0 Text Selections<br><br>Text:<br>(TW-201436784-A OR RU-2015142507-A OR DE-102013102280-A1 OR AU-2014224947-B2 OR KR-20150129763-A OR EP-2964179-B1 OR US-11419783-B2 OR KR-102245754-B1 OR JP-2016508802-A OR US-20160008214-A1 OR ES-2682676-T3 OR CA-2901794-A1 OR AU-2014224947-A1 OR WO-2014135301-A1 OR EP-2964179-A1 OR CA-2901794-C OR CN-105120822-A OR RU-2649524-C2 OR US-10492983-B1 OR US-20190350800-A1 OR US-20210186798-A1 OR DE-7520052-U OR US-20190231637-A1 OR US-10195105-B2 OR WO-2017011300-A1 OR EP-3319550-A1 OR TW-201707669-A OR US-RE49249-E OR US-20230095513-A1 OR US-20200315909-A1 OR RU-2750656-C1 OR AU-2018278239-A1 OR CN-111148495-A OR WO-2018220120-A1 OR WO-2014127531-A1 OR JP-2010125335-A OR US-8409120-B2 OR US-20100152631-A1 OR WO-2015067836-A1 OR DE-102009051639-A1 OR DE-202009016535-U1 OR US-20220313542-A1 OR CA-2797665-C OR EP-2191805-A1 OR WO-2014043878-A1 | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/05/09 11:55 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | OR CN-104812354-A OR US-20230083660-A1 OR US-20230012669-A1 OR DE-202021105756-U1 OR EP-2191805-B1).did. | | | | | |
| L2 | 3359 | A61H19/32.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 11:56 AM |
| L3 | 3317 | 2 AND @ad<"20230308" | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 11:57 AM |
| L4 | 0 | 3 AND pogo | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:07 PM |
| L5 | 7 | 3 AND (pin WITH (spring$load$ OR | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, | OR | ON | ON | 2023/05/09 12:07 PM |

| | | (spring near2 load$))) | AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | |
|---|---|---|---|---|---|---|---|
| L6 | 1 | 3 AND (pin SAME plunger SAME barrel SAME spring) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:08 PM |
| L7 | 14842 | A61H19$.cpc. OR A61H21$.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:08 PM |
| L8 | 14493 | 7 AND @ad<"20230308" | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, | OR | ON | ON | 2023/05/09 12:08 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | |
| L9 | 10 | 8 AND pogo | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:08 PM |
| L10 | 27 | 8 AND (pin WITH (spring$load$ OR (spring near2 load$))) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:09 PM |
| L11 | 80 | 3 AND ((power$ OR batter$) SAME hous$ SAME (board OR "circuit board" OR PCB)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:15 PM |
| L12 | 8 | 3 AND ((power$ OR batter$) SAME hous$ SAME (board OR "circuit board" OR | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, | OR | ON | ON | 2023/05/09 12:19 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | PCB)) AND vibrat$ AND ((sleev$ OR sheath$) WITH penis) AND ((sleev$ OR sheath$) WITH (detach$ OR removab$)) | CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | |
| L13 | 2 | "20180140502".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:22 PM |
| L14 | 12 | 8 AND ((power$ OR batter$) SAME hous$ SAME (board OR "circuit board" OR PCB)) AND vibrat$ AND ((sleev$ OR sheath$) WITH penis) AND ((sleev$ OR sheath$) WITH (detach$ OR removab$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:46 PM |
| L15 | 57 | 8 AND ((power$ OR batter$) SAME hous$ SAME (board OR "circuit board" OR PCB)) AND vibrat$ AND ((sleev$ OR sheath$) WITH (detach$ OR removab$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, | OR | ON | ON | 2023/05/09 12:47 PM |

| | | | WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | |
|---|---|---|---|---|---|---|---|
| L16 | 13 | 8 AND ((power$ OR batter$) SAME hous$ SAME (board OR "circuit board" OR PCB)) AND vibrat$ AND ((insert$ OR accommodat$ OR receiv$) WITH penis) AND ((sleev$ OR sheath$) WITH (detach$ OR removab$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:49 PM |
| L17 | 27 | 8 AND (power$ OR batter$) AND (board OR "circuit board" OR PCB) AND vibrat$ AND ((insert$ OR accommodat$ OR receiv$) WITH penis) AND ((sleev$ OR sheath$) WITH (detach$ OR removab$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:50 PM |
| L18 | 59 | 3 AND vibrat$ AND ((sleev$ OR sheath$) WITH penis) AND ((sleev$ OR sheath$) WITH (detach$ OR removab$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:56 PM |
| L19 | 424 | 3 AND ((sleev$ OR sheath$) WITH penis) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, | OR | ON | ON | 2023/05/09 01:41 PM |

| | | | HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB | | | | |
|---|---|---|---|---|---|---|---|
| L20 | 41 | 3 AND ((sleev$ OR sheath$) WITH penis) AND ((sleev$ OR sheath$) WITH narrow$) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | ON | 2023/05/09 01:41 PM |
| L21 | 8 | 3 AND ((sleev$ OR sheath$) WITH penis) AND ((sleev$ OR sheath$) WITH (wide OR width)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | ON | 2023/05/09 01:42 PM |
| L22 | 44 | 3 AND (handle WITH (button OR key)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; | OR | ON | ON | 2023/05/09 01:45 PM |

| | | | IBM_TDB) | | | | |
|---|---|---|---|---|---|---|---|
| L23 | 121 | 3 AND handles | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | OFF | ON | 2023/05/09 01:46 PM |
| L24 | 14 | 3 AND handles AND ((handle OR handles) WITH (button$ OR key$ OR interface$ OR touch$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | OFF | ON | 2023/05/09 01:54 PM |
| L25 | 124 | 8 AND handles AND ((handle OR handles) WITH (button$ OR key$ OR interface$ OR touch$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | OFF | ON | 2023/05/09 01:54 PM |
| L26 | 2 | "20180140502".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, | OR | ON | ON | 2023/05/10 02:26 PM |

| | | | MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB | | | | |
|---|---|---|---|---|---|---|---|
| L27 | 978 | 8 AND (vibrat$ WITH (remov$ OR detach$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | ON | 2023/05/10 02:34 PM |
| L28 | 206 | 8 AND (vibrat$ WITH (sleev$ OR sheath$)) AND ((sleev$ OR sheath$) WITH (remov$ OR detach$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | ON | 2023/05/10 02:39 PM |
| L29 | 389 | 8 AND (vibrat$ SAME (sleev$ OR sheath$)) AND ((sleev$ OR sheath$) SAME (remov$ OR detach$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | ON | 2023/06/14 12:38 PM |
| L30 | 86 | 29 AND ((power$ OR | (US-PGPUB; USPAT; | OR | ON | ON | 2023/06/14 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | batter$) SAME hous$ SAME (board OR "circuit board" OR PCB)) | USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO);  FPRS;  EPO; JPO;  DERWENT; IBM_TDB) | | | | 12:38 PM |
| L31 | 2 | "20150196454".pn. | (US-PGPUB;  USPAT; USOCR;  FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO);  FPRS;  EPO; JPO;  DERWENT; IBM_TDB) | OR | ON | ON | 2023/06/14 01:18 PM |

## PE2E SEARCH - Search History (Interference)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| N1 | 2360 | A61H19$.cpc. OR A61H21$.cpc. | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/06/14 12:37 PM |
| N2 | 1 | 1 AND pogo | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/06/14 12:37 PM |
| N3 | 9 | 1 AND (pin WITH (spring$load$ OR (spring near2 load$))) | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/06/14 12:37 PM |
| N4 | 227 | 1 AND ((power$ OR batter$) SAME hous$ SAME (board OR "circuit board" OR PCB)) | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/06/14 12:37 PM |
| N5 | 37 | 1 AND vibrat$ AND ((sleev$ OR sheath$) WITH penis) AND ((sleev$ OR sheath$) WITH (detach$ OR removab$)) | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/06/14 12:37 PM |
| N6 | 88 | 1 AND (vibrat$ WITH | (US-PGPUB;  USPAT) | OR | ON | ON | 2023/06/14 |

| | | (sleev$ OR sheath$)) AND ((sleev$ OR sheath$) WITH (remov$ OR detach$)) | | | | | 12:37 PM |
|---|---|---|---|---|---|---|---|

# Bibliographic Data

Application No:        18/119,859

Foreign Priority claimed:        ● Yes        ○ No

35 USC 119 (a-d) conditions met:        ☑ Yes        ☐ No        ☐ Met After Allowance

Verified and Acknowledged:        /THADDEUS B COX/

           Examiner's Signature        Initials

Title:        PENIS MASSAGER

| FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 03/10/2023 **RULE** | 600 | 3791 | 22A1385US |

**APPLICANTS**

  Junpeng Wu, Shenzhen, CHINA

**INVENTORS**

  Tenghui Huang, Dongguan, CHINA

  Junpeng Wu, Shenzhen, CHINA

  Zhixu Yang, Dongguan, CHINA

**CONTINUING DATA**

**FOREIGN APPLICATIONS**

  CHINA CN202320430037.2 03/08/2023

**IF REQUIRED, FOREIGN LICENSE GRANTED\*\***

  03/27/2023

**\*\* SMALL ENTITY \*\***

**STATE OR COUNTRY**

  CHINA

**ADDRESS**

  Kevin P. Chen

  255 Riverdale Dr

  Fort Lee, NJ 07024

  UNITED STATES

**FILING FEE RECEIVED**

  $2,400

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 48091428 |
| **Application Number:** | 18119859 |
| **International Application Number:** | |
| **Confirmation Number:** | 2067 |
| **Title of Invention:** | PENIS MASSAGER |
| **First Named Inventor/Applicant Name:** | Tenghui  Huang |
| **Customer Number:** | 176174 |
| **Filer:** | Kevin P. Chen |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 22A1385US |
| **Receipt Date:** | 02-JUN-2023 |
| **Filing Date:** | 10-MAR-2023 |
| **Time Stamp:** | 06:34:12 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Amendment/Request for Reconsideration-After Non-Final Rejection | 22A1385US_ResponsetoNon-finalOA.pdf | 176173 <br> 663be0375c6bdfcf5636c22aacbd76d70e2014c4 | no | 8 |

**Warnings:**

| Information: | | |
| --- | --- | --- |
| | **Total Files Size (in bytes):** | 176173 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Application No. | : | 18/119,859 |
| Application Filing Date | : | Mar. 10, 2023 |
| First Named Inventor | : | Tenghui Huang |
| Attorney Docket No. | : | 22A1385US |
| Confirmation No. | : | 2067 |
| Examiner | : | COX, THASSEUS B |
| Art Unit | : | 3791 |

Mail Stop

Commissioner for Patents

P.O. Box 1450

Alexandria, Virginia 22313-1450

## AMENDMENT AND RESPONSE

Dear Sir / Madam,

Responsive to the Office Action dated May 15, 2023, applicants submit the following amendments and remarks.    In light of these amendments and remarks, Applicants respectfully assert that all of the claims of patent application are patentable.    Favorable reconsideration of the application and withdrawal of the rejections are respectfully requested.

**Amendments to the Claims** begin on page 2 of this paper**.**

**Remarks** begins on page 6 of this paper.

**Conclusion** begins on page 8 of this paper.

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions and listings of claims in the application.

**Listing of Claims:**

1. (Currently Amended) A penis massager, comprising:

a housing provided with an accommodating space, a power source and a circuit board electrically connected to the power source being received in the accommodating space;

a sleeve being removably mounted in the accommodating space, one end of the sleeve being concaved to form an interior volume for accommodating [[the]] <u>a</u> penis; and

a vibrating apparatus being provided in the sleeve, the vibrating apparatus being electrically connected to the circuit board for generating a mechanical vibration<u>;</u>

<u>wherein the sleeve is provided with a fixed frame, at least one conductive element is provided on the fixed frame, the vibrating apparatus is electrically connected to the at least one conductive element through a first wire; at least one conductive member is provided in the accommodating space and electrically connected to the circuit board, and the at least one conductive element is connected to the at least one conductive member electrically.</u>

2. (Canceled)

3. (Currently Amended) The penis massager according to claim [[2]] <u>1</u>, wherein <u>the at least one conductive element comprises a plurality of conductive elements, the vibrating apparatus is electrically connected to at least one of the plurality of conductive elements through the first wire,</u> a heating plate is provided in the sleeve and electrically connected to [[some]] <u>at least one</u> of the <u>plurality of</u> conductive ~~columns~~ <u>elements</u> through a second wire.

4. (Original) The penis massager according to claim 3, wherein the heating plate is fixed on an inner wall surface of the fixed frame.

5. (Currently Amended) The penis massager of claim 3, wherein a plurality of insulating layers are covered on outer surfaces of ~~the other~~ ends of the <u>plurality of</u> conductive ~~columns~~ <u>elements</u>, an outer surface of the first wire, an outer surface of the second wire, a connection between the first wire and each of the <u>plurality of</u> conductive ~~columns~~ <u>elements</u> and a connection between the second wire and each of the <u>plurality of</u> conductive ~~columns~~ <u>elements</u>, respectively.

6. (Currently Amended) The penis massager according to claim 3, wherein the at least one conductive member comprises a plurality of conductive members, the plurality of conductive members and the plurality of conductive columns elements are electrically connected by contact.

7. (Original) The penis massager according to claim 6, wherein the electrical connection by contact is implemented by elastic conductive members.

8. (Original) The penis massager according to claim 7, wherein the elastic conductive members are conductive pogo pins.

9. (Currently Amended) The penis massager according to claim 8, wherein the number of the plurality of conductive columns elements and the number of the conductive pogo pins are both four, a mounting area is formed on [[the]] a bottom of an outer wall surface of the fixed frame, the four conductive columns elements are fixed in the mounting area, the vibrating apparatus is electrically connected to two of the four conductive columns elements by the first wire, and the heating plate is electrically connected to the other two of the four conductive columns elements by the second wire.

10. (Currently Amended) The penis massager according to claim 9, wherein four stepped holes are formed in the mounting area, a flange protrudes radially and outwards from an outer circumferential surface of each of the plurality of conductive elements column and abuts against a step surface of a corresponding stepped hole; the fixed frame is provided with a bottom cover, the bottom cover is fixed in the mounting area for fixing the plurality of conductive columns elements in the mounting area, four through holes are formed in the bottom cover, and one end of each of the plurality of conductive columns elements extends through one of the four through holes to abut against one of the plurality of conductive pogo pins.

11. (Currently Amended) The penis massager according to claim [[2]] 1, wherein the fixed frame is a hollow structure.

12. (Currently Amended) The penis massager according to claim [[2]] 1, wherein a movable cabin is movably arranged in the accommodating space, the movable cabin is capable of sliding back and forth in [[the]] an axial direction of the accommodating space, a longitudinal cross section of the movable cabin is U-shaped, the sleeve is removably arranged on the movable cabin, and the at least one conductive member is members are fixed on [[the]] a bottom of the movable cabin and extend into the movable cabin.

13. (Currently Amended) The penis massager according to claim 12, wherein the fixed frame is provided with a plurality of clamping blocks which extend out of an outer side wall of the sleeve; and each of the plurality of clamping blocks cooperates with the movable cabin to construct a clamping structure which has a locking state and an unlocking state, when the clamping structures are in the locking state, the sleeve is clamped and fixed in the movable cabin by the plurality of clamping blocks, and when the clamping structures are in the unlocking state, the sleeve is capable of being taken out of the movable cabin.

14. (Currently Amended) The penis massager according to claim 13, wherein the plurality of clamping blocks are symmetrically arranged on two sides of the fixed frame, and when the clamping structures on the two sides are both in the unlocking state, the sleeve is capable of being taken out of the movable cabin.

15. (Currently Amended) The penis massager according to claim 14, wherein a plurality of linkage assemblies are symmetrically arranged on left and right two sides of the movable cabin, and each of the plurality of linkage assemblies and one of the plurality of clamping block on the blocks on a corresponding side cooperatively construct the clamping structure; each of the plurality of linkage assemblies comprise a toggling member, an elastic member and a bent lever, the toggling members are movably arranged on the movable cabin, the bent levers are rotatably arranged on the movable cabin, the elastic members are abutted between the toggling members and the movable cabin, and the plurality of clamping blocks are tightly clamped by the toggling members and the bent levers under the action of the elastic members; and when a force is applied to the toggling members in an unlocking direction, the toggling members are capable of driving the bent levers to rotate, so that the clamping structures are in the unlocking state.

16. (Currently Amended) The penis massager according to claim 15, wherein a plurality of mounting slots are symmetrically arranged on outer side walls on the two sides of the movable cabin, the elastic members and the bent levers are both accommodated in the plurality of mounting slots, and parts of the toggling members are accommodated in the plurality of mounting slots; the plurality of mounting slots are provided with gaps through which the plurality of clamping blocks extend into the plurality of mounting slots; when the plurality of linkage assemblies are in the locking state, the plurality of clamping blocks are clamped into the plurality of mounting slots by the toggling members, the bent levers and portions of [[the]] slot walls of the plurality of mounting slots at in the gaps; and when the

clamping structures are in the unlocking state, the toggling members are spaced from the plurality of clamping blocks.

17. (Currently Amended) The penis massager according to claim 16, wherein each of the plurality of toggling ~~member~~ members comprises an operating portion, a clamping portion and toggling portion, one end of the operating portion extends out of a top of one of the plurality of mounting [[slot]] slots to form an operating end to be toggled by hands, the clamping portion is slidably connected to the movable cabin, one end of [[each]] the clamping portion abuts against one of the plurality of clamping [[block]] blocks, ~~the other~~ another end of the clamping portion abuts against one of the elastic ~~member~~ members, and splay locating slots are defined by the toggling portions; and the plurality of mounting slots are internally provided with mounting ~~columns~~ elements, each of the bent [[lever]] levers comprises a ~~connected~~ first link lever and a second link lever which are connected to each other, a bent part [[parts]] where the first link lever is ~~levers are~~ connected to the second link lever ~~levers are~~ is rotatably mounted on one of the mounting ~~columns~~ elements, one end of [[each]] the first link lever extends into one of the locating [[slot]] slots, and one end of [[each]] the second link lever abuts against one of the plurality of clamping [[block]] blocks.

18. (Currently Amended) The penis massager according to claim 1, wherein the interior volume comprises a first section, a second section and a third section in sequence, widths of the first section and third section both are greater than [[the]] a width of the second section, and the second section is ~~used for encircling~~ configured to encircle at least one part of [[the]] a middle of the penis.

19. (Original) The penis massager according to claim 1, wherein two handles to be held by human hands are symmetrically arranged on two sides of the housing, respectively.

20. (Original) The penis massager according to claim 19, wherein the handles are provided with keys for adjusting a vibration amplitude of the vibrating apparatus.

21. (New) The penis massager according to claim 1, wherein the at least one conductive element is conductive column, and extends out of the sleeve to contact the at least one conductive member.

## REMARKS

Claims 1 and 3-21 are now present in this application. Claim 2 has been cancelled without prejudice or disclaimer. Claims 1, 3, 5-6 and 9-18 have been amended. New claim 21 has beed added. No new matter is involved. As such, the Examiner is respectfully requested to enter the same. Reconsideration and allowance are respectfully requested.

### *Claim Objections*

Claims 5, 6, 9, 10, 13-17 are objected to because of the informalities.

### *Claim Rejections*

Claims 1-20 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AlA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor (or for applications subject to pre-AIA 35 U.S.C. 112, the applicant), regards as the invention.

Claims 1 and 18 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by Levy(US 2015/0196454 A1).

Claim 19 is rejected under 35 U.S.C. 103 as being unpatentable over Levy in view of Yates(US 2021/0113424 A1).

Claim 20 is rejected under 35 U.S.C. 103 as being unpatentable over Levy in view of Yates(US 2021/0113424 A1) and further in view of Koerner (DE 202017005314 U1).

### *Allowable Subject Matter*

Applicant notes with appreciation the indication that claims 2-17 would be allowable if rewritten to overcome the rejection(s) under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AlA), 2nd paragraph, set forth in this Office action and to include all of the limitations of the base claim and any intervening claims.

In response, firstly, claims 1, 3, 5-6, 9-10 and 12-18 have been amended to overcome the Objections and Rejection(s) under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA).

Further, claim 1 has been amended to recite a penis massager comprising:

"…wherein the sleeve is provided with a fixed frame, at least one conductive element is provided on the fixed frame, the vibrating apparatus is electrically connected to the at least one conductive element through a first wire; at least one conductive member is provided in the accommodating space and electrically connected to the circuit board, and the at least one conductive element is connected to the at least one conductive member electrically".

None of the prior arts of record teaches or reasonably suggests a penis massager with such features, and thus amended claim 1 should be allowable.

Accordingly to amended claim 1, claim 2 is cancaled, claims 3 and 11-12 are amended to depent on amended claim 1, and new claim 21 is added.   The dependent claims 3-21 are also allowable at least by virtue of their dependencies from claim 1 directly or indirectly.

## CONCLUSION

For at least the foregoing reasons, it is believed that all the pending claims of the present application are in proper condition for allowance. An action to such effect is earnestly requested.


/Kevin P. Chen/

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>18/119,859 | Filing Date<br>03/10/2023 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE  ☑ SMALL  ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | x $40 = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | x $192 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 06/02/2023 | | | | | | |
| | Total<br>(37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | x $40 = | 0 |
| | Independent<br>(37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $192 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /MARCUS D MONROE/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 18/119,859 | 03/10/2023 | 3791 | 664 | 22A1385US | 20 | 1 |

**CONFIRMATION NO. 2067**

176174
Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

**UPDATED FILING RECEIPT**

OC000000005708791e

Date Mailed: 05/17/2023

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**
    Tenghui Huang, Dongguan, CHINA;
    Junpeng Wu, Shenzhen, CHINA;
    Zhixu Yang, Dongguan, CHINA;

**Applicant(s)**
    Junpeng Wu, Shenzhen, CHINA;

**Power of Attorney:** The patent practitioners associated with Customer Number 176174

**Domestic Applications for which benefit is claimed - None.**
*A proper domestic benefit claim must be provided in an Application Data Sheet in order to constitute a claim for domestic benefit. See 37 CFR 1.76 and 1.78.*

**Foreign Applications** (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)
CHINA 202320430037.2 03/08/2023 Access Code Provided

**Permission to Access Application via Priority Document Exchange: Yes**

**Permission to Access Search Results: Yes**

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

Request to Retrieve - This application either claims priority to one or more applications filed in an intellectual property Office that participates in the Priority Document Exchange (PDX) program or contains a proper **Request to Retrieve Electronic Priority Application(s)** (PTO/SB/38 or its equivalent). Consequently, the USPTO will attempt to electronically retrieve these priority documents.

**If Required, Foreign Filing License Granted:** 03/27/2023
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 18/119,859**
**Projected Publication Date:** 09/12/2024
**Non-Publication Request:** No
**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

      PENIS MASSAGER

**Preliminary Class**

      600

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative,

this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop

technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.



**Digital Access Service
(DAS)**

**WIPO**
WORLD
INTELLECTUAL PROPERTY
ORGANIZATION

---

## CERTIFICATE OF AVAILABILITY OF A CERTIFIED UTILITY MODEL DOCUMENT IN A DIGITAL LIBRARY

The International Bureau certifies that a copy of the utility model application indicated below has been available to the WIPO Digital Access Service since the date of availability indicated, and that the utility model application has been available to the indicated Office(s) as of the date specified following the relevant Office code:

Document details:   Country/Office:   CN

Filing date:   08 Mar 2023 (08.03.2023)

Application number:   2023204300372

Date of availability of document:   10 Mar 2023 (10.03.2023)

The following Offices can retrieve this document by using the access code:
AR, AT, AU, BE, CA, CL, CN, CO, DK, EE, ES, FI, GE, IB, IE, JP, KR, MX, NL, PL

Date of issue of this certificate:   16 May 2023 (16.05.2023)

34, chemin des Colombettes
1211 Geneva 20, Switzerland
www.wipo.int

# 国家知识产权局

NATIONAL INTELLECTUAL PROPERTY ADMINISTRATION, PRC



# 证　　明

本证明之附件是向本局提交的下列专利申请文件副本。

申　　请　　号：　202320430037.2

申　请　类　型：　实用新型专利

发明 创造 名称：　电动取精器

申　　请　　日：　2023年03月08日

申　　请　　人：　东莞市佳尔电子科技有限公司

发明人或设计人：　黄腾辉、吴军鹏、杨志旭

局长

申长雨

**2023 年 03 月 11 日**

说　　明　　书

---

**电动取精器**

技术领域

5　　　　本申请属于医疗器械技术领域，更具体地说，是涉及一种电动取精器。

背景技术

　　　　在临床医学中，精液分析是判断和评估男性生育能力最基本和最主要的检验方法。要进行精液分析，首先要取得男性的精液，取精器是一种精液引射和

10　收集的器具。取精器一般是将软胶内胆和振动器件内置于外壳中，振动器件通过连接件带动软胶内胆振动，或者将振动器件与软胶内胆直接连接。当使用完取精器，需要对软胶内胆进行清洗时，每次都需要将振动器件从软胶内胆上拆下，较为麻烦，且振动器件的震颤范围较小，形成的刺激不够强，因此取精器的取精效果较差。

15

实用新型内容

　　　　本申请实施例的目的在于提供一种方便清洗软胶内胆且取精效果较好的电动取精器。

　　　　为实现上述目的，本申请采用的技术方案是：提供一种电动取精器，包括：

20　壳体，具有容纳腔，所述容纳腔内设有电源和与所述电源电连接的电路板；

　　　　软胶体，可分离地设置于所述容纳腔内，所述软胶体的一端向内凹陷形成有用于容纳阴茎的通道；

　　　　其中，所述软胶体设有用于产生机械振动的振动装置，所述振动装置与所述电路板电连接。

25　　　　在一个实施例中，所述软胶体设有固定架，所述固定架上设有多个导电柱，

1

所述振动装置通过第一导线与其中一部分所述导电柱电连接，所述容纳腔内设置有多个导电件，所述导电件与所述电路板电连接，所述导电柱的一端伸出所述软胶体与所述导电件电连接。

在一个实施例中，所述软胶体内设有加热片，所述加热片通过第二导线与其余的所述导电柱电连接。

在一个实施例中，所述导电柱另一端的外表面、所述第一导线的外表面、所述第二导线的外表面、所述第一导线与所述导电柱的连接处以及所述第二导线与所述导电柱的连接处分别覆盖有绝缘胶层。

在一个实施例中，所述导电件与所述导电柱接触通电。

在一个实施例中，所述接触通电通过导电弹针实现。

在一个实施例中，所述容纳腔内活动设置有活动仓，所述活动仓能沿所述容纳腔的轴向来回滑动，所述活动仓的纵截面呈 U 形，所述软胶体可分离地设置于所述活动仓上，所述导电件固定于所述活动仓的底部且伸入所述活动仓内。

在一个实施例中，所述固定架的左右两侧分别设置有卡块，所述卡块延伸出所述软胶体的外侧壁；所述活动仓与所述卡块之间形成卡接结构，所述卡接结构能在锁止状态和解锁状态之间切换，所述卡接结构处于所述锁止状态时，所述软胶体通过所述卡块卡固于所述活动仓，两侧的所述卡接结构均处于所述解锁状态时，所述软胶体能从所述活动仓中取出。

在一个实施例中，所述通道包括依次连接的第一段、第二段及第三段，所述第一段和所述第三段的宽度均大于所述第二段的宽度，所述第二段用于包覆阴茎中部的至少一部分。

在一个实施例中，所述壳体左右两侧对称地设置有供人手握持的悬臂。

本申请提供的电动取精器的有益效果在于：与现有技术相比，本申请电动取精器，通过将振动装置内置于软胶体中，使得振动装置和软胶体成为一体，需要对软胶体清洗时，无需将振动装置拆下，使用后清洗更加方便；由于软胶体内置有振动装置，相较于振动装置外置式的结构，其震颤范围更大更明显，

形成的刺激更强，提升了取精效果。

附图说明

　　　　为了更清楚地说明本申请实施例中的技术方案，下面将对实施例或现有技术描述中所需要使用的附图作简单地介绍，显而易见地，下面描述中的附图仅仅是本申请的一些实施例，对于本领域普通技术人员来讲，在不付出创造性劳动性的前提下，还可以根据这些附图获得其他的附图。

　　　　图 1 为本申请一实施例提供的电动取精器的立体图；

　　　　图 2 为图 1 所示电动取精器的俯视图；

　　　　图 3 为图 1 所示电动取精器的部分爆炸示意图一；

　　　　图 4 为图 1 所示电动取精器的部分爆炸示意图二；

　　　　图 5 为图 4 所示电动取精器中软胶体的立体图；

　　　　图 6 为图 5 所示软胶体的爆炸图；

　　　　图 7 为图 5 所示软胶体的剖视图；

　　　　图 8 为图 5 所示软胶体另一角度的立体图；

　　　　图 9 为图 4 所示电动取精器中活动仓的立体图；

　　　　图 10 为图 9 所示活动仓的爆炸图；

　　　　图 11 为图 9 所示活动仓的侧视图；

　　　　图 12 为软胶体与活动仓的装配示意图；

　　　　图 13 为将软胶体从活动仓取出时的操作示意图。

　　　　其中，图中各附图标记：

　　　　10-壳体；20-软胶体；30-振动装置；40-固定架；50-加热片；60-活动仓；110-容纳腔；111-第一腔室；112-第二腔室；113-隔板；120-电源；130-电路板；140-面壳；141-底壳；142-端盖；143-取放口；144-滑杆；145-避让槽；150-面盖；160-悬臂；161-按键；170-控制面板；201-入口；210-通道；211-第一段；212-第二段；213-第三段；220-口部固定件；31-马达；32-马达壳；33-马达壳盖；

3

410-导电柱；411-凸缘；420-安装区；421-阶梯孔；430-底盖；432-螺丝；433-密封垫；440-通孔；441-定位凸起；450-卡块；451-大径端；452-小径端；510-定位缺口；61-导电件；610-导电弹针；62-联动组件；620-拨动件；630-弹性件；631-第一压缩弹簧；640-曲杆；641-第一连杆；642-第二连杆；650-安装槽；651-缺口；6511-第一倾斜面；6512-第二倾斜面；6513-卡持面；652-安装柱；653-限位块；654-第二压缩弹簧；621-操作部；622-卡持部；6220-凸块；6221-凸轴；623-拨动部；6230-定位槽；660-侧盖；661-第一滑槽；670-第二滑槽；底盖-680。

## 具体实施方式

为了使本申请所要解决的技术问题、技术方案及有益效果更加清楚明白，以下结合附图及实施例，对本申请进行进一步详细说明。应当理解，此处所描述的具体实施例仅仅用以解释本申请，并不用于限定本申请。

需要说明的是，当元件被称为"固定于"或"设置于"另一个元件，它可以直接在另一个元件上或者间接在该另一个元件上。当一个元件被称为是"连接于"另一个元件，它可以是直接连接到另一个元件或间接连接至该另一个元件上。

需要理解的是，术语"长度"、"宽度"、"上"、"下"、"前"、"后"、"左"、"右"、"竖直"、"水平"、"顶"、"底"、"内"、"外"等指示的方位或位置关系为基于附图所示的方位或位置关系，仅是为了便于描述本申请和简化描述，而不是指示或暗示所指的装置或元件必须具有特定的方位、以特定的方位构造和操作，因此不能理解为对本申请的限制。

此外，术语"第一"、"第二"仅用于描述目的，而不能理解为指示或暗示相对重要性或者隐含指明所指示的技术特征的数量。由此，限定有"第一"、"第二"的特征可以明示或者隐含地包括一个或者更多个该特征。在本申请的描述中，"多个"的含义是两个或两个以上，除非另有明确具体的限定。

请一并参阅图 1 至图 4，现对本申请实施例提供的电动取精器进行说明。

该电动取精器包括壳体 10 和软胶体 20。壳体 10 具有容纳腔 110，容纳腔 110 内设有电源 120 和电路板 130。电路板 130 与电源 120 电连接。软胶体 20 可分离地设置在容纳腔 110 内。软胶体 20 的一端向内凹陷形成用于容纳阴茎的通道 210，软胶体 20 在前端形成与通道 210 连通的入口 201，该入口 201 供阴茎插入，软胶体 20 的后端封闭。软胶体 20 于通道 210 的内壁面上设置多个凸起，以用于对阴茎按摩。

壳体 10 包括相连接的面壳 140 和底壳 141，以及端盖 142。面壳 140 和底壳 141 围成前端开口的外壳，端盖 142 盖合于该外壳的开口处，打开端盖 142 后，软胶体 20 前端的入口 201 外露于外壳。面壳 140 顶部设有供软胶体 20 取放的取放口 143，该取放口 143 处可拆卸地连接有面盖 150。面盖 150 与面壳 140 扣接，面壳 140 的顶面设有便于将面盖 150 从面壳 140 扣出的避让槽 145。软胶体 20 靠近前端的位置安装有口部固定件 220，将面壳 140 从面盖 150 扣下取出后，握住口部固定件 220 向下旋转，可将软胶体 20 从壳体 10 中拉出。

进一步参阅图 5 至图 7，软胶体 20 内设有振动装置 30。振动装置 30 具体可设置在软胶体 20 靠近后端的侧壁中，也可以设置在软胶体 20 的其它位置，如设置在软胶体 20 的顶部。振动装置 30 具体可采用马达 31。振动装置 30 与电路板 130 电连接，振动装置 30 用于产生机械振动，带动软胶体 20 一起颤动。本实施例中，将马达 31 嵌置于软胶体 20 的侧壁内，制作时将马达 31 与软胶体 20 一体注塑，形成一体，这样电动取精器使用后，无需将马达 31 从软胶体 20 上拆下即可进行清洗，清洗方便。同时采用振动装置 30 内置于软胶体 20 侧壁内的一体式结构，使得软胶体 20 具有更大的震颤范围，软胶体 20 的振动效果更为明显，进而提升取精效果。

参阅图 3、图 4，壳体 10 内设有隔板 113，该隔板 113 将容纳腔 110 分隔为第一腔室 111 和第二腔室 112。软胶体 20 位于第一腔室 111 中，电源 120 和电路板 130 位于第二腔室 112 中。壳体 10 的面壳 140 上设有与电路板 130 连接的控制面板 170，通过按压控制面板 170 上的功能按键可启动和关闭电动取精

器相应的功能。电源 120 可采用一个或多个可充电电池。

　　本申请提供的电动取精器，与现有技术相比，通过将振动装置 30 内置于软胶体 20 中，使得振动装置 30 和软胶体 20 成为一体，需要对软胶体 20 清洗时，无需将振动装置 30 拆下，使用后清洗更加方便；由于软胶体 20 内置有振动装置 30，相较于振动装置 30 外置式的结构，其震颤范围更大更明显，形成的刺激更强，提升了取精效果。

　　在一对比例中，软胶体于通道的后端处设置得更为狭窄，可在软胶体的后端进行拉伸，这种结构使使用者无法体会到均衡包裹的感觉，且过度刺激阴茎的头部，无法达到按摩锻炼的效果。参阅图 7，本实施例中，软胶体 20 内的通道 210 包括依次连接的第一段 211、第二段 212 及第三段 213，第一段 211 和第三段 213 的宽度设置为均大于第二段 212 的宽度。第二段 212 用于包覆阴茎中部的至少一部分。也就是说，软胶体 20 内的通道 210 位于中间段的区域更狭窄，这样能仿照真实使用时的中段握紧推拉的效果，软胶体 20 可以全部包裹整段阴茎而进行摩擦，更容易达到按摩锻炼及取精效果。

　　参阅图 1、图 2 及图 7，优选地，壳体 10 左右两侧对称地设置有供人手握持的悬臂 160。悬臂 160 基本呈圆柱形，其前端具有圆顶，后端与壳体 10 的连接处呈圆滑过渡。悬臂 160 的后端朝壳体 10 的轴线方向倾斜，悬臂 160 的轴线方向与壳体 10 的轴线方向呈角度设置，两者的夹角范围可设置在 30 度至 45 度。在壳体 10 两侧设置悬臂 160，使用者可通过悬臂 160 调节电动取精器的摆放角度，以使电动取精器调整至合适的摆放姿态，从而为使用者带来方便。

　　悬臂 160 设有用于调节振动装置 30 振动幅度的按键 161。其中的一个悬臂 160 的顶面设置有至少两个按键 161，按压对应的按键 161，可调节增加或减小振动装置 30 的振动幅度。

　　在本实施例中，参阅图 3 及图 5 至图 7，软胶体 20 内设有固定架 40，即固定架 40 与软胶体 20 一体注塑。固定架 40 具体可设于软胶体 20 的侧壁内。固定架 40 上设有多个导电柱 410。振动装置 30 包括马达 31。马达 31 外套设有外

壳，外壳包括相连接的马达壳 32 和马达壳盖 33。振动装置 30 通过第一导线与导电柱 410 电连接。壳体 10 的容纳腔 110 内设有多个导电件 61，导电件 61 可以但不限于采用导电弹针、导电弹簧或磁吸件。该导电件 61 与电路板 130 电连接。导电柱 410 的一端伸出软胶体 20 与导电件 61 抵接，进而实现振动装置 30

5　与电路板 130 之间的电路导通。

在一对比例中，软胶体的外侧壁设有加热元件，加热元件通过安装架固定，这样加热元件贴附于软胶体的外侧壁，该种加热元件外置于软胶体的结构存在加热升温慢且温度不均衡的问题。参阅图 6、图 7，本实施例中，软胶体 20 内设有加热片 50，即软胶体 20 与加热片 50 一体设置，加热片 50 具体可内嵌于

10　软胶体 20 的侧壁中。加热片 50 至少包覆软胶体 20 中间区域的侧壁的一部分。将加热片 50 内置于软胶体 20 中，使得加热片 50 能包裹于软胶体 20 的侧壁内部，这样加热片 50 能对软胶体 20 快速传热。当电动取精器使用加热功能时，软胶体 20 能在一定范围内保持恒定的温度，使用者按摩锻炼及取精时其体验感更为真实，效果更佳。加热片 50 通过第二导线与其余的导电柱 410 电连接，而

15　导电柱 410 的一端与导电件 61 电连接，这样便实现加热片 50 与电路板 130 之间的电路导通。本实施例中，马达 31 与电路板 130 之间、加热片 50 与电路板 130 之间均采用导电件 61 和导电柱 410 无线联接，减少了电线联接，方便使用。并且软胶体 20 没有电线外露连接，软胶体 20 使用后其取出清洗更加方便，不受电线的限制。

20　优选地，加热片 50 的纵截面设置为 C 形。加热片 50 的宽度可根据软胶体 20 整体的长度进行设置。加热片 50 的设置位置对应软胶体 20 的通道 210 中的第二段 212 所在区域。

具体地，加热片 50 固定于固定架 40 的内壁面。固定架 40 的纵截面也呈 C 形，固定架 40 的外形尺寸稍大于加热片 50 的外形尺寸。加热片 50 与固定架

25　40 之间可采用卡接结构固定，也可以采用连接件或其它方式固定在一起。固定架 40 的内壁面设有定位凸起 441，加热片 50 对应定位凸起 441 的位置设有定

7

位缺口 510，通过定位凸起 441 与定位缺口 510 的配合将加热片 50 初步安装于固定架 40 上，再通过连接件将加热片 50 固定在固定件上。将加热片 50 和固定架 40 固定在一起后，再将固定架 40 和软胶体 20 一体注塑成型。

参阅图 4、图 6、图 8，优选地，导电件 61 与导电柱 410 之间为接触通电。两者接触通电的方式可通过弹性导电件实现，导电件 61 和导电柱 410 其中至少一者采用弹性导电件或设有弹性导电件。具体地，弹性导电件可采用导电弹针。本实施例中，导电件 61 采用导电弹针 610。由于导电弹针 610 内置有弹簧，导电弹针 610 与导电柱 410 之间为弹性抵接，这样在软胶体 20 活动时，不会松开断电。

优选地，固定架 40 具有镂空结构，这样固定架 40 与软胶体 20 注塑后能更稳定地结合在一起。固定架 40 开设有多个条形的通孔 440，各通孔 440 形成固定架 40 的镂空结构，既能保证固定架 40 的结构强度，又能使固定架 40 与软胶体 20 注塑后稳定地结合在一起。

请参阅图 3、图 4、图 9，容纳腔 110 内活动设置有活动仓 60。活动仓 60 能沿容纳腔 110 的轴向来回滑动。活动仓 60 的纵截面呈 U 形，其前端、后端及顶端分别开口。软胶体 20 可分离地设置于活动仓 60 上，活动仓 60 的长度小于软胶体 20 的长度。导电件 61 固定于活动仓 60 上。具体地，壳体 10 内的第一腔室 111 内在靠近底部的左右两侧分别设有滑杆 144，滑杆 144 沿壳体 10 的轴线方向布设，滑杆 144 滑动穿过活动仓 60，这样，活动仓 60 与滑杆 144 滑动配合，活动仓 60 能沿滑杆 144 来回滑动，即活动仓 60 能在第一腔室 111 内来回滑动一定的距离。振动装置 30 启动后，软胶体 20 和活动仓 60 一起在第一腔室 111 内沿壳体 10 的轴线方向来回移动。导电件 61 采用导电弹针 610，活动仓 60 底部开设有供导电弹针 610 安装的孔，导电弹针 610 穿过该孔伸入活动仓 60 内。活动仓 60 的外底面设有底盖 680，采用螺丝穿过底盖 680，使底盖 680 固定于活动仓 60，进而将导电弹针 610 锁紧固定于活动仓 60。

具体地，在本实施例中，参阅图 9 及图 10，导电柱 410 和导电弹针 610 均

设置四个。固定架 40 外壁面的底部设有安装区 420，安装区 420 的底面为平面，四个导电柱 410 固定于安装区 420 的底面。马达 31 通过第一导线与其中两个导电柱 410 电连接，加热片 50 通过第二导线与另外两个导电柱 410 电连接。

参阅图 6、图 7 及图 9，安装区 420 开设有四个阶梯孔 421。导电柱 410 的外周面设有径向向外凸设的凸缘 411，凸缘 411 抵靠于阶梯孔 421 的阶梯面上。固定架 40 设置有底盖 430，底盖 430 通过螺丝 432 固定于安装区 420，这样将导电柱 410 锁固于安装区 420，底盖 430 开设有四个通孔，导电柱 410 的一端穿过通孔与导电弹针 610 抵接。优选地，底盖 430 与安装区 420 之间设有环形的密封圈，密封圈被压紧于底盖 430 与安装区 420 之间，这样能提高安装区 420 的防水效果。

优选地，导电柱 410 的另一端的外表面、第一导线的外表面、第二导线的外表面设有绝缘胶层，第一导线与导电柱 410 的电连接处以及第二导线与导电柱 410 的电连接处均设有绝缘胶层。具体操作时，将第一导线与导电柱 410 焊接、第二导线与导电柱 410 焊接后，采用绝缘胶水覆盖第一导线、第二导线及导电柱 410 的另一端的表面，以及各导线在导电柱 410 的焊点接口，再将底盖 430 盖在安装区 420，采用螺丝 432 将底盖 430 锁固在安装区 420，这样将各导电柱 410 压紧，使得各组件与软胶体 20 形成一整体，而内置于软胶体 20 内的马达 31、加热片 50 与导电柱 410 形成导电通路。底盖 430 上还设有具有弹性的密封垫 433，采用螺丝 432 将底盖 430 锁紧后，再将该密封垫 433 塞入螺丝 432 对应的孔，这样密封垫 433 遮住螺丝 432，并将该孔密封，防止清洗软胶体 20 时清洗液从该孔进入。

参阅图 4 至图 6，优选地，固定架 40 的左右两侧分别设置有卡块 450，卡块 450 延伸出软胶体 20 的外侧壁。活动仓 60 与卡块 450 之间形成卡接结构，卡接结构能在锁止状态和解锁状态之间切换。卡接结构处于锁止状态时，软胶体 20 通过卡块 450 卡固于活动仓 60。两侧的卡接结构均处于解锁状态时，软胶体 20 能从活动仓 60 中取出。

参阅图 3、图 5、图 9 及图 10，活动仓 60 的左右两侧对称地设置有设有联动组件 62。联动组件 62 和对应侧的卡块 450 之间形成卡接结构。联动组件 62 包括拨动件 620、弹性件 630 和曲杆 640。拨动件 620 可活动地设置于活动仓 60 上，拨动件 620 可相对活动仓 60 滑动或转动。曲杆 640 可转动地设置于活动仓 60 上。弹性件 630 抵持于拨动件 620 与活动仓 60 之间，通过弹性件 630 提供的弹力使拨动件 620 和曲杆 640 将卡块 450 卡固。沿解锁方向拨动拨动件 620 时，拨动件 620 能带动曲杆 640 转动，使卡接结构处于解锁状态，软胶体 20 处于能从壳体 10 中取出的状态。

参阅图 10 至图 12，具体地，活动仓 60 左右两侧的外侧壁对称地设置有安装槽 650，弹性件 630 和曲杆 640 均收容于安装槽 650 内，拨动件 620 的一部分收容于安装槽 650 内。安装槽 650 开设有供卡块 450 穿过的缺口 651，卡块 450 通过该缺口 651 伸入安装槽 650 内。活动仓 60 在两侧的缺口 651 处附近分别形成卡位，联动组件 62 处于锁止状态时，卡块 450 被拨动件 620、曲杆 640 及安装槽 650 于缺口 651 处的槽壁卡持于安装槽 650 中。沿解锁方向拨动活动仓 60 左右两侧的拨动件 620 后，拨动件 620 离开卡块 450，此时拨动件 620 与卡块 450 之间具有间隔，这样卡接结构处于解锁状。

拨动件 620 包括相连接的操作部 621、卡持部 622 和拨动部 623。操作部 621 的一端从安装槽 650 的顶部伸出形成供手拨动的操作端。卡持部 622 的左右两侧分别设有凸块 6220 和凸轴 6221，活动仓 60 对应安装槽 650 的位置设有可拆卸的侧盖 660，侧盖 660 对应凸轴 6221 的位置开设有第一滑槽 661，凸轴 6221 与第一滑槽 661 滑动连接，活动仓 60 对应凸块 6220 的位置开设有第二滑槽 670，凸块 6220 与第二滑槽 670 滑动连接，这样便实现卡持部 622 与活动仓 60 之间的滑动连接。也就是说，拨动件 620 与活动仓 60 之间为滑动连接，向后拨动操作部 621 的操作端时，可使拨动件 620 整体向后滑动一段距离。

弹性件 630 采用第一压缩弹簧 631。卡持部 622 的一端与卡块 450 相抵。卡持部 622 的另一端设有固定柱，第一压缩弹簧 631 的一端套接于固定柱，这

样卡持部 622 与第一压缩弹簧 631 相抵。第一压缩弹簧 631 的另一端与安装槽 650 的侧壁相抵。拨动部 623 围成八字形的定位槽 6230，即定位槽 6230 左右两侧及底侧分别开口，拨动部 623 的内侧壁围成八字形的槽体。定位槽 6230 的转角处设置为圆滑过渡。安装槽 650 内设置有安装柱 652。曲杆 640 包括相连接的第一连杆 641 和第二连杆 642。第一连杆 641 与第二连杆 642 相连接的弯折处可转动地安装于安装柱 652，即曲杆 640 通过安装柱 652 可转动地设置于安装槽 650 内，曲杆 640 能以安装柱 652 为支点进行旋转。第一连杆 641 远离安装柱 652 的一端伸入定位槽 6230 中，第二连杆 642 远离安装柱 652 的一端与卡块 450 相抵。

参阅图 3、图 8 及图 10 至图 12，具体地，卡块 450 具有相连接的大径端 451 和小径端 452，大径端 451 的宽度大于小径端 452 的宽度。大径端 451 的纵截面的轮廓类似于椭圆形，其底端和顶端均为弧面。小径端 452 的一端与固定架 40 连接。软胶体 20 安装于壳体 10 内时，小径端 452 抵紧于活动仓 60 的缺口 651 处的壁面上。第一压缩弹簧 631 的弹力使得拨动件 620 的卡持部 622 与大径端 451 顶部的一侧相抵，卡持部 622 靠近大径端 451 的侧面为适配的弧面，这样卡持部 622 与大径端 451 顶部的一侧相贴合。第二连杆 642 与大径端 451 底部的一侧相抵，第二连杆 642 靠近大径端 451 的侧面为适配的弧面，第二连杆 642 与大径端 451 底部的一侧相贴合。如图 8、图 11 及图 12 所示，卡接结构处于锁止状态，卡持部 622 和第二连杆 642 均与卡块 450 的大径端 451 相抵，活动仓 60 的缺口 651 处的壁面与卡块 450 的小径端 452 相抵，卡块 450 的左上侧、右下侧及右侧三个方向同时受力，这样在卡位处形成三角形的受力结构，卡块 450 能被稳定地卡紧，进而使得软胶体 20 压入活动仓 60 后稳定地扣接在一起。

参阅图 10 至图 12，优选地，活动仓 60 左右两侧的缺口 651 均采用 U 形缺口。活动仓 60 在 U 形缺口的前端具有缺角，即 U 形缺口前端壁面的顶部的水平位置低于后端壁面的顶部的水平位置。U 形缺口前端壁面设置有第一倾斜面

6511，这样便于软胶体 20 下压装入活动仓 60 的操作。软胶体 20 安装时，卡块 450 的小径端 452 沿着该第一倾斜面 6511 滑入 U 形缺口，即第一倾斜面 6511 形成便于卡块 450 滑入 U 形缺口内的导引面。U 形缺口底部设置有第二倾斜面 6512，第二倾斜面 6512 的前端向上倾斜设置，第一倾斜面 6511 与第二倾斜面 6512 之间连接有卡持面 6513，卡持面 6513 竖向布设。这样软胶体 20 压入安装于活动仓 60 时，卡块 450 卡入 U 形缺口的底部，卡块 450 的小径端 452 的底部抵靠在第二倾斜面 6512 上，小径端 452 的一侧与卡持面 6513 抵接。U 形缺口处的各壁面均可采用弧形面，这样便于卡块 450 的滑入滑出，也能避免刮伤卡块 450。

参阅图 6 及图 10 至图 12，安装软胶体 20 时，软胶体 20 底部安装区 420 的导电柱 410 对准导电弹针 610，左右两侧的卡块 450 对准活动仓 60 两侧的 U 形缺口，将软胶体 20 向下压入活动仓 60，活动仓 60 左右两侧的拨动件 620 向后移动，第一压缩弹簧 631 被压缩，软胶体 20 卡入到位后，拨动件 620 由于第一压缩弹簧 631 的弹力而自动回位，回位的同时拨动件 620 带动曲杆 640 转动，第二连杆 642 向上弹起，进而在 U 形缺口处形成一个三角形的扣位，卡块 450 被卡紧，卡接结构形成锁止状态，从而将软胶体 20 卡固于活动仓 60。

在一对比例中，软胶体底部内置有磁铁，壳体对应位置也设置磁铁，这样形成磁吸结构，将软胶体从壳体中取出时，软胶体拉长后容易损坏。参阅图 11 至图 13，本实施例中，当需要将软胶体 20 从活动仓 60 中取出时，向后端方向拨动活动仓 60 左右两侧的拨动件 620，第一压缩弹簧 631 被压缩，拨动件 620 的卡持部 622 离开卡块 450，拨动件 620 通过底部八字形的定位槽 6230 带动曲轴绕安装柱 652 逆时针旋转，第二连杆 642 向上顶持卡块 450，使得卡块 450 从活动仓 60 的缺口 651 处脱出，此时软胶体 20 连同固定架 40 一起向上弹起，活动仓 60 底部的四个导电弹针 610 在自身弹簧的压力下弹起，再握住口部固定件 220 向下旋转，松开口部固定件 220 的扣位即可将软胶体 20 拉出。软胶体 20 的拆装操作较为方便,将软胶体 20 按下时能与活动仓 60 稳定地卡接在一起，

通过向后推动两侧的拨动件 620 能将软胶体 20 从活动仓 60 弹起，能有效防止软胶体 20 因用力拉扯而损坏的问题发生。

参阅图 11 至图 13，安装槽 650 底部的槽壁上间隔设置有两个限位块 653，两个限位块 653 之间设置有第二压缩弹簧 654。第二连杆 642 背离与卡块 450 抵接的面上设有连接柱，第二压缩弹簧 654 的一端套接于该连接柱，第二压缩弹簧 654 的另一端抵接于安装槽 650 底部的槽壁上。第二压缩弹簧 654 的弹力小于第二压缩弹簧 654 的弹力，这样曲杆 640 不会因第二压缩弹簧 654 的抵持而自行转动，即不会因第二压缩弹簧 654 使卡接结构由锁止状态切换为解锁状态。卡接结构处于锁止状态时，第二连杆 642 与两个限位块 653 的顶端相抵，第二压缩弹簧 654 被压紧收容于两个限位块 653 之间。卡接结构处于解锁状态时，第二连杆 642 离开两个限位块 653，第二压缩弹簧 654 伸长并提供将第二连杆 642 向上顶持的力，这样使得软胶体 20 压入安装于活动仓 60 前，使用更小的力即可将拨动件 620 向后拨动，使得拨动操作更为轻松。

以上所述仅为本申请的较佳实施例而已，并不用以限制本申请，凡在本申请的精神和原则之内所作的任何修改、等同替换和改进等，均应包含在本申请的保护范围之内。

说 明 书 附 图



图 1



图 2



图 3



图 4



图 5



图 6



图 7



图 8





图 9



图 10



图 11



图 12



图 13

# 权　利　要　求　书

1. 一种电动取精器，其特征在于：包括：

壳体，具有容纳腔，所述容纳腔内设有电源和与所述电源电连接的电路板；

软胶体，可分离地设置于所述容纳腔内，所述软胶体的一端向内凹陷形成有用于容纳阴茎的通道；

其中，所述软胶体设有用于产生机械振动的振动装置，所述振动装置与所述电路板电连接。

2. 如权利要求 1 所述的电动取精器，其特征在于：所述软胶体设有固定架，所述固定架上设有多个导电柱，所述振动装置通过第一导线与其中一部分所述导电柱电连接，所述容纳腔内设置有多个导电件，所述导电件与所述电路板电连接，所述导电柱的一端伸出所述软胶体与所述导电件接触通电。

3. 如权利要求 2 所述的电动取精器，其特征在于：所述软胶体内设有加热片，所述加热片通过第二导线与其余的所述导电柱电连接。

4. 如权利要求 3 所述的电动取精器，其特征在于：所述导电柱另一端的外表面、所述第一导线的外表面、所述第二导线的外表面、所述第一导线与所述导电柱的连接处以及所述第二导线与所述导电柱的连接处分别覆盖有绝缘胶层。

5. 如权利要求 2 所述的电动取精器，其特征在于：所述接触通电通过弹性导电件实现。

6. 如权利要求 5 所述的取精器，其特征在于：所述弹性导电件为导电弹针。

7. 如权利要求 2 所述的电动取精器，其特征在于：所述容纳腔内活动设置有活动仓，所述活动仓能沿所述容纳腔的轴向来回滑动，所述活动仓的纵截面呈 U 形，所述软胶体可分离地设置于所述活动仓上，所述导电件固定于所述活动仓的底部且伸入所述活动仓内。

8. 如权利要求 7 所述的电动取精器，其特征在于：所述固定架的左右两侧

分别设置有卡块，所述卡块延伸出所述软胶体的外侧壁；所述活动仓与所述卡块之间形成卡接结构，所述卡接结构能在锁止状态和解锁状态之间切换，所述卡接结构处于所述锁止状态时，所述软胶体通过所述卡块卡固于所述活动仓，两侧的所述卡接结构均处于所述解锁状态时，所述软胶体能从所述活动仓中取出。

9．如权利要求 1 所述的电动取精器，其特征在于：所述通道包括依次连接的第一段、第二段及第三段，所述第一段和所述第三段的宽度均大于所述第二段的宽度，所述第二段用于包覆阴茎中部的至少一部分。

10．如权利要求 1 所述的电动取精器，其特征在于：所述壳体左右两侧对称地设置有供人手握持的悬臂。

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/119,859 | 03/10/2023 | Tenghui Huang | 22A1385US | 2067 |

176174        7590        05/15/2023

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

| EXAMINER |
|---|
| COX, THADDEUS B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3791 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 05/15/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

kckclaw@yahoo.com
kevchen888@yahoo.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. 18/119,859 | Applicant(s) Huang et al. |
|---|---|---|
| | Examiner THADDEUS B COX | Art Unit 3791 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____.
 ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL.**   2b) ☑ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1-20</u> is/are pending in the application.
 5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>1-20</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☑ The drawing(s) filed on <u>10 March 2023</u> is/are: a) ☑ accepted or b) ☐ objected to by the Examiner.
 Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
 Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☑ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
 **Certified copies:**
 a) ☐ All   b) ☐ Some**   c) ☑ None of the:
 1. ☑ Certified copies of the priority documents have been received.
 2. ☐ Certified copies of the priority documents have been received in Application No. _____.
 3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)
2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

Application/Control Number: 18/119,859                                      Page 2
Art Unit: 3791

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Priority*

2.      Acknowledgment is made of applicant's claim for foreign priority based on an application filed in China on 08 March 2023.  It is noted, however, that applicant has not filed a certified copy of the CN202320430037.2 application as required by 37 CFR 1.55.

### *Claim Objections*

3.      Claims 5, 6, 9, 10, 13-17 are objected to because of the following informalities:

a.      In claim 5, line 2: "the conductive columns" should apparently read --the plurality of conductive columns--.

b.      In claim 6, line 1: "the conductive members" should apparently read --the plurality of conductive members--.

c.      In claim 6, lines 1-2: "the conductive columns" should apparently read --the plurality of conductive columns--.

d.      In claim 9, line 1: "the conductive columns" should apparently read --the plurality of conductive columns--.

e.      In claim 10, line 5: "the conductive columns" should apparently read --the plurality of conductive columns--.

Application/Control Number: 18/119,859                                        Page 3
Art Unit: 3791

  f.  In claim 13, line 5: "the clamping blocks" should apparently read --the

plurality of clamping blocks--.

  g.  In claim 14, line 1: "the clamping blocks" should apparently read --the

plurality of clamping blocks--.

  h.  In claim 15, line 4: "the linkage assemblies comprise" should apparently

read --the plurality of linkage assemblies comprises--.

  i.  In claim 15, line 7: "the clamping blocks" should apparently read --the

plurality of clamping blocks--.

  j.  In claim 16, line 3, line 4 (two instances), line 5, and line 7: "the mounting

slots" should apparently read --the plurality of mounting slots--.

  k.  In claim 16, line 5, line 6, and line 9: "the clamping blocks" should

apparently read --the plurality of clamping blocks--.

  l.  In claim 16, lines 5-6: "the linkage assemblies" should apparently read --

the plurality of linkage assemblies--.

  m.  In claim 17, line 6: "the mounting slots" should apparently read --the

plurality of mounting slots--.

  n.  In claim 17, line 7: "comprises connected" should apparently read --

comprises a connected--.

  o.

Appropriate correction is required.


### *Claim Rejections - 35 USC § 112*

4.  The following is a quotation of 35 U.S.C. 112(b):

Application/Control Number: 18/119,859                                    Page 4
Art Unit: 3791

    (b)  CONCLUSION.—The specification shall conclude with one or more claims particularly
pointing out and distinctly claiming the subject matter which the inventor or a joint inventor
regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:

The specification shall conclude with one or more claims particularly pointing out and distinctly
claiming the subject matter which the applicant regards as his invention.

5.     Claims 1-20 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA),

second paragraph, as being indefinite for failing to particularly point out and distinctly

claim the subject matter which the inventor or a joint inventor (or for applications subject

to pre-AIA 35 U.S.C. 112, the applicant), regards as the invention.

     Claim 1 recites the limitation "the penis" in line 5.  There is insufficient antecedent

basis for this limitation in the claim.

     Claim 2 recites the limitation "the conductive member" in line 6.  It is unclear

which of the plurality of conductive members this is intended to refer to.

     Claim 5 recites the limitation "the other ends" in line 2.  There is insufficient

antecedent basis for this limitation in the claim.

     Claim 10 recites the limitation "the conductive column" in line 3.  It is unclear

which of the plurality of conductive columns this is intended to refer to.

     Claim 12 recites the limitations "the axial direction" in lines 2-3 and "the bottom"

in line 5.  There is insufficient antecedent basis for these limitations in the claim.

     Claim 15 recites the limitation "the clamping block" in line 3.  It is unclear which of

the plurality of clamping blocks this is intended to refer to.

     Claim 15 also recites the limitations "the corresponding side" in line 3 and "the

action" in line 8.  There is insufficient antecedent basis for these limitations in the claim.

     Claim 16 recites the limitations "the two sides" in line 2 and "the slot walls" in line

7.  There is insufficient antecedent basis for these limitations in the claim.

Application/Control Number: 18/119,859                                    Page 5
Art Unit: 3791

Claim 17 recites the limitations "the toggling member" in line 1, "the mounting

slot" in line 3, "the clamping block" in line 5, "the elastic member" in lines 5-6, "the bent

lever" in line 7, "the locating slot" in line 10, and "the clamping block" in lines 10-11.  It is

unclear which of the plurality of toggling members, plurality of mounting slots, plurality of

clamping blocks, elastic members, bent levers, and locating slots these are intended to

refer to.

Claim 17 also recites the limitation "the other end" in line 5.  There is insufficient

antecedent basis for this limitation in the claim.

Claim 17 also recites the limitations "the first link levers" in line 8 and "the second

link levers" in lines 8-9.  There is insufficient antecedent basis for these limitations in the

claim, as only a first link lever (singular) and a second link lever (singular) have been

previously recited.

Claim 18 recites the limitation "the middle" in line 4.  There is insufficient

antecedent basis for this limitation in the claim.

Claims 2-20 are rejected by virtue of their dependence upon at least one rejected

base claim.


### Claim Rejections - 35 USC § 101

6.      35 U.S.C. 101 reads as follows:

Whoever invents or discovers any new and useful process, machine, manufacture, or
composition of matter, or any new and useful improvement thereof, may obtain a patent
therefor, subject to the conditions and requirements of this title.

Section 33(a) of the America Invents Act reads as follows:

Notwithstanding any other provision of law, no patent may issue on a claim directed to or
encompassing a human organism.

Application/Control Number: 18/119,859                                        Page 6
Art Unit: 3791

7.    Claim 18 is rejected under 35 U.S.C. 101 and section 33(a) of the America

Invents Act as being directed to or encompassing a human organism.  See also *Animals*

*- Patentability*, 1077 *Off. Gaz. Pat. Office* 24 (April 21, 1987) (indicating that human

organisms are excluded from the scope of patentable subject matter under 35 U.S.C.

101).  Claim 18 recites that the second section "is used for encircling at least one part of

the middle of the penis," which is a positive recitation of the human body.  Suggested

language would be --and the second section is configured to encircle at least part of a

middle of the penis--.


## *Claim Rejections - 35 USC § 102*

8.    In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis (i.e., changing from AIA to pre-AIA) for the rejection will

not be considered a new ground of rejection if the prior art relied upon, and the rationale

supporting the rejection, would be the same under either status.

9.    The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (a)(1) the claimed invention was patented, described in a printed publication, or in public use,
> on sale, or otherwise available to the public before the effective filing date of the claimed
> invention.

10.    Claims 1 and 18 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by

Levy (U.S. Pub. No. 2015/0196454 A1).

Regarding claim 1, Levy discloses a penis massager (Abstract; Figs. 1-12),

comprising: a housing **9** provided with an accommodating space, a power source **105**

Application/Control Number: 18/119,859                                          Page 7
Art Unit: 3791

and a circuit board **88** electrically connected to the power source being received in the

accommodating space ([0032]-[0034]); a sleeve **10** being removably mounted in the

accommodating space ([0039]), one end of the sleeve being concaved to form an

interior volume **12** for accommodating the penis ([0027]; [0034]); and a vibrating

apparatus **70/86** being provided in the sleeve, the vibrating apparatus being electrically

connected to the circuit board for generating a mechanical vibration ([0034]; [0039]).

Regarding claim 18, Levy discloses that the interior volume comprises a first

section, a second section and a third section in sequence, widths of the first and third

sections both are greater than the width of the second section, and the second section

is used for encircling at least one part of the middle of the penis (Fig. 9; [0027]; the

contact surface is textured such that a middle portion has a narrower width than

adjacent portions on either side).

### Claim Rejections - 35 USC § 103

11.     The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

12.     This application currently names joint inventors. In considering patentability of the

claims the examiner presumes that the subject matter of the various claims was

commonly owned as of the effective filing date of the claimed invention(s) absent any

evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to

Application/Control Number: 18/119,859                                    Page 8
Art Unit: 3791

point out the inventor and effective filing dates of each claim that was not commonly

owned as of the effective filing date of the later invention in order for the examiner to

consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2)

prior art against the later invention.

13.    The factual inquiries for establishing a background for determining obviousness

under 35 U.S.C. 103 are summarized as follows:

    1. Determining the scope and contents of the prior art.

    2. Ascertaining the differences between the prior art and the claims at issue.

    3. Resolving the level of ordinary skill in the pertinent art.

    4. Considering objective evidence present in the application indicating

obviousness or nonobviousness.

14.    Claim 19 is rejected under 35 U.S.C. 103 as being unpatentable over Levy as

applied to claim 1 above, and further in view of Yates (U.S. Pub. No. 2021/0113424 A1).

Levy discloses the invention as claimed, see rejection supra, but fails to disclose two

handles to be held by human hands that are symmetrically arranged on two sides of the

housing, respectively.  Yates discloses a similar device (Abstract) comprising two

handles **296** to be held by human hands that are symmetrically arranged on two sides

of the housing **115** in order to allow manual grasping and manipulation of the device

([0026]).  It would have been obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the invention of Levy with handles,

as taught by Yates, in order to allow manual grasping and manipulation of the device.

Application/Control Number: 18/119,859                                        Page 9
Art Unit: 3791

15.    Claim 20 is rejected under 35 U.S.C. 103 as being unpatentable over Levy and

Yates as applied to claim 19 above, and further in view of Koerner (DE 202017005314

U1).  The combination of Levy and Yates discloses the invention as claimed, see

rejection supra, but fails to disclose that the handles are provided with keys for adjusting

a vibration amplitude of the vibrating apparatus.  Koerner discloses a similar device

(Abstract; Fig. 1) comprising two handles that are provided with keys for adjusting a

vibration amplitude of the apparatus in order to allow greater technical functionality

([0031]-[0033]; [0061]; [0080]).  It would have been obvious to one of ordinary skill in the

art before the effective filing date of the claimed invention to modify the combination of

Levy and Yates with amplitude-adjusting keys on the handles, as taught by Koerner, in

order to allow greater technical functionality.


### *Allowable Subject Matter*

16.    Claims 2-17 would be allowable if rewritten to overcome the rejection(s) under 35

U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), 2nd paragraph, set forth in this Office action

and to include all of the limitations of the base claim and any intervening claims.

17.    The following is a statement of reasons for the indication of allowable subject

matter: none of the prior art of record teaches or reasonably suggests a removable

sleeve that is provided with a fixed frame, a plurality of conductive columns arranged on

the fixed frame, with some of the columns connected to the vibrating apparatus through

a wire, and a plurality of conductive members arranged in the accommodating space

and connected to the circuit board, such that one end of each column extends out of the

Application/Control Number: 18/119,859                                      Page 10
Art Unit: 3791

sleeve to electrically connect the conductive member, in combination with the previously

recited components of the penis massager.


### Conclusion

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to THADDEUS B COX whose telephone number is

(571)270-5132. The examiner can normally be reached M-F 9am-6pm.

Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Jason M. Sims can be reached on (571)272-7540. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be

obtained from Patent Center. Unpublished application information in Patent Center is

available to registered users. To file and manage patent submissions in Patent Center,

visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-

center for more information about Patent Center and

https://www.uspto.gov/patents/docx for information about filing in DOCX format. For

additional questions, contact the Electronic Business Center (EBC) at 866-217-9197

(toll-free). If you would like assistance from a USPTO Customer Service

Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Application/Control Number: 18/119,859                                      Page 11
Art Unit: 3791

/THADDEUS B COX/
Primary Examiner, Art Unit 3791

| | Application/Control No. 18/119,859 | Applicant(s)/Patent Under Reexamination Huang et al. | |
|---|---|---|---|
| *Notice of References Cited* | Examiner THADDEUS B COX | Art Unit 3791 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20150196454-A1 | 07-2015 | Levy; David | A61H19/32 | 600/38 |
| * | B | US-20210113424-A1 | 04-2021 | Yates; Andrew | A61F5/41 | 1/1 |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | DE-202017005314-U1 | 02-2018 | DE | Name not available | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/119,859 | Huang et al. |
| | Examiner | Art Unit |
| | THADDEUS B COX | 3791 |

| CPC - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| A61H19$ | 05/10/2023 | TC |
| A61H21$ | 05/10/2023 | TC |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| Search Notes | Date | Examiner |
| Inventor search in DAV | 05/10/2023 | TC |
| Global Dossier search | 05/10/2023 | TC |
| Similarity Search in PE2E | 05/10/2023 | TC |
| Attached PE2E search with text-limited class searching | 05/10/2023 | TC |

| Interference Search | | | |
|---|---|---|---|
| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
| | | | |

| /THADDEUS B COX/<br>Primary Examiner, Art Unit 3791 | |
|---|---|
| | |

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/119,859 | Huang et al. |
| | **Examiner** | **Art Unit** |
| | THADDEUS B COX | 3791 |

| ✓ | **Rejected** | | - | **Cancelled** | | N | **Non-Elected** | | A | **Appeal** |
|---|---|---|---|---|---|---|---|---|---|---|
| = | **Allowed** | | ÷ | **Restricted** | | I | **Interference** | | O | **Objected** |

| CLAIMS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | | ☐ CPA | | ☐ T.D. | | ☐ R.1.47 |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 05/10/2023 | | | | | | | | |
| | 1 | ✓ | | | | | | | | |
| | 2 | ✓ | | | | | | | | |
| | 3 | ✓ | | | | | | | | |
| | 4 | ✓ | | | | | | | | |
| | 5 | ✓ | | | | | | | | |
| | 6 | ✓ | | | | | | | | |
| | 7 | ✓ | | | | | | | | |
| | 8 | ✓ | | | | | | | | |
| | 9 | ✓ | | | | | | | | |
| | 10 | ✓ | | | | | | | | |
| | 11 | ✓ | | | | | | | | |
| | 12 | ✓ | | | | | | | | |
| | 13 | ✓ | | | | | | | | |
| | 14 | ✓ | | | | | | | | |
| | 15 | ✓ | | | | | | | | |
| | 16 | ✓ | | | | | | | | |
| | 17 | ✓ | | | | | | | | |
| | 18 | ✓ | | | | | | | | |
| | 19 | ✓ | | | | | | | | |
| | 20 | ✓ | | | | | | | | |

(19)

**Deutsches
Patent- und Markenamt**

(10) **DE 20 2017 005 314 U1** 2018.02.22

(12)

# Gebrauchsmusterschrift

(21) Aktenzeichen: **20 2017 005 314.4**
(22) Anmeldetag: **25.09.2017**
(47) Eintragungstag: **17.01.2018**
(45) Bekanntmachungstag im Patentblatt: **22.02.2018**

(51) Int Cl.: **A61H 19/00** (2006.01)
**A61H 21/00** (2006.01)
**A61H 23/02** (2006.01)
**H02J 7/00** (2006.01)
**A61B 5/02** (2006.01)

(73) Name und Wohnsitz des Inhabers:
**Körner, Carmen, 96117 Memmelsdorf, DE**

(74) Name und Wohnsitz des Vertreters:
**Richter, Thomas, Dipl.-Phys. Dr.rer.nat., 80999 München, DE**

Die folgenden Angaben sind den vom Anmelder eingereichten Unterlagen entnommen.

(54) Bezeichnung: **Vibrator als Sexspielzeug für Erwachsene**

(57) Hauptanspruch: Vibrator als Sexspielzeug für Erwachsene, wobei der Vibrator eine Spritzeinrichtung zur Simulation einer Ejakulation und eine Zeitsteuerungseinrichtung zur Steuerung des Zeitpunkts des Abspritzens der Spritzeinrichtung aufweist, und wobei die Zeitsteuerungseinrichtung so eingerichtet ist, dass eine Nutzerin bzw. ein Nutzer den Zeitpunkt des gesteuerten Abspritzens der Spritzeinrichtung mittels der Zeitsteuerungseinrichtung wählbar einstellen kann, dadurch gekennzeichnet, dass
– der Vibrator ein biegsamer Vibrator ist,
– der Vibrator so eingerichtet ist, dass sowohl eine Basis-Länge als auch eine Basis-Dicke des Vibrators jeweils dauerhaft und jeweils unabhängig voneinander in jeweils mindestens zwei verschiedenen Größen (L1, L2; B1, B2) einstellbar sind,
– der Vibrator so eingerichtet ist, dass er eine Stoßfunktion aufweist, die von der Nutzerin bzw. dem Nutzer des Vibrators wahlweise ein- bzw. ausgeschaltet werden kann, wobei die Stoßgeschwindigkeit und/oder die Stoßfrequenz in mindestens zwei Stufen, vorzugsweise in drei Stufen, wählbar einstellbar ist bzw. sind, und
– der Vibrator so eingerichtet ist, dass er wahlweise entweder mit wechselbarer Batterie bzw. mit wechselbarem Akkumulator oder mit Strom-Netzteil zum Anschluss an ein externes Stromnetz betreibbar ist.



## Beschreibung

[0001] Die Erfindung betrifft das technische Gebiet der Vibratoren als Sexspielzeuge für Erwachsene. Insbesondere betrifft die Erfindung einen Vibrator nach dem Oberbegriff des Anspruchs 1. Ein Vibrator gemäß dem Oberbegriff von Anspruch 1 ist aus der US 6,350,230 B1 bekannt.

[0002] Aus dem Stand der Technik sind seit langem vielfältige mehr oder weniger naturgetreue Nachbildungen eines männlichen Gliedes als Sexspielzeuge für Erwachsene bekannt. Derartige Vorrichtungen gibt es im Stand der Technik sowohl als passive Vorrichtungen ohne Vibratorfunktion als sogenannte „Dildos", als auch als Vorrichtungen mit integrierter, auf elektrischem bzw. elektromechanischem Wege realisierter Vibratorfunktion als sogenannte „Vibratoren".

[0003] Verschiedene technische Realisierungsmöglichkeiten der Vibratorfunktion als solcher für die vorstehend genannten Vibratoren sind dem Fachmann aus dem Stand der Technik geläufig und brauchen daher hier nicht weiter vertieft erörtert zu werden. Häufig wird bei derartigen Vibratoren die Vibration beispielsweise durch ein auf einem Antriebsschaft eines Elektromotors angeordnetes Gewicht mit starker Unwucht hervorgerufen. Eine andere bei Vibratoren vielfach verwendete Möglichkeit der Vibrationserzeugung besteht in der Verwendung einer Art Gleichstromrelais mit Selbstunterbrechung, ähnlich wie bei einer elektromechanischen Klingel, wobei ein Spulenanker oder eine Spule selbst mittels Gleichstroms in mechanische Schwingungen versetzt wird. Darüber hinaus sind dem Fachmann diverse weitere unterschiedliche Arten der Vibrationserzeugung im Zusammenhang mit Vibratoren als Sexspielzeuge für Erwachsene aus dem Stand der Technik geläufig.

[0004] Derartige Vibratoren gibt es im Stand der Technik als einfache Ausführungen in ganz unterschiedlichen Formen, Farbgestaltungen und Größen und ohne irgendwelche über die einfache Vibratorfunktion hinausgehende Zusatzfunktionen. Allerdings sind aus dem Stand der Technik auch Vibratoren bekannt, welche über die einfache Basis-Vibratorfunktion hinaus der Nutzerin oder dem Nutzer die eine oder andere Zusatzfunktion bieten.

[0005] Beispielsweise gibt es im Stand der Technik biegsame Vibratoren, bei denen die Vibrationsstärke und/oder die Vibrationsgeschwindigkeit in Stufen oder auch stufenlos verstellbar sind. Auch gibt es im Stand der Technik Vibratoren, die sich im Betrieb auf eine voreingestellte – aber von der Nutzerin oder dem Nutzer nicht frei wählbare – Temperatur erwärmen. Ferner sind aus dem Stand der Technik Vibratoren bekannt, bei denen die Nutzerin bzw. der Nutzer mittels einer entsprechenden Umschalteinrichtung zwischen Dauervibration und pulsierender Vibration –

ggf. mit unterschiedlichen Pulsationsrhythmen – wählen kann. Es gibt im Stand der Technik Vibratoren, bei denen die Elektroenergieversorgung mittels Batterien bzw. Akkumulatoren und/oder über ein Netzteil erfolgen kann. Darüber hinaus gibt es im Stand der Technik Vibratoren, die mittels einer kabelgebundenen oder einer kabellosen Fernbedienung steuerbar sind.

[0006] Ferner gibt es im Stand der Technik Vibratoren, welche zusätzlich zu ihrer Vibratorfunktion auch über eine sogenannte Stoßfunktion verfügen, mittels welcher zwar in teleskopartiger oder faltenbalgartiger Weise kurzzeitige stoßartige Längenvergrößerungen des Vibrators hervorgerufen werden können, die aber nicht erlaubt, die Ausgangslänge bzw. die Basislänge des Vibrators auf permanente Weise zu verstellen. Ein Dildo mit Stoßfunktion ist in DE 10 2009 038 448 A1 offenbart. Zwar gibt es im Stand der Technik auch aufblasbare Ausführungsformen von Dildos und Vibratoren, welche in – allerdings größenmäßig nur außerordentlich eingeschränkter Weise – eine permanente Längen- und Dickenänderung des Vibrators erlauben, jedoch fehlt bei diesen Vibratoren dann eine Stoßfunktion, und die Länge und die Dicke des entsprechenden Vibrators können nicht unabhängig voneinander eingestellt werden. Ein Beispiel für einen derartigen Dildo ist in der DE 201 19 660 U1 offenbart, und ein Beispiel für einen derartigen Vibrator ist in der WO 2009/087627 A2 offenbart.

[0007] Darüber hinaus gibt es im Stand der Technik Vibratoren mit Gleitgelspender und sogar auch solche Dildos und Vibratoren, die mit einer Flüssigkeitskammer und einer zugehörigen Pumpeinrichtung versehen sind und so eine Spritzfunktion als Simulation einer Ejakulation bereitstellen. Ein Vibrator mit eingebautem Gleitmittelspender ist in der EP 2 735 299 B1 offenbart. Ein Vibrator mit eingebauter Flüssigkeitskammer und einer zugehörigen Pumpeinrichtung zwecks Realisierung einer Spritzfunktion als Simulation einer Ejakulation ist aus der US 6,350,230 B1 bekannt. Der Vibrator gemäß der US 6,350,230 B1 ist ferner mit einer Zeitsteuerungseinrichtung versehen, über welche die Nutzerin oder der Nutzer den Startzeitpunkt der Ejakulation wahlweise fest einstellen oder die Auswahl des Ejakulations-Startzeitpunktes einem elektronischen Zufallsgenerator überlassen kann. Darüber hinaus weist der Vibrator gemäß der US 6,350,230 B1 eine elektrische Heizungseinrichtung samt Gel- oder Flüssigkeits-Wärmespeicher auf, welche von der Nutzerin oder dem Nutzer wahlweise zum Erwärmen des Vibrators eingeschaltet werden kann.

[0008] Ferner sind aus dem Stand der Technik auch Dildos und Vibratoren mit eingebauter oder aufgesetzter Mini-Kameraeinrichtung – teilweise inklusive LED-Beleuchtungseinrichtung – bekannt,

DE 20 2017 005 314 U1    2018.02.22

die sowohl für professionelle Filmaufnahmen als auch als reines Vergnügungsspielzeug verwendbar ist. Derartige Vorrichtungen sind beispielsweise in der DE 20 2011 104 946 U1 und in der DE 20 2010 013 764 U1 beschrieben.

[0009] Daneben gibt es im Stand der Technik Vibratoren, die mit einer besonderen Vakuum-Ansaugeinrichtung zur Klitoris-Stimulation versehen sind.

[0010] Aus der WO 2009/146840 A1 ist ferner ein Vibrator bekannt, welcher mindestens einen Sensor für Messwerte der Körperoberfläche aufweist. Die US 7,946,977 B2 offenbart einen Vibrator, bei dem der Nutzer bzw. die Nutzerin die Vibrationsgeschwindigkeit sowie den Rhythmus oder die Pulsation der Vibration regulieren kann und der darüber hinaus mit einer Einrichtung zum Abspielen von Musik und mit einer LED-Einrichtung zur Erzeugung von Lichteffekten versehen ist.

[0011] Wie vorstehend dargelegt, gibt es im Stand der Technik eine sehr große Vielfalt von Vibratoren mit jeweils der einen oder der anderen Zusatzfunktion. Wenn jedoch eine Liebhaberin oder ein Liebhaber von derartigem Sexspielzeug beim Spielen gerne diverse unterschiedliche Zusatzfunktionen ausprobieren oder verwenden möchte, so ist sie oder er derzeit gezwungen, mehrere verschiedene Vibratoren – jeweils versehen mit der einen oder der anderen Zusatzfunktion – zu erwerben. Das ist zum einen teuer und beeinträchtigt zum anderen das Vergnügen beim Sexspiel, wenn die Nutzerin oder der Nutzer ständig zwischen verschiedenen Vibratoren hin und her wechseln muß.

[0012] Der Erfindung liegt deshalb die Aufgabe zugrunde, einen Vibrator als Sexspielzeug für Erwachsene bereitzustellen, welcher den im vorangegangenen Absatz genannten Nachteil der aus dem Stand der Technik bekannten Vibratoren überwindet. Ferner liegt der Erfindung die Aufgabe zugrunde, ein Set bereitzustellen, welches den vorstehend genannten neuartigen Vibrator als Bestandteil enthält.

[0013] Erfindungsgemäß wird diese Aufgabe gelöst durch einen Vibrator nach Anspruch 1, durch einen Vibrator nach Anspruch 2, durch ein Set nach Anspruch 40, durch ein Set nach Anspruch 46 und durch ein Set nach Anspruch 50.

[0014] Der erfindungsgemäße Vibrator nach Anspruch 1 und auch der erfindungsgemäße Vibrator nach Anspruch 2 haben den Vorteil, dass sie jeweils die Nutzerin oder dem Nutzer einen multifunktionalen Vibrator an die Hand geben, was der Nutzerin oder dem Nutzer erspart, sich eine ganz Schublade voller unterschiedlicher Vibratoren anschaffen zu müssen. Der jeweilige erfindungsgemäße Vibrator spart also Kosten und Platz und ist schnell zur Hand. Die Nutze-

rin bzw. der Nutzer müssen nicht erst lange suchen, welchen Vibrator mit welcher Funktion bzw. Größe sie bzw. er gerade braucht. Ein einziger Vibrator – und fertig.

[0015] Vorteilhafte und bevorzugte Ausführungsformen des erfindungsgemäßen Vibrators nach Anspruch 1 sind Gegenstand der Ansprüche 3 und 5 bis 39. Vorteilhafte und bevorzugte Ausführungsformen des erfindungsgemäßen Vibrators nach Anspruch 2 sind Gegenstand der Ansprüche 4 bis 39. Vorteilhafte und bevorzugte Ausführungsformen des erfindungsgemäßen Sets nach Anspruch 40 sind Gegenstand der Ansprüche 41 bis 45, 47 bis 49 und 51 bis 61. Vorteilhafte und bevorzugte Ausführungsformen des erfindungsgemäßen Sets nach Anspruch 46 sind Gegenstand der Ansprüche 48, 49 und 51 bis 61. Vorteilhafte und bevorzugte Ausführungsformen des erfindungsgemäßen Sets nach Anspruch 50 sind Gegenstand der Ansprüche 52 bis 61.

[0016] Ausführungsbeispiele der Erfindung werden nachfolgend anhand von Figuren erläutert. Es zeigt:

[0017] Fig. 1a rein schematisch und nicht maßstabsgerecht ein Ausführungsbeispiel eines erfindungsgemäßen Vibrators bei eingestelltem erstem Wert einer Basis-Länge und eingestelltem erstem Wert einer Basis-Dicke,

[0018] Fig. 1b rein schematisch und nicht maßstabsgerecht das Ausführungsbeispiel des erfindungsgemäßen Vibrators bei eingestelltem zweitem Wert der Basis-Länge und eingestelltem erstem Wert der Basis-Dicke,

[0019] Fig. 2a rein schematisch und nicht maßstabsgerecht das Ausführungsbeispiel des erfindungsgemäßen Vibrators mit den Einstellungen der Basis-Länge und der Basis-Dicke wie in Fig. 1a,

[0020] Fig. 2b rein schematisch und nicht maßstabsgerecht das Ausführungsbeispiel des erfindungsgemäßen Vibrators bei eingestelltem erstem Wert der Basis-Länge und eingestelltem zweitem Wert der Basis-Dicke,

[0021] Fig. 3a rein schematisch und nicht maßstabsgerecht das Ausführungsbeispiel des erfindungsgemäßen Vibrators mit den Einstellungen der Basis-Länge und der Basis-Dicke wie in Fig. 1b,

[0022] Fig. 3b rein schematisch und nicht maßstabsgerecht das Ausführungsbeispiel des erfindungsgemäßen Vibrators bei eingestelltem zweitem Wert der Basis-Länge und eingestelltem zweitem Wert der Basis-Dicke,

[0023] Fig. 4a, b rein schematisch und nicht maßstabsgerecht eine Stoßfunktion des Ausführungsbei-

DE 20 2017 005 314 U1   2018.02.22

spiels des erfindungsgemäßen Vibrators ausgehend von den in **Fig. 1a** gezeigten Einstellungen der Basis-Länge und der Basis-Dicke und

[0024] **Fig. 5** rein schematisch und nicht maßstabsgerecht das Ausführungsbeispiel des erfindungsgemäßen Vibrators im Zustand gemäß **Fig. 4b** bei gleichzeitiger Betätigung einer Spritzeinrichtung.

[0025] In den Figuren ist rein schematisch und nicht maßstabsgerecht ein Ausführungsbeispiel eines erfindungsgemäßen Vibrators als Sexspielzeug für Erwachsene gezeigt, wobei die einzelnen Figuren den genannten Vibrator in verschiedenen Einstellungen und Aktivitätszuständen zeigen, wie im folgenden noch näher erläutert wird.

[0026] Das in den Figuren dargestellte Ausführungsbeispiel des erfindungsgemäßen Vibrators weist eine aus dem Stand der Technik an sich bekannte und daher in den Figuren nicht weiter im Detail dargestellte Spritzeinrichtung zur Simulation einer Ejakulation auf. Üblicherweise ist eine solche Spritzeinrichtung mit einem Flüssigkeitsbehälter versehen, welcher so ausgebildet ist, dass er beliebig oft mit beliebiger, für den menschlichen Körper unschädlicher Flüssigkeit, beispielsweise Wasser, durch die Nutzerin oder den Nutzer des Vibrators befüllbar, mithin also nachfüllbar, ist. Ferner kann eine Zeitsteuerungseinrichtung zur Steuerung des Zeitpunktes des Abspritzens der Spritzeinrichtung vorgesehen sein, wobei die Zeitsteuerungseinrichtung so eingerichtet ist, dass eine Nutzerin bzw. ein Nutzer den Zeitpunkt des gesteuerten Abspritzens der Spritzeinrichtung wählbar einstellen kann. Die genannte Spritzeinrichtung zur Simulation einer Ejakulation kann aber auch so eingerichtet sein, dass das Abspritzen der Spritzeinrichtung mittels äußeren Drucks auf den Vibrator eingeleitet werden kann. Auch eine Kombination von sowohl Zeitsteuerungseinrichtung als auch davon unabhängiger Auslösung des Abspritzens der Spritzeinrichtung mittels äußeren Drucks auf den Vibrator ist bei anderen Ausführungsbeispielen des erfindungsgemäßen Vibrators möglich.

[0027] Sofern wie vorstehend genannte Zeitsteuerungseinrichtung vorgesehen ist, ist es besonders vorteilhaft, diese neben der normalen Zeiteinstellungsvariante für die Auslösung des Abspritzens außerdem auch mit einem Zufallsgenerator zu versehen und die Zeitsteuerungseinrichtung so einzurichten, dass die Nutzerin oder der Nutzer auswählen kann, ob der Zeitpunkt des Abspritzens der Spritzeinrichtung mittels des Zufallsgenerators gesteuert, d. h. von dem Zufallsgenerator nach dem Zufallsprinzip festgelegt werden soll.

[0028] Sofern ein Ausführungsbeispiel des erfindungsgemäßen Vibrators mit einer Spritzeinrichtung zur Simulation einer Ejakulation versehen ist, die so

eingerichtet ist, dass das Abspritzen der Spritzeinrichtung mittels äußeren Drucks auf den Vibrator eingeleitet werden kann, und sofern dieses eben genannte Ausführungsbeispiel des erfindungsgemäßen Vibrators zur Verwendung zumindest auch für eine weibliche Nutzerin vorgesehen ist, ist es besonders vorteilhaft, wenn der Vibrator zur Verwendung für die weibliche Nutzerin so eingerichtet und abgestimmt ist, dass der genannte äußere Druck auf den Vibrator zur Einleitung des Abspritzens der Spritzeinrichtung von der Scheidenmuskulatur der Nutzerin, bevorzugterweise während eines Orgasmus' der Nutzerin, aufgebracht wird.

[0029] Dabei ist ganz generell anzumerken, dass der vorstehend bereits mehrfach erwähnte äußere Druck zur Einleitung des Abspritzens der Abspritzeinrichtung keineswegs unbedingt als solcher – wie aus dem Stand der Technik bekannt – mechanisch unmittelbar auf einen Flüssigkeitsbehälter der Spritzeinrichtung einwirken und so unmittelbar das Abspritzen bewirken muss. Vielmehr kann es sich bei Ausführungsbeispielen erfindungsgemäßer Vibratoren beispielsweise auch um solche Ausführungsbeispiele handeln, bei denen der genannte äußere Druck seinerseits nur ein solcher, unter Umständen sogar relativ schwacher äußerer Druck ist, welcher von einer dafür vorgesehenen Sensoreinrichtung erfasst wird, welche dann ihrerseits über eine Steuerungseinrichtung beispielsweise eine in den Vibrator eingebaute Pumpe zwecks Abspritzens der Flüssigkeit aus der Spritzeinrichtung in Betrieb setzt. Der Begriff „Druck" ist in diesem Zusammenhang im Rahmen der vorliegenden Erfindung in einem sehr weiten Sinne zu verstehen und braucht daher nicht nur unbedingt einen statischen oder kurzzeitigen Druck bedeuten, sondern er kann genauso gut auch verstanden werden als „zeitlich veränderlicher Druckverlauf über einen bestimmten Zeitabschnitt hinweg". All dies ist statisch und/oder dynamisch mit geeigneten Sensoreinrichtungen messtechnisch erfassbar und kann zur Steuerung des Abspritzens der Spritzeinrichtung verwendet werden. Zur weiteren Verfeinerung einer solchen Ansteuerung können Ausführungsbeispiele des erfindungsgemäßen Vibrators beispielsweise auch mit einer integrierten Pulsmessungseinrichtung und/oder mit einer integrierten Blutdruckmessungseinrichtung versehen sein, deren statische und/oder dynamische Messwertcharakteristiken ebenfalls zur Steuerung des Abspritzens der Spritzeinrichtung verwendet werden. Entsprechende geeignete Sensor- und Auswerteeinrichtungen sind als solche aus dem Stand der Medizintechnik bekannt.

[0030] In Form, Farbe und Haptik können vielfältige verschiedene Ausführungsbeispiele des erfindungsgemäßen Vibrators hergestellt werden. So kann ein Ausführungsbeispiel eines erfindungsgemäßen Vibrators beispielsweise in Form, Farbe und Haptik einem männlichen Glied realistisch nachgebildet sein.

Bei anderen Ausführungsbeispielen kann ein erfindungsgemäßer Vibrator beispielsweise in einer grellen, leuchtenden Farbe bzw. Neon-Farbe gehalten sein, oder sein Äußeres kann im Vintage- bzw. Scrapbooking-Stil gestaltet sein.

[0031] In jedem Falle muss ein erfindungsgemäßer Vibrator jedoch ein biegsamer Vibrator sein. Er muss ferner stets so eingerichtet sein, dass sowohl eine Basis-Länge als auch eine Basis-Dicke des Vibrators jeweils dauerhaft und jeweils unabhängig voneinander in jeweils mindestens zwei verschiedenen Größen L1, L2 bzw. B1, B2 einstellbar sind (vgl. **Fig.** 1 bis **Fig.** 3). Ein erfindungsgemäßer Vibrator muss darüber hinaus stets so eingerichtet sein, dass er eine Stoßfunktion aufweist, die von der Nutzerin bzw. dem Nutzer des Vibrators wahlweise ein- und ausgeschaltet werden kann, wobei die Stoßgeschwindigkeit und/oder die Stoßfrequenz in mindestens zwei Stufen, vorzugsweise in drei Stufen, wählbar einstellbar ist bzw. sind (vgl. **Fig.** 4). Außerdem muss ein erfindungsgemäßer Vibrator stets so eingerichtet sein, dass er wahlweise entweder mit wechselbarer Batterie bzw. mit wechselbarem Akkumulator oder mit Strom-Netzteil zum Anschluss an ein externes Stromnetz betreibbar ist. Als externes Stromnetz kommt insoweit beispielsweise das öffentliche Stromnetz oder beispielsweise auch das Bord-Stromnetz eines Kraftfahrzeugs oder eines Bootes bzw. Schiffes in Frage.

[0032] Das in den Figuren gezeigte Ausführungsbeispiel eines erfindungsgemäßen Vibrators besteht aus einem einem biegsamen Glied nachempfundenen Vibrier-Teil **1**, welches in seinem Inneren eine aus dem Stand der Technik an sich bekannte und in den Figuren nicht dargestellte Vibrationserzeugungseinrichtung aufweist, sowie aus einem an Fuß des Vibrier-Teils **1** angeordneten Griff- und Bedienteil **2** mit Einstelleinrichtungen **3** zur Einstellung verschiedener Funktionen und Verstellmöglichkeiten des Vibrators. Ferner weist das Griff- und Bedienteil **2** ein Mini-Display **4** zur Anzeige der Einstellungen und Funktionen auf. Bei dem in den Figuren dargestellten Ausführungsbeispiel des erfindungsgemäßen Vibrators ist das Griff- und Bedienteil **2** auswechselbar. Es enthält ein – in den Figuren nicht dargestelltes – Aufnahmefach für die Batterie bzw. den Akkumulator zur Stromversorgung des Vibrators sowie auch eine Anschlusseinrichtung zum Anschließen des Vibrators an ein externes Stromnetz wie beispielsweise an das öffentliche Stromnetz.

[0033] Es sei ausdrücklich darauf hingewiesen, dass die Form des Griff- und Bedienteils **2** in den Figuren nur als rein schematische und nicht maßstabsgerechte Darstellung zu verstehen ist. Das Griff- und Bedienteil **2** kann jede beliebige geeignete Form und Größe aufweisen, und auch die Anordnung der Einstelleinrichtungen **3** und/oder des Mini-Displays **4** sowie die Anzahl und Art der Einstelleinrichtungen **3** als

Bestandteile des Griff- und Bedienteils **2** sind letztlich beliebig wählbar. Beispielsweise kann das Griff- und Bedienteil **2** zylinderförmig mit einer Länge von 4 cm und einem Durchmesser von 3 cm ausgebildet sein und drei, vier oder mehr nebeneinander und/oder untereinander angeordnete Knöpfe als Einstelleinrichtungen **3** aufweisen. Das etwaig vorhandene Mini-Display **4** kann beispielsweise so ausgebildet sein, dass es eine 2-3-Ziffern-Anzeige und/oder eine Programmanzeige realisiert.

[0034] Das Griff- und Bedienteil **2** muß auch nicht unbedingt – so wie in den Figuren lediglich als eines von vielen möglichen Ausführungsbeispielen rein schematisch dargestellt – eine simple geradlinige Verlängerung des Vibrier-Teils **1** sein. Das Griff- und Bedienteil **2** kann bei anderen Ausführungsbeispielen auch geschwungen gestaltet sein und/oder sich in beliebiger Richtung abgewinkelt an das Vibrier-Teil **1** anschließen. Den gestalterischen Möglichkeiten für Ausführungsbeispiele erfindungsgemäßer Vibratoren sind insofern – und auch was die farbliche Gestaltung des Griff- und Bedienteils **2** anbelangt – keine Grenzen gesetzt.

[0035] Das Griff- und Bedienteil **2** kann aus diversen Materialien gefertigt sein. Bevorzugt ist jedoch, dass das Griff- und Bedienteil **2** ganz oder teilweise aus Edelstahl und/oder aus edlem und mit Klarlack versiegeltem Holz besteht, beispielsweise aus Pflaumenholz und/oder aus Kirschholz und/oder aus Apfelholz und/oder aus Mooreichenholz und/oder aus Eichenholz und/oder aus Pinienholz und/oder aus Ebenholz und/oder aus Wüsteneisenholz und/oder aus Birnbaumholz und/oder aus Schlangenholz und/oder aus Pfefferminzbaumholz und/oder aus Olivenholz und/oder aus Maulbeerbaumholz und/oder aus Essigbaumholz und/oder aus Amarant-Holz und/oder aus Eukalyptusholz und/oder aus Götterbaumholz und/oder aus Mandelbaumholz und/oder aus Bubenga Pomela.

[0036] Bei manchen Ausführungsbeispielen ist der erfindungsgemäße Vibrator wasserdicht ausgeführt, so dass eine Nutzerin oder ein Nutzer ihn in einer Badewanne oder unter einer Dusche verwenden kann.

[0037] Das Vibrier-Teil **1** des in den Figuren gezeigten Ausführungsbeispiels des erfindungsgemäßen Vibrators weist in seinem Inneren eine sich zentral über seine gesamte Länge erstreckende Stützeinrichtung **5** aus Metall und/oder Kunststoff und/oder Kohlenstofffasermaterial auf, welche in den Figuren nur ganz grob vereinfacht und rein schematisch dargestellt und so eingerichtet ist, dass sie teleskopartig verlängert bzw. verkürzt werden kann. Die genannte Stützeinrichtung **5** hat ferner, wie in den Figuren zu sehen, an ihrem von dem Griff- und Bedienteil **2** abgewandten Ende eine schirmartige Radialstützung **9**, welche in ihrem Durchmesser veränderbar

DE 20 2017 005 3?4 U1   2018.02.22

ist und welche wichtig ist, um die voneinander unabhängige Verstellbarkeit von Basis-Länge des Vibrators einerseits und Basis-Dicke des Vibrators andererseits zu gewährleisten. Beispielsweise kann die eben genannte Radialstützung 9 aus mehreren nach Art ähnlich eines Kameraverschlusses übereinander gelagerter, insgesamt einen Vollkreis bildender, gebogener und radial in mindestens zwei den jeweiligen Basis-Dickenwerten B1, B2 (vgl. die Fig. 2a und Fig. 2b sowie die Fig. 3a und Fig. 3b) entsprechenden Vollkreis-Durchmessern einstellbarer Plättchen aus Metall und/oder Kunststoff und/oder Kohlenstofffasermaterial ausgebildet sein.

[0038]  Die genannte Stützeinrichtung 5 ist so ausgelegt, dass ihre Basis-Länge mindestens in einer ersten Längengröße L1 und in einer zweiten Längengröße L2, die größer als die erste Längengröße L1 ist, dauerhaft einstellbar bzw. feststellbar ist (siehe Fig. 1a und Fig. 1b), wobei jedoch jeweils ausgehend von jeder der beiden genannten Größen L1, L2 der Basis-Länge und unberührt von deren jeweiliger Einstellung die Stoßfunktion des Vibrators, welche jeweils eine weitere impulsartige kurzzeitige Verlängerung der Stützeinrichtung 5 und damit des Vibrators insgesamt bewirkt, ausführbar ist und bleibt. Man betrachte in diesem Zusammenhang die Fig. 4a, b, in welchen diese Stoßfunktion des Vibrators rein schematisch und nicht maßstabsgerecht angedeutet ist. Während eines durch den vertikalen Pfeil mit der Doppelspitze zwischen Fig. 4a und Fig. 4b symbolisierten impulsartigen Stoßes verlängert sich impulsartig, d. h. kurzzeitig, die Länge der Stützeinrichtung 5. Dementsprechend verlängert sich während des impulsartigen Stoßes auch impulsartig, jedoch eben nicht dauerhaft, die Länge eines in den Figuren zu sehenden Faltenbalgteils des Vibrier-Teils 1 vom Wert L3 auf den Wert L4, welcher größer als der Wert L3 ist.

[0039]  Zwecks Sicherstellung der bei jedem erfindungsgemäßen Vibrator unbedingt notwendigen Biegsamkeit des Vibrators ist die genannte Stützeinrichtung 5 ferner biegsam ausgeführt. Diese Biegsamkeit lässt sich beispielsweise dadurch erreichen, dass die Stützeinrichtung 5 aus einer Vielzahl einzelner Teleskopelemente aufgebaut wird, wobei jedes einzelne teleskopartige Element mittels kugelartiger Endteile an die jeweils benachbarten Teleskopelemente gekoppelt ist. Die Biegsamkeit der genannten Stützeinrichtung 5 kann aber beispielsweise auch einfach dadurch erreicht werden, dass die einzelnen Teleskopelemente der Stützeinrichtung 5 jeweils selbst aus zwar stabilem, gleichwohl jedoch biegsamem Material hergestellt werden. Geeignet sind hierfür beispielsweise bestimmte Drahtgeflechte, bestimmte Kunststofffasergeflechte, bestimmte Kohlenstofffasergeflechte oder bestimmte Glasfasergeflechte. Dies alles ist allerdings im Detail in den Figuren nicht weiter dargestellt.

[0040]  Rings um die genannte Stützeinrichtung 5 herum schließt sich ein Raum 6 an, welcher zur Aufnahme der in den Figuren nicht dargestellten Vibrationserzeugungseinrichtung sowie zur Aufnahme des in den Figuren nicht dargestellten Flüssigkeitsbehälters der Spritzeinrichtung dient und nach außen hin von einer äußeren Hülle des Vibrier-Teils 1 begrenzt wird. Die äußere Hülle des Vibrier-Teils 1 besteht aus einem dehnbaren Material, beispielsweise aus Silikon oder aus Latex, welches teilweise – wie bereits aus dem Stand der Technik bekannt – zwecks Realisierung der Stoßfunktion des Vibrators faltenbalgartig ausgelegt ist. In den Fig. 1 bis Fig. 3 sowie in Fig. 4a ist jener Faltenbalgteil der äußeren Hülle des Vibrier-Teils 1 in seinem Grundzustand dargestellt, und seine Länge in diesem Grundzustand ist als Länge mit dem Wert L3 angegeben. Wie weiter oben bereits unter Bezugnahme auf die Fig. 4b erläutert wurde, vergrößert sich bei aktivierter Stoßfunktion des Vibrators während eines Stoßes die Länge des faltenbalgartigen Teiles der äußeren Hülle des Vibrier-Teils 1 vom Wert L3 auf den Wert L4, welcher größer als der Wert L3 ist.

[0041]  Das genannte dehnbare Material der äußeren Hülle des Vibrier-Teils 1 sollte nicht nur dehnbar, sondern auch weich und geschmeidig sein. Beispielsweise kommen hierfür Silikon oder Latex in Frage, aber auch alle anderen Materialien mit den vorstehend genannten Eigenschaften sind prinzipiell geeignet.

[0042]  Diejenigen Raumteile des genannten Raumes 6, welche nicht durch anderweitige Einrichtungen wie etwa die Vibrationserzeugungseinrichtung oder den Flüssigkeitsbehälter der Spritzeinrichtung ausgefüllt sind, werden durch ein Fluid (Luft oder ein anderes Gas oder eine Flüssigkeit) ausgefüllt, so dass die äußere Hülle des Vibrier-Teils 1 stramm – aber gleichwohl stets biegsam – bleibt. Eine im Griff- und Bedienteil 2 des Vibrators untergebrachte Steuerungs- und Regelungseinrichtung stellt sicher, dass die Fluidmenge in dem genannten Raum 6 bei einer Verstellung der Größe der Basis-Länge des Vibrators mittels einer Verstellung der Länge der Stützeinrichtung 5 durch Fluidzufuhr bzw. durch Fluidabfuhr stets so geregelt wird, dass eine eingestellte Größe der Basis-Dicke des Vibrators unbeeinflusst bleibt. Dies ist in der Fig. 1a und Fig. 1b verdeutlicht. In Fig. 1a ist als Basis-Länge des Vibrators die erste Länge der Größe L1 eingestellt, und als Basis-Dicke des Vibrators ist eine erste Dicke bzw. ein erster Durchmesser mit dem Wert B1 von der Nutzerin oder dem Nutzer fest eingestellt worden. In Fig. 1b vergrößert die Nutzerin bzw. der Nutzer die Basis-Länge des Vibrators auf den zweiten – größeren – Längenwert L2, jedoch bleibt die eingestellte Basis-Dicke davon unberührt auf ihrem ursprünglichen Wert B1. Zur Erreichung dieses Effektes wird mittels der genannten Steuerungs- und Regelungseinrichtung da-

für gesorgt, dass während des Vorgangs der Vergrößerung der Basis-Länge des Vibrators von dem Wert L1 auf den Wert L2 eine entsprechende Menge Fluid über ein geeignetes Pump- und Ventilsystem in den genannten Raum **6** nachgeführt wird. Falls hierfür einfach Luft als Fluid verwendet wird, ist kein extra Fluidreservoir vonnöten, denn die Luft kann durch das Pump- und Ventilsystem einfach aus der Umgebung des Vibrators entnommen werden. Sofern ein anderes Fluid als Luft verwendet werden soll, kann in dem Griff- und Bedienteil **2** des Vibrators ein entsprechendes Fluidreservoir vorgesehen werden.

[0043] Bei einer Verkleinerung des Wertes der Basis-Länge des Vibrators, also beispielsweise beim Übergang von dem in **Fig. 1b** gezeigten Zustand in den in **Fig. 1a** gezeigten Zustand, wird dann durch das vorstehend genannte Pump- und Ventilsystem in durch die genannte Steuerungs- und Regelungseinrichtung gesteuerter und geregelter Weise Fluid aus dem Raum **6** abgepumpt oder einfach abgelassen derart, dass die Basis-Dicke des Vibrators unberührt auf ihrem ursprünglich eingestellten Wert B1 verbleibt.

[0044] Da ein sehr wesentliches Merkmal des erfindungsgemäßen Vibrators darin besteht, dass sowohl die Basis-Länge als auch die Basis-Dicke des Vibrators jeweils dauerhaft und – was für die vorliegende Erfindung ganz entscheidend ist – jeweils unabhängig voneinander einstellbar sind, funktioniert das eben dargestellte Prinzip nicht nur für konstante Basis-Dicke bei Veränderung der Basis-Länge des Vibrators, sondern es funktioniert andersherum auch für konstante Basis-Länge bei Veränderung der Basis-Dicke des Vibrators. Dies ist rein schematisch in den **Fig.** 2 und **Fig.** 3 dargestellt. Die Stützeinrichtung **5** ist bei der Darstellung von **Fig.** 2 durch die Nutzerin bzw. durch den Nutzer fest auf die Basis-Länge mit dem Wert L1 eingestellt, so wie bei der Darstellung von **Fig.** 1a. Die Stützeinrichtung **5** ist bei der Darstellung von **Fig.** 3 durch die Nutzerin bzw. durch den Nutzer fest auf die Basis-Länge mit dem Wert L2 eingestellt, so wie bei der Darstellung von **Fig.** 1b, wobei L2 größer ist als L1. Die Darstellung von **Fig.** 2a entspricht dabei der Darstellung von **Fig.** 1a, und die Darstellung von **Fig.** 3a entspricht der Darstellung von **Fig.** 1b, d. h. bei diesen beiden genannten Darstellungen hat die Nutzerin bzw. der Nutzer jeweils als Basis-Dicke des Vibrators den Durchmesser mit der Größe B1 gewählt. Wünscht die Nutzerin bzw. der Nutzer nun eine bei konstanter Basis-Länge des Vibrators eine Vergrößerung der Basis-Dicke des Vibrators auf einen größeren Wert B2 (vgl. **Fig.** 2b bzw. **Fig.** 3b), so kann dies mittels der genannten Steuerungs- und Regelungseinrichtung erreicht werden, indem die genannte Steuerungs- und Regelungseinrichtung das genannte Pump- und Ventilsystem veranlasst, soviel Fluid in den Raum **6** hineinzupumpen, dass sich die äußere Hülle des Vibrier-Teils **1** soweit

ausdehnt, bis die Basis-Dicke des Vibrators den Wert B2 erreicht hat. Durch die in ihrer Länge dabei jeweils unverändert bleibende Stützeinrichtung **5** (Länge L1 in **Fig.** 2 bzw. Länge L2 in **Fig.** 3) sowie durch geeignete Materialauswahl für die äußere Hülle des Vibrier-Teils **1** und deren Abstimmung mit der Konstruktion der Stützeinrichtung **5**, insbesondere mit der Konstruktion der weiter oben in ihrer Funktion und Wirkungsweise bereits erläuterten variabel einstellbaren Radialstützung **9**, ist sichergestellt, dass die Basis-Dicke des Vibrators unabhängig von der Basis-Länge des Vibrators eingestellt werden kann. In diesem Zusammenhang sei an dieser Stelle nochmals ausdrücklich auf die bereits weiter oben getätigten Erläuterungen zur Radialstützung **9** verwiesen.

[0045] Zusammenfassend ist also bei jedem erfindungsgemäßen Vibrator sichergestellt, dass die Basis-Dicke des Vibrators unabhängig von der Basis-Länge des Vibrators eingestellt werden kann und dass die Basis-Länge des Vibrators unabhängig von der Basis-Dicke des Vibrators eingestellt werden kann.

[0046] Der erfindungsgemäße Vibrator ist dabei stets so eingerichtet, dass die Nutzerin oder der Nutzer die Basis-Länge des Vibrators in mindestens zwei verschiedenen Größen dauerhaft einstellen kann und dass die Nutzerin oder der Nutzer auch die Basis-Dicke in mindestens zwei verschiedenen Größen dauerhaft einstellen kann, wobei die Basis-Länge und die Basis-Dicke jeweils separat und jeweils unabhängig voneinander einstellbar sind.

[0047] Bevorzugterweise ist der erfindungsgemäße Vibrator in den meisten seiner Ausführungsbeispiele so eingerichtet, dass sowohl die Basis-Länge als auch die Basis-Dicke des Vibrators jeweils elektrisch oder elektromechanisch, d. h. mittels elektrisch betriebenen Antriebs, verstellbar sind – beispielsweise auf Knopfdruck durch die Nutzerin oder den Nutzer, wobei der letztgenannte Knopfdruck einen geeigneten elektrischen bzw. elektromechanischen Steuerungsprozess zur Verstellung des Wertes der Basis-Länge bzw. des Wertes der Basis-Dicke des Vibrators in Gang setzt.

[0048] Bei einem bevorzugten Ausführungsbeispiel des erfindungsgemäßen Vibrators ist vorgesehen, dass seine Basis-Dicke bzw. sein Basis-Durchmesser zwischen 3 cm und 10 cm stufenlos oder in Stufen verstellbar ist. Besonders bevorzugt ist es, eine stufenweise Verstellbarkeit der Basis-Dicke bzw. des Basis-Durchmessers des Vibrators, vorzugsweise in Stufen von 0,5 cm oder 1,0 cm, vorzusehen. Ferner ist bei dem eben genannten bevorzugten Ausführungsbeispiel des erfindungsgemäßen Vibrators vorgesehen, dass er so eingerichtet ist, dass seine Basis-Länge zwischen 15 cm und 30 cm stufenlos oder in Stufen verstellbar ist. Besonders bevorzugt

ist es, eine stufenweise Verstellbarkeit der Basis-Länge des Vibrators, vorzugsweise in Stufen von 0,5 cm oder von 1,0 cm, vorzusehen. Die hier genannten Grenzwerte und Stufenwerte sind allerdings, und das sei an dieser Stelle ausdrücklich betont, hier nur als Beispielwerte angeführt. Andere Ausführungsbeispiele des erfindungsgemäßen Vibrators können andere Grenzwerte und/oder andere Stufenwerte aufweisen oder überhaupt stufenlos verstellbar sein.

[0049] Die vorstehend immer wiederkehrend genannten Begriffe „Basis-Länge" und „Basis-Dicke" sind so zu verstehen, dass sie jeweils eine von der Stoßfunktion des Vibrators unberührte und unabhängige Eigenschaft des Vibrators darstellen, welche sich auf eine jeweils dauerhaft fest eingestellte – aber durch die Nutzerin bzw. den Nutzer des Vibrators zwischen mindestens jeweils zwei Werten umschaltbar variabel, aber jeweils dauerhaft einstellbare – Länge bzw. Dicke des Vibrier-Teils 1 des Vibrators bezieht. Der Unterschied des in diesem Zusammenhang verwendeten Begriffes „dauerhaft" zu den davon zu unterscheidenden impulsartigen Längen- bzw. Dickenänderungen während eingeschalteter Stoßfunktion beim Stoßbetrieb des Vibrators soll anhand der Fig. 4 näher verdeutlicht werden. Die Fig. 4a entspricht der Fig. 1a und der Fig. 2a und zeigt das Ausführungsbeispiel des Vibrators in seinem Grundzustand, d. h. in einem Zustand, bei der gerade kein Stoß des Vibrators in Richtung Vibratorspitze – also in Richtung weg von dem Griff- und Bedienteil 2 des Vibrators – erfolgt. Die Basis-Länge des Vibrators hat in diesem Zustand – wie oben erläutert – den Wert L1, und die Basis-Dicke des Vibrators hat in diesem Zustand – wie oben ebenfalls bereits erläutert – den Wert B1. Der für die Realisierung der Stoßfunktion des Vibrators wichtige Faltenbalgteil der äußeren Hülle des Vibrier-Teils 1 ist in Fig. 4a ebenfalls in seinem Grundzustand, und seine Länge in diesem Grundzustand hat den Wert L3.

[0050] Bei der Realisierung der Stoßfunktion des Vibrators, so wie sie als solche aus dem Stand der Technik der Vibratoren als Sexspielzeuge für Erwachsene bereits bekannt ist, wird die Länge des Vibrier-Teils 1 des Vibrators in impulsartigen Stößen vergrößert, verkleinert, wieder vergrößert usw. usf. Diese stoßartige Hin-und-Her-Bewegung des Vibrier-Teils 1 des Vibrators ist durch den vertikalen Pfeil mit Doppelspitze zwischen der Fig. 4a und Fig. 4b angedeutet. Dabei vergrößert sich im Stoß die Länge des Faltenbalgteils des Vibrier-Teils 1 des Vibrators von dem Wert L3 auf den Wert L4, welcher größer ist als der Wert L3, und dementsprechend wächst die Länge des Vibrier-Teils 1 im Stoß über den auf den dauerhaften Wert L1 eingestellten Wert der Basis-Länge L1 hinaus. Am Ende jedes einzelnen Stoßes nimmt der Faltenbalgteil des Vibrier-Teils 1 des Vibrators jedoch wieder seinen Ausgangs-Längenwert L3 an und die Länge des Vibrier-Teils 1 nimmt dementsprechend

wieder den Wert L1 an. Beim nächsten Stoß vergrößert sich die Länge des Faltenbalgteils des Vibrier-Teils 1 des Vibrators wieder auf den Wert L4 – mit der entsprechenden Folge für die Länge des Vibrier-Teils 1 usw. usf. Ganz entsprechend kann man die Stoßfunktion basierend auf der Basis-Längeneinstellung mit dem Wert L2 von Fig. 1b bzw. von Fig. 3a einschalten. Um sich dies zu verdeutlichen, braucht man in Fig. 4 nur gedanklich den Wert L1 der Basis-Länge durch den Wert L2 der Basis-Länge zu ersetzen. An der Grundeinstellung der Länge des Faltenbalgteils des Vibrier-Teils 1 des Vibrators ändert sich dadurch nichts – dieser Wert bleibt auf der Länge L3, so wie auch schon aus den Fig. 1b und Fig. 3a ersichtlich (siehe zu Vergleichszwecken auch Fig. 1a). Nur im Stoßvorgang selbst dehnt sich der genannte Faltenbalgteil wieder auf die Länge mit dem Wert L4 aus, ganz genau wie oben bereits ausgehend von der Basis-Länge mit dem Wert L1 beschrieben. Ausgehend von der Basis-Länge mit dem Wert L2 wächst dementsprechend die Länge des Vibrier-Teils 1 im Stoß über den Wert L2 der Basis-Länge hinaus. Am Ende jedes einzelnen Stoßes nimmt der Faltenbalgteil des Vibrier-Teils 1 des Vibrators jedoch wieder seinen Ausgangs-Längenwert L3 an, und die Länge des Vibrier-Teils 1 nimmt dementsprechend wieder den Wert L2 an. Beim nächsten Stoß vergrößert sich die Länge des Faltenbalgteils des Vibrier-Teils 1 des Vibrators wieder auf den Wert L4 – mit der entsprechenden Folge für die Länge des Vibrier-Teils 1 usw. usf.

[0051] Bei dem in Fig. 4 gezeigten Ausführungsbeispiel des erfindungsgemäßen Vibrators bleibt der Wert der Basis-Dicke B1 auch während des Stoßes erhalten, so wie es in Fig. 4a, b schematisch gezeigt ist. Dies wird, wie schon im Falle des konstanten Beibehaltens des Wertes der Basis-Dicke unabhängig von dem Wert der Basis-Länge des Vibrators, mittels des gesteuerten schnellen Einpumpens von Fluid in den Raum 6 erreicht. Dementsprechend wird zum Ende des Stoßvorganges hin das Fluid gesteuert aus dem Raum 6 schnell wieder entfernt.

[0052] Während Vibratoren mit reiner Längenänderung beim Stoß aus dem Stand der Technik an sich bereits bekannt sind, bieten verschiedene Ausführungsbeispiele des erfindungsgemäßen Vibrators der Nutzerin bzw. dem Nutzer noch eine darüber hinausgehende Funktionalität: Manche Ausführungsbeispiele des erfindungsgemäßen Vibrators sind nämlich sogar derart eingerichtet, dass die Nutzerin oder der Nutzer wahlweise einstellen kann, dass bei eingeschalteter Stoßfunktion nicht nur ein impulsartiger kurzzeitiger Stoß im Sinne einer Längenänderung, sondern gleichzeitig auch eine impulsartige kurzzeitige Verdickung des Vibrators während des Stoßes erfolgt. Auch diese Funktionalität wird technisch realisiert mittels des gesteuerten schnellen Einpumpens von Fluid in den Raum 6, wobei ganz entsprechend

DE 20 2017 005 314 U1   2018.02.22

zum Ende des Stoßvorganges hin das Fluid gesteuert aus dem Raum **6** schnell wieder entfernt wird.

[0053] Alle Ausführungsbeispiele des erfindungsgemäßen Vibrators sind so eingerichtet, dass die Stoßgeschwindigkeit und/oder die Stoßfrequenz in mindestens zwei Stufen, vorzugsweise in drei Stufen, von der Nutzerin bzw. dem Nutzer des Vibrators wählbar einstellbar ist bzw. sind.

[0054] Die oben bereits erläuterte Stützeinrichtung **5** ist bei den in den Figuren dargestellten Ausführungsbeispielen des erfindungsgemäßen Vibrators teilweise hohl (vgl. Bezugszeichen **8**) und kann auf diese Weise als Transportröhre **8** für Flüssigkeiten **7** (vgl. auch **Fig.** 5) dienen. Wie in den Figuren gezeigt ist, öffnet sich die eben genannte Transportröhre **8** an der Spitze des Vibrators – also an der vom Griff- und Bedienteil **2** abgewandten Seite des Vibrators –, und es besteht dort freie Kommunikation mit der Umgebung. Dies wird bei den in den Figuren dargestellten Ausführungsbeispielen des erfindungsgemäßen Vibrators für die Ejakulationssimulation ausgenutzt. Die Stützeinrichtung **5** in ihrer weiteren Eigenschaft als Transportröhre **8** für Flüssigkeiten **7** ist bei den hier dargestellten Ausführungsbeispielen nämlich Teil der bereits oben erwähnten Spritzeinrichtung und steht zwecks Flüssigkeitstransports in wirksamer Verbindung mit dem bereits weiter oben genannten, in den Figuren jedoch nicht explizit dargestellten, Flüssigkeitsbehälter der Spritzeinrichtung. Sobald die oben bereits beschriebene Zeitsteuerungseinrichtung oder eine andere geeignete Einrichtung – wie oben bereits beschrieben – das Abspritzen der Spritzeinrichtung einleitet, wird die Flüssigkeit **7** aus dem genannten Flüssigkeitsbehälter über die Transportröhre **8** aus deren oben genannten offenen Ende in die Umgebung, beispielsweise in die Scheide einer weiblichen Nutzerin des Vibrators, abgespritzt, so wie es in **Fig.** 5 rein schematisch gezeigt ist. **Fig.** 5 stellt dabei das Ausführungsbeispiel des erfindungsgemäßen Vibrators in vollständig ausgefahrener Stoßposition mit dem Längenwert L4 des faltenbalgartigen Teils des Vibrier-Teils **1** dar, so wie es bereits weiter oben mit Bezug auf die **Fig.** 4, insbesondere mit Bezug auf die **Fig.** 4b, ausführlich erläutert worden ist.

[0055] Einige Ausführungsbeispiele erfindungsgemäßer Vibratoren werden mittels eines wiederaufladbaren Akkumulators mit elektrischer Energie versorgt, wobei der vorstehend genannte wiederaufladbare Akkumulator mit einem USB- oder Mini-USB-Anschluss zwecks Ladefunktion versehen ist und/oder mit einem USB- oder Mini-USB-Anschluss zwecks Ladefunktion in elektrischer Verbindung steht.

[0056] Bei anderen Ausführungsbeispielen erfindungsgemäßer Vibratoren findet ein induktiv wieder-

aufladbarer Akkumulator als elektrische Energiequelle Verwendung.

[0057] In einigen seiner Ausführungsvarianten ist der erfindungsgemäße Vibrator mit einer Heizeinrichtung zur gesamten oder teilweisen Erwärmung des Vibrators versehen. Damit können beispielsweise dann der gesamte Vibrator oder bei manchen Ausführungsbeispielen auch nur die Flüssigkeit **7** der Spritzeinrichtung auf eine für die Nutzerin bzw. den Nutzer angenehme Temperatur erwärmt und so eine ganz besonders gute Nutzerfreundlichkeit des Vibrators erreicht werden. Ganz besonders bevorzugt sind viele Ausführungsbeispiele eines erfindungsgemäßen Vibrators so eingerichtet, dass zumindest die Flüssigkeit der Spritzeinrichtung erwärmbar ist, so dass es beim Spritzen der Flüssigkeit in die Scheide einer weiblichen Nutzerin des Vibrators als angenehm empfunden wird.

[0058] In einigen ihrer Ausführungsformen ist die genannte Heizeinrichtung als Infrarot-Heizeinrichtung ausgebildet.

[0059] Bevorzugterweise wird die Heizeinrichtung derart regelbar ausgelegt, dass mindestens zwei, vorzugsweise mehr als zwei, verschiedene Temperaturen durch die Nutzerin oder durch den Nutzer des Vibrators wählbar eingestellt werden können. Unbedingt notwendig ist das aber nicht.

[0060] Bevorzugterweise sind die meisten Ausführungsbeispiele des erfindungsgemäßen Vibrators als schallgedämpfte Ausführungen mit nur geringem Betriebsgeräusch ausgelegt derart, dass sie im Betrieb ein Betriebsgeräusch mit einer Lautstärke von nicht mehr als 50 dB erzeugen.

[0061] Manche Ausführungsbeispiele des erfindungsgemäßen Vibrators sind so eingerichtet, dass die Vibrationsstärke nicht veränderbar ist, es also konstant nur eine einzige Vibrationsstärke gibt. Bei anderen seiner Ausführungsbeispiele ist der erfindungsgemäße Vibrator jedoch so eingerichtet, dass er in mindestens zwei verschiedenen, bevorzugterweise acht bis zehn verschiedenen, Vibrationsstärken betreibbar ist, zwischen denen die Nutzerin bzw. der Nutzer jeweils frei wählbar umschalten kann.

[0062] Einige Ausführungsbeispiele des erfindungsgemäßen Vibrators sind mit einem Gleitgelspeicher versehen, welcher während des Betriebs des Vibrators eine Vibrator-Oberfläche dauernd oder nach Wahl der Nutzerin oder des Nutzers zeitweise oder dauernd mit Gleitgel versorgt.

[0063] Bestimmte Ausführungsbeispiele erfindungsgemäßer Vibratoren sind mit einer Minikameraeinrichtung zur Aufzeichnung und/oder Übertragung von Fotos und/oder Videos versehen, wobei diese Mi-

nikameraeinrichtung so ausgelegt ist, dass sie von der Nutzerin bzw. dem Nutzer aktivierbar und deaktivierbar ist. Die Verwendung entsprechender Minikameraeinrichtungen bei Vibratoren als Sexspielzeugen für Erwachsene ist dabei jedoch an sich aus dem Stand der Technik bereits bekannt.

[0064] Sofern ein erfindungsgemäßer Vibrator sowohl mit einem Griff- und Bedienteil **2** als auch mit einer Minikameraeinrichtung versehen ist, ist es bei besonders bevorzugten Ausführungsbeispielen des erfindungsgemäßen Vibrators vorgesehen, dass die Minikameraeinrichtung in das Griff- und Bedienteil **2** integriert ist. Bei anderen Ausführungsbeispielen des erfindungsgemäßen Vibrators mit Minikameraeinrichtung kann die Minikameraeinrichtung auch an einer anderen Stelle in den Vibrator – beispielsweise auch in das Vibrier-Teil **1** – integriert sein. Den Anordnungsmöglichkeiten der Minikameraeinrichtung sind insoweit keine Grenzen gesetzt.

[0065] Bei einigen Ausführungsbeispielen des erfindungsgemäßen Vibrators ist im und/oder am Vibrator eine Speichereinrichtung zur Speicherung und Abgabe von Duft- oder Aromastoffen vorgesehen.

[0066] Auch gibt es solche Ausführungsbeispiele des erfindungsgemäßen Vibrators, bei denen im und/oder am Vibrator eine Audio-Abspieleinrichtung vorgesehen ist, über die beispielsweise romantische oder entspannende Musik abgespielt werden kann, was besonders von weiblichen Vibrator-Benutzerinnen sehr geschätzt wird. Andere Nutzer oder Nutzerinnen wünschen sich aber vielleicht mehr das Abspielen anderer Musikarten oder von Geräuschen aus der Natur oder überhaupt irgendwelcher anderer Geräusche oder sogar reiner oder mit Geräuschen und/oder Musik unterlegter Sprachsequenzen. Auch das alles kann mittels der genannten Audio-Abspieleinrichtung grundsätzlich realisiert werden. Den Arten der abzuspielenden Töne sind insoweit keine Grenzen gesetzt.

[0067] Die genannte Minikameraeinrichtung ist vorzugsweise so ausgelegt, dass sie UHD-Auflösung hat und zur Aufnahme und/oder zum Übertragen von Fotos und/oder Videos eingerichtet ist. „UHD-Auflösung" bedeutet hier „Ultra HD Auflösung" mit 3840 × 2160 Pixeln.

[0068] Weitere Ausführungsbeispiele erfindungsgemäßer Vibratoren können mit einer in ihrer Ansaugstärke und/oder ihrem Pulsationsrhythmus steuerbaren Vakuum-Pumpe zwecks ansaugender und pulsierender Stimulation eines Kitzlers bei einer weiblichen Nutzerin versehen sein. Derartige Kitzlerstimulationseinrichtungen sind an sich aus dem Stand der Technik bereits bekannt.

[0069] Die eben genannte Vakuum-Pumpe ist vorzugsweise mit einer Heizeinrichtung zur Erwärmung der Vakuum-Pumpe versehen. Dabei ist die Heizeinrichtung zur Erwärmung der Vakuum-Pumpe bei manchen Ausführungsbeispielen erfindungsgemäßer Vibratoren derart regelbar ausgelegt, dass mit ihr mindestens zwei, vorzugsweise mehr als zwei, verschiedene Temperaturen durch die Nutzerin oder durch den Nutzer des Vibrators wählbar eingestellt werden können. Sofern eine Heizeinrichtung zur Erwärmung der Vakuum-Pumpe vorhanden ist, sollte diese Heizeinrichtung zur Erwärmung der Vakuum-Pumpe so ausgelegt sein, dass sie die Vakuum-Pumpe derart anwärmen kann, dass es sich beim Hautkontakt der Vakuum-Pumpe für die Nutzerin oder den Nutzer nicht unangenehm anfühlt.

[0070] Bei einigen seiner Ausführungsbeispiele ist der erfindungsgemäße Vibrator sind so eingerichtet, dass er mittels eines Kabels und/oder kabellos an ein Telekommunikationsnetzwerk, bevorzugterweise an das Internet, angeschlossen werden kann. Ein solcher Anschluss kann beispielsweise realisiert werden mittels eines USB-Anschlusses, bevorzugterweise mittels eines USB-3.0-Anschlusses, und/oder mittels eines Mini-USB-Anschlusses und/oder mittels einer W-LAN-Anbindung und/oder mittels einer Bluetooth-Schnittstelle. Auf diese Weise können Ausführungsbeispiele des erfindungsgemäßen Vibrators wirksam mit einer Cyber-Sex-Funktionalität ausgestattet werden. Sofern eine Kameraeinrichtung vorgesehen ist, welche fest an dem Vibrator montiert oder zumindest als Ergänzungsteil auf den Vibrator aufsetzbar ist, kann der Vibrator dann ferner so eingerichtet werden, dass er in der Lage ist, Fotos und/oder Videos in das genannte Telekommunikationsnetzwerk einzuspeisen.

[0071] Die vorstehend genannte Minikameraeinrichtung und/oder die vorstehend genannte Vakuum-Pumpe können fest auf dem Vibrator montiert sein, sie können jedoch bei anderen Ausführungsbeispielen der Erfindung auch als wahlweise von der Nutzerin bzw. von dem Nutzer auf den Vibrator aufmontierbare und wieder abmontierbare Zubehöreinrichtungen geliefert werden. In letzterem Fall werden dann bevorzugterweise der erfindungsgemäße Vibrator, die Minikameraeinrichtung und die Vakuum-Pumpe als Set bereitgestellt, und die einzelnen Teile dieses Sets werden in einem Koffer, vorzugsweise einem Aluminiumkoffer, aufbewahrt. Vorzugsweise ist der genannte Koffer für die Einzelteile des genannten Sets innen so gestaltet, dass für jedes Einzelteil des genannten Sets in dem Koffer ein an seine Form und Größe angepasstes Ablagefach bzw. eine an seine Form und Größe angepasste Ablagevertiefung vorgesehen ist. Ganz besonders bevorzugt ist es, den genannten Koffer so auszugestalten, dass er innen mit Samt ausgeschlagen ist und überhaupt insgesamt ein edles Design aufweist. Ein derartiger Kof-

fer ist zwar insbesondere geeignet für die Verwendung durch Personen, welche das genannte Set professionell verwenden und zu Haus- bzw. Hotelbesuchen zu ihren Kunden und Kundinnen mitnehmen, jedoch wird die durch einen solchen Koffer leicht zu haltende Ordnung, Übersichtlichkeit und damit schnelle und unkomplizierte Auffindbarkeit der Einzelteile des genannten Sets auch durch alle anderen Nutzerinnen und Nutzer geschätzt werden. Statt eines Koffers kann für diese Zwecke auch eine Kiste oder Schachtel, vorzugsweise eine Holzkiste oder Holzschachtel, genutzt werden. Auch diese Kiste oder Schachtel kann für jedes Einzelteil des genannten Sets ein an dessen Form und Größe angepasstes Ablagefach bzw. eine an dessen Form und Größe angepasste Ablagevertiefung aufweisen. Ganz besonders bevorzugt ist es auch hier, die genannte Kiste oder Schachtel so auszugestalten, dass sie innen mit Samt ausgeschlagen ist und überhaupt insgesamt ein edles Design aufweist. Bevorzugt wird darauf geachtet, dass die einzelnen Bestandteile des jeweiligen Sets in dem Koffer oder in der Kiste oder in der Schachtel innen passgenau und jeweils abgegrenzt voneinander jeweils ihren ganz bestimmten Platz haben. Sofern eine Holzkiste oder eine Holzschachtel als Ablageeinrichtung Verwendung findet, ist es besonders schön, wenn diese Holzkiste oder Holzschachtel aus demselben Holz wie ein in ihr etwaig abzulegendes hölzernes Griff- und Bedienteil **2** des Vibrators gefertigt ist.

**[0072]** Verschiedene Ausführungsbeispiele derartiger erfindungsgemäßer Sets weisen unterschiedlich viele und unterschiedlich geartete Einzelteile auf. Beispielsweise können ferner als weitere Einzelteile eines erfindungsgemäßen Sets vorgesehen sein ein biegsamer und/oder ein nicht biegsamer Selfie-Stick, mit dessen Hilfe sich die genannte Minikameraeinrichtung auf den Vibrator montieren lässt, eine SD-Karte, vorzugsweise eine Nano-SD-Karte und/oder eine Micro-SD-Karte, zum Speichern von Fotos und/oder Videos, ein Ersatz-Akkumulator und/oder ein Netzteil für den Betrieb des Vibrators, eine Pulsmesseinrichtung zum wirksamen Verbinden mit dem Vibrator sowie eine Blutdruckmesseinrichtung zum wirksamen Verbinden mit dem Vibrator.

**[0073]** Sofern eine Pulsmesseinrichtung zum wirksamen Verbinden mit dem Vibrator und/oder eine Blutdruckmesseinrichtung zum wirksamen Verbinden mit dem Vibrator Bestandteil eines Ausführungsbeispiels eines erfindungsgemäßen Sets sind, ist es dann sinnvoll, dem Set einen solchen erfindungsgemäßen Vibrator beizugeben, welcher so eingerichtet ist, dass von der Pulsmessungseinrichtung bzw. von der Blutdruckmessungseinrichtung bereitgestellte Messdaten zur Steuerung mindestens einer Funktion des Vibrators verwendet werden können.

**[0074]** Sofern ein biegsamer Selfie-Stick als Bestandteil eines Ausführungsbeispiels eines erfindungsgemäßen Sets vorhanden ist, ist es besonders vorteilhaft, diesen Selfie-Stick so auszugestalten, dass er in alle Richtungen biegsam ist. Unbedingt notwendig ist das aber nicht.

**[0075]** Sofern ein Selfie-Stick – egal ob biegsam oder nicht biegsam – vorhanden ist, sind Vibrator und Selfie-Stick bei den meisten Ausführungsbeispielen erfindungsgemäßer Sets so aufeinander abgestimmt, dass der Selfie-Stick am Griff- und Bedienteil **2** des Vibrators befestigbar ist. Es gibt jedoch darüber hinaus auch andere Ausführungsbeispiele erfindungsgemäßer Sets mit Selfie-Stick, bei denen der Selfie-Stick an einer anderen Stelle des Vibrators befestigbar ist. Bei wieder anderen Ausführungsbeispielen erfindungsgemäßer Sets mit Selfie-Stick sind der Selfie-Stick und der Vibrator so aufeinander abgestimmt, dass der Selfie-Stick wahlweise am Griff- und Bedienteil **2** des Vibrators oder an einer anderen Stelle des Vibrators befestigt werden kann. Die Größe des Selfie-Sticks als solche ist im Rahmen der vorliegenden Erfindung grundsätzlich keinen Beschränkungen unterworfen. Bevorzugt kommt hier aber ein Selfie-Stick in Mini-Form zur Anwendung. Bevorzugt sollte über den Selfie-Stick auch die Bedienung der Minikameraeinrichtung möglich sein.

**[0076]** Ein erfindungsgemäßer Vibrator kann bei einigen seiner Ausführungsbeispiele eine Umschnalleinrichtung aufweisen, mit deren Hilfe sich eine Person den Vibrator zu sich hin gewandt gerichtet und/oder von sich abgewandt gerichtet anschnallen kann. Dies ist beispielsweise nützlich für männliche Personen mit Potenzstörungen oder sowohl für männliche als auch weibliche Nutzer bzw. Nutzerinnen mit einer körperlichen Behinderung und/oder im Zusammenhang mit einer Cyber-Sex-Funktionalität des Vibrators. Obzwar die eben genannte Umschnalleinrichtung bei manchen Ausführungsbeispielen erfindungsgemäßer Vibratoren fest an dem Vibrator montiert ist, kann sie bei anderen Ausführungsbeispielen erfindungsgemäßer Vibratoren als von der Nutzerin bzw. dem Nutzer wahlweise an den Vibrator anmontierbar und auch wieder von dem Vibrator abmontierbar sein und auf diese Weise auch einen Teil eines erfindungsgemäßen Sets darstellen bzw. allein als Umschnalleinrichtung als solche zusammen mit einem erfindungsgemäßen Vibrator ein Ausführungsbeispiel für ein erfindungsgemäßes Set bilden.

**[0077]** Einige Ausführungsbeispiele erfindungsgemäßer Sets weisen als weiteres zusätzliches Teil eine Akkumulator-Ladestation auf. In manchen Ausführungsbeispielen ist diese Akkumulator-Ladestation eine induktive Akkumulator-Ladestation für ein kabelloses Laden des Akkumulators.

DE 20 2017 005 314 U1    2018.02.22

[0078] Manche Ausführungsbeispiele erfindungsgemäßer Sets weisen zwei oder mehr verschiedene Vibratoren auf, wobei zumindest ein Vibrator ein erfindungsgemäßer Vibrator sein muss. Dies kann z. B. für professionelle Anwenderinnen und Anwender eines solchen Sets wichtig sein, denn manche Kunden oder Kundinnen dieser Anwenderinnen bzw. Anwender können auf ein bestimmtes Material, zum Beispiel auf Latex, allergisch reagieren. Dann ist es für die professionelle Anwenderin bzw. für den professionellen Anwender wichtig, eine Alternativauswahl eines Vibrators zur Hand zu haben. So kann z. B. ein derartiges Ausführungsbeispiel eines erfindungsgemäßen Sets einen Vibrator beinhalten, bei dem die äußere Hülle des Vibrier-Teils 1 aus Latex besteht, und einen weiteren Vibrator, bei dem die äußere Hülle des Vibrier-Teils 1 aus einem latexfreien, aber trotzdem weichen, geschmeidigen und dehnbaren Material besteht, das aber vielleicht seinerseits bei Kunden, die zwar keine Latexallergie haben, irgendeine andere allergische Reaktion hervorrufen mag. So kann durch gezielte Auswahl des für jeden einzelnen Kunden jeweils unter Allergiegesichtspunkten unbedenklichen Vibrators eine Vielfalt an Kunden bzw. Kundinnen von der professionellen Anwenderin bzw. von dem professionellen Anwender zumindest insoweit sicher bedient werden. Abgesehen von den unterschiedlichen Materialien der äußeren Hülle des Vibrier-Teils 1 können die beiden eben rein als eines von vielen möglichen Ausführungsbeispielen genannten Vibratoren ansonsten technisch völlig gleich sein, sie können aber auch technisch unterschiedlich ausgebildet sein, z. B. unterschiedliche Zusatzfunktionalitäten aufweisen.

[0079] Es sei an dieser Stelle darauf hingewiesen, dass bei den vorstehend beschriebenen Ausführungsbeispielen erfindungsgemäßer Sets mit mehreren Vibratoren zwar mindestens einer der in dem jeweiligen Set enthaltenen Vibratoren ein erfindungsgemäßer Vibrator sein muss, der oder die weiteren Vibrator(en) jedoch nicht unbedingt erfindungsgemäß ausgebildet sein müssen, obwohl es allerdings bevorzugt ist, jeden einzelnen der in dem Set enthaltenen Vibratoren als erfindungsgemäßen Vibrator auszubilden.

[0080] Manche Ausführungsbeispiele erfindungsgemäßer Sets weisen zwei oder mehr verschiedene, an dem jeweiligen Vibrator bzw. an den jeweiligen Vibratoren auswechselbare Griff- und Bedienteile 2 mit Einstelleinrichtungen 3 für die verschiedenen Funktionen und Verstellmöglichkeiten des Vibrators bzw. der Vibratoren auf. So ergibt sich bei solchen Ausführungsbeispielen erfindungsgemäßer Sets für die Nutzerin bzw. für den Nutzer eine große Kombinationsvielfältigkeit sowohl in Bezug auf technische Funktionalitäten als auch in Bezug auf die rein äußerlichen Gestaltungsvarianten in Bezug auf Form, Farbe und/oder Haptik. Verschiedene Griff- und Bedienteile 2

können auf diese Weise jeweils mit unterschiedlichen Vibrier-Teilen 1 in diversen Kombinationsmöglichkeiten vereinigt werden.

[0081] In manchen seiner Ausführungsbeispiele ist der erfindungsgemäße Vibrator so eingerichtet, dass seine Funktionen ganz oder teilweise, ausschließlich oder nicht ausschließlich mittels einer kabelgebundenen und/oder kabellosen Fernbedienung einstellbar und/oder steuerbar sind. Sofern ein derartiges Ausführungsbeispiel eines erfindungsgemäßen Vibrators Bestandteil eines Ausführungsbeispiels eines erfindungsgemäßen Sets ist, weist ein solches Ausführungsbeispiel eines erfindungsgemäßen Sets häufig auch eine entsprechende zugehörige Fernbedienungseinrichtung auf. Andererseits kann eine solche Fernbedienung auch über das Internet als nicht von der aktuellen unmittelbaren Nutzerin oder dem aktuellen unmittelbaren Nutzer zu bedienende Fernbedienung ausgebildet sein. Dies ist vor allem im Rahmen der Realisierung von Cyber-Sex-Funktionalitäten bedeutsam, bei denen ein entsprechend eingerichtetes Ausführungsbeispiel des erfindungsgemäßen Vibrators aus der Ferne von einer Person gesteuert wird, welche nicht mit derjenigen Person identisch ist, welche in unmittelbarem körperlichem Kontakt mit dem Vibrator steht.

DE 20 2017 005 314 U1    2018.02.22

**ZITATE ENTHALTEN IN DER BESCHREIBUNG**

*Diese Liste der vom Anmelder aufgeführten Dokumente wurde automatisiert erzeugt und ist ausschließlich zur besseren Information des Lesers aufgenommen. Die Liste ist nicht Bestandteil der deutschen Patent- bzw. Gebrauchsmusteranmeldung. Das DPMA übernimmt keinerlei Haftung für etwaige Fehler oder Auslassungen.*

**Zitierte Patentliteratur**

- US 6350230 B1 [0001, 0007, 0007, 0007]
- DE 102009038448 A1 [0006]
- DE 20119660 U1 [0006]
- WO 2009/087627 A2 [0006]
- EP 2735299 B1 [0007]
- DE 202011104946 U1 [0008]
- DE 202010013764 U1 [0008]
- WO 2009/146840 A1 [0010]
- US 7946977 B2 [0010]

DE 20 2017 005 314 U1   2018.02.22

## Schutzansprüche

1. Vibrator als Sexspielzeug für Erwachsene, wobei der Vibrator eine Spritzeinrichtung zur Simulation einer Ejakulation und eine Zeitsteuerungseinrichtung zur Steuerung des Zeitpunkts des Abspritzens der Spritzeinrichtung aufweist, und wobei die Zeitsteuerungseinrichtung so eingerichtet ist, dass eine Nutzerin bzw. ein Nutzer den Zeitpunkt des gesteuerten Abspritzens der Spritzeinrichtung mittels der Zeitsteuerungseinrichtung wählbar einstellen kann, **dadurch gekennzeichnet,** dass
– der Vibrator ein biegsamer Vibrator ist,
– der Vibrator so eingerichtet ist, dass sowohl eine Basis-Länge als auch eine Basis-Dicke des Vibrators jeweils dauerhaft und jeweils unabhängig voneinander in jeweils mindestens zwei verschiedenen Größen (L1, L2; B1, B2) einstellbar sind,
– der Vibrator so eingerichtet ist, dass er eine Stoßfunktion aufweist, die von der Nutzerin bzw. dem Nutzer des Vibrators wahlweise ein- bzw. ausgeschaltet werden kann, wobei die Stoßgeschwindigkeit und/oder die Stoßfrequenz in mindestens zwei Stufen, vorzugsweise in drei Stufen, wählbar einstellbar ist bzw. sind, und
– der Vibrator so eingerichtet ist, dass er wahlweise entweder mit wechselbarer Batterie bzw. mit wechselbarem Akkumulator oder mit Strom-Netzteil zum Anschluss an ein externes Stromnetz betreibbar ist.

2. Vibrator als Sexspielzeug für Erwachsene, wobei der Vibrator eine Spritzeinrichtung zur Simulation einer Ejakulation aufweist und so eingerichtet ist, dass das Abspritzen der Spritzeinrichtung mittels äußeren Drucks auf den Vibrator eingeleitet werden kann, **dadurch gekennzeichnet,** dass
– der Vibrator ein biegsamer Vibrator ist,
– der Vibrator so eingerichtet ist, dass sowohl eine Basis-Länge als auch eine Basis-Dicke des Vibrators jeweils dauerhaft und jeweils unabhängig voneinander in jeweils mindestens zwei verschiedenen Größen (L1, L2; B1, B2) einstellbar sind,
– der Vibrator so eingerichtet ist, dass er eine Stoßfunktion aufweist, die von der Nutzerin bzw. dem Nutzer des Vibrators wahlweise ein- bzw. ausgeschaltet werden kann, wobei die Stoßgeschwindigkeit und/oder die Stoßfrequenz in mindestens zwei Stufen, vorzugsweise in drei Stufen, wählbar einstellbar ist bzw. sind, und
– der Vibrator so eingerichtet ist, dass er wahlweise entweder mit wechselbarer Batterie bzw. mit wechselbarem Akkumulator oder mit Strom-Netzteil zum Anschluss an ein externes Stromnetz betreibbar ist.

3. Vibrator nach Anspruch 1, **dadurch gekennzeichnet,** dass Vibrator ferner so eingerichtet ist, dass das Abspritzen der Spritzeinrichtung auch unabhängig von der Zeitsteuerungseinrichtung mittels äußeren Drucks auf den Vibrator eingeleitet werden kann.

4. Vibrator nach Anspruch 2, **dadurch gekennzeichnet,** dass der Vibrator ferner eine Zeitsteuerungseinrichtung zur Steuerung des Zeitpunkts des Abspritzens der Spritzeinrichtung aufweist, und wobei die Zeitsteuerungseinrichtung so eingerichtet ist, dass eine Nutzerin bzw. ein Nutzer den Zeitpunkt des gesteuerten Abspritzens der Spritzeinrichtung mittels der Zeitsteuerungseinrichtung wählbar einstellen kann und wobei das Abspritzen der Spritzeinrichtung auch unabhängig von der Zeitsteuerungseinrichtung mittels äußeren Drucks auf den Vibrator eingeleitet werden kann.

5. Vibrator nach einem der Ansprüche 1, 3 oder 4, **dadurch gekennzeichnet,** dass die Zeitsteuerungseinrichtung ferner einen Zufallsgenerator aufweist und so eingerichtet ist, dass die Nutzerin bzw. der Nutzer auswählen kann, ob der Zeitpunkt des Abspritzens der Spritzeinrichtung mittels des Zufallsgenerators gesteuert werden soll.

6. Vibrator nach einem der Ansprüche 2 bis 4 oder nach Anspruch 5 in seiner Rückbeziehung auf Anspruch 3 oder auf Anspruch 4, **dadurch gekennzeichnet,** dass der Vibrator zur Verwendung für eine weibliche Nutzerin so eingerichtet und abgestimmt ist, dass der genannte äußere Druck auf den Vibrator zur Einleitung des Abspritzens der Spritzeinrichtung von der Scheidenmuskulatur der Nutzerin, bevorzugterweise während eines Orgasmus' der Nutzerin, aufgebracht wird.

7. Vibrator nach einem der vorhergehenden Ansprüche, gekennzeichnet durch einen wiederaufladbaren Akkumulator welcher mit einem USB- oder Mini-USB-Anschluss zwecks Ladefunktion versehen ist und/oder mit einem USB- oder Mini-USB-Anschluss zwecks Ladefunktion in elektrischer Verbindung steht.

8. Vibrator nach einem der vorhergehenden Ansprüche, gekennzeichnet durch einen induktiv wiederaufladbaren Akkumulator.

9. Vibrator nach einem der vorhergehenden Ansprüche, gekennzeichnet durch eine durch die Nutzerin bzw. den Nutzer aktivierbare und deaktivierbare Minikameraeinrichtung zur Aufzeichnung und/oder Übertragung von Fotos und/oder Videos.

10. Vibrator nach einem der vorhergehenden Ansprüche, gekennzeichnet durch eine in ihrer Ansaugstärke und/oder ihrem Pulsationsrhythmus steuerbare Vakuum-Pumpe zwecks ansaugender und pulsierender Stimulation eines Kitzlers bei einer weiblichen Nutzerin.

11. Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet,** dass der Vibra-

tor mit einer Heizeinrichtung zur gesamten oder teilweisen Erwärmung des Vibrators versehen ist.

12.  Vibrator nach Anspruch 11, **dadurch gekennzeichnet,** dass die Heizeinrichtung eine Infrarot-Heizeinrichtung ist.

13.  Vibrator nach Anspruch 11 oder nach Anspruch 12, **dadurch gekennzeichnet,** dass er so ausgebildet ist, dass die Heizeinrichtung derart regelbar ausgelegt ist, dass mindestens zwei, vorzugsweise mehr als zwei, verschiedene Temperaturen durch die Nutzerin oder durch den Nutzer des Vibrators wählbar eingestellt werden können.

14.  Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet,** dass er als schallgedämpfter Vibrator mit nur geringem Betriebsgeräusch ausgelegt ist und im Betrieb ein Betriebsgeräusch mit einer Lautstärke von nicht mehr als 50 dB erzeugt.

15.  Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet,** dass er so eingerichtet ist, dass seine Basis-Dicke bzw. sein Basis-Durchmesser zwischen 3 cm und 10 cm stufenlos oder in Stufen verstellbar ist.

16.  Vibrator nach Anspruch 15, **dadurch gekennzeichnet,** dass er so eingerichtet ist, dass seine Basis-Dicke bzw. sein Basis-Durchmesser stufenweise, vorzugsweise in Stufen von 0,5 cm oder 1,0 cm, verstellbar ist.

17.  Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet,** dass er so eingerichtet ist, dass seine Basis-Länge zwischen 15 cm und 30 cm stufenlos oder in Stufen verstellbar ist.

18.  Vibrator nach Anspruch 17, **dadurch gekennzeichnet,** dass seine Basis-Länge stufenweise, vorzugsweise in Stufen von 0,5 cm oder 1,0 cm, verstellbar ist.

19.  Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet,** dass sowohl die Basis-Länge als auch die Basis-Dicke des Vibrators jeweils elektrisch oder elektromechanisch verstellbar sind.

20.  Vibrator nach einem der vorhergehenden Ansprüche, gekennzeichnet durch ein Mini-Display (**4**) zur Anzeige der Einstellungen und Funktionen.

21.  Vibrator nach einem der vorhergehenden Ansprüche, gekennzeichnet durch ein Griff- und Bedienteil (**2**) mit Einstelleinrichtungen (**3**) für die verschiedenen Funktionen und Verstellmöglichkeiten des Vibrators.

22.  Vibrator nach Anspruch 21, **dadurch gekennzeichnet,** dass das Griff- und Bedienteil (**2**) auswechselbar ist.

23.  Vibrator nach Anspruch 21 oder nach Anspruch 22, **dadurch gekennzeichnet,** dass das Griff- und Bedienteil (**2**) ganz oder teilweise aus Edelstahl und/oder aus edlem und mit Klarlack versiegeltem Holz besteht, beispielsweise aus Pflaumenholz und/oder aus Kirschholz und/oder aus Apfelholz und/oder aus Mooreichenholz und/oder aus Eichenholz und/oder aus Pinienholz und/oder aus Ebenholz und/oder aus Wüsteneisenholz und/oder aus Birnenbaumholz und/oder aus Schlangenholz und/oder aus Pfefferminzbaumholz und/oder aus Olivenholz und/oder aus Maulbeerbaumholz und/oder aus Essigbaumholz und/oder aus Amarant-Holz und/oder aus Eukalyptusholz und/oder aus Götterbaumholz und/oder aus Mandelbaumholz und/oder aus Bubenga Pomenela.

24.  Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet,** dass er wasserdicht ausgeführt ist, so dass eine Nutzerin oder ein Nutzer ihn in einer Badewanne oder unter einer Dusche verwenden kann.

25.  Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet,** dass er so eingerichtet ist, dass eines mittels eines Kabels und/oder kabellos an ein Telekommunikationsnetzwerk, bevorzugterweise an das Internet, angeschlossen werden kann.

26.  Vibrator nach Anspruch 25, **dadurch gekennzeichnet,** dass er so eingerichtet ist, dass er mittels USB-Anschlusses, bevorzugterweise mittels USB-3.0-Anschlusses, und/oder mittels Mini-USB-Anschlusses, und/oder mittels W-LAN-Anbindung und/oder mittels einer Bluetooth-Schnittstelle an das Telekommunikationsnetzwerk anschließbar ist.

27.  Vibrator nach einem der Ansprüche 25 oder 26, **dadurch gekennzeichnet,** dass er mit einer Cyber-Sex-Funktionalität ausgestattet ist und/oder – sofern er mit einer Kameraeinrichtung versehen ist – so eingerichtet ist, dass er in der Lage ist, Fotos und/oder Videos in das genannte Telekommunikationsnetzwerk einzuspeisen.

28.  Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet,** dass er mit einer Pulsmessungseinrichtung und/oder mit einer Blutdruckmessungseinrichtung versehen ist.

29.  Vibrator nach Anspruch 28, **dadurch gekennzeichnet,** dass er so eingerichtet ist, dass von der Pulsmessungseinrichtung bzw. von der Blutdruckmessungseinrichtung bereitgestellte Messdaten zur

DE 20 2017 005 314 U1   2018.02.22

Steuerung mindestens einer Funktion des Vibrators verwendet werden.

30. Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet, dass** er in Form und Farbe einem männlichen Glied realistisch nachgebildet ist.

31. Vibrator nach Anspruch 30, **dadurch gekennzeichnet, dass** er auch von der Haptik her einem männlichen Glied realistisch nachgebildet ist.

32. Vibrator nach einem der Ansprüche 1 bis 29, **dadurch gekennzeichnet, dass** er in einer grellen, leuchtenden Farbe bzw. Neon-Farbe gehalten ist oder dass sein Äußeres im Vintage- bzw. Scrapbooking-Stil gestaltet ist.

33. Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet, dass** er so eingerichtet ist, dass er in mindestens zwei verschiedenen, bevorzugterweise acht bis zehn verschiedenen, Vibrationsstärken betreibbar ist, zwischen denen die Nutzerin bzw. der Nutzer jeweils frei wählbar umschalten kann.

34. Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet, dass** er mit einem Gleitgelspeicher versehen ist, welcher während des Betriebs des Vibrators eine Vibrator-Oberfläche dauernd oder nach Wahl der Nutzerin oder des Nutzers zeitweise oder dauernd mit Gleitgel versorgt.

35. Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet, dass** er mit einer Speichereinrichtung zur Speicherung und Abgabe von Duft- oder Aromastoffen versehen ist.

36. Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet, dass** er mit einer Audio-Abspieleinrichtung versehen ist, über die beispielsweise romantische oder entspannende Musik abgespielt werden kann.

37. Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet, dass** er so eingerichtet ist, dass die Nutzerin oder der Nutzer wahlweise einstellen kann, dass bei eingeschalteter Stoßfunktion nicht nur ein impulsartiger kurzzeitiger Stoß, sondern gleichzeitig auch eine impulsartige kurzzeitige Verdickung des Vibrators erfolgt.

38. Vibrator nach einem der vorhergehenden Ansprüche, gekennzeichnet durch eine Umschnalleinrichtung, mit deren Hilfe sich eine Person den Vibrator zu sich hin gewandt gerichtet und/oder von sich abgewandt gerichtet anschnallen kann, wobei die genannte Umschnalleinrichtung entweder eine fest an dem Vibrator montierte Umschnalleinrichtung ist oder so ausgebildet ist, dass sie von der Nutzerin bzw.

dem Nutzer wahlweise an den Vibrator anmontierbar und auch wieder von dem Vibrator abmontierbar ist.

39. Vibrator nach einem der vorhergehenden Ansprüche, **dadurch gekennzeichnet, dass** er so eingerichtet ist, dass seine Funktionen ganz oder teilweise, ausschließlich oder nicht ausschließlich mittels einer kabelgebundenen und/oder kabellosen Fernbedienung einstellbar und/oder steuerbar sind.

40. Set, welches einen Vibrator nach einem der vorhergehenden Ansprüche aufweist und welches ferner eine Minikameraeinrichtung zur Montage auf den Vibrator aufweist.

41. Set nach Anspruch 40, **dadurch gekennzeichnet, dass** das Set ferner einen Selfie-Stick aufweist, mit dessen Hilfe die Minikameraeinrichtung auf den Vibrator montierbar ist.

42. Set nach Anspruch 41, **dadurch gekennzeichnet, dass** der Selfie-Stick biegsam ist.

43. Set nach einem der Ansprüche 40 bis 42, **dadurch gekennzeichnet, dass** die Minikameraeinrichtung zur Aufnahme und/oder zum Übertragen von Fotos und/oder Videos eingerichtet ist.

44. Set nach einem der Ansprüche 40 bis 43, **dadurch gekennzeichnet, dass** die Minikameraeinrichtung die Minikameraeinrichtung mit UHD-Auflösung ist.

45. Set nach einem der Ansprüche 40 bis 44, **dadurch gekennzeichnet, dass** das Set ferner eine SD-Karte, vorzugsweise eine Nano-SD-Karte und/oder eine Micro-SD-Karte, zum Speichern von Fotos und/oder Videos aufweist.

46. Set, welches einen Vibrator nach einem der Ansprüche 1 bis 39 aufweist und welches ferner eine in ihrer Ansaugstärke und/oder ihrem Pulsationsrhythmus steuerbare Vakuum-Pumpe zwecks ansaugender und pulsierender Stimulation eines Kitzlers bei einer weiblichen Nutzerin aufweist, wobei die genannte Vakuum-Pumpe auf den Vibrator aufsetzbar ist.

47. Set nach einem der Ansprüche 40 bis 45, **dadurch gekennzeichnet, dass** das Set ferner eine in ihrer Ansaugstärke und/oder ihrem Pulsationsrhythmus steuerbare Vakuum-Pumpe zwecks ansaugender und pulsierender Stimulation eines Kitzlers bei einer weiblichen Nutzerin aufweist, wobei die genannte Vakuum-Pumpe auf den Vibrator aufsetzbar ist.

48. Set nach Anspruch 46 oder nach Anspruch 47, **dadurch gekennzeichnet, dass** die genannte Vakuum-Pumpe mit einer Heizeinrichtung zur Erwärmung der Vakuum-Pumpe versehen ist.

DE 20 2017 005 314 U1    2018.02.22

49. Set nach Anspruch 48, **dadurch gekennzeichnet,** dass die genannte Heizeinrichtung zur Erwärmung der Vakuum-Pumpe derart regelbar ausgelegt ist, dass mit ihr mindestens zwei, vorzugsweise mehr als zwei, verschiedene Temperaturen durch die Nutzerin oder durch den Nutzer des Vibrators wählbar eingestellt werden können.

50. Set, welches einen Vibrator nach einem der Ansprüche 1 bis 39 aufweist und welches ferner eine Umschnalleinrichtung aufweist, mit deren Hilfe sich eine Person den Vibrator zu sich hin gewandt gerichtet und/oder von sich abgewandt gerichtet anschnallen kann, wobei die genannte Umschnalleinrichtung so ausgebildet ist, dass sie von der Nutzerin bzw. dem Nutzer wahlweise an den Vibrator anmontierbar und auch wieder von dem Vibrator abmontierbar ist.

51. Set nach einem der Ansprüche 40 bis 49, **dadurch gekennzeichnet,** dass das Set ferner eine Umschnalleinrichtung aufweist, mit deren Hilfe sich eine Person den Vibrator zu sich hin gewandt gerichtet und/oder von sich abgewandt gerichtet anschnallen kann, wobei die genannte Umschnalleinrichtung so ausgebildet ist, dass sie von der Nutzerin bzw. dem Nutzer wahlweise an den Vibrator anmontierbar und auch wieder von dem Vibrator abmontierbar ist.

52. Set nach einem der Ansprüche 40 bis 51, **dadurch gekennzeichnet,** dass das Set einen Ersatz-Akkumulator und/oder ein Netzteil für den Betrieb des Vibrators aufweist.

53. Set nach einem der Ansprüche 40 bis 52, **dadurch gekennzeichnet,** dass das Set eine Akkumulator-Ladestation aufweist.

54. Set nach Anspruch 53, **dadurch gekennzeichnet,** dass die Ladestation eine induktive Akkumulator-Ladestation ist.

55. Set nach einem der Ansprüche 40 bis 54, **dadurch gekennzeichnet,** dass das Set ferner eine Pulsmessungseinrichtung zum wirksamen Verbinden mit dem Vibrator und/oder eine Blutdruckmessungseinrichtung zum wirksamen Verbinden mit dem Vibrator aufweist, wobei der Vibrator so eingerichtet ist, dass von der Pulsmessungseinrichtung bzw. von der Blutdruckmessungseinrichtung bereitgestellte Messdaten zur Steuerung mindestens einer Funktion des Vibrators verwendet werden können.

56. Set nach einem der Ansprüche 40 bis 55, **dadurch gekennzeichnet,** dass das Set ferner eine kabelgebundene und/oder kabellose Fernbedienungseinrichtung aufweist und der Vibrator so eingerichtet ist, dass seine Funktionen ganz oder teilweise, ausschließlich oder nicht ausschließlich mittels dieser Fernbedienungseinrichtung einstellbar und/oder steuerbar sind.

57. Set nach einem der Ansprüche 40 bis 56, **dadurch gekennzeichnet,** dass es einen weiteren Vibrator oder mehrere weitere Vibratoren aufweist.

58. Set nach Anspruch 57, **dadurch gekennzeichnet,** dass auch der genannte weitere Vibrator oder mindestens einer der genannten weiteren Vibratoren ein Vibrator nach einem der Ansprüche 1 bis 40 ist.

59. Set nach einem der Ansprüche 40 bis 58, **dadurch gekennzeichnet,** dass es mindestens zwei verschiedene, an dem jeweiligen Vibrator bzw. an den jeweiligen Vibratoren auswechselbare Griff- und Bedienteile (2) mit Einstelleinrichtungen (3) für die verschiedenen Funktionen und Verstellmöglichkeiten des Vibrators bzw. der Vibratoren aufweist.

60. Set nach einem der Ansprüche 40 bis 59, **dadurch gekennzeichnet,** dass das Set einen Koffer, vorzugsweise einen Aluminiumkoffer, oder eine Kiste, vorzugsweise eine Holzkiste, oder eine Schachtel, vorzugsweise eine Holzschachtel, zur Verpackung der jeweils in den jeweiligen Ansprüchen 40 bis 59 genannten Teile des Sets aufweist.

61. Set nach Anspruch 60, **dadurch gekennzeichnet,** dass der genannte Koffer oder die genannte Kiste oder die genannte Schachtel innen mit Samt ausgeschlagen ist.

Es folgen 5 Seiten Zeichnungen

DE 20 2017 005 314 U1    2018.02.22

**Anhängende Zeichnungen**



Fig. 1

DE 20 2017 005 314 U1    2018.02.22



Fig. 2



Fig. 3

DE 20 2017 005 314 U1    2018.02.22

20/22

DE 20 2017 005 314 U1    2018.02.22



Fig. 4



Fig. 5

# Bibliographic Data

Application No:     18/119,859

Foreign Priority claimed:     ● Yes    ○ No

35 USC 119 (a-d) conditions met:     ☐ Yes    ☑ No        ☐ Met After Allowance

Verified and Acknowledged:     /THADDEUS B COX/

Examiner's Signature        Initials

Title:     PENIS MASSAGER

| FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 03/10/2023 **RULE** | 600 | 3791 | 22A1385US |

**APPLICANTS**

Junpeng Wu, Shenzhen, CHINA

**INVENTORS**

Tenghui Huang, Dongguan, CHINA

Junpeng Wu, Shenzhen, CHINA

Zhixu Yang, Dongguan, CHINA

**CONTINUING DATA**

**FOREIGN APPLICATIONS**

CHINA CN202320430037.2 03/08/2023

**IF REQUIRED, FOREIGN LICENSE GRANTED**

03/27/2023

**** SMALL ENTITY ****

**STATE OR COUNTRY**

CHINA

**ADDRESS**

Kevin P. Chen

255 Riverdale Dr

Fort Lee, NJ 07024

UNITED STATES

**FILING FEE RECEIVED**

$2,400

## PE2E SEARCH – Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|-------|------|--------------|-----|------------------|---------|---------------------|------------|
| L1 | 46 | (Artificial Intelligence) Similar to: Unpublished Application # with 0 CPC Selections and 0 Text Selections Text: (TW-201436784-A OR RU-2015142507-A OR DE-102013102280-A1 OR AU-2014224947-B2 OR KR-20150129763-A OR EP-2964179-B1 OR US-11419783-B2 OR KR-102245754-B1 OR JP-2016508802-A OR US-20160008214-A1 OR ES-2682676-T3 OR CA-2901794-A1 OR AU-2014224947-A1 OR WO-2014135301-A1 OR EP-2964179-A1 OR CA-2901794-C OR CN-105120822-A OR RU-2649524-C2 OR US-10492983-B1 OR US-20190350800-A1 OR US-20210186798-A1 OR DE-7520052-U OR US-20190231637-A1 OR US-10195105-B2 OR WO-2017011300-A1 OR EP-3319550-A1 OR TW-201707669-A OR US-RE49249-E OR US-20230095513-A1 OR US-20200315909-A1 OR RU-2750656-C1 OR AU-2018278239-A1 OR CN-111148495-A OR WO-2018220120-A1 OR WO-2014127531-A1 OR JP-2010125335-A OR US-8409120-B2 OR US-20100152631-A1 OR WO-2015067836-A1 OR DE-102009051639-A1 OR DE-202009016535-U1 OR US-20220313542-A1 OR CA-2797665-C OR EP-2191805-A1 OR WO-2014043878-A1 | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO)) | OR | ON | ON | 2023/05/09 11:55 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | OR CN-104812354-A OR US-20230083660-A1 OR US-20230012669-A1 OR DE-202021105756-U1 OR EP-2191805-B1).did. | | | | | |
| L2 | 3359 | A61H19/32.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 11:56 AM |
| L3 | 3317 | 2 AND @ad<"20230308" | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 11:57 AM |
| L4 | 0 | 3 AND pogo | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:07 PM |
| L5 | 7 | 3 AND (pin WITH (spring$load$ OR | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, | OR | ON | ON | 2023/05/09 12:07 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | (spring near2 load$))) | AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | |
| L6 | 1 | 3 AND (pin SAME plunger SAME barrel SAME spring) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:08 PM |
| L7 | 14842 | A61H19$.cpc. OR A61H21$.cpc. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:08 PM |
| L8 | 14493 | 7 AND @ad<"20230308" | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, | OR | ON | ON | 2023/05/09 12:08 PM |

| | | | SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB | | | | |
|---|---|---|---|---|---|---|---|
| L9 | 10 | 8 AND pogo | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | ON | 2023/05/09 12:08 PM |
| L10 | 27 | 8 AND (pin WITH (spring$load$ OR (spring near2 load$))) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | ON | 2023/05/09 12:09 PM |
| L11 | 80 | 3 AND ((power$ OR batter$) SAME hous$ SAME (board OR "circuit board" OR PCB)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | ON | 2023/05/09 12:15 PM |
| L12 | 8 | 3 AND ((power$ OR batter$) SAME hous$ SAME (board OR "circuit board" OR | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, | OR | ON | ON | 2023/05/09 12:19 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | PCB)) AND vibrat$ AND ((sleev$ OR sheath$) WITH penis) AND ((sleev$ OR sheath$) WITH (detach$ OR removab$)) | CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | |
| L13 | 2 | "20180140502".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:22 PM |
| L14 | 12 | 8 AND ((power$ OR batter$) SAME hous$ SAME (board OR "circuit board" OR PCB)) AND vibrat$ AND ((sleev$ OR sheath$) WITH penis) AND ((sleev$ OR sheath$) WITH (detach$ OR removab$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:46 PM |
| L15 | 57 | 8 AND ((power$ OR batter$) SAME hous$ SAME (board OR "circuit board" OR PCB)) AND vibrat$ AND ((sleev$ OR sheath$) WITH (detach$ OR removab$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, | OR | ON | ON | 2023/05/09 12:47 PM |

| | | | WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | |
|---|---|---|---|---|---|---|---|
| L16 | 13 | 8 AND ((power$ OR batter$) SAME hous$ SAME (board OR "circuit board" OR PCB)) AND vibrat$ AND ((insert$ OR accommodat$ OR receiv$) WITH penis) AND ((sleev$ OR sheath$) WITH (detach$ OR removab$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:49 PM |
| L17 | 27 | 8 AND (power$ OR batter$) AND (board OR "circuit board" OR PCB) AND vibrat$ AND ((insert$ OR accommodat$ OR receiv$) WITH penis) AND ((sleev$ OR sheath$) WITH (detach$ OR removab$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:50 PM |
| L18 | 59 | 3 AND vibrat$ AND ((sleev$ OR sheath$) WITH penis) AND ((sleev$ OR sheath$) WITH (detach$ OR removab$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/09 12:56 PM |
| L19 | 424 | 3 AND ((sleev$ OR sheath$) WITH penis) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, | OR | ON | ON | 2023/05/09 01:41 PM |

| | | | HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB | | | | |
|---|---|---|---|---|---|---|---|
| L20 | 41 | 3 AND ((sleev$ OR sheath$) WITH penis) AND ((sleev$ OR sheath$) WITH narrow$) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | ON | 2023/05/09 01:41 PM |
| L21 | 8 | 3 AND ((sleev$ OR sheath$) WITH penis) AND ((sleev$ OR sheath$) WITH (wide OR width)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | ON | ON | 2023/05/09 01:42 PM |
| L22 | 44 | 3 AND (handle WITH (button OR key)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; | OR | ON | ON | 2023/05/09 01:45 PM |

| | | | IBM_TDB) | | | | |
|---|---|---|---|---|---|---|---|
| L23 | 121 | 3 AND handles | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | OFF | ON | 2023/05/09 01:46 PM |
| L24 | 14 | 3 AND handles AND ((handle OR handles) WITH (button$ OR key$ OR interface$ OR touch$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | OFF | ON | 2023/05/09 01:54 PM |
| L25 | 124 | 8 AND handles AND ((handle OR handles) WITH (button$ OR key$ OR interface$ OR touch$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | OFF | ON | 2023/05/09 01:54 PM |
| L26 | 2 | "20180140502".pn. | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, | OR | ON | ON | 2023/05/10 02:26 PM |

| | | | MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | |
|---|---|---|---|---|---|---|---|
| L27 | 978 | 8 AND (vibrat$ WITH (remov$ OR detach$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/10 02:34 PM |
| L28 | 206 | 8 AND (vibrat$ WITH (sleev$ OR sheath$)) AND ((sleev$ OR sheath$) WITH (remov$ OR detach$)) | (US-PGPUB; USPAT; USOCR; FIT (AP, AT, AU, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, MC, MD, MY, NL, NO, NZ, OA, PH, PL, PT, RO, RS, RU, SE, SG, SI, SK, SU, TH, TN, TR, TW, UA, VN, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/05/10 02:39 PM |

## PE2E SEARCH - Search History (Interference)

There are no Interference searches to show.

Doc Code: PD.REQ.RETR
Document Description: Request for USPTO to retrieve priority docs

PTO/SB/38 (08-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# Request to Retrieve Electronic Priority Application(s)

| COMPLETE IF KNOWN | |
|---|---|
| Application Number | 18/119,859 |
| Filing Date | 2023-03-10 |
| First Named Inventor | Tenghui Huang |
| Art Unit | Not Yet Assigned |
| Examiner Name | Not Yet Assigned |
| Attorney Docket Number | 22A1385US |

Send completed form to: Commissioner for Patents
P.O. Box 1450, Alexandria, VA 22313-1450

Pursuant to 37 CFR 1.55(i), the undersigned hereby requests that the USPTO retrieve an electronic copy of each of the following foreign applications for which priority has been claimed under 35 U.S.C. 119(a)-(d) from a foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement. This Request must be submitted:
- within the later of sixteen months from the filing date of the prior foreign application or four months from the actual filing date of an application under 35 U.S.C. 111(a),
- within four months from the later of the date of commencement (37 CFR 1.491(a)) or the date of the initial submission under 35 U.S.C. 371 of an application entering the national stage under 35 U.S.C. 371, or
- with a petition under 37 CFR 1.55(e) or (f).

**☐ OPTION A**

**Please retrieve the priority application identified in Column C**, a certified copy of which is contained in the EP or JP application identified in Columns A and B:

| A | B | | | C | | |
|---|---|---|---|---|---|---|
| Code for Participating Office (EP or JP only) | Application containing the non-participating priority application | | | Non-participating priority application to be retrieved | | |
| | App. No. | Filing Date | Access Code | Country Code | App. No. | |
| 1 | | | | | | |

**☑ OPTION B**

This Request may be used for the infrequent circumstance when a claim for priority to an application filed in a participating foreign intellectual property office was made prior to that foreign intellectual property office becoming a participating foreign intellectual property office.

**Please retrieve the priority application identified in Columns A and B:**

| A | B | | |
|---|---|---|---|
| Code for Participating Office (e.g., EP) or WIPO DAS Depositing Office (e.g., AU, BR, CN, DK, EA, EE, ES, FI, GB, IB, IN, JP, KR, MA, NL, NZ, SE) | Application to be retrieved | | |
| | App. No. | Filing Date | Access Code (for WIPO DAS Depositing Office) |
| 1 | CN | 202320430037.2 | 2023-03-08 | C973 |
| 2 | | | | |

The USPTO will not attempt to retrieve the identified priority application(s) unless an identical claim for foreign priority to the application identified above is made pursuant to 37 CFR 1.55(d) or a petition is granted under 37 CFR 1.55(e) or (f). Applicants are advised to consult Private PAIR (accessed through www.uspto.gov) to assure that the retrieval has been successful. The applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period set forth in 37 CFR 1.55(g)(1).

**I hereby declare that I have the authority to grant access to the above-identified foreign application(s).**

| /Kevin P. Chen/ | 05/09/2023 |
|---|---|
| Signature | Date |
| Kevin P. Chen | (201) 793-3535 |
| Printed or Typed Name | Telephone Number |
| Patent Attorney | 76206 |
| Title | Registration Number, if applicable |

This collection of information is required by 37 CFR 1.55(d). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 8 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 47979279 |
| **Application Number:** | 18119859 |
| **International Application Number:** | |
| **Confirmation Number:** | 2067 |
| **Title of Invention:** | PENIS MASSAGER |
| **First Named Inventor/Applicant Name:** | Tenghui  Huang |
| **Customer Number:** | 176174 |
| **Filer:** | Kevin P. Chen |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 22A1385US |
| **Receipt Date:** | 10-MAY-2023 |
| **Filing Date:** | 10-MAR-2023 |
| **Time Stamp:** | 11:29:47 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Request for USPTO to retrieve priority docs | 22A1385US-Retrieval.pdf | 1807801<br>433de388d7cb773dfd3347e52c89801fe971f5af | no | 2 |

**Warnings:**

| Information: | | |
|---|---|---|
| | **Total Files Size (in bytes):** | 1807801 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/119,859 | 03/10/2023 | Tenghui Huang | 22A1385US | 2067 |

176174        7590        04/21/2023

Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 04/21/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

kckclaw@yahoo.com
kevchen888@yahoo.com

PTOL-90A (Rev. 04/07)

| **Decision Granting Request for Prioritized Examination (Track I)** | **Application No.** 18/119,859 | **Applicant(s)** Huang et al. | |
|---|---|---|---|
| | **Examiner** FIKIRTE A GEREMEW | **Art Unit** OMBL | **AIA (FITF) Status** Yes |

1. THE REQUEST FILED <u>10 March 2023</u> IS **GRANTED** .

    The above-identified application has met the requirements for prioritized examination
    A.　　☑ for an original nonprovisional application (Track I).
    B.　　☐ for an application undergoing continued examination (RCE).

2. **The above-identified application will undergo prioritized examination**. The application will be accorded special status throughout its entire course of prosecution until one of the following occurs:

    A.　　filing a **petition for extension of time** to extend the time period for filing a reply;

    B.　　filing an **amendment to amend the application to contain more than four independent claims, more than thirty total claims** , or a multiple dependent claim;

    C.　　filing a **request for continued examination** ;

    D.　　filing a notice of appeal;

    E.　　filing a request for suspension of action;

    F.　　mailing of a notice of allowance;

    G.　　 mailing of a final Office action;

    H.　　completion of examination as defined in 37 CFR 41.102; or

    I.　　abandonment of the application.

    Telephone inquiries with regard to this decision should be directed to FIKIRTE GEREMEW at (703) 756-1930. In his/her absence, calls may be directed to Petition Help Desk at (571) 272-3282.

| /FIKIRTE A GEREMEW/ PROGRAM SUPPORT ASSISTANT, OMBL | |
|---|---|

U.S. Patent and Trademark Office
PTO-2298 (Rev. 02-2012)



## UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 18/119,859 | 03/10/2023 | | 664 | 22A1385US | 20 | 1 |

**CONFIRMATION NO. 2067**

176174
Kevin P. Chen
255 Riverdale Dr
Fort Lee, NJ 07024

**FILING RECEIPT**

OC000000055373345

Date Mailed: 03/28/2023

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**

Tenghui Huang, Dongguan, CHINA;
Junpeng Wu, Shenzhen, CHINA;
Zhixu Yang, Dongguan, CHINA;

**Applicant(s)**

Junpeng Wu, Shenzhen, CHINA;

**Power of Attorney:** The patent practitioners associated with Customer Number 176174

**Domestic Applications for which benefit is claimed - None.**
*A proper domestic benefit claim must be provided in an Application Data Sheet in order to constitute a claim for domestic benefit. See 37 CFR 1.76 and 1.78.*

**Foreign Applications** (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)
CHINA 202320430037.2 03/08/2023 No Access Code Provided

**Permission to Access Application via Priority Document Exchange: Yes**

**Permission to Access Search Results: Yes**

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 03/27/2023

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 18/119,859**

**Projected Publication Date:** 09/12/2024

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

      PENIS MASSAGER

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 18/119,859 |

### APPLICATION AS FILED - PART I

| | (Column 1) | (Column 2) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE($) | FEE($) | | RATE($) | FEE($) |
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 64 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 280 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 320 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 20 minus 20 = | * 0 | x = | 0 | OR | x = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 1 minus 3 = | * 0 | x = | 0 | | x = | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0 | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 664 | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE($) | ADDITIONAL FEE($) | | RATE($) | ADDITIONAL FEE($) |
| AMENDMENT A | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE($) | ADDITIONAL FEE($) | | RATE($) | ADDITIONAL FEE($) |
| AMENDMENT B | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

Doc Code: PA..
Document Description:  Power of Attorney

PTO/AIA/82A (07-13)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form. If neither form PTO/AIA/82A nor form PTO/AIA/82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| Application Number | |
|---|---|
| Filing Date | |
| First Named Inventor | Tenghui Huang |
| Title | PENIS MASSAGER |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | 22A1385US |

## SIGNATURE of Applicant or Patent Practitioner

| Signature | /Kevin P. Chen/ | | Date (Optional) | |
|---|---|---|---|---|
| Name | Kevin P. Chen | | Registration Number | 76206 |
| Title (if Applicant is a juristic entity) | | | | |
| Applicant Name (if Applicant is a juristic entity) | | | | |

NOTE: This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

✔ *Total of ___1___ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
| | |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[✓] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above: | 176174 |

OR

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[✓] The address associated with the above-mentioned Customer Number

OR

[ ] The address associated with Customer Number: | |

OR

| [ ] Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | |
| Telephone | Email |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

| |
|---|

[✓] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[ ] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

### SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | *Junpeng Wu* | Date (Optional) | |
|---|---|---|---|
| Name | Junpeng Wu | | |
| Title | | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[✓] Total of    1    forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/AIA/82C (07-13)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## POWER OF ATTORNEY BY APPLICANT

No more than ten (10) patent practitioners total may be appointed as set forth below by name and registration number. This page need not be submitted if appointing the Patent Practitioner(s) associated with a Customer Number (see form PTO/AIA/82B):

| Name | Registration Number |
|------|---------------------|
|      |                     |
|      |                     |
|      |                     |
|      |                     |
|      |                     |
|      |                     |
|      |                     |
|      |                     |

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

Doc Code: TRACK1.REQ
Document Description: TrackOne Request

PTO/AIA/424 (04-14)

# CERTIFICATION AND REQUEST FOR PRIORITIZED EXAMINATION
## UNDER 37 CFR 1.102(e) (Page 1 of 1)

| First Named Inventor: | Tenghui Huang | Nonprovisional Application Number (if known): | |
|---|---|---|---|
| Title of Invention: | PENIS MASSAGER | | |

**APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS PRIORITIZED EXAMINATION FOR THE ABOVE-IDENTIFIED APPLICATION.**

1. The processing fee set forth in 37 CFR 1.17(i)(1) and the prioritized examination fee set forth in 37 CFR 1.17(c) have been filed with the request. The publication fee requirement is met because that fee, set forth in 37 CFR 1.18(d), is currently $0. The basic filing fee, search fee, and examination fee are filed with the request or have been already been paid. I understand that any required excess claims fees or application size fee must be paid for the application.

2. I understand that the application may not contain, or be amended to contain, more than four independent claims, more than thirty total claims, or any multiple dependent claims, and that any request for an extension of time will cause an outstanding Track I request to be dismissed.

3. The applicable box is checked below:

   **I.    ☑  Original Application (Track One) - Prioritized Examination under § 1.102(e)(1)**

   i.  (a) The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a). This certification and request is being filed with the utility application via EFS-Web.
   ---OR---
   (b) The application is an original nonprovisional plant application filed under 35 U.S.C. 111(a). This certification and request is being filed with the plant application in paper.

   ii.  An executed inventor's oath or declaration under 37 CFR 1.63 or 37 CFR 1.64 for each inventor, **or** the application data sheet meeting the conditions specified in 37 CFR 1.53(f)(3)(i) is filed with the application.

   **II.    ☐  Request for Continued Examination - Prioritized Examination under § 1.102(e)(2)**

   i.  A request for continued examination has been filed with, or prior to, this form.
   ii.  If the application is a utility application, this certification and request is being filed via EFS-Web.
   iii.  The application is an original nonprovisional utility application filed under 35 U.S.C. 111(a), or is a national stage entry under 35 U.S.C. 371.
   iv.  This certification and request is being filed prior to the mailing of a first Office action responsive to the request for continued examination.
   v.  No prior request for continued examination has been granted prioritized examination status under 37 CFR 1.102(e)(2).

| Signature /Kevin P. Chen/ | Date 03/10/2023 |
|---|---|
| Name (Print/Typed) Kevin P. Chen | Practitioner Registration Number 76206 |

***Note:*** *This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required.*

☑ *Total of __1__ forms are submitted.

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent.  Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent.  If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a).  Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract.  Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906.  Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive.  Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151.  Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | PENIS MASSAGER |
| **First Named Inventor/Applicant Name:** | Tenghui Huang |
| **Filer:** | Kevin P. Chen |
| **Attorney Docket Number:** | 22A1385US |

Filed as Small Entity

**Filing Fees for**  Track I Prioritized Examination - Nonprovisional Application under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| UTILITY FILING FEE (ELECTRONIC FILING) | 4011 | 1 | 64 | 64 |
| UTILITY SEARCH FEE | 2111 | 1 | 280 | 280 |
| UTILITY EXAMINATION FEE | 2311 | 1 | 320 | 320 |
| REQUEST FOR PRIORITIZED EXAMINATION | 2817 | 1 | 1680 | 1680 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| PUBL. FEE- EARLY, VOLUNTARY, OR NORMAL | 1504 | 1 | 0 | 0 |
| PROCESSING FEE, EXCEPT PROV. APPLS. | 2830 | 1 | 56 | 56 |

| | | | | |
|---|---|---|---|---|
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | **Total in USD ($)** | | | **2400** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 47661559 |
| **Application Number:** | 18119859 |
| **International Application Number:** | |
| **Confirmation Number:** | 2067 |
| **Title of Invention:** | PENIS MASSAGER |
| **First Named Inventor/Applicant Name:** | Tenghui  Huang |
| **Customer Number:** | 176174 |
| **Filer:** | Kevin P. Chen |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 22A1385US |
| **Receipt Date:** | 10-MAR-2023 |
| **Filing Date:** | |
| **Time Stamp:** | 06:55:40 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $2400 |
| RAM confirmation Number | E202330756086802 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal of New Application | 22A1385US-Transmittal.pdf | 1603395 <br><br> 0963c99f2a4d39e258437496fe8178ea59e6 726d | no | 2 |

**Warnings:**

**Information:**

| 2 | Application Data Sheet | 22A1385US-ADS.pdf | 4813863 <br><br> 8feeca56025c05d11d8072bef4a651ed31c8 1682 | no | 9 |

**Warnings:**

**Information:**

This is not an USPTO supplied ADS fillable form

| 3 | | 22A1385US-Specification.pdf | 596756 <br><br> 9a4c6a36ed0f243af9d86036345eea3e912e 4622 | yes | 17 |

| | Multipart Description/PDF files in .zip description | | | | |
|---|---|---|---|---|---|
| | Document Description | | Start | End | |
| | Specification | | 1 | 13 | |
| | Claims | | 14 | 16 | |
| | Abstract | | 17 | 17 | |

**Warnings:**

**Information:**

| 4 | Drawings-only black and white line drawings | 22A1385US-Drawings.pdf | 821775 <br><br> 47d680fe5e583392a285e8544a893980f5f3 3309 | no | 13 |

**Warnings:**

**Information:**

| 5 | | 22A1385US-Declaration.pdf | 3840183<br><br>73b6a09178d1f821dbc24cc0daf18f47aaf2<br>809a | yes | 6 |
|---|---|---|---|---|---|

| | | **Multipart Description/PDF files in .zip description** | | | |
|---|---|---|---|---|---|
| | | **Document Description** | **Start** | | **End** |
| | | Oath or Declaration filed | 1 | | 2 |
| | | Oath or Declaration filed | 3 | | 4 |
| | | Oath or Declaration filed | 5 | | 6 |

**Warnings:**

**Information:**

| 6 | Power of Attorney | 22A1385-POA.pdf | 2488790<br><br>056a0c3821d6e0d27a7709459f219c51fad8<br>cdd7 | no | 4 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 7 | Track One Request | 22A1385US-TrackOneRequest.pdf | 1674866<br><br>e4c764c723266f782a8e1acd9960d506522<br>8b4de | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 8 | Fee Worksheet (SB06) | fee-info.pdf | 50726<br><br>419aec16c017c871024701cb6cff78be592c<br>366c | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| **Total Files Size (in bytes):** | 15890354 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/AIA/15 (10-17)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# UTILITY
# PATENT APPLICATION
# TRANSMITTAL

*(Only for new nonprovisional applications under 37 CFR 1.53(b))*

| | |
|---|---|
| Attorney Docket No. | **22A1385US** |
| First Named Inventor | Tenghui Huang |
| Title | **PENIS MASSAGER** |
| Priority Mail Express® Label No. | |

## APPLICATION ELEMENTS

*See MPEP chapter 600 concerning utility patent application contents.*

1. [ ] **Fee Transmittal Form**
   (PTO/SB/17 or equivalent)
2. [✓] **Applicant asserts small entity status.**
   See 37 CFR 1.27
3. [ ] **Applicant certifies micro entity status.** See 37 CFR 1.29.
   Applicant must attach form PTO/SB/15A or B or equivalent.
4. [✓] **Specification** *[Total Pages* 17 *]*
   Both the claims and abstract must start on a new page.
   *(See MPEP § 608.01(a) for information on the preferred arrangement)*
5. [✓] **Drawing(s)** (35 U.S.C. 113) *[Total Sheets* 13 *]*
6. [ ] **Inventor's Oath or Declaration** *[Total Pages* 6 *]*
   *(including substitute statements under 37 CFR 1.64 and assignments serving as an oath or declaration under 37 CFR 1.63(e))*
   a. [✓] Newly executed (original or copy)
   b. [ ] A copy from a prior application (37 CFR 1.63(d))
7. [✓] **Application Data Sheet** * See note below.
   See 37 CFR 1.76 (PTO/AIA/14 or equivalent)
8. [ ] **CD-ROM or CD-R**
   in duplicate, large table, or Computer Program *(Appendix)*
   [ ] Landscape Table on CD
9. [ ] **Nucleotide and/or Amino Acid Sequence Submission**
   *(if applicable, items a. – c. are required)*
   a. [ ] Computer Readable Form (CRF)
   b. [ ] Specification Sequence Listing on:
      i. [ ] CD-ROM or CD-R (2 copies); or
      ii. [ ] Paper
   c. [ ] Statements verifying identity of above copies

**ADDRESS TO:**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**

## ACCOMPANYING APPLICATION PAPERS

10. [✓] **Assignment Papers**
    (cover sheet & document(s))
    Name of Assignee _____
11. [ ] **37 CFR 3.73(c) Statement**    [✓] **Power of Attorney**
    (when there is an assignee)
12. [ ] **English Translation Document**
    (if applicable)
13. [ ] **Information Disclosure Statement**
    (PTO/SB/08 or PTO-1449)
    [ ] Copies of citations attached
14. [ ] **Preliminary Amendment**
15. [ ] **Return Receipt Postcard**
    (MPEP § 503) (Should be specifically itemized)
16. [ ] **Certified Copy of Priority Document(s)**
    (if foreign priority is claimed)
17. [ ] **Nonpublication Request**
    Under 35 U.S.C. 122(b)(2)(B)(i). Applicant must attach form PTO/SB/35 or equivalent.
18. [ ] **Other:** _____
    _____
    _____
    _____
    _____

**\*Note:** (1) Benefit claims under 37 CFR 1.78 and foreign priority claims under 1.55 **must** be included in an Application Data Sheet (ADS).
(2) For applications filed under 35 U.S.C. 111, the application must contain an ADS specifying the applicant if the applicant is an assignee, person to whom the inventor is under an obligation to assign, or person who otherwise shows sufficient proprietary interest in the matter. See 37 CFR 1.46(b).

## 19. CORRESPONDENCE ADDRESS

[✓] The address associated with Customer Number: 176174     **OR**   [ ] Correspondence address below

| | | | | | |
|---|---|---|---|---|---|
| Name | | | | | |
| Address | | | | | |
| City | | State | | Zip Code | |
| Country | | Telephone | | Email | |

| | | | | |
|---|---|---|---|---|
| Signature | /Kevin P. Chen/ | | Date | 03/10/2023 |
| Name (Print/Type) | Kevin P. Chen | | Registration No. (Attorney/Agent) | 76206 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 22A1385US |
| | Application Number | |

| Title of Invention | PENIS MASSAGER |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

**Inventor    1**    [ Remove ]
**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Tenghui | | Huang | |

**Residence Information (Select One)** ○ US Residency  ◉ Non US Residency  ○ Active US Military Service

| City | Dongguan, Guangdong | Country of Residence [i] | CN |
|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 2nd Floor, Building B, Jisheng Factory |
|---|---|
| Address 2 | Lianxing Industrial Park, Shangjie Village, Qishi Town |
| City | Dongguan, Guangdong | State/Province | |
| Postal Code | | Country [i] | CN | |

**Inventor    2**    [ Remove ]
**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Junpeng | | Wu | |

**Residence Information (Select One)** ○ US Residency  ◉ Non US Residency  ○ Active US Military Service

| City | Shenzhen | Country of Residence [i] | CN |
|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | Room 207, 2nd Floor, Liangji Building |
|---|---|
| Address 2 | Donghuan 1st Road, Fukang Community, Longhua Street, Longhua District |
| City | Shenzhen | State/Province | |
| Postal Code | | Country [i] | CN | |

**Inventor    3**    [ Remove ]
**Legal Name**

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 22A1385US |
|---|---|---|
| | Application Number | |

| Title of Invention | PENIS MASSAGER |
|---|---|

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Zhixu | | Yang | |

| **Residence Information (Select One)** | ○ US Residency | ● Non US Residency | ○ Active US Military Service |
|---|---|---|---|

| City | Dongguan, Guangdong | Country of Residence [i] | | CN |
|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 2nd Floor, Building B, Jisheng Factory |
|---|---|
| Address 2 | Lianxing Industrial Park, Shangjie Village, Qishi Town |

| City | Dongguan, Guangdong | State/Province | |
|---|---|---|---|
| Postal Code | | Country [i] | CN |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.    [ Add ]

## Correspondence Information:

Enter either Customer Number or complete the Correspondence Information section below.
For further information see 37 CFR 1.33(a).

☐ An Address is being provided for the correspondence Information of this application.

| Customer Number | 176174 | | |
|---|---|---|---|
| Email Address | patent@shinyip.com | [ Add Email ] | [ Remove Email ] |
| Email Address | kckclaw@yahoo.com | [ Add Email ] | [ Remove Email ] |

## Application Information:

| Title of the Invention | PENIS MASSAGER | | |
|---|---|---|---|
| Attorney Docket Number | 22A1385US | Small Entity Status Claimed | ☒ |
| Application Type | Nonprovisional | | |
| Subject Matter | Utility | | |
| Total Number of Drawing Sheets (if any) | 13 | Suggested Figure for Publication (if any) | 6 |

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 22A1385US |
|---|---|---|
| | Application Number | |

| Title of Invention | PENIS MASSAGER |
|---|---|

## Publication Information:

| ☐ | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
|---|---|
| ☐ | **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing. |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32).
Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ⦿ Customer Number | ◯ US Patent Practitioner | ◯ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 176174 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | | | |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 22A1385US |
| | Application Number | |

| Title of Invention | PENIS MASSAGER |

Remove

| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[j] (if applicable) |
|---|---|---|---|
| 202320430037.2 | CN | 2023-03-08 | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024, OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 22A1385US |
| | Application Number | |

| Title of Invention | PENIS MASSAGER |

## Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**: This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1. Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A. Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2) any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h) (1).

**B. Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2. Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐ A. Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed. If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐ B. Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:** Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 22A1385US |
| | Application Number | |

| Title of Invention | PENIS MASSAGER |

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant    1**

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

[ Clear ]

(●) Assignee         ( ) Legal Representative under  35 U.S.C. 117         ( ) Joint Inventor

( ) Person to whom the inventor is obligated to assign.         ( ) Person who shows sufficient proprietary interest

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor:

If the Applicant is an Organization check here.  ☐

| Prefix | Given Name | Middle Name | Family Name | Suffix |
| | Junpeng | | Wu | |

**Mailing Address Information For Applicant:**

| **Address 1** | Room 207, 2nd Floor, Liangji Building | | |
| Address 2 | Donghuan 1st Road, Fukang Community, Longhua Street, Longhua District | | |
| **City** | Shenzhen | **State/Province** | |
| **Country** | CN | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 22A1385US |
| | Application Number | |

| Title of Invention | PENIS MASSAGER |

**Assignee    1**

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

If the Assignee or Non-Applicant Assignee is an Organization check here.    ☐

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|--------|------------|-------------|-------------|--------|
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | |
|-----------|--|
| Address 2 | |

| City | | State/Province | |
|------|--|----------------|--|
| Country i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.

## Signature:

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **must** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **all** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **all** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| Signature | /Kevin P. Chen/ | | | Date  (YYYY-MM-DD) | 2023-03-10 |
|-----------|-----------------|--|--|--------------------|------------|
| First Name | Kevin | Last Name | Chen | Registration Number | 76206 |

Additional Signature may be generated within this form by selecting the Add button.

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 22A1385US |
| | Application Number | |
| Title of Invention | PENIS MASSAGER | |

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent CooperationTreaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# PENIS MASSAGER

## CROSS-REFERENCE TO RELATED APPLICATIONS

**[0001]** This application claims priority to Chinese Patent Application No. 202320430037.2 filed on Mar. 8, 2023, the entire contents of which are hereby incorporated by reference.

## TECHNICAL FIELD

**[0002]** The present invention relates to the technical field of massage devices, more particularly relates to a penis massager.

## BACKGROUND

**[0003]** Penis massagers are configured for simulating a vaginal environment and providing a massaging stimulation to the male genitalia.   Generally, the penis massager includes a housing, a soft sleeve being movably mounted in a housing, and a vibrating apparatus for driving the sleeve to vibrate during the sexual intercourse.   However, the sleeve needs to be cleaned after use and the vibrating apparatus should be removed from the sleeve during clean the sleeve, which is relatively troublesome.   Further, a vibration range of the vibrating apparatus is relatively narrow, and the stimulation to the user is insufficient, and the user experience is poor.

## SUMMARY

**[0004]** An object of an embodiment of the present invention is to provide a penis massager which is easy to clean and is better in user experience.

**[0005]** In order to achieve the above-mentioned object, the present invention provides a penis massager, including:

a housing provided with an accommodating space, a power source and a circuit board electrically connected to the power source being received in the accommodating space;

a sleeve being removably mounted in the accommodating space, one end of the sleeve being concaved to form an interior volume for accommodating the penis; and

a vibrating apparatus being provided in the sleeve, the vibrating apparatus being electrically connected to the circuit board for generating a mechanical vibration.

**[0006]** Compared with the prior art, the penis massager provided by the present invention has the beneficial effects that: the penis massager of the present invention is configured to set the vibrating apparatus in the sleeve, so that the vibrating apparatus and sleeve are integral, which

makes the vibrating apparatus need not to be removed when the sleeve is cleaned. Thus, the penis massager is more convenient to clean after being used. In addition, the vibrating apparatus arranged in the sleeve, compared with a structure that the vibrating apparatus is arranged externally, is wider and more obvious in vibration range, thereby forming stronger stimulation and improving the user experience.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0007] In order to more clearly explain technical solutions in embodiments of the present invention, accompanying drawings required to be used in the embodiments or the description of the prior art will be briefly introduced below. Apparently, the accompanying drawings in the following description are only some embodiments of the present invention. For those ordinarily skilled in the art, other accompanying drawings may be obtained from these accompanying drawings without paying any creative labor.

[0008] FIG. 1 is a perspective view of a penis massager according to an embodiment of the present invention;

[0009] FIG. 2 is a top view of the penis massager of FIG. 1;

[0010] FIG. 3 is a first schematic partially-exploded view of the penis massager of FIG. 1;

[0011] FIG. 4 is a second schematic partially-exploded view of the penis massager of FIG. 1;

[0012] FIG. 5 is a perspective view of a sleeve of the penis massager of FIG. 4;

[0013] FIG. 6 is an exploded view of the sleeve of FIG. 5;

[0014] FIG. 7 is a sectional view of the sleeve of FIG. 5;

[0015] FIG. 8 is a perspective view of the sleeve of from another aspect;

[0016] FIG. 9 is a perspective view of a movable cabin of the penis massager of FIG. 4;

[0017] FIG. 10 is an exploded view of the movable cabin of FIG. 9;

[0018] FIG. 11 is a side view of the movable cabin of FIG. 9;

[0019] FIG. 12 is a schematic, assembled view of the sleeve and the movable cabin; and

[0020] FIG. 13 is a schematic view showing an operation of removing the sleeve from the movable cabin.

## DESCRIPTION OF THE  EMBODIMENTS

[0021] In order to make technical problems, technical solutions and beneficial effects to be solved in the present invention clearer, the present invention will be further described below in

detail in conjunction with accompanying drawings and embodiments. It should be understood that specific embodiments described herein are only used to explain the present invention and not to limit the present invention.

[0022] It should be noted that when an element is referred to as "fixed to" or "arranged on" another element, it can be directly or indirectly on another element. When an element is referred to as "connected to" another element, it can be directly or indirectly connected to another element.

[0023] It should be understood that the orientational or positional relationship indicated by terms "length", "width", "up", "down", "front", "back", "left", "right", "vertical", "horizontal", "top", "bottom", "inside", "outside", and the like is based on the orientational or positional relationship shown in the accompanying drawings, and is only for the sake of describing the present invention and simplifying the description instead of indicating or implying that the apparatus or element referred to must have a specific orientation, and must be constructed and operated in a specific orientation, so it cannot be understood as a limitation of the present invention.

[0024] Also, terms "first" and "second" are only used for describing purposes, and cannot be understood as indicating or implying relative importance or implying the number of technical features indicated. Therefore, features defined with "first" and "second" can explicitly or implicitly include one or more of these features. In the description of the present invention, "a plurality of" means two or more, unless otherwise specified.

[0025] With reference to FIG. 1 to FIG. 4 together, a penis massager provided by an embodiment of the present invention is shown. The penis massager includes a housing 10 and a sleeve 20. Preferably, the sleeve 20 is made of soft material, such as soft rubber. The housing 10 is provided with an accommodating space 110, and a power source 120 and a circuit board 130 are arranged in the accommodating space 110. The circuit board 130 is electrically connected to the power source 120. The sleeve 20 is removably mounted in the accommodating space 110. One end of the sleeve 20 is concaved inwards to form an interior volume 210 for accommodating the penis. An opening 201 communicating with the interior volume 210 is formed on a front end of the sleeve 20 for inserting of the penis therein, and a rear end of the sleeve 20 is closed. The sleeve 20 is provided with a plurality of bulges on an inner wall surface of the interior volume 210 to enhance massage to the penis.

[0026] The housing 10 includes a top housing 140, a bottom housing 141 and an end cover 142. The top housing 140 and bottom housing 141 are connected to each other and cooperatively form an outer housing which encircles the opening at the front end, and the end

cover 142 covers the opening of the outer housing.   When the end cover 142 is opened, the opening 201 in the front end of the sleeve 20 is exposed out of the outer housing.   An aperture 143 for picking-and-placing the sleeve 20 is defined in the top of the top housing 140, and a top cover 150 is removably connected to the aperture 143.   The top cover 150 is in snap-fit connection with the top housing 140, and an avoidance slot 145 for facilitating detaching of the top cover 150 from the top housing 140 is defined in a top surface of the top housing 140.   An fixing member 220 is mounted at a position close to a front end of the sleeve 20, and the fixing member 220 may be held and rotate downwards after the top housing 140 is taken out of the top cover 150, so that the sleeve 20 may be pulled out of the housing 10,.

[0027]  With further reference to FIG. 5 to FIG. 7, a vibrating apparatus 30 is provided in the sleeve 20.   The vibrating apparatus 30 may be specifically arranged in a side wall of the sleeve 20 and is close to a rear end of the sleeve 20.   The vibrating apparatus 30 may also be arranged on other positions of the sleeve 20, such as the top of the sleeve 20.   The vibrating apparatus 30 may be a motor 31, which is electrically connected to the circuit board 130 and is used for generating a mechanical vibration to drive the sleeve 20 to vibrate together.

[0028]  In the present embodiment, the motor 31 is embedded in the side wall of the sleeve 20. During production, the motor 31 and the sleeve 20 are integrally molded by injection to form an integral structure.   Thus, the penis massager after being used may be cleaned without removing the motor 31 from the sleeve 20, facilitating cleaning operation.   At the same time, by means of the integral structure that the vibrating apparatus 30 is embedded in the side wall of the sleeve 20, the sleeve 20 is wider in vibration range and more obvious in vibration effect, and thus the user experience is improved.

[0029]  With reference to FIG. 3 and FIG. 4, a partition plate 113 is arranged in the housing 10 and separates the accommodating space 110 into a first space 111 and a second space 112.   The sleeve 20 is located in the first space 111, and the power source 120 and the circuit board 130 are located in the second space 112.   The top housing 140 of the housing 10 is provided with a control panel 170 which is electrially connected to the circuit board 130, and corresponding functions of the penis massager may be started or stopped by pressing functional keys on the control panel 170.   The power source 120 may be one or more rechargeable batteries.

[0030]  Compared with the prior art, the penis massager provided by the present invention has the beneficial effects that: the penis massager of the present invention is configured to set the vibrating apparatus in the sleeve, so that the vibrating apparatus and the sleeve are integral, which makes the vibrating apparatus need not to be removed when the sleeve is cleaned. Thus, the penis massager is more convenient to clean after being used.   In addition, the

vibrating apparatus arranged in the sleeve, compared with a structure that the vibrating apparatus is arranged externally, is wider and more obvious in vibration range, thereby forming stronger stimulation and improving the user experience.

**[0031]** In a comparative example, a rear end of the interior volume of the sleeve is set to be narrower, and a rear end of the sleeve may be stretched.   For such structure, the user cannot feel balanced wrap, and the head of the penis is excessively stimulated, so that the effect of massage exercise cannot be achieved.   With reference to FIG. 7, in the present embodiment, the interior volume 210 in the sleeve 20 includes a first section 211, a second section 212 and a third section 213 in sequence, and widths of the first section 211 and the third section 213 both are set to be greater than the width of the second section 212.   The second section 212 is used for encircling at least one part of the middle of the penis.   In other words, a portion at a middle of the interior volume 210 in the sleeve 20 is narrower, in this way, the effect of holding the middle section to push and pull during real use may be imitated, the whole penis may be completely wrapped by the sleeve 20 for friction, and thus, it is easier to achieve massage exercise.

**[0032]** With reference to FIG. 1, FIG. 2 and FIG. 7, preferably, two handles 160 to be held by human hands are symmetrically arranged on left and right sides of the housing 10.   The handles 160 are generally column-shaped, with domes provided at front ends thereof.   A connecting portion between a rear end of the handle160 and the housing 10 is in smooth transition.   The rear ends of the handles 160 are inclined to an axis direction of the housing 10, and included angles therebetween may be set to range from 30 degrees to 45 degrees.   The handles 160 are arranged on two sides of the housing 10, and the user can adjust a placement angle of the penis massager through the handles 160, so that the penis massager is adjusted to an appropriate posture to bright convenience for the user.

**[0033]** The handles 160 are provided with keys 161 for adjusting a vibration amplitude of the vibrating apparatus 30.   At least two keys 161 are arranged on one of the handles 160, and the vibration amplitude of the vibrating apparatus 30 may be adjusted to increase by one of the keys 161 and may be adjusted to decrease by the other one of the keys 161.

**[0034]** In the present embodiment, with reference to FIG. 3 and FIG. 5 to FIG. 7, a fixed frame 40 is arranged in the sleeve 20.   That is, the fixed frame 40 and the sleeve 20 are integrally molded by injection.   The fixed frame 40 may be specifically arranged in the side wall of the sleeve 20.   A plurality of conductive columns 410 are arranged on the fixed frame 40.   The vibrating apparatus 30 includes the motor 31.   An outer housing is mounted around the motor 31, and includes a housing body 32 and a housing cover 33.   The vibrating apparatus

30 is electrically connected to the conductive columns 410 through a first wire.  A plurality of conductive members 61 are arranged in the accommodating space 110 of the housing 10.  The conductive members 61 may be but are not limited to conductive pogo pins, conductive springs or magnetic attraction members.  The conductive members 61 are electrically connected to the circuit board 130.  One end of each conductive column 410 is electrically connected to one of the conductive members 61 after extending out of the sleeve 20, thereby realizing electric conduction between the vibrating apparatus 30 and the circuit board 130.

**[0035]**  In a comparative example, a heating element is arranged on an outer side wall of the sleeve and is fixed by a mounting frame.  Thus, the heating element is attached to the outer side wall of the sleeve.  Such construction with the heating member out of the sleeve has problems of slow rising in heating temperature and uneven temperature distribution.  With reference to FIG. 6 and FIG. 7, in the present embodiment, the sleeve 20 is internally provided with a heating plate 50, that is, the sleeve 20 and the heating plate 50 are set to be integral, and specifically the heating plate 50 may be embedded into the side wall of the sleeve 20.  The heating plate 50 at least covers a part of a side wall of a middle area of the sleeve 20.  The heating plate 50 is arranged in the sleeve 20, so that the heating plate 50 may be wrapped inside the side wall of the sleeve 20, and then, heat of the heating plate 50 can be transfer to the sleeve 20 rapidly.

**[0036]**  When a heating function of the penis massager is started, the sleeve 20 may be kept at a constant temperature within a certain range, and thus, the user can achieve more realistic experience and a better effect during massage exercise and sperm extraction.  The heating plate 50 is electrically connected to the rest of the conductive columns 410 through a second wire, one end of each conductive column 410 is electrically connected to the conductive members 61, and thus, a circuit between the heating plate 50 and the circuit board 130 is conducted.  In the present embodiment, the conductive members 61 and the conductive columns 410 are wirelessly connected, either between the motor 31 and the circuit board 130 or between the heating plate 50 and the circuit board 130, so that wire connection is reduced, and it is convenience in use.  Moreover, the sleeve 20 has no wires exposed for connection, and thus, after being used, the sleeve 20 is more conveniently taken out to clean without restrictions of the wires.

**[0037]**  Preferably, a longitudinal cross section of the heating plate 50 is set to be C-shaped. The width of the heating plate 50 may be set according to the overall length of the sleeve 20. A position of the heating plate 50 corresponds to an area of the interior volume 210 of the sleeve 20 in which the second section 212 is located.

**[0038]**  Specifically, the heating plate 50 is fixed on an inner wall surface of the fixed frame 40.   A longitudinal cross section of the fixed frame 40 is also C-shaped, and an overall dimension of the fixed frame 40 is slightly greater than that of the heating plate 50.   The heating plate 50 and the fixed frame 40 may be fixed by a snap-fit structure or fixed together by a connecting member or in other ways.   Locating protrusions 441 are arranged on the inner wall surface of the fixed frame 40, and locating gaps 510 are defined in positions of the heating plate 50 corresponding to the locating    protrusions 441.   The heating plate 50 is preliminarily mounted on the fixed frame 40 by cooperating of the locating    protrusions 441 and the locating gaps 510, and then, the heating plate 50 is fixed on a fixing member by a connecting member. After the heating plate 50 and the fixed frame 40 are fixed together, the fixed frame 40 and the sleeve 20 are integrally molded by injection.

**[0039]**  With reference to FIG. 4, FIG. 6 and FIG. 8, preferably, the conductive members 61 are electrified by contact with the conductive columns 410, which may be implemented by elastic conductive members.   At least one of the conductive member 61 and the conductive column 410 is an elastic conductive member or provided with an elastic conductive member. In the present embodiment, the conductive members 61 are conductive pogo pins 610.   Springs are arranged in the conductive pogo pins 610, so as to form elastic contact between the conductive pogo pins 610 and the conductive columns 410. Therefore, power off caused by loosening of the contact during movement of the sleeve 20 may be avoided.

**[0040]**  Preferably, the fixed frame 40 has a hollow structure, and thus, the fixed frame 40 and the sleeve 20 may be more stably combined together after being molded by injection.   The fixed frame 40 is provided with a plurality of strip-shaped through holes 440, and the through holes 440 construct the hollow structure of the fixed frame 40, so that not only the structural strength of the fixed frame 40 may be ensured, but also the fixed frame 40 and the sleeve 20 may be stably combined together after being molded by injection.

**[0041]**  With reference to FIG. 3, FIG. 4 and FIG. 9, a movable cabin 60 is arranged in the accommodating space 110, and is capable of sliding back and forth in the axial direction of the accommodating space 110.   A longitudinal cross section of the movable cabin 60 is generally U-shaped, and opened at its front, rear and top ends.   The sleeve 20 is removably arranged on the movable cabin 60, and the length of the movable cabin 60 is less than that of the sleeve 20. The conductive members 61 are fixed on the movable cabin 60.   Specifically, sliding bars 144 are respectively arranged on left and right sides of the housing 10, close to the bottom of the first space 111, and the sliding bars 144 extend in the axial direction of the housing 10 and slidably penetrate through the movable cabin 60.   In this way, the movable cabin 60 is in

7

sliding fit with the sliding bars 144, and the movable cabin 60 is capable of sliding back and forth along the sliding bars 144. That is, the movable cabin 60 is capable of sliding for a certain distance in the first space 111.

**[0042]** After the vibrating apparatus 30 is started, the sleeve 20 and the movable cabin 60 move together in the first space 111 in the axial direction of the housing 10. The conductive members 61 are conductive pogo pins 610, holes for mounting the conductive pogo pins 610 are defined in the bottom of the movable cabin 60, and the conductive pogo pins 610 pass through the holes to extend into the movable cabin 60. A bottom cover 680 is arranged on an outer bottom surface of the movable cabin 60, and a screw is adopted to penetrate through the bottom cover 680 to fix it onto the movable cabin 60, and thus the conductive pogo pins 610 are locked and fixed on the movable cabin 60.

**[0043]** Specifically, in the present embodiment, with reference to FIG. 9 and FIG. 10, the number of the conductive columns 410 and the number of the conductive pogo pins 610 are both four, a mounting area 420 is arranged on the bottom of an outer wall surface of the fixed frame 40, a bottom surface of the mounting area 420 is a plane, and the four conductive columns 410 are fixed on the bottom surface of the mounting area 420. The motor 31 is electrically connected to two of the conductive columns 410 by the first wire, and the heating plate 50 is electrically connected to the other two conductive columns 410 by the second wire.

**[0044]** With reference to FIG. 6, FIG. 7 and FIG. 9, four stepped holes 421 are defined in the mounting area 420. A flange 411 protrudes radially and outwards from an outer circumferential surface of the conductive column 410 and abuts against a step surface of one corresponding stepped hole 421. The fixed frame 40 is provided with a bottom cover 430, the bottom cover 430 is fixed in the mounting area 420 by a screw 432, and thus, the conductive columns 410 are locked and fixed in the mounting area 420. Four through holes are defined in the bottom cover 430, and one end of each conductive column 410 abuts against the conductive pogo pin 610 after passing through the through hole. Preferably, an annular sealing ring is tightly pressed between the bottom cover 430 and the mounting area 420, and thus, a waterproof effect of the mounting area 420 may be improved.

**[0045]** Preferably, insulating layers are provided on outer surfaces of the other ends of the conductive columns 410, an outer surface of the first wire, an outer surface of the second wire, a connection between the first wire and each of the conductive columns 410 and a connection between the second wire and each of the conductive columns 410, respectively. During specific operation, after the first wire is welded to the conductive columns 410 and the second wire is welded to the conductive columns 410, insulating glue is applied to cover surfaces of the

8

first wire, the second wire and the other ends of the conductive columns 410 as well as welding point interfaces of each wire on the conductive columns 410, and then, the bottom cover 430 covers the mounting area 420, the screw 432 is adopted to lock and fix the bottom cover 430 in the mounting area 420. In this way, all the conductive columns 410 are tightly pressed, so that all the assemblies are integrated with the sleeve 20, and the motor 31, the heating plate 50 and the conductive columns 410 which are arranged in the sleeve 20 form a conductive path. The bottom cover 430 is further provided with an elastic sealing gasket 433, after the screw 432 locks the bottom cover 430, the sealing gasket 433 is inserted into a hole corresponding to the screw 432, and thus, the sealing gasket 433 shields the screw 432 and seals the hole to prevent a cleaning solution from entering the hole when the sleeve 20 is cleaned.

[0046] With reference to FIG. 4 to FIG. 6, preferably, the fixed frame 40 is provided with clamping blocks 450 which extend out of an outer side wall of the sleeve 20. Clamping structures switchable between a locking state and an unlocking state are formed between the movable cabin 60 and each of the clamping blocks 450. When the clamping structures are in the locking state, the sleeve 20 is clamped and fixed in the movable cabin 60 by the clamping blocks 450. When the clamping structures are in the unlocking state, the sleeve 20 may be taken out of the movable cabin 60.

[0047] With reference to FIG. 3, FIG. 5, FIG. 9 and FIG. 10, linkage assemblies 62 are symmetrically arranged on left and right sides of the movable cabin 60. Each of the linkage assemblies 62 and the clamping block 450 on the corresponding side cooperatively construct a clamping structure. The linkage assembly 62 includes a toggling member 620, an elastic member 630 and a bent lever 640. The toggling members 620 are movably arranged on the movable cabin 60 and are capable of sliding or rotating relative to the movable cabin 60. The bent levers 640 are rotatably arranged on the movable cabin 60. The elastic members 630 are abutted between each of the toggling members 620 and the movable cabin 60, and the clamping blocks 450 are clamped and fixed by the toggling members 620 and the bent levers 640 under the action of elasticities provided by the elastic members 630. When the toggling members 620 are toggled in an unlocking direction, the toggling members 620 are capable of driving the bent levers 640 to rotate, so that the clamping structures are in the unlocking state, and the sleeve 20 is in a state being capable of taken out of the housing 10.

[0048] With reference to FIG. 10 to FIG. 12, specifically, mounting slots 650 are symmetrically defined in outer side walls of the left and right sides of the movable cabin 60, the elastic members 630 and the bent levers 640 are accommodated in the mounting slots 650, and parts of the toggling members 620 are accommodated in the mounting slots 650. The

mounting slots 650 are provided with gaps 651 to be penetrated by the clamping blocks 450, and the clamping blocks 450 extend through the gaps 651 to insert into the mounting slots 650. Clamping positions are respectively formed near the gaps 651 in two sides of the movable cabin 60, and when the linkage assemblies 62 are in the locking state, the clamping blocks 450 are clamped into the mounting slots 650 by the toggling members 620, the bent levers 640 and portions of the slot walls of the mounting slots 650 at the gaps 651.    After the toggling members 620 on the left and right sides of the movable cabin 60 are toggled in the unlocking direction, the toggling members 620 leave from the clamping blocks 450, at the moment, the toggling members 620 are spaced from the clamping blocks 450, and thus, the clamping structures are in the unlocking state.

**[0049]**  The toggling member 620 includes an operating portion 621, a clamping portion 622 and a toggling portion 623, which are connected together in sequence.    One end of each operating portions 621 extends out of a top of the mounting slot 650 to form an operating end to be toggled by hands.    Convex blocks 6220 and convex shafts 6221 are respectively arranged on left and right sides of the clamping portions 622, detachable side covers 660 are arranged on positions of the movable cabin 60 corresponding to the mounting slots 650, first sliding chutes 661 are arranged in positions of the side covers 660 corresponding to the convex shafts 6221, the convex shafts 6221 are slidably connected to the first sliding chutes 661, second sliding chutes 670 are arranged in positions of the movable cabin 60 corresponding to the convex blocks 6220, the convex blocks 6220 are slidably connected to the second sliding chutes 670, and thus, a sliding connection between each of the clamping portions 622 and the movable cabin 60 is achieved.    In other words, the toggling members 620 are slidably connected to the movable cabin 60, and when the operating ends of the operating portions 621 are toggled backwards, the toggling members 620 as a whole can backwards slide for a certain distance.

**[0050]**  The elastic members 630 adopt first compression springs 631.    One end of each clamping portion abuts against the clamping blocks 450, and the other end of the clamping portion 622 is provided with a fixing column.    One end of each first compression spring 631 is mounted around the fixing column, and thus, the clamping portions 622 abut against the first compression springs 631.    The other ends of the first compression springs 631 abut against side walls of the mounting slots 650.    Locating slots 6230 which are generally splay-shaped are encircled by the toggling portions 623.    That is, left, right and bottom sides of the locating slots 6230 are opened, and inner side walls of the toggling portions 623 cooperatively define the locating slots therebetween.    Corners of the locating slots 6230 are set to be in smooth transition.    The mounting slots 650 are internally provided with mounting columns 652.    The

bent lever 640 includes a first link levers 641 and second link lever 642. Bent parts where the first link levers 641 are connected to the second link levers 642 are rotatably mounted on the mounting columns 652, that is, the bent levers 640 are rotatably arranged in the mounting slots 650 through the mounting columns 652, and the bent levers 640 are capable of rotating with the mounting columns 652 as fulcrums. Ends, away from the mounting columns 652, of the first link levers 641 extend into the locating slots 6230, and ends, away from the mounting columns 652, of the second link levers 642 abut against the clamping blocks 450.

[0051] With reference to FIG. 3, FIG. 8 and FIG. 10 to FIG. 12, specifically, the clamping blocks 450 are provided with connected large-diameter ends 451 and small-diameter ends 452, and widths of the large-diameter ends 451 are greater than those of the small-diameter ends 452. Contours of longitudinal sections of the large-diameter ends 451 are similar to ellipses, and bottom and top ends thereof are both arc surfaces. One end of each of the small-diameter ends 452 is connected to the fixed frame 40. When the sleeve 20 is mounted in the housing 10, the small-diameter ends 452 are tightly abutted against wall surfaces of the gaps 651 of the movable cabin 60. The clamping portions 622 of the toggling members 620 abut against one side on the top of each of the large-diameter ends 451 under the action of elasticities of the first compression springs 631, sides, close to the large-diameter ends 451, of the clamping portions 622 are adaptive arc surfaces, and thus, the clamping portions 622 are fitted to one side on the top of each of the large-diameter ends 451. As shown in FIG. 8, FIG. 11 and FIG. 12, the clamping structures are in the locking state, the clamping portions 622 and the second link levers 642 are both abutted against the large-diameter ends 451 of the clamping blocks 450, the wall surfaces in the gaps 651 of the movable cabin 60 abut against the small-diameter ends 452 of the clamping blocks 450, the clamping blocks 450 are stressed at the same time in three directions, i.e. upper left sides, lower right sides and right sides, and thus, triangular stressed structures are formed on the clamping positions, the clamping blocks 450 may be stably clamped, and then, the sleeve 20 is stably buckled together after being pressed into the movable cabin 60.

[0052] With reference to FIG. 10 to FIG. 12, preferably, the gaps 651 in the left and right sides of the movable cabin 60 are both U-shaped gaps. The movable cabin 60 are provided with unfilled corners on front ends of the U-shaped gaps, that is, horizontal positions on tops of wall surfaces on front ends of the U-shaped gaps are lower than horizontal positions on tops of wall surfaces on rear ends thereof. First inclined surfaces 6511 are arranged on the wall surfaces on the front ends of the U-shaped gaps, and thus, the operation of downwards pressing the sleeve 20 to be put into the movable cabin 60 is facilitated. When the sleeve 20 is

mounted, the small-diameter ends 452 of the clamping blocks 450 slide into the U-shaped gaps along the first inclined surfaces 6511, that is, the first inclined surfaces 6511 form guide surfaces by which the clamping blocks 450 are convenient to slide into the U-shaped gaps. Second inclined surfaces 6512 are arranged on bottoms of the U-shaped gaps, front ends of the second inclined surfaces 6512 are inclined upwards, clamping surfaces 6513 are connected between each of the first inclined surfaces 6511 and each of the second inclined surfaces 6512, and the clamping surfaces 6513 are arranged vertically.   In this way, when the sleeve 20 is pressed and mounted into the movable cabin 60, the clamping blocks 450 are clamped into the bottoms of the U-shaped gaps, bottoms of the small-diameter ends 452 of the clamping blocks 450 abut against the second inclined surfaces 6512, and one side of each of the small-diameter ends 452 abuts against the clamping surface 6513.   Each wall surface in the U-shaped gaps can adopt an arc surface, and thus, it is convenient for the clamping blocks 450 to slide in or out, and the clamping blocks 450 can also be prevented from being scratched.

**[0053]**  With reference to FIG. 6 and FIG. 10 to FIG. 12, when the sleeve 20 is mounted, the conductive columns 410 in the mounting area 420 on the bottom of the sleeve 20 are aligned with the conductive pogo pins 610, the clamping blocks 450 on the left and right sides are aligned with the U-shaped gaps in the two sides of the movable cabin 60, the sleeve 20 is downwards pressed into the movable cabin 60, the toggling members 620 on the left and right sides of the movable cabin 60 move backwards, the first compression springs 631 are compressed, after the sleeve 20 is clamped in place, the toggling members 620 automatically return due to the elasticities of the first compression springs 631, at the same time, the toggling members 620 drive the bent levers 640 to rotate, the second link levers 642 are bounced upwards, then, triangular buckling positions are formed in the U-shaped gaps, the clamping blocks 450 are tightly clamped, the clamping structures are in the locking state, and thus, the sleeve 20 is clamped and fixed in the movable cabin 60.

**[0054]**  In a comparative example, a magnet is arranged in the bottom of the sleeve, a magnet is also arranged on a corresponding position of the housing, and thus, a magnetic absorption structure is formed; and when the sleeve is taken out of the housing, the sleeve is easily damaged after being stretched.   With reference to FIG. 11 to FIG. 13, in the present embodiment, when the sleeve 20 is required to be taken out of the movable cabin 60, the toggling members 620 on the left and right sides of the movable cabin 60 are toggled to rear ends, the first compression springs 631 are compressed, the clamping portions 622 of the toggling members 620 leave from the clamping blocks 450, the toggling members 620 drive a crankshaft to rotate counterclockwise around the mounting columns 652 through the splay

locating slots 6230 in the bottoms, and the second link levers 642 upwards jack the clamping blocks 450, so that the clamping blocks 450 come out of the gaps 651 of the movable cabin 60, at the moment, the sleeve 20 is bounced upwards together with the fixed frame 40, the four conductive pogo pins 610 on the bottom of the movable cabin 60 are bounced under pressures of the springs thereof, the fixing member 220 is held to rotate downwards, a buckling position of the fixing member 220 is released, and thus, the sleeve 20 may be pulled out.   The sleeve 20 is relatively convenient to dismount and mount; when being pressed downwards, the sleeve 20 may be stably clamped together with the movable cabin 60; and by backwards pushing the toggling members 620 on two sides, the sleeve 20 may be bounced from the movable cabin 60, so that the problem that the sleeve 20 is pulled hard to be damaged may be effectively avoided.

**[0055]**  With reference to FIG. 11 to FIG. 13, two limiting blocks 653 are spaced on the slot wall on the bottom of each of the mounting slots 650, and second compression springs 654 are arranged between the two limiting blocks 653.   Connecting columns are arranged on surfaces away from the second link levers 642 and abutted against the clamping blocks 450, one end of each of the second compression springs 654 sleeves the connecting columns, and the other ends of the second compression springs 654 abut against the slot walls on the bottoms of the mounting slots 650.   The elasticities of the second compression springs 654 are smaller than those of the first compression springs 631, and thus, the bent levers 640 may not automatically rotate under the abutment of the second compression springs 654, i.e., the clamping structures may not switched from the locking state to the unlocking state due to the second compression springs 654 .   When the clamping structures are in the locking state, the second link levers 642 abut against top ends of the two limiting blocks, and the second compression springs 654 are tightly pressed to be accommodated between the two limiting blocks 653.   When the clamping structures are in the unlocking state, the second link levers 642 leave from the two limiting blocks 653, the second compression springs 654 stretch and provide forces for upwards ejecting the second link levers 642, so that the toggling members 620 may be toggled backwards with less forces before the sleeve 20 is pressed and mounted in the movable cabin 60, and then, the toggling operation is easier.

**[0056]**  The above is only a better embodiment of the present invention and is not intended to limit the present invention.   Any modification, equivalent replacement and improvement made within the spirit and principle of the present invention shall be included in a scope of protection of the present invention.

# Claims

**WHAT IS CLAIMED IS:**

1.  A penis massager, comprising:

  a housing provided with an accommodating space, a power source and a circuit board electrically connected to the power source being received in the accommodating space;

  a sleeve being removably mounted in the accommodating space, one end of the sleeve being concaved to form an interior volume for accommodating the penis; and

  a vibrating apparatus being provided in the sleeve, the vibrating apparatus being electrically connected to the circuit board for generating a mechanical vibration.

2.  The penis massager according to claim 1, wherein the sleeve is provided with a fixed frame, a plurality of conductive columns are arranged on the fixed frame, the vibrating apparatus is electrically connected to some of the conductive columns through a first wire, a plurality of conductive members are arranged in the accommodating space and electrically connected to the circuit board, and one end of each of the conductive columns extends out of the sleeve to electrically connect the conductive member.

3.  The penis massager according to claim 2, wherein a heating plate is provided in the sleeve and electrically connected to some of the conductive columns through a second wire.

4.  The penis massager according to claim 3, wherein the heating plate is fixed on an inner wall surface of the fixed frame.

5.  The penis massager of claim 3, wherein a plurality of insulating layers are covered on outer surfaces of the other ends of the conductive columns, an outer surface of the first wire, an outer surface of the second wire, a connection between the first wire and each of the conductive columns and a connection between the second wire and each of the conductive columns, respectively.

6.  The penis massager according to claim 3, wherein the conductive members and the conductive columns are electrically connected by contact.

7.  The penis massager according to claim 6, wherein the electrical connection by contact is implemented by elastic conductive members.

8.  The penis massager according to claim 7, wherein the elastic conductive members are conductive pogo pins.

9.  The penis massager according to claim 8, wherein the number of the conductive columns

and the number of the conductive pogo pins are both four, a mounting area is formed on the bottom of an outer wall surface of the fixed frame, the four conductive columns are fixed in the mounting area, the vibrating apparatus is electrically connected to two of the conductive columns by the first wire, and the heating plate is electrically connected to the other two conductive columns by the second wire.

10.    The penis massager according to claim 9, wherein four stepped holes are formed in the mounting area, a flange protrudes radially and outwards from an outer circumferential surface of the conductive column and abuts against a step surface of a corresponding stepped hole; the fixed frame is provided with a bottom cover, the bottom cover is fixed in the mounting area for fixing the conductive columns in the mounting area, four through holes are formed in the bottom cover, and one end of each of the conductive columns extends through one of the through holes to abut against one of the conductive pogo pins.

11.    The penis massager according to claim 2, wherein the fixed frame is a hollow structure.

12.    The penis massager according to claim 2, wherein a movable cabin is movably arranged in the accommodating space, the movable cabin is capable of sliding back and forth in the axial direction of the accommodating space, a longitudinal cross section of the movable cabin is U-shaped, the sleeve is removably arranged on the movable cabin, and the conductive members are fixed on the bottom of the movable cabin and extend into the movable cabin.

13.    The penis massager according to claim 12, wherein the fixed frame is provided with a plurality of clamping blocks which extend out of an outer side wall of the sleeve; and each of the clamping blocks cooperates with the movable cabin to construct a clamping structure which has a locking state and an unlocking state, when the clamping structures are in the locking state, the sleeve is clamped and fixed in the movable cabin by the clamping blocks, and when the clamping structures are in the unlocking state, the sleeve is capable of being taken out of the movable cabin.

14.    The penis massager according to claim 13, wherein the clamping blocks are symmetrically arranged on two sides of the fixed frame, and when the clamping structures on the two sides are both in the unlocking state, the sleeve is capable of being taken out of the movable cabin.

15.    The penis massager according to claim 14, wherein a plurality of linkage assemblies are symmetrically arranged on left and right sides of the movable cabin, and each of the linkage assemblies and the clamping block on the corresponding side cooperatively construct the clamping structure; each of the linkage assemblies comprise a toggling member, an elastic member and a bent lever, the toggling members are movably arranged on the movable cabin, the

bent levers are rotatably arranged on the movable cabin, the elastic members are abutted between the toggling members and the movable cabin, and the clamping blocks are tightly clamped by the toggling members and the bent levers under the action of the elastic members; and when a force is applied to the toggling members in an unlocking direction, the toggling members are capable of driving the bent levers to rotate, so that the clamping structures are in the unlocking state.

16.    The penis massager according to claim 15, wherein a plurality of mounting slots are symmetrically arranged on outer side walls on the two sides of the movable cabin, the elastic members and the bent levers are both accommodated in the mounting slots, and parts of the toggling members are accommodated in the mounting slots; the mounting slots are provided with gaps through which the clamping blocks extend into the mounting slots; when the linkage assemblies are in the locking state, the clamping blocks are clamped into the mounting slots by the toggling members, the bent levers and portions of the slot walls of the mounting slots at in the gaps; and when the clamping structures are in the unlocking state, the toggling members are spaced from the clamping blocks.

17.    The penis massager according to claim 16, wherein the toggling member comprises an operating portion, a clamping portion and toggling portion, one end of the operating portion extends out of a top of the mounting slot to form an operating end to be toggled by hands, the clamping portion is slidably connected to the movable cabin, one end of each clamping portion abuts against the clamping block, the other end of the clamping portion abuts against the elastic member, and splay locating slots are defined by the toggling portions; and the mounting slots are internally provided with mounting columns, the bent lever comprises connected first link lever and second link lever, bent parts where the first link levers are connected to the second link levers are rotatably mounted on the mounting columns, one end of each first link lever extends into the locating slot, and one end of each second link lever abuts against the clamping block.

18.    The penis massager according to claim 1, wherein the interior volume comprises a first section, a second section and a third section in sequence, widths of the first section and third section both are greater than the width of the second section, and the second section is used for encircling at least one part of the middle of the penis.

19.    The penis massager according to claim 1, wherein two handles to be held by human hands are symmetrically arranged on two sides of the housing, respectively.

20.    The penis massager according to claim 19, wherein the handles are provided with keys for adjusting a vibration amplitude of the vibrating apparatus.

## ABSTRACT

A penis massager includes a housing and an sleeve.  The housing is provided with an accommodating space, and a power source and a circuit board electrically connected to the power source are received in the accommodating space.  The sleeve is removably mounted in the accommodating space, one end of the sleeve is concaved to form a interior volume for containing the penis.  A vibrating apparatus is arranged in the sleeve and electrically connected to the circuit board for generating a mechanical vibration.



FIG. 1

2/13



FIG. 2

3/13



FIG. 3



FIG. 4

5/13



FIG. 5

6/13



FIG. 6

7/13



FIG. 7



FIG. 8

60



620

62

620

660

62

610

FIG. 9

10/13



FIG. 10

11/13



FIG. 11

12/13



FIG. 12

13/13

Rear ←————————→ Front



FIG. 13

PTO/AIA/01 (06-12)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | PENIS MASSAGER |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X] The attached application, or

[ ] United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Tenghui Huang                                    Date (Optional): _____

Signature: *Tenghui Huang*

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2), (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/AIA/01 (08-12)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | PENIS MASSAGER |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X] The attached application, or

[ ] United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Junpeng Wu                    Date (Optional): _____

Signature: _Junpeng Wu_ _____

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant ( *i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/AIA/01 (06-12)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | PENIS MASSAGER |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[■] The attached application, or

[ ] United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Zhixu Yang                                    Date (Optional) : _____

Signature: *Zhixu Yang*

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant ( i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

**507791231   03/10/2023**

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1                                    EPAS ID: PAT7838359
Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| TENGHUI HUANG | 03/08/2023 |
| ZHIXU YANG | 03/08/2023 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | JUNPENG WU |
| Street Address: | ROOM 207, 2ND FLOOR, LIANGJI BUILDING |
| Internal Address: | DONGHUAN 1ST ROAD, FUKANG COMMUNITY, LONGHUA STREET, LONGHUA DISTRICT |
| City: | SHENZHEN |
| State/Country: | CHINA |

**PROPERTY NUMBERS Total: 1**

| Property Type | Number |
|---|---|
| Application Number: | 18119859 |

**CORRESPONDENCE DATA**

**Fax Number:**

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| **Email:** | kckclaw@yahoo.com |
| **Correspondent Name:** | KEVIN P. CHEN |
| **Address Line 1:** | 255 RIVERDALE DR |
| **Address Line 4:** | FORT LEE, NEW JERSEY 07024 |

| ATTORNEY DOCKET NUMBER: | 22A1385US |
|---|---|
| NAME OF SUBMITTER: | KEVIN P. CHEN |
| SIGNATURE: | /Kevin P. Chen/ |
| DATE SIGNED: | 03/10/2023 |
| | This document serves as an Oath/Declaration (37 CFR 1.63). |

**Total Attachments: 2**
source=22A1385US-Assignment#page1.tif
source=22A1385US-Assignment#page2.tif

## ASSIGNMENT

**Tenghui Huang** having a mailing address **2nd Floor, Building B, Jisheng Factory, Lianxing Industrial Park, Shangjie Village, Qishi Town, Dongguan City, Guangdong Province, China**

**Zhixu Yang** having a mailing address **2nd Floor, Building B, Jisheng Factory, Lianxing Industrial Park, Shangjie Village, Qishi Town, Dongguan City, Guangdong Province, China** (hereafter referred to as the undersigned), are the inventors of the U.S. patent application to be filed entitled:

### PENIS MASSAGER

The above U.S. application was assigned serial no. 18119859 and was filed on 3/10/2023 . The undersigned hereby authorizes assignee or assignee's representative to insert the Application Number and the filing date of this application if they are unknown at the time of execution of this assignment.

**Junpeng Wu** having a mailing address **Room 207, 2nd Floor, Liangji Building, Donghuan 1st Road, Fukang Community, Longhua Street, Longhua District, Shenzhen, China** (hereafter referred to as the assignee), is desirous of the entire right, title and interest in the above-identified application, in said invention described therein, all applications for and all letters patent issued on said invention.

For good and valuable consideration, the receipt and sufficiency of which is acknowledged, the undersigned, intending to be legally bound, does hereby sell, assign and transfer to the assignee and assignee's successors, assigns and legal representatives the entire right, title and interest in said invention and all patent applications thereon, including, but not limited to, the application for United States Letters Patent entitled as above, in any subsequent nonprovisional applications filed for this invention or improvements thereto, and all divisions and continuations thereof, any Registered Community Design applications, and in all letters patent, including all reissues and reexaminations thereof, throughout the world, including the right to claim priority under the Paris Convention or other treaty.

It is agreed that the undersigned shall be legally bound, upon request of the assignee, to supply all information and evidence relating to the making and practice of said invention, to testify in any legal proceeding relating thereto, to execute all instruments proper to patent the invention

1

throughout the world for the benefit of the assignee, and to execute all instruments proper to carry out the intent of this instrument.

The undersigned warrant that the rights and property herein conveyed are free and clear of any encumbrance.    EXECUTED under seal on the following date    03/08/2023

| Typed or printed name | Signature |
|---|---|
| Tenghui Huang | *Tenghui Huang* |
| Zhixu Yang | *Zhixu Yang* |

2

Exhibit 6

Contact Us

**businesswire**
A BERKSHIRE HATHAWAY COMPANY

Newsroom    Services & Solutions ⌄    Resources ⌄    For Journalists

Sign In    Sign Up

May 25, 2022 11:25 AM Eastern Daylight Time

# Sex Toys Market Analysis Report 2022: A $62.32 Billion Market by 2030 - ResearchAndMarkets.com

Share      

DUBLIN--(BUSINESS WIRE)--The "Sex Toys Market Size, Share & Trends Analysis Report by Type (Male, Female), by Distribution Channel (E-commerce, Specialty Stores, Mass Merchandizers), by Region, and Segment Forecasts, 2022-2030" report has been added to **ResearchAndMarkets.com's** offering.

The global sex toys market size is expected to reach USD 62.32 billion by 2030 and is projected to register a CAGR of 8.4%

Women aging from 16 to 70 years old are indulging in the pleasure of adult toys. The stigma of using these products to replace a partner has long been broken by couples who enjoy these toys from time to time, which is expected to drive market growth.

The impact of the COVID-19 pandemic is expected to create an economic downturn in all industries as the majority of countries are in lockdown. However, the initial impact of the country-wide lockdowns across the world exhibited a boost in sales of sex toys. During the COVID-19 customers shifted towards app-enabled sex toys and Bluetooth-powered toys also known as teledildonics to reduce the consumption of harmful chemicals in sex toys.

Sex toy manufacturers are undertaking various initiatives such as marketing & advertising products in unique ways and running awareness campaigns. Advertisements featuring well-known or popular adult stars drive interest and increase sales of the product. LELO launched a wave of Stay home and Save deals applicable for the entire month of May 2020, wherein the company was offering up to 15% discounts on its products.

The growth is attributed to the launch of new products in the novelty adult segment, sexual wellness, and self-love products. Affordable sexual wellness products, including vibrators, dildos, lubricants, and other toys, are entering the market, and the stigma associated with selling sexual things in traditional stores is dissipating.

The move is expected to be due to a shift in demographics since millennials, and Gen Z has a different perspective on sexual wellbeing than baby boomers. The market for sex toys is profiting from the gradual disappearance of the stigma associated with masturbation, especially among

RESEARCH AND MARKETS
THE WORLD'S LARGEST MARKET RESEARCH STORE

**RESEARCH AND MARKETS**

**RELEASE VERSIONS**

English

**CONTACTS**

ResearchAndMarkets.com
Laura Wood, Senior Press Manager
press@researchandmarkets.co...

For E.S.T Office Hours Call 1-917-300-0470
For U.S./CAN Toll Free Call 1-800-526-8630
For GMT Office Hours Call +353-1-416-8900

By clicking "Accept All Cookies", you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts. Cookie Policy

Cookies Settings    Accept All Cookies    ✕

different perspective on sexual wellbeing than baby boomers. The market for sex toys is profiting from the gradual disappearance of the stigma associated with masturbation, especially among married couples.

Asia Pacific is expected to be the fastest-growing market during the forecast period. China and Australia are the leading revenue generators in the market. The stigma surrounding sex is reducing among millennials and Gen-Z, who are more open to exploring new things to enhance their sexual experience. In March 2019, Reckitt Benckiser launched its direct-to-consumer e-commerce platform to sell its premium products in India.

**Sex Toys Market Report Highlights**

- The female sex toys segment held the largest market share in 2021 and is expected to expand at the second-highest CAGR during the forecast period. Single women are among the leading contributors to the market growth.
- Manufacturers are trying to reach a larger market via e-commerce sites. In developing countries where adult stores are not easily accessible, online retailers are meeting customer demand by offering a different range of products via discrete delivery and an added advantage of discounted rates.
- Based on distribution channels, e-commerce platforms and online retailers held the largest market share in 2021. Increasing penetration of the internet and the availability of numerous sex toys on e-commerce platforms and anonymity are driving the growth of the segment.
- North America held the largest market share in 2021, owing to the presence of numerous retailers providing easy access to products. In the U.S. and Canada, sociodemographic factors also play a role in the type of toy being preferred and its frequency of use.
- With increasing disposable income in developing countries, consumers are opting for innovative products such as exquisite vibrators, BDSM gear, and anal toys. This increases opportunities for market players to capitalize on the growing demand for more high-end innovative products.
- Emerging players backed by technological advancements are developing products that offer a more realistic experience. Brand leaders such as Doc Johnson, LELO, FleshLight, and LoveHoney have a global presence with a strong product portfolio. In July 2019, LifeStyles Healthcare announced the launch of three new intimate accessories under its SKYN brand- SKYN Thrill, SKYN Vibes, and SKYN Shiver.

**Key Topics Covered:**

**Chapter 1 Report Scope**

**Chapter 2 Methodology**

**Chapter 3 Objectives**

**Chapter 4 Executive Summary**

By clicking "Accept All Cookies", you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts. Cookie Policy

Cookies Settings    Accept All Cookies    ✕

Chapter 4 Executive Summary

4.1 Market Outlook

4.2 Segment Outlook

4.2.1 Type

4.2.2 Distribution Channel

4.3 Competitive Insights

Chapter 5 Industry Outlook

5.1 Market Lineage Outlook

5.1.1 Parent Market Outlook

5.1.2 Related/Ancillary Market Outlook

5.2 Market Dynamics

5.2.1 Market Driver Analysis

5.2.1.1 Changing Perception Of Customers

5.2.1.2 Growing Presence Of Online Retailers

5.2.1.3 Increasing Investment In Sex Tech Companies

5.2.1.4 Increasing Spending Capacity

5.2.2 Market Restraint Analysis

5.2.2.1 Chemicals used in sex toys

5.2.2.2 Lack of government regulations for manufacturers

5.3 Penetration & Growth Prospect Mapping

5.3.1 ANALYSIS

5.4 Business Environment Analysis tools

5.4.1 SWOT Analysis, by PESTL

5.4.2 Porter's Five Forces Analysis

5.4.3 Major Deals & Strategic Alliances Analysis

By clicking "Accept All Cookies", you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts. Cookie Policy

Cookies Settings     Accept All Cookies     ✕

Share

5.4.3 Major Deals & Strategic Alliances Analysis

5.4.3.1 Licensing & Partnerships and Technology Collaborations

**Chapter 6 Sex Toys Market: Type Analysis**

6.1 Sex Toys Market: Type Movement Analysis

6.1.1 Female Sex Toys

6.1.2 Male Sex Toys

**Chapter 7 Sex Toys Market: Distribution Channel Analysis**

7.1 Sex Toys Market: Distribution Channel Movement Analysis

7.1.1 E-Commerce

7.1.2 Specialty Stores

7.1.3 Mass Merchandizers

**Chapter 8 Regional Outlook**

8.1 Sex Toys Market Share by Region, 2021 & 2030

8.2 List of Few Players at Regional Level

**Chapter 9 Competitive Analysis**

- Church & Dwight Co. Inc.
- Reckitt Benckiser Group plc
- Lelo
- Lifestyles Healthcare Pte Ltd.
- Doc Johnson Enterprises
- Lovehoney Group Ltd.
- Bms Factory
- Tenga Co. Ltd.
- Fun Factory
- We-Vibe

For more information about this report visit https://www.researchandmarkets.com/r/ux1tbq

**Contacts**

ResearchAndMarkets.com

Laura Wood, Senior Press Manager

By clicking "Accept All Cookies", you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts. **Cookie Policy**

Cookies Settings    Accept All Cookies    ✕

Share

ResearchAndMarkets.com
Laura Wood, Senior Press Manager
press@researchandmarkets.com

For E.S.T Office Hours Call 1-917-300-0470
For U.S./CAN Toll Free Call 1-800-526-8630
For GMT Office Hours Call +353-1-416-8900

Industry:    Retail    Online Retail    Specialty    Other Retail

# More News From Research and Markets

Get RSS Feed

## Surgical Robotic System Analysis Report 2024: Market Projected to Reach $16.82 Billion by 2034, Surge in Demand for High Precision Minimally Invasive Surgery Fuels Growth - ResearchAndMarkets.com

DUBLIN--(BUSINESS WIRE)--The "Surgical Robotic System Market by Component, by Surgery Type, by End-user, and by Region" report has been added to ResearchAndMarkets.com's offering. The global surgical robotic system market is poised for significant expansion, with early figures...

## Dry Age-Related Macular Degeneration Epidemiology Forecast 2020-2034 - ResearchAndMarkets.com

DUBLIN--(BUSINESS WIRE)--The "Dry Age-Related Macular Degeneration - Epidemiology Forecast - 2034" report has been added to ResearchAndMarkets.com's offering. The "Dry AMD - Epidemiology - 2034" report delivers an in-depth understanding of dry AMD, historical and...

## United States Alcoholic Beverages Market Trends and Forecast Report 2025-2033: Increasing Consumer Demand for Craft Beers, Premium Spirits, and Healthy Options - ResearchAndMarkets.com

DUBLIN--(BUSINESS WIRE)--The "United States Alcoholic Beverages Market Size and Share Analysis - Growth Trends and Forecast Report 2025-2033" report has been added to ResearchAndMarkets.com's offering. United States alcoholic beverages market is expected to...

Back to Newsroom

By clicking "Accept All Cookies", you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts. Cookie Policy

Cookies Settings    Accept All Cookies

Epidemiology - 2034" report delivers an in-depth understanding of dry AMD, historical and...

## United States Alcoholic Beverages Market Trends and Forecast Report 2025-2033: Increasing Consumer Demand for Craft Beers, Premium Spirits, and Healthy Options - ResearchAndMarkets.com



DUBLIN--(BUSINESS WIRE)--The "United States Alcoholic Beverages Market Size and Share Analysis - Growth Trends and Forecast Report 2025-2033" report has been added to ResearchAndMarkets.com's offering. United States alcoholic beverages market is expected to...

Back to Newsroom → 

# Wish your news had this kind of reach?

Sign Up →    Learn About Business Wire →



## Company

About Business Wire

Careers

Media Center

## Services

News Release Distribution

News Release Optimization

Investor Communications

Reporting & Analytics

## Solutions

PR Professionals

IR Professionals

Agencies

Public Companies

Explore by Industry

## Newsroom

Industries

Subjects

Languages

## Resources

### Blog

### For Journalists

### Sign Up



© 2025 Business Wire, Inc.    Privacy Policy    Cookie Policy    Copyright    Accessibility Statement    Terms of Use



By clicking "Accept All Cookies", you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts. Cookie Policy

Cookies Settings    Accept All Cookies

Exhibit 7

LIU, CHEN & HOFFMAN LLP
-ATTORNEYS AT LAW-

14 PENN PLZ, STE 2020
NEW YORK, NY 10122

PHONE: (212) 547-6690
FAX: (212) 547-6692

WWW.AMBIZLAW.COM

February 24, 2025

Re:    Amazon Complaint ID 17072486971
       regarding ASIN#: B0DHZYS3PP
       Accused Infringement of U.S. Patent No. 11,925,592

**Dear Amazon Legal:**

I, Yong Chen, am a U.S. patent attorney and partner of a New York City based law firm, Liu, Chen & Hoffman LLP. I represent the operators of the following storefronts on Amazon.com (my clients):

**Und er Haihan**
**shafts of sword and yamen**
**detailed and fine**
**Jichengkuajin**
**Hibiscus-Z**
**Limindianpu**

each of which sells a male massager product under the above ASIN number (the "Accused Product").

Each of my clients received a notice from Amazon.com dated February 20, 2025, stating that the ASIN was removed due to the Amazon complaint indicated above for alleged infringement of U.S. Patent No. 11,925,592 (the "Patent"). I will show below that my clients' Accused Product under the ASIN does not infringe the Patent and respectfully request that the ASIN be reinstated.

*Summary of the Patent*

U.S. Patent No. 11,925,592, titled "Penis massager," was filed as US Application No. 18/202966 on May 29, 2023 and issued March 12, 2024, and assigned to Junpeng Wu. A copy of the Patent can be obtained from public online sources, e.g., Google Patents, at https://patents.google.com/patent/US11925592B1/en?oq=11%2c925%2c592   (and a PDF version of which can be downloaded from: https://patentimages.storage.googleapis.com/25/94/d8/fe258fd16c3fe1/US11925592.pdf).

In summary, the Patent discloses a penis massager. According to the Abstract of the Patent,

A penis massager includes a housing defining a first space and a second space therein, a sleeve provided in the first space of the housing, a driving motor mounted in the second space of the housing, and at least two handles extending outwardly from an outer face of the housing for holding of the penis massager. The sleeve defines an interior volume for accommodating a penis therein. The driving motor is connected to the sleeve in a transmission way, configured for driving to sleeve to move and/or rotate relative to the housing, thereby providing a massaging stimulation to the penis in the sleeve.

Representative figures of the Patent are reproduced below.



FIG. 1          FIG. 3

FIG. 7          FIG. 13



FIG. 15                    FIG. 17

Relevant portions of the specification of the Patent are reproduced below:

> Preferably, the handles 40 are provided with **buttons 42 for controlling operation of the driving device 30, i.e., controlling operation of the sleeve 20**. The buttons 42 may be provided on anyone of the handles 40, or may be provided on both of the handles 40. In this embodiment, each handle 40 is generally column-shaped, and includes a first end connected to the housing 10 and a second end away from the housing 10. Preferably, the first end of the handle 40 is connected to an end (such as a rear end) of the housing 10 away from the open end of the sleeve 20. The buttons 42 are provided at the first end of the handle 40, which are easy to be pressed by the user's thumb when the handle 40 are held in the user's hand. (col. 3, lines 55-68) (emphasis added)
>
> …
>
> Referring to FIGS. **7-16** , a penis massager according to a second embodiment is shown, which differs from the previous embodiment mainly in the handles **40**.
>
> In this embodiment, **the handles 40 are rotatably connected to the housing 10**, **and thus the inclination angle α of the central axis of the handle 40 relative to that of the housing 10 can be adjusted according to need, which further facilitates the use of the present penis massager**. As shown in FIGS. **7-8** , the handles **40** are rotated to a folded state, which attach to the outer face of the housing **10**, making the penis massager easy to store and carry. As shown in FIGS. **13-14** , each handle **40** is rotated away from the housing **10**, which is in a partly unfolded state and its inclination angle α is adjusted to about 45 degrees. As shown in FIGS. **15-16** , the handles **40** are totally unfolded, which are generally perpendicular to the housing **10** and the inclination angle α is adjusted to about 90 degrees. (col. 5, lines 46-62) (emphasis added)
>
> …
>
> Referring to FIG. **17** , a penis massager according to a third embodiment is shown. In this embodiment, the housing **10** of the penis massager includes a first housing portion **11** *a* and a second housing portion **11** *b* arranged side by side. The first housing portion **11** *a* defines the first space receiving the sleeve **20** therein, and the second housing portion **11** *b* defines the second space receiving the driving device **30** therein. In this embodiment, the penis massager has a smaller axial length. Handles **40** are provided at opposites sides of the second housing portion **11** *b*, and extend curvedly and outwardly from the second housing portion **11** *b*. **The handles 40 may be fixed to the housing 10, or rotatably connected to the housing 10, or slidably connected to the housing 10**. (col. 6, lines 27-40) (emphasis added)

### *Comparison of the Accused Product with the Claims of the Patent*

There are 3 independent claims in the Patent, claims 1, 14, and 15, each directed to a penis massager including a housing, a penis sleeve provided in a space in the housing, a driving device for driving the sleeve to move, and two handles. The text of these claims are reproduced below:

> 1. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, **the first end of each of the at least two handles is connected to an end of the housing** away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and
> **at least one button being provided on the first end of at least one of the at least two handles**.

> 14. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;
> **wherein the at least two handles are slidably connected to the housing.**

> 15. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;
> **wherein the at least two handles are rotatably connected to the housing.**

At least the above highlighted limitations regarding the features of the handles are absent from the Accused Product.

The below images P1-P8 are photos/illustrations of the assembly and disassembly process of the Accused Product:



As can be seen from the above photos/illustrations, the Accused Product is a penis massager that includes a massager body/housing and a separate hand-hold attachment with two opposing handles which can be detatachably secured on the massager body with a strap. Specifically:

**P1:** shows the Accused Product when it is taken out of the packaging box. It has two main separate parts: (1) an overall cylindrical massager body including a transparent shell/housing, a penis sleeve disposed inside the housing, and a driving/control mechanism that drives and controls the motion of the sleeve (disposed in the dark plastic part); (2) an attachment piece having two opposedly laterally arranged handles suitable to be held by hands, and a connection part between the two handles and integrated with the two handles. The connection part is curved to match the outer circumference of the cylindrical massager body. The attachment piece also includes an adjustable strap with a Velcro band mechanism for securing the attachment piece to the massager body, as will be further explained below. It is noted that the two handles of the hand-hold attachment piece are in a fixed configuration and cannot rotate relative to each other or slide relative to each other.

**P2:** shows that the strap is being prepared (loosened) to attach the handle to the massager body.

**P3:** shows that the housing is being inserted into the space between the strap and the connection part of the attachment.

**P4:** shows that the strap is being tightened after the attachment piece is positioned at a desired location on the massager body.

**P5:** illustrates that a control button is being pushed to operate the sleeve of the massager.

**P6:** shows another view of the Accused Product where the attachment piece is secured on the massager body by the strap and the two handles of the attachment piece are being held by hands.

**P7:** shows that the strap is being opened for removing the attachment piece from the massager body.

**P8:** shows that the attachment piece has been removed the massager body.

In view of the above illustrated features of the Accused Product:

**(a) The two handles of the Accused Product do not include a "button" as recited in claim 1.**

From the drawings and description of the Patent, a button on a handle is a distinct physical part located on the handle that is used to control the function or operation of the massager. See col. 3, lines 55-68, and Fig. 3 enclosed hereinabove.

Here, the two handles of the attachment piece of the Accused Product do not include such a button. Instead, all control buttons of the Accused Product are located on the massager body. *See* P5-P7 above (two buttons are on the shell of the black plastic part of the massager body).

**(b) The two handles of the Accused Product are not "slidably connected to the housing" (recited in claim 14) or "rotatably connected to the housing" (recited in claim 15)**

From the drawings and description of the three embodiments in the Patent, the wording "connected" in the phrases "slidably connected" and "rotatably connected" in claims 14 and 15 can only be interpreted to mean that the handles are "structurally or mechanically connected" or otherwise permanently connected (either directly or indirectly) to the housing. *See* the quoted text from the specification and Figs. 7, 13, 15, and 17, hereinabove. The handles must be slidable or rotatable while being joined or connected to the housing.

Here, in contrast, the two handles of the Accused Product are removably attached to the housing by a Velcro strap, not mechanically/structurally or otherwise permanently connected to the housing.

Further, when securely attached to the massager body/housing for use, the two handles of the Accused Product are in a fixed position with respect to the housing and do not slide along the housing or rotate about the housing. While accidental sliding or rotation between the handles and the housing may be possible during use or operation of the massager, such sliding or rotation would be due to improper or insufficient attachment between the two parts (e.g., too loose) and unintended for the normal use or operation of the Accused Product, and therefore cannot be regarded as an inherent or necessary feature of the Accused Product. Thus, the two handles of the Accused Product are not "slidably connected to the housing" (recited in claim 14) or "rotatably connected to the housing" (recited in claim 14).

During an assembly process (attaching the handles to the housing) and/or a disembly process (detaching the handles to the housing) of the Accused Product, the position of the handles on the housing may be adjusted or varied. Also, during each session of operation that involves an assembly and disembly of the handles and the housing of the Accused Product, the final secured positions of the handles on the housing may be slightly different axially and/or circumfenrentially. However, the handles and the housing in the Accused Product cannot be considered "slidably connected" or "rotatably connected" due to transient adjustment of the position of the handles or the variations of the configurations during different use sessions because any such *imaginary or hypothetical* "sliding" or "rotation" would only occur when the handles and housing are *not connected*.

A concise claim chart comparing the claim elements of independent claims 1, 14, and 15 with the features of the Accused Product is presented in the **Appendix** attached hereto, clearing showing those claim elements of independent claims of the Patent that are not present in the Accused Product.

For a product to infringe a patent claim, the product must include all elements or features of the claim. As explained above (in connection with the non-infringement analysis shown in the Appendix), because my clients' Accused Product does not include all the limitations of any of independent claims 1, 14, and 15, the Accused Product does not infringe any of the independent claims of the Patent. All other claims of the Patent are dependent claims, and depend from one of the above independent claims. Therefore, they include all the limitations of these independent claims. **Thus, the Accused Product does not include all the limitations of any claims of the Patent, and consequently does not infringe any claims of the Patent.**

February 24, 2025
Page 8

***Request for Relief***

Based on the foregoing, I hereby respectfully request that my clients' product listing under the above ASIN number be reinstated.  At a minimum, I respectfully request that you refer this dispute to your "Utility Patent Neutral Evaluation Program," which at least provides some type of merit-based evaluation on the complaint where my clients can present their non-infringement arguments.

I look forward to hearing from you. If you have any questions or require any further information, please feel free to contact me.

Yours Sincerely,

_____
Yong Chen, Partner
Liu, Chen & Hoffman LLP
1 Penn Plz, Ste 2508, New York, NY 10119
ychen@ambizlaw.com
Tel: 212-547-6694

February 24, 2025
Page 9

**APPENDIX**:
Non-infringement Analysis of Amazon ASIN# B0DHZYS3PP ("Accused Product")
Claim Chart for US Patent No. 11,925,592 B1

| Claim Language | Product Features and Analysis |
|---|---|
| **Claim 1** | |
| 1. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |
| at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and | |
| **at least one button being provided on the first end of at least one of the at least two handles.** | As discussed on pages 3-7 of this letter, the Accused Product does not include these claim elements. |
| **Claim 14** | |
| 14. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |
| at least two handles extending outwardly from an outer face of the housing for holding of the penis massager; | |
| **wherein the at least two handles are slidably connected to the housing.** | As discussed on pages 3-7 of this letter, the Accused Product does not include these claim elements. |
| **Claim 15** | |
| 15. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |

February 24, 2025
Page 10

| | |
|---|---|
| at least two handles extending outwardly from an outer face of the housing for holding of the penis massager; | |
| **wherein the at least two handles are rotatably connected to the housing** | As discussed on pages 3-7 of this letter, the Accused Product does not include these claim elements. |

Exhibit 8

14 PENN PLZ, STE 2020
NEW YORK, NY 10122

PHONE: (212) 547-6690
FAX: (212) 547-6692

WWW.AMBIZLAW.COM

# LIU, CHEN & HOFFMAN LLP
## -ATTORNEYS AT LAW-

March 12, 2025

Re:     Amazon Complaint ID 17374147401
        regarding ASIN#: **B0DP9LZT22**
        Accused Infringement of U.S. Patent No. 11,925,592

**Dear Amazon Legal:**

I, Yong Chen, am a U.S. patent attorney and partner of a New York City based law firm, Liu, Chen & Hoffman LLP. I represent the operator of the store "**Blue Woahoo**" on Amazon.com, which sells a male massager product under the above ASIN number (the "Accused Product").

My client received a notice from Amazon.com dated March 11, 2025, stating that the ASIN was removed due to the Amazon complaint indicated above for alleged infringement of U.S. Patent No. 11,925,592 (the "Patent"). I will show below that my client's Accused Product under the ASIN does not infringe the Patent and respectfully request that the ASIN be reinstated.

### *Summary of the Patent*

U.S. Patent No. 11,925,592, titled "Penis massager," was filed as US Application No. 18/202966 on May 29, 2023 and issued March 12, 2024, and assigned to Junpeng Wu. A copy of the Patent can be obtained from public online sources, e.g., Google Patents, at https://patents.google.com/patent/US11925592B1/en?oq=11%2c925%2c592   (and a PDF version of which can be downloaded from: https://patentimages.storage.googleapis.com/25/94/d8/fe258fd16c3fe1/US11925592.pdf).

In summary, the Patent discloses a penis massager. According to the Abstract of the Patent,

> A penis massager includes a housing defining a first space and a second space therein, a sleeve provided in the first space of the housing, a driving motor mounted in the second space of the housing, and at least two handles extending outwardly from an outer face of the housing for holding of the penis massager. The sleeve defines an interior volume for accommodating a penis therein. The driving motor is connected to the sleeve in a transmission way, configured for driving to sleeve to move and/or rotate relative to the housing, thereby providing a massaging stimulation to the penis in the sleeve.

Representative figures of the Patent are reproduced below.



FIG. 1

FIG. 3

FIG. 7

FIG. 13

FIG. 15

FIG. 17

Relevant portions of the specification of the Patent are reproduced below:

Preferably, the handles 40 are provided with **buttons 42 for controlling operation of the driving device 30, i.e., controlling operation of the sleeve 20**. The buttons 42 may be provided on anyone of the handles 40, or may be provided on both of the handles 40. In this embodiment, each handle 40 is generally column-shaped, and includes a first end connected to the housing 10 and a second end away from the housing 10. Preferably, the first end of the handle 40 is connected to an end (such as a rear end) of the housing 10 away from the open end of the sleeve 20. The buttons 42 are provided at the first end of the handle 40, which are easy to be pressed by the user's thumb when the handle 40 are held in the user's hand. (col. 3, lines 55-68) (emphasis added)

…

Referring to FIGS. **7-16** , a penis massager according to a second embodiment is shown, which differs from the previous embodiment mainly in the handles **40**.

In this embodiment, **the handles 40 are rotatably connected to the housing 10**, **and thus the inclination angle α of the central axis of the handle 40 relative to that of the housing 10 can be adjusted according to need, which further facilitates the use of the present penis massager**. As shown in FIGS. **7-8** , the handles **40** are rotated to a folded state, which attach to the outer face of the housing **10**, making the penis massager easy to store and carry. As shown in FIGS. **13-14** , each handle **40** is rotated away from the housing **10**, which is in a partly unfolded state and its inclination angle α is adjusted to about 45 degrees. As shown in FIGS. **15-16** , the handles **40** are totally unfolded, which are generally perpendicular to the housing **10** and the inclination angle α is adjusted to about 90 degrees. (col. 5, lines 46-62) (emphasis added)

…

Referring to FIG. **17** , a penis massager according to a third embodiment is shown. In this embodiment, the housing **10** of the penis massager includes a first housing portion **11** *a* and a second housing portion **11** *b* arranged side by side. The first housing portion **11** *a* defines the first space receiving the sleeve **20** therein, and the second housing portion **11** *b* defines the second space receiving the driving device **30** therein. In this embodiment, the penis massager has a smaller axial length. Handles **40** are provided at opposites sides of the second housing portion **11** *b*, and extend curvedly and outwardly from the second housing portion **11** *b*. **The handles 40 may be fixed to the housing 10, or rotatably connected to the housing 10, or slidably connected to the housing 10**. (col. 6, lines 27-40) (emphasis added)

### *Comparison of the Accused Product with the Claims of the Patent*

There are 3 independent claims in the Patent, claims 1, 14, and 15, each directed to a penis massager including a housing, a penis sleeve provided in a space in the housing, a driving device for driving the sleeve to move, and two handles. The text of these claims are reproduced below:

> 1. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and

**at least one button being provided on the first end of at least one of the at least two handles**.

14. A penis massager, comprising:
a housing defining a space therein;
a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
a driving device for driving the sleeve to generate motion relative to the housing; and
at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;
**wherein the at least two handles are slidably connected to the housing.**

15. A penis massager, comprising:
a housing defining a space therein;
a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
a driving device for driving the sleeve to generate motion relative to the housing; and
at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;
**wherein the at least two handles are rotatably connected to the housing.**

At least the above highlighted limitations regarding the features of the handles are absent from the Accused Product.

The below images P1-P8 are photos/illustrations of the assembly and disassembly process of the Accused Product:



**P1**                     **P2**


**P3**


**P4**


**P5**


**P6**


**P7**


**P8**

As can be seen from the above photos/illustrations, the Accused Product is a penis massager that includes a massager body/housing and a separate hand-hold attachment with two opposing handles which can be detatchably secured on the massager body with a strap. Specifically:

**P1:** P1 shows the Accused Product when it is taken out of the packaging box. It has two main separate parts: (1) an overall cylindrical massager body including a shell/housing (disposed inside is a penis sleeve, shown in P2, and a driving/control mechanism that drives and controls the motion of the sleeve); (2) an attachment piece having two opposely laterally arranged handles suitable to be held by hands, and a connection part between the two handles and integrated with the two handles. The connection part is curved to match the outer circumference of the cylindrical massager body. The attachment piece also includes an adjustable strap with a Velcro band mechanism for securing the attachment piece to the massager body, as will be further explained below. It is noted that the two handles of the hand-hold attachment piece are in a fixed configuration and cannot rotate relative to each other or slide relative to each other.

**P2:** P2 shows the Accused Product when the cover is removed from the housing, exposing an end of the sleeve disposed inside the housing. The sleeve is to accommodate a penis.

**P3:** P3 shows that the strap is being prepared (loosened) to attach the handle to the massager body.

**P4:** P4 shows that the housing is being placed in the space between the strap and the connection part of the attachment.

**P5:** P5 shows that the strap is being tightened and fixed on the housing of the massager body after the attachment piece is positioned at a desired location on the massager body.

**P6:** P6 illustrates the massager is being hold by two hands (by holding the two handles of attachment piece)

**P7:** P7 shows that the strap is being opened for removing the attachment piece from the massager body.

**P8:** P8 shows that the attachment piece has been removed the massager body.

In view of the above illustrated features of the Accused Product:

**(a) The two handles of the Accused Product do not include a "button" as recited in claim 1.**

From the drawings and description of the Patent, a button on a handle is a distinct physical part located on the handle that is used to control the function or operation of the massager. See col. 3, lines 55-68, and Fig. 3 of the Patent shown hereinabove.

Here, the two handles of the attachment piece of the Accused Product only serve the function of being held by hands to control the position of the massager relative to the user's body during use. The handles do not include any button.  Instead, all control buttons of the Accused Product are located on the massager body. *See* for example, P1 above (the control buttons are on the shell of the black plastic part of the massager body).

**(b) The two handles of the Accused Product are not "slidably connected to the housing" (recited in claim 14) or "rotatably connected to the housing" (recited in claim 15)**

From the drawings and description of the three embodiments in the Patent, the wording "connected" in the phrases "slidably connected" and "rotatably connected" in claims 14 and 15 can only be interpreted to mean that the handles are "structurally or mechanically connected" or otherwise permanently connected (either directly or indirectly) to the housing. *See* the quoted text from the specification and Figs. 7, 13, 15, and 17, hereinabove. The handles must be slidable or rotatable while being joined or connected to the housing.

Here, in contrast, the two handles of the Accused Product are removably attached to the housing by a Velcro strap, not mechanically/structurally or otherwise permanently connected to the housing.

Further, when securely attached to the massager body/housing for use, the two handles of the Accused Product are in a fixed position with respect to the housing and do not slide along the housing or rotate about the housing. While accidental sliding or rotation between the handles and the housing may be possible during use or operation of the massager, such sliding or rotation would be due to improper or insufficient attachment between the two parts (e.g., too loose) and unintended for the normal use or operation of the Accused Product, and therefore cannot be

regarded as an inherent or necessary feature of the Accused Product. Thus, the two handles of the Accused Product are not "slidably connected to the housing" (recited in claim 14) or "rotatably connected to the housing" (recited in claim 15).

During an assembly process (attaching the handles to the housing) and/or a disembly process (detaching the handles to the housing) of the Accused Product, the position of the handles on the housing may be adjusted or varied. Also, during each session of operation or use by the user that involves an assembly and disembly of the handles and the housing of the Accused Product, the final secured positions of the handles on the housing may be slightly different axially and/or circumfenrentially. However, the handles and the housing in the Accused Product cannot be considered "slidably connected" or "rotatably connected" due to transient adjustment of the position of the handles or the variations of the configurations during different use sessions because any such *imaginary or hypothetical* "sliding" or "rotation" would only occur when the handles and housing are *not connected*.

A concise claim chart comparing the claim elements of independent claims 1, 14, and 15 with the features of the Accused Product is presented in the **Appendix** attached hereto, clearing showing those claim elements of independent claims of the Patent that are not present in the Accused Product.

For a product to infringe a patent claim, the product must include all elements or features of the claim. As explained above (in connection with the non-infringement analysis shown in the Appendix), because my client's Accused Product does not include all the limitations of any of independent claims 1, 14, and 15, the Accused Product does not infringe any of the independent claims of the Patent. All other claims of the Patent are dependent claims, and depend from one of the above independent claims. Therefore, they include all the limitations of these independent claims. **Thus, the Accused Product does not include all the limitations of any claims of the Patent, and consequently does not infringe any claims of the Patent.**

### *Request for Relief*

Based on the foregoing, I hereby respectfully request that my client's product listing under the above ASIN number be reinstated.  At a minimum, I respectfully request that you refer this dispute to Amazon's APEX program which at least provides a more robust merit-based evaluation on the complaint where my client's can present their non-infringement arguments.

March 12, 2025
Page 8

I look forward to hearing from you. If you have any questions or require any further information, please feel free to contact me.

Yours Sincerely,

_____
Yong Chen, Partner
Liu, Chen & Hoffman LLP
1 Penn Plz, Ste 2508, New York, NY 10119
ychen@ambizlaw.com
Tel: 212-547-6694

March 12, 2025
Page 9

**APPENDIX**:
Non-infringement Analysis of Amazon ASIN# B0DP9LZT22 ("Accused Product")
Claim Chart for US Patent No. 11,925,592 B1

| Claim Language | Product Features and Analysis |
|---|---|
| **Claim 1** | |
| 1. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |
| at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and | |
| **at least one button being provided on the first end of at least one of the at least two handles.** | As discussed on pages 3-7 of this letter, the Accused Product does not include these claim elements. |
| **Claim 14** | |
| 14. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |
| at least two handles extending outwardly from an outer face of the housing for holding of the penis massager; | |
| **wherein the at least two handles are slidably connected to the housing.** | As discussed on pages 3-7 of this letter, the Accused Product does not include these claim elements. |
| **Claim 15** | |
| 15. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |

March 12, 2025
Page 10

| | |
|---|---|
| at least two handles extending outwardly from an outer face of the housing for holding of the penis massager; | |
| **wherein the at least two handles are rotatably connected to the housing** | As discussed on pages 3-7 of this letter, the Accused Product does not include these claim elements. |

Exhibit 9

LIU, CHEN & HOFFMAN LLP
-ATTORNEYS AT LAW-

14 PENN PLZ, STE 2020
NEW YORK, NY 10122

PHONE: (212) 547-6690
FAX: (212) 547-6692

WWW.AMBIZLAW.COM

March 12, 2025

Re:    Amazon Complaint ID 17374147401
       regarding ASIN#: **B0DP9LZT22**
       Accused Infringement of U.S. Patent No. 11,925,592

**Dear Amazon Legal:**

I, Yong Chen, am a U.S. patent attorney and partner of a New York City based law firm, Liu, Chen & Hoffman LLP. I represent the operator of the store "**XUEYAOKEJI**" on Amazon.com, which sells a male massager product under the above ASIN number (the "Accused Product").

My client received a notice from Amazon.com dated March 11, 2025, stating that the ASIN was removed due to the Amazon complaint indicated above for alleged infringement of U.S. Patent No. 11,925,592 (the "Patent"). I will show below that my client's Accused Product under the ASIN does not infringe the Patent and respectfully request that the ASIN be reinstated.

### Summary of the Patent

U.S. Patent No. 11,925,592, titled "Penis massager," was filed as US Application No. 18/202966 on May 29, 2023 and issued March 12, 2024, and assigned to Junpeng Wu. A copy of the Patent can be obtained from public online sources, e.g., Google Patents, at https://patents.google.com/patent/US11925592B1/en?oq=11%2c925%2c592   (and a PDF version of which can be downloaded from: https://patentimages.storage.googleapis.com/25/94/d8/fe258fd16c3fe1/US11925592.pdf).

In summary, the Patent discloses a penis massager. According to the Abstract of the Patent,

> A penis massager includes a housing defining a first space and a second space therein, a sleeve provided in the first space of the housing, a driving motor mounted in the second space of the housing, and at least two handles extending outwardly from an outer face of the housing for holding of the penis massager. The sleeve defines an interior volume for accommodating a penis therein. The driving motor is connected to the sleeve in a transmission way, configured for driving to sleeve to move and/or rotate relative to the housing, thereby providing a massaging stimulation to the penis in the sleeve.

Representative figures of the Patent are reproduced below.

March 12, 2025
Page 2



Relevant portions of the specification of the Patent are reproduced below:

Preferably, the handles 40 are provided with **buttons 42 for controlling operation of the driving device 30, i.e., controlling operation of the sleeve 20**. The buttons 42 may be provided on anyone of the handles 40, or may be provided on both of the handles 40. In this embodiment, each handle 40 is generally column-shaped, and includes a first end connected to the housing 10 and a second end away from the housing 10. Preferably, the first end of the handle 40 is connected to an end (such as a rear end) of the housing 10 away from the open end of the sleeve 20. The buttons 42 are provided at the first end of the handle 40, which are easy to be pressed by the user's thumb when the handle 40 are held in the user's hand. (col. 3, lines 55-68) (emphasis added)

…

Referring to FIGS. **7-16** , a penis massager according to a second embodiment is shown, which differs from the previous embodiment mainly in the handles **40**.

In this embodiment, **the handles 40 are rotatably connected to the housing 10, and thus the inclination angle α of the central axis of the handle 40 relative to that of the housing 10 can be adjusted according to need, which further facilitates the use of the present penis massager**. As shown in FIGS. **7-8** , the handles **40** are rotated to a folded state, which attach to the outer face of the housing **10**, making the penis massager easy to store and carry. As shown in FIGS. **13-14** , each handle **40** is rotated away from the housing **10**, which is in a partly unfolded state and its inclination angle α is adjusted to about 45 degrees. As shown in FIGS. **15-16** , the handles **40** are totally unfolded, which are generally perpendicular to the housing **10** and the inclination angle α is adjusted to about 90 degrees. (col. 5, lines 46-62) (emphasis added)

…

Referring to FIG. **17** , a penis massager according to a third embodiment is shown. In this embodiment, the housing **10** of the penis massager includes a first housing portion **11** *a* and a second housing portion **11** *b* arranged side by side. The first housing portion **11** *a* defines the first space receiving the sleeve **20** therein, and the second housing portion **11** *b* defines the second space receiving the driving device **30** therein. In this embodiment, the penis massager has a smaller axial length. Handles **40** are provided at opposites sides of the second housing portion **11** *b*, and extend curvedly and outwardly from the second housing portion **11** *b*. **The handles 40 may be fixed to the housing 10, or rotatably connected to the housing 10, or slidably connected to the housing 10**. (col. 6, lines 27-40) (emphasis added)

### *Comparison of the Accused Product with the Claims of the Patent*

There are 3 independent claims in the Patent, claims 1, 14, and 15, each directed to a penis massager including a housing, a penis sleeve provided in a space in the housing, a driving device for driving the sleeve to move, and two handles. The text of these claims are reproduced below:

> 1. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and

**at least one button being provided on the first end of at least one of the at least two handles**.

14. A penis massager, comprising:
a housing defining a space therein;
a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
a driving device for driving the sleeve to generate motion relative to the housing; and
at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;
**wherein the at least two handles are slidably connected to the housing.**

15. A penis massager, comprising:
a housing defining a space therein;
a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
a driving device for driving the sleeve to generate motion relative to the housing; and
at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;
**wherein the at least two handles are rotatably connected to the housing.**

At least the above highlighted limitations regarding the features of the handles are absent from the Accused Product.

The below images P1-P8 are photos/illustrations of the assembly and disassembly process of the Accused Product:



**P1**                    **P2**


**P3**


**P4**


**P5**


**P6**


**P7**


**P8**

As can be seen from the above photos/illustrations, the Accused Product is a penis massager that includes a massager body/housing and a separate hand-hold attachment with two opposing handles which can be detatchably secured on the massager body with a strap. Specifically:

**P1:** P1 shows the Accused Product when it is taken out of the packaging box. It has two main separate parts: (1) an overall cylindrical massager body including a shell/housing (disposed inside is a penis sleeve, shown in P2, and a driving/control mechanism that drives and controls the motion of the sleeve); (2) an attachment piece having two opposely laterally arranged handles suitable to be held by hands, and a connection part between the two handles and integrated with the two handles. The connection part is curved to match the outer circumference of the cylindrical massager body. The attachment piece also includes an adjustable strap with a Velcro band mechanism for securing the attachment piece to the massager body, as will be further explained below. It is noted that the two handles of the hand-hold attachment piece are in a fixed configuration and cannot rotate relative to each other or slide relative to each other.

**P2:** P2 shows the Accused Product when the cover is removed from the housing, exposing an end of the sleeve disposed inside the housing. The sleeve is to accommodate a penis.

**P3:** P3 shows that the strap is being prepared (loosened) to attach the handle to the massager body.

**P4:** P4 shows that the housing is being placed in the space between the strap and the connection part of the attachment.

**P5:** P5 shows that the strap is being tightened and fixed on the housing of the massager body after the attachment piece is positioned at a desired location on the massager body.

**P6:** P6 illustrates the massager is being hold by two hands (by holding the two handles of attachment piece)

**P7:** P7 shows that the strap is being opened for removing the attachment piece from the massager body.

**P8:** P8 shows that the attachment piece has been removed the massager body.

In view of the above illustrated features of the Accused Product:

**(a) The two handles of the Accused Product do not include a "button" as recited in claim 1.**

From the drawings and description of the Patent, a button on a handle is a distinct physical part located on the handle that is used to control the function or operation of the massager. See col. 3, lines 55-68, and Fig. 3 of the Patent shown hereinabove.

Here, the two handles of the attachment piece of the Accused Product only serve the function of being held by hands to control the position of the massager relative to the user's body during use. The handles do not include any button. Instead, all control buttons of the Accused Product are located on the massager body. *See* for example, P1 above (the control buttons are on the shell of the black plastic part of the massager body).

**(b) The two handles of the Accused Product are not "slidably connected to the housing" (recited in claim 14) or "rotatably connected to the housing" (recited in claim 15)**

From the drawings and description of the three embodiments in the Patent, the wording "connected" in the phrases "slidably connected" and "rotatably connected" in claims 14 and 15 can only be interpreted to mean that the handles are"structurally or mechanically connected" or otherwise permanently connected (either directly or indirectly) to the housing. *See* the quoted text from the specification and Figs. 7, 13, 15, and 17, hereinabove. The handles must be slidable or rotatable while being joined or connected to the housing.

Here, in contrast, the two handles of the Accused Product are removably attached to the housing by a Velcro strap, not mechanically/structurally or otherwise permanently connected to the housing.

Further, when securely attached to the massager body/housing for use, the two handles of the Accused Product are in a fixed position with respect to the housing and do not slide along the housing or rotate about the housing. While accidental sliding or rotation between the handles and the housing may be possible during use or operation of the massager, such sliding or rotation would be due to improper or insufficient attachment between the two parts (e.g., too loose) and unintended for the normal use or operation of the Accused Product, and therefore cannot be

regarded as an inherent or necessary feature of the Accused Product. Thus, the two handles of the Accused Product are not "slidably connected to the housing" (recited in claim 14) or "rotatably connected to the housing" (recited in claim 15).

During an assembly process (attaching the handles to the housing) and/or a disembly process (detaching the handles to the housing) of the Accused Product, the position of the handles on the housing may be adjusted or varied. Also, during each session of operation or use by the user that involves an assembly and disembly of the handles and the housing of the Accused Product, the final secured positions of the handles on the housing may be slightly different axially and/or circumfenrentially. However, the handles and the housing in the Accused Product cannot be considered "slidably connected" or "rotatably connected" due to transient adjustment of the position of the handles or the variations of the configurations during different use sessions because any such *imaginary or hypothetical* "sliding" or "rotation" would only occur when the handles and housing are *not connected*.

A concise claim chart comparing the claim elements of independent claims 1, 14, and 15 with the features of the Accused Product is presented in the **Appendix** attached hereto, clearing showing those claim elements of independent claims of the Patent that are not present in the Accused Product.

For a product to infringe a patent claim, the product must include all elements or features of the claim. As explained above (in connection with the non-infringement analysis shown in the Appendix), because my client's Accused Product does not include all the limitations of any of independent claims 1, 14, and 15, the Accused Product does not infringe any of the independent claims of the Patent. All other claims of the Patent are dependent claims, and depend from one of the above independent claims. Therefore, they include all the limitations of these independent claims. **Thus, the Accused Product does not include all the limitations of any claims of the Patent, and consequently does not infringe any claims of the Patent.**

### *Request for Relief*

Based on the foregoing, I hereby respectfully request that my client's product listing under the above ASIN number be reinstated.  At a minimum, I respectfully request that you refer this dispute to Amazon's APEX program which at least provides a more robust merit-based evaluation on the complaint where my client's can present their non-infringement arguments.

March 12, 2025
Page 8

I look forward to hearing from you. If you have any questions or require any further information, please feel free to contact me.

Yours Sincerely,

_____

Yong Chen, Partner
Liu, Chen & Hoffman LLP
1 Penn Plz, Ste 2508, New York, NY 10119
ychen@ambizlaw.com
Tel: 212-547-6694

March 12, 2025
Page 9

## APPENDIX:
Non-infringement Analysis of Amazon ASIN# B0DP9LZT22 ("Accused Product")
Claim Chart for US Patent No. 11,925,592 B1

| Claim Language | Product Features and Analysis |
|---|---|
| **Claim 1** | |
| 1. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |
| at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and | |
| **at least one button being provided on the first end of at least one of the at least two handles.** | As discussed on pages 3-7 of this letter, the Accused Product does not include these claim elements. |
| **Claim 14** | |
| 14. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |
| at least two handles extending outwardly from an outer face of the housing for holding of the penis massager; | |
| **wherein the at least two handles are slidably connected to the housing.** | As discussed on pages 3-7 of this letter, the Accused Product does not include these claim elements. |
| **Claim 15** | |
| 15. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |

|  |  |
|---|---|
| at least two handles extending outwardly from an outer face of the housing for holding of the penis massager; |  |
| **wherein the at least two handles are rotatably connected to the housing** | As discussed on pages 3-7 of this letter, the Accused Product does not include these claim elements. |

Exhibit 10

14 Penn Plz, Ste 2020
New York, NY 10122

PHONE: (212) 547-6690
FAX: (212) 547-6692

WWW.AMBIZLAW.COM

# Liu, Chen & Hoffman LLP
## -Attorneys at Law-

March 12, 2025

Re:    Amazon Complaint ID 17374147401
       regarding ASIN#: B0D6BCLFWG
       Accused Infringement of U.S. Patent No. 11,925,592

**Dear Amazon Legal:**

I, Yong Chen, am a U.S. patent attorney and partner of a New York City based law firm, Liu, Chen & Hoffman LLP. I represent the operator of the store "DANxun" on Amazon.com, which sells a male massager product under the above ASIN number (the "Accused Product").

My client received a notice from Amazon.com dated March 11, 2025, stating that the ASIN was removed due to the Amazon complaint indicated above for alleged infringement of U.S. Patent No. 11,925,592 (the "Patent"). I will show below that my client's Accused Product under the ASIN does not infringe the Patent and respectfully request that the ASIN be reinstated.

### *Summary of the Patent*

U.S. Patent No. 11,925,592, titled "Penis massager," was filed as US Application No. 18/202966 on May 29, 2023 and issued March 12, 2024, and assigned to Junpeng Wu. A copy of the Patent can be obtained from public online sources, e.g., Google Patents, at https://patents.google.com/patent/US11925592B1/en?oq=11%2c925%2c592   (and a PDF version of which can be downloaded from: https://patentimages.storage.googleapis.com/25/94/d8/fe258fd16c3fe1/US11925592.pdf).

In summary, the Patent discloses a penis massager. According to the Abstract of the Patent,

> A penis massager includes a housing defining a first space and a second space therein, a sleeve provided in the first space of the housing, a driving motor mounted in the second space of the housing, and at least two handles extending outwardly from an outer face of the housing for holding of the penis massager. The sleeve defines an interior volume for accommodating a penis therein. The driving motor is connected to the sleeve in a transmission way, configured for driving to sleeve to move and/or rotate relative to the housing, thereby providing a massaging stimulation to the penis in the sleeve.

Representative figures of the Patent are reproduced below.



FIG. 1

FIG. 3

FIG. 7

FIG. 13

FIG. 15

FIG. 17

Relevant portions of the specification of the Patent are reproduced below:

Preferably, the handles 40 are provided with **buttons 42 for controlling operation of the driving device 30, i.e., controlling operation of the sleeve 20**. The buttons 42 may be provided on anyone of the handles 40, or may be provided on both of the handles 40. In this embodiment, each handle 40 is generally column-shaped, and includes a first end connected to the housing 10 and a second end away from the housing 10. Preferably, the first end of the handle 40 is connected to an end (such as a rear end) of the housing 10 away from the open end of the sleeve 20. **The buttons 42 are provided at the first end of the handle 40, which are easy to be pressed by the user's thumb when the handle 40 are held in the user's hand**. (col. 3, lines 55-68) (emphasis added)

…

A control panel **16** is provided on the outer face of the housing **10**, and is electrically connected to the control circuit board **50**. Several **buttons 18 are set on the control panel 16 for controlling operation of the driving device 30. The buttons 18 on the control panel 16 may be power on/off button, function selection button and the like, the buttons 42 on the handle 40 may be +/− button and the like**. During in use, the user may press the **buttons 18 and 42 to control operation of the driving device 30, such as controlling vibration amplitude and vibration frequency of the vibration motor 32, thereby controlling vibration of the sleeve 20.** (col. 4, lines 48-58) (emphasis added)

…

Referring to FIGS. **7-16** , a penis massager according to a second embodiment is shown, which differs from the previous embodiment mainly in the handles **40**. In this embodiment, **the handles 40 are rotatably connected to the housing 10, and thus the inclination angle α of the central axis of the handle 40 relative to that of the housing 10 can be adjusted according to need, which further facilitates the use of the present penis massager**. As shown in FIGS. **7-8** , the handles **40** are rotated to a folded state, which attach to the outer face of the housing **10**, making the penis massager easy to store and carry. As shown in FIGS. **13-14** , each handle **40** is rotated away from the housing **10**, which is in a partly unfolded state and its inclination angle α is adjusted to about 45 degrees. As shown in FIGS. **15-16** , the handles **40** are totally unfolded, which are generally perpendicular to the housing **10** and the inclination angle α is adjusted to about 90 degrees. (col. 5, lines 46-62) (emphasis added)

…

Referring to FIG. **17** , a penis massager according to a third embodiment is shown. In this embodiment, the housing **10** of the penis massager includes a first housing portion **11** *a* and a second housing portion **11** *b* arranged side by side. The first housing portion **11** *a* defines the first space receiving the sleeve **20** therein, and the second housing portion **11** *b* defines the second space receiving the driving device **30** therein. In this embodiment, the penis massager has a smaller axial length. Handles **40** are provided at opposites sides of the second housing portion **11** *b*, and extend curvedly and outwardly from the second housing portion **11** *b*. **The handles 40 may be fixed to the housing 10, or rotatably connected to the housing 10, or slidably connected to the housing 10**. (col. 6, lines 27-40) (emphasis added)

### *Comparison of the Accused Product with the Claims of the Patent*

There are 3 independent claims in the Patent, claims 1, 14, and 15, each directed to a penis massager including a housing, a penis sleeve provided in a space in the housing, a driving device for driving the sleeve to move, and two handles. The text of these claims are reproduced below:

> 1. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and
> **at least one button being provided on the first end of at least one of the at least two handles**.

> 14. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;
> **wherein the at least two handles are slidably connected to the housing.**

> 15. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;
> **wherein the at least two handles are rotatably connected to the housing.**

At least the above highlighted limitations regarding the features of the handles are absent from the Accused Product.

The below images P1-P5 are photos/illustrations of the Accused Product:



Massager body / housing
Control buttons
handles
Cylindrical bracket
Attachment piece

**P1**

Attachment piece
sleeve
cover

**P2**



Slim elongated protrusion

**P3**

Slim elongated groove

**P4**

Control buttons
Decorative bump

**P5**

As can be seen from the above photos/illustrations, the Accused Product is a penis massager that includes a massager body/housing and a separate hand-hold attachment piece with two opposing handles formed integrally with a central cylindrincle bracket. The bracket can be used to circumferentially fit the attachment piece on the outer cylindrical surface of the massager body.

**P1:** P1 shows the Accused Product when it is taken out of the packaging box. It has two main separate parts: (1) an overall cylindrical massager body including a shell/housing (disposed inside is a penis sleeve, shown in P2, and a driving/control mechanism that drives and controls the motion of the sleeve); (2) an attachment piece having two opposedly laterally arranged handles suitable to be held by hands, and a cylindrical bracket formed integrally with the two handles and disposed between and connecting the two handles. The bracket has an inner diameter matching match the outer circumference of the cylindrical massager body. It is noted that the two handles of the hand-hold attachment piece are in a fixed configuration and cannot rotate relative to each other or slide relative to each other.

**P2:** P2 shows the Accused Product when the cover is removed from the housing, exposing an end of the sleeve disposed inside the housing. The sleeve is to accommodate a penis.

**P3:** P3 shows a right side of the massager body, where a slim elongated protrusion is disposed. (the left side of the massager body also includes a slim elongated protrusion in a position symmetrical to the the protrusion on the right side).

**P4:** P4 shows an enlarged view of a right inner wall of the bracket, which includes a slim elongated groove. The left inner wall of the bracket also includes a slim elongated groove. These grooves are configured and dimensioned to snap-fit with the two lateral slim elongated protrusions of the housing when the attachment piece is assembled on the massager body in a operative state, as shown in P5.

**P5:** P5 shows the massager in an assembled and operative state where the attachment piece is installed on the massager body (the grooves on the bracket matching the protrusions on the housing). In this state the handles is entirely fixed on the massager body and cannot slide or rotate.

In view of the above depiction and illustration of the Accused Product:

**(a) The two handles of the Accused Product do not include a "button" as recited in claim 1.**

From the drawings and description of the Patent, a button on a handle is a distinct physical part located on the handle that may be acted thereon, and in response, control the function or operation of the massager. See col. 3, lines 55-68, and Fig. 3 of the Patent shown hereinabove.

Here, the two handles of the attachment piece of the Accused Product only serve the function of being held by hands to control the position of the massager relative to the user's body during use. The handles do not include any button.  The decorative bumps of the plastic shell of the handles shown in P5 are only for decorative purpose only, *they are not pressable, deflectable or deformable, and do not respond to any action by the user to influence the operating status of the*

*massager*. All control buttons of the Accused Product are located on the massager body. *See* for example, P1 and P5 above (the control buttons are on the upper portion of the shell of the black plastic part of the massager body).

**(b) The two handles of the Accused Product are not "slidably connected to the housing" (recited in claim 14) or "rotatably connected to the housing" (recited in claim 15)**

From the drawings and description of the three embodments in the Patent, the wording "connected" in the phrases "slidably connected" and "rotatably connected" in claims 14 and 15 can only be interpreted to mean that the handles are "structurally or mechanically connected" or otherwise permanently connected (either directly or indirectly) to the housing. *See* the quoted text from the specification and Figs. 7, 13, 15, and 17, hereinabove. The handles must be slidable or rotatable *while being structurally joined or connected to the housing*.

Here, in contrast, the two handles of the Accused Product are attached to the housing by a removable structure, the cylindrical bracket, not structurally or otherwise permanently connected to the housing.

Further, when securely attached to the massager body/housing for use, as shown in P5, the two handles of the Accused Product are in a fixed position with respect to the housing and do not slide along the housing or rotate about the housing. Thus, the two handles of the Accused Product are not "slidably connected to the housing" (recited in claim 14) or "rotatably connected to the housing" (recited in claim 15).

During an assembly process (attaching the handles to the housing) and/or a disembly process (detaching the handles to the housing) of the Accused Product, the position of the handles on the housing may be varied in a transient manner. However, the handles and the housing in the Accused Product cannot be considered "slidably connected" or "rotatably connected" due to transient adjustment of the position of the handles because any such *imaginary or hypothetical* "sliding" or "rotation" would only occur when the handles and housing are *not connected*.

A concise claim chart comparing the claim elements of independent claims 1, 14, and 15 with the features of the Accused Product is presented in the **Appendix** attached hereto, clearing showing those claim elements of independent claims of the Patent that are not present in the Accused Product.

For a product to infringe a patent claim, the product must include all elements or features of the claim. As explained above (in connection with the non-infringement analysis shown in the Appendix), because my client's Accused Product does not include all the limitations of any of independent claims 1, 14, and 15, the Accused Product does not infringe any of the independent claims of the Patent. All other claims of the Patent are dependent claims, and depend from one of the above independent claims. Therefore, they include all the limitations of these independent claims. **Thus, the Accused Product does not include all the limitations of any claims of the Patent, and consequently does not infringe any claims of the Patent.**

March 12, 2025
Page 8

### *Request for Relief*

Based on the foregoing, I hereby respectfully request that my client's product listing under the above ASIN number be reinstated.  At a minimum, I respectfully request that you refer this dispute to Amazon's APEX program which provides a more robust merit-based evaluation on the complaint where my client can present their non-infringement arguments.

I look forward to hearing from you. If you have any questions or require any further information, please feel free to contact me.

Yours Sincerely,

_____
Yong Chen, Partner
Liu, Chen & Hoffman LLP
1 Penn Plz, Ste 2508, New York, NY 10119
ychen@ambizlaw.com
Tel: 212-547-6694

March 12, 2025
Page 9

**APPENDIX**:
Non-infringement Analysis of Amazon ASIN# B0D6BCLFWG ("Accused Product")
Claim Chart for US Patent No. 11,925,592 B1

| Claim Language | Product Features and Analysis |
|---|---|
| *Claim 1* | |
| 1. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |
| at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and | |
| **at least one button being provided on the first end of at least one of the at least two handles.** | As discussed on pages 4-7 of this letter, the Accused Product does not include these claim elements. |
| *Claim 14* | |
| 14. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |
| at least two handles extending outwardly from an outer face of the housing for holding of the penis massager; | |
| **wherein the at least two handles are slidably connected to the housing.** | As discussed on pages 4-7 of this letter, the Accused Product does not include these claim elements. |
| *Claim 15* | |
| 15. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |

| | |
|---|---|
| at least two handles extending outwardly from an outer face of the housing for holding of the penis massager; | |
| **wherein the at least two handles are rotatably connected to the housing** | As discussed on pages 4-7 of this letter, the Accused Product does not include these claim elements. |

Exhibit 11

14 PENN PLZ, STE 2020
NEW YORK, NY 10122

PHONE: (212) 547-6690
FAX: (212) 547-6692

WWW.AMBIZLAW.COM

# LIU, CHEN & HOFFMAN LLP
## -ATTORNEYS AT LAW-

March 12, 2025

Re:    Amazon Complaint ID 17374147401
       regarding ASIN#: B0D6BCLFWG
       Accused Infringement of U.S. Patent No. 11,925,592

**Dear Amazon Legal:**

I, Yong Chen, am a U.S. patent attorney and partner of a New York City based law firm, Liu, Chen & Hoffman LLP. I represent the operator of the store "lvliangshengmeijia" on Amazon.com, which sells a male massager product under the above ASIN number (the "Accused Product").

My client received a notice from Amazon.com dated March 11, 2025, stating that the ASIN was removed due to the Amazon complaint indicated above for alleged infringement of U.S. Patent No. 11,925,592 (the "Patent"). I will show below that my client's Accused Product under the ASIN does not infringe the Patent and respectfully request that the ASIN be reinstated.

### Summary of the Patent

U.S. Patent No. 11,925,592, titled "Penis massager," was filed as US Application No. 18/202966 on May 29, 2023 and issued March 12, 2024, and assigned to Junpeng Wu. A copy of the Patent can be obtained from public online sources, e.g., Google Patents, at https://patents.google.com/patent/US11925592B1/en?oq=11%2c925%2c592   (and a PDF version of which can be downloaded from: https://patentimages.storage.googleapis.com/25/94/d8/fe258fd16c3fe1/US11925592.pdf).

In summary, the Patent discloses a penis massager. According to the Abstract of the Patent,

> A penis massager includes a housing defining a first space and a second space therein, a sleeve provided in the first space of the housing, a driving motor mounted in the second space of the housing, and at least two handles extending outwardly from an outer face of the housing for holding of the penis massager. The sleeve defines an interior volume for accommodating a penis therein. The driving motor is connected to the sleeve in a transmission way, configured for driving to sleeve to move and/or rotate relative to the housing, thereby providing a massaging stimulation to the penis in the sleeve.

Representative figures of the Patent are reproduced below.



FIG. 1

FIG. 3

FIG. 7

FIG. 13

FIG. 15

FIG. 17

Relevant portions of the specification of the Patent are reproduced below:

Preferably, the handles 40 are provided with **buttons 42 for controlling operation of the driving device 30, i.e., controlling operation of the sleeve 20**. The buttons 42 may be provided on anyone of the handles 40, or may be provided on both of the handles 40. In this embodiment, each handle 40 is generally column-shaped, and includes a first end connected to the housing 10 and a second end away from the housing 10. Preferably, the first end of the handle 40 is connected to an end (such as a rear end) of the housing 10 away from the open end of the sleeve 20. **The buttons 42 are provided at the first end of the handle 40, which are easy to be pressed by the user's thumb when the handle 40 are held in the user's hand.** (col. 3, lines 55-68) (emphasis added)

…

A control panel **16** is provided on the outer face of the housing **10**, and is electrically connected to the control circuit board **50**. Several **buttons 18 are set on the control panel 16 for controlling operation of the driving device 30. The buttons 18 on the control panel 16 may be power on/off button, function selection button and the like, the buttons 42 on the handle 40 may be +/− button and the like.** During in use, the user may press the **buttons 18 and 42 to control operation of the driving device 30, such as controlling vibration amplitude and vibration frequency of the vibration motor 32, thereby controlling vibration of the sleeve 20.** (col. 4, lines 48-58) (emphasis added)

…

Referring to FIGS. **7-16** , a penis massager according to a second embodiment is shown, which differs from the previous embodiment mainly in the handles **40**. In this embodiment, **the handles 40 are rotatably connected to the housing 10, and thus the inclination angle α of the central axis of the handle 40 relative to that of the housing 10 can be adjusted according to need, which further facilitates the use of the present penis massager**. As shown in FIGS. **7-8** , the handles **40** are rotated to a folded state, which attach to the outer face of the housing **10**, making the penis massager easy to store and carry. As shown in FIGS. **13-14** , each handle **40** is rotated away from the housing **10**, which is in a partly unfolded state and its inclination angle α is adjusted to about 45 degrees. As shown in FIGS. **15-16** , the handles **40** are totally unfolded, which are generally perpendicular to the housing **10** and the inclination angle α is adjusted to about 90 degrees. (col. 5, lines 46-62) (emphasis added)

…

Referring to FIG. **17** , a penis massager according to a third embodiment is shown. In this embodiment, the housing **10** of the penis massager includes a first housing portion **11** *a* and a second housing portion **11** *b* arranged side by side. The first housing portion **11** *a* defines the first space receiving the sleeve **20** therein, and the second housing portion **11** *b* defines the second space receiving the driving device **30** therein. In this embodiment, the penis massager has a smaller axial length. Handles **40** are provided at opposites sides of the second housing portion **11** *b*, and extend curvedly and outwardly from the second housing portion **11** *b*. **The handles 40 may be fixed to the housing 10, or rotatably connected to the housing 10, or slidably connected to the housing 10**. (col. 6, lines 27-40) (emphasis added)

***Comparison of the Accused Product with the Claims of the Patent***

There are 3 independent claims in the Patent, claims 1, 14, and 15, each directed to a penis massager including a housing, a penis sleeve provided in a space in the housing, a driving device for driving the sleeve to move, and two handles. The text of these claims are reproduced below:

> 1. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and
> **at least one button being provided on the first end of at least one of the at least two handles**.
>
> 14. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;
> **wherein the at least two handles are slidably connected to the housing.**
>
> 15. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;
> **wherein the at least two handles are rotatably connected to the housing.**

At least the above highlighted limitations regarding the features of the handles are absent from the Accused Product.

The below images P1-P5 are photos/illustrations of the Accused Product:

March 12, 2025
Page 5



Massager body / housing
Control buttons
handles
Cylindrical bracket
Attachment piece

sleeve
cover
Attachment piece

**P1**          **P2**



Slim elongated protrusion

Slim elongated groove

Control buttons
Decorative bump

**P3**          **P4**          **P5**

As can be seen from the above photos/illustrations, the Accused Product is a penis massager that includes a massager body/housing and a separate hand-hold attachment piece with two opposing handles formed integrally with a central cylindrincle bracket. The bracket can be used to circumferentially fit the attachment piece on the outer cylindrical surface of the massager body.

**P1:** P1 shows the Accused Product when it is taken out of the packaging box. It has two main separate parts: (1) an overall cylindrical massager body including a shell/housing (disposed inside is a penis sleeve, shown in P2, and a driving/control mechanism that drives and controls the motion of the sleeve); (2) an attachment piece having two opposedly laterally arranged handles suitable to be held by hands, and a cylindrical bracket formed integrally with the two handles and disposed between and connecting the two handles. The bracket has an inner diameter matching match the outer circumference of the cylindrical massager body. It is noted that the two handles of the hand-hold attachment piece are in a fixed configuration and cannot rotate relative to each other or slide relative to each other.

**P2:** P2 shows the Accused Product when the cover is removed from the housing, exposing an end of the sleeve disposed inside the housing. The sleeve is to accommodate a penis.

**P3:** P3 shows a right side of the massager body, where a slim elongated protrusion is disposed. (the left side of the massager body also includes a slim elongated protrusion in a position symmetrical to the the protrusion on the right side).

**P4:** P4 shows an enlarged view of a right inner wall of the bracket, which includes a slim elongated groove. The left inner wall of the bracket also includes a slim elongated groove. These grooves are configured and dimensioned to snap-fit with the two lateral slim elongated protrusions of the housing when the attachment piece is assembled on the massager body in a operative state, as shown in P5.

**P5:** P5 shows the massager in an assembled and operative state where the attachment piece is installed on the massager body (the grooves on the bracket matching the protrusions on the housing). In this state the handles is entirely fixed on the massager body and cannot slide or rotate.

In view of the above depiction and illustration of the Accused Product:

**(a) The two handles of the Accused Product do not include a "button" as recited in claim 1.**

From the drawings and description of the Patent, a button on a handle is a distinct physical part located on the handle that may be acted thereon, and in response, control the function or operation of the massager. See col. 3, lines 55-68, and Fig. 3 of the Patent shown hereinabove.

Here, the two handles of the attachment piece of the Accused Product only serve the function of being held by hands to control the position of the massager relative to the user's body during use. The handles do not include any button.  The decorative bumps of the plastic shell of the handles shown in P5 are only for decorative purpose only, *they are not pressable, deflectable or deformable, and do not respond to any action by the user to influence the operating status of the*

*massager*.  All control buttons of the Accused Product are located on the massager body. *See* for example, P1 and P5 above (the control buttons are on the upper portion of the shell of the black plastic part of the massager body).

**(b) The two handles of the Accused Product are not "slidably connected to the housing" (recited in claim 14) or "rotatably connected to the housing" (recited in claim 15)**

From the drawings and description of the three embodiments in the Patent, the wording "connected" in the phrases "slidably connected" and "rotatably connected" in claims 14 and 15 can only be interpreted to mean that the handles are "structurally or mechanically connected" or otherwise permanently connected (either directly or indirectly) to the housing. *See* the quoted text from the specification and Figs. 7, 13, 15, and 17, hereinabove. The handles must be slidable or rotatable *while being structurally joined or connected to the housing*.

Here, in contrast, the two handles of the Accused Product are attached to the housing by a removable structure, the cylindrical bracket, not structurally or otherwise permanently connected to the housing.

Further, when securely attached to the massager body/housing for use, as shown in P5, the two handles of the Accused Product are in a fixed position with respect to the housing and do not slide along the housing or rotate about the housing.  Thus, the two handles of the Accused Product are not "slidably connected to the housing" (recited in claim 14) or "rotatably connected to the housing" (recited in claim 15).

During an assembly process (attaching the handles to the housing) and/or a disembly process (detaching the handles to the housing) of the Accused Product, the position of the handles on the housing may be varied in a transient manner. However, the handles and the housing in the Accused Product cannot be considered "slidably connected" or "rotatably connected" due to transient adjustment of the position of the handles because any such *imaginary or hypothetical* "sliding" or "rotation" would only occur when the handles and housing are *not connected*.

A concise claim chart comparing the claim elements of independent claims 1, 14, and 15 with the features of the Accused Product is presented in the **Appendix** attached hereto, clearing showing those claim elements of independent claims of the Patent that are not present in the Accused Product.

For a product to infringe a patent claim, the product must include all elements or features of the claim. As explained above (in connection with the non-infringement analysis shown in the Appendix), because my client's Accused Product does not include all the limitations of any of independent claims 1, 14, and 15, the Accused Product does not infringe any of the independent claims of the Patent. All other claims of the Patent are dependent claims, and depend from one of the above independent claims. Therefore, they include all the limitations of these independent claims. **Thus, the Accused Product does not include all the limitations of any claims of the Patent, and consequently does not infringe any claims of the Patent.**

March 12, 2025
Page 8

***Request for Relief***

Based on the foregoing, I hereby respectfully request that my client's product listing under the above ASIN number be reinstated.  At a minimum, I respectfully request that you refer this dispute to Amazon's APEX program which provides a more robust merit-based evaluation on the complaint where my client can present their non-infringement arguments.

I look forward to hearing from you. If you have any questions or require any further information, please feel free to contact me.

Yours Sincerely,

_____
Yong Chen, Partner
Liu, Chen & Hoffman LLP
1 Penn Plz, Ste 2508, New York, NY 10119
ychen@ambizlaw.com
Tel: 212-547-6694

March 12, 2025
Page 9

**APPENDIX**:
Non-infringement Analysis of Amazon ASIN# B0D6BCLFWG ("Accused Product")
Claim Chart for US Patent No. 11,925,592 B1

| Claim Language | Product Features and Analysis |
|---|---|
| *Claim 1* | |
| 1. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |
| at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and | |
| **at least one button being provided on the first end of at least one of the at least two handles.** | As discussed on pages 4-7 of this letter, the Accused Product does not include these claim elements. |
| *Claim 14* | |
| 14. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |
| at least two handles extending outwardly from an outer face of the housing for holding of the penis massager; | |
| **wherein the at least two handles are slidably connected to the housing.** | As discussed on pages 4-7 of this letter, the Accused Product does not include these claim elements. |
| *Claim 15* | |
| 15. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |

March 12, 2025
Page 10

| | |
|---|---|
| at least two handles extending outwardly from an outer face of the housing for holding of the penis massager; | |
| **wherein the at least two handles are rotatably connected to the housing** | As discussed on pages 4-7 of this letter, the Accused Product does not include these claim elements. |

Exhibit 12

14 PENN PLZ, STE 2020
NEW YORK, NY 10122

PHONE: (212) 547-6690
FAX: (212) 547-6692

WWW.AMBIZLAW.COM

# LIU, CHEN & HOFFMAN LLP
## -ATTORNEYS AT LAW-

March 12, 2025

Re:    Amazon Complaint ID 17374147401
       regarding ASIN#: B0D6BCLFWG
       Accused Infringement of U.S. Patent No. 11,925,592

**Dear Amazon Legal:**

I, Yong Chen, am a U.S. patent attorney and partner of a New York City based law firm, Liu, Chen & Hoffman LLP. I represent the operator of the store "shiqiuyanstore" on Amazon.com, which sells a male massager product under the above ASIN number (the "Accused Product").

My client received a notice from Amazon.com dated March 11, 2025, stating that the ASIN was removed due to the Amazon complaint indicated above for alleged infringement of U.S. Patent No. 11,925,592 (the "Patent"). I will show below that my client's Accused Product under the ASIN does not infringe the Patent and respectfully request that the ASIN be reinstated.

### Summary of the Patent

U.S. Patent No. 11,925,592, titled "Penis massager," was filed as US Application No. 18/202966 on May 29, 2023 and issued March 12, 2024, and assigned to Junpeng Wu. A copy of the Patent can be obtained from public online sources, e.g., Google Patents, at https://patents.google.com/patent/US11925592B1/en?oq=11%2c925%2c592   (and a PDF version of which can be downloaded from: https://patentimages.storage.googleapis.com/25/94/d8/fe258fd16c3fe1/US11925592.pdf).

In summary, the Patent discloses a penis massager. According to the Abstract of the Patent,

> A penis massager includes a housing defining a first space and a second space therein, a sleeve provided in the first space of the housing, a driving motor mounted in the second space of the housing, and at least two handles extending outwardly from an outer face of the housing for holding of the penis massager. The sleeve defines an interior volume for accommodating a penis therein. The driving motor is connected to the sleeve in a transmission way, configured for driving to sleeve to move and/or rotate relative to the housing, thereby providing a massaging stimulation to the penis in the sleeve.

Representative figures of the Patent are reproduced below.



FIG. 1

FIG. 3

FIG. 7

FIG. 13

FIG. 15

FIG. 17

Relevant portions of the specification of the Patent are reproduced below:

Preferably, the handles 40 are provided with **buttons 42 for controlling operation of the driving device 30, i.e., controlling operation of the sleeve 20**. The buttons 42 may be provided on anyone of the handles 40, or may be provided on both of the handles 40. In this embodiment, each handle 40 is generally column-shaped, and includes a first end connected to the housing 10 and a second end away from the housing 10. Preferably, the first end of the handle 40 is connected to an end (such as a rear end) of the housing 10 away from the open end of the sleeve 20. **The buttons 42 are provided at the first end of the handle 40, which are easy to be pressed by the user's thumb when the handle 40 are held in the user's hand**. (col. 3, lines 55-68) (emphasis added)

…

A control panel **16** is provided on the outer face of the housing **10**, and is electrically connected to the control circuit board **50**. Several **buttons 18 are set on the control panel 16 for controlling operation of the driving device 30. The buttons 18 on the control panel 16 may be power on/off button, function selection button and the like, the buttons 42 on the handle 40 may be +/− button and the like**. During in use, the user may press the **buttons 18 and 42 to control operation of the driving device 30, such as controlling vibration amplitude and vibration frequency of the vibration motor 32, thereby controlling vibration of the sleeve 20.** (col. 4, lines 48-58) (emphasis added)

…

Referring to FIGS. **7-16** , a penis massager according to a second embodiment is shown, which differs from the previous embodiment mainly in the handles **40**. In this embodiment, **the handles 40 are rotatably connected to the housing 10, and thus the inclination angle α of the central axis of the handle 40 relative to that of the housing 10 can be adjusted according to need, which further facilitates the use of the present penis massager**. As shown in FIGS. **7-8** , the handles **40** are rotated to a folded state, which attach to the outer face of the housing **10**, making the penis massager easy to store and carry. As shown in FIGS. **13-14** , each handle **40** is rotated away from the housing **10**, which is in a partly unfolded state and its inclination angle α is adjusted to about 45 degrees. As shown in FIGS. **15-16** , the handles **40** are totally unfolded, which are generally perpendicular to the housing **10** and the inclination angle α is adjusted to about 90 degrees. (col. 5, lines 46-62) (emphasis added)

…

Referring to FIG. **17** , a penis massager according to a third embodiment is shown. In this embodiment, the housing **10** of the penis massager includes a first housing portion **11** *a* and a second housing portion **11** *b* arranged side by side. The first housing portion **11** *a* defines the first space receiving the sleeve **20** therein, and the second housing portion **11** *b* defines the second space receiving the driving device **30** therein. In this embodiment, the penis massager has a smaller axial length. Handles **40** are provided at opposites sides of the second housing portion **11** *b*, and extend curvedly and outwardly from the second housing portion **11** *b*. **The handles 40 may be fixed to the housing 10, or rotatably connected to the housing 10, or slidably connected to the housing 10**. (col. 6, lines 27-40) (emphasis added)

### *Comparison of the Accused Product with the Claims of the Patent*

There are 3 independent claims in the Patent, claims 1, 14, and 15, each directed to a penis massager including a housing, a penis sleeve provided in a space in the housing, a driving device for driving the sleeve to move, and two handles. The text of these claims are reproduced below:

> 1. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and
> **at least one button being provided on the first end of at least one of the at least two handles**.

> 14. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;
> **wherein the at least two handles are slidably connected to the housing.**

> 15. A penis massager, comprising:
> a housing defining a space therein;
> a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein;
> a driving device for driving the sleeve to generate motion relative to the housing; and
> at least two handles extending outwardly from an outer face of the housing for holding of the penis massager;
> **wherein the at least two handles are rotatably connected to the housing.**

At least the above highlighted limitations regarding the features of the handles are absent from the Accused Product.

The below images P1-P5 are photos/illustrations of the Accused Product:

March 12, 2025
Page 5



**P1**

**P2**



**P3**                    **P4**                    **P5**

March 12, 2025
Page 6

As can be seen from the above photos/illustrations, the Accused Product is a penis massager that includes a massager body/housing and a separate hand-hold attachment piece with two opposing handles formed integrally with a central cylindrincle bracket. The bracket can be used to circumferentially fit the attachment piece on the outer cylindrical surface of the massager body.

**P1:** P1 shows the Accused Product when it is taken out of the packaging box. It has two main separate parts: (1) an overall cylindrical massager body including a shell/housing (disposed inside is a penis sleeve, shown in P2, and a driving/control mechanism that drives and controls the motion of the sleeve); (2) an attachment piece having two opposedly laterally arranged handles suitable to be held by hands, and a cylindrical bracket formed integrally with the two handles and disposed between and connecting the two handles. The bracket has an inner diameter matching match the outer circumference of the cylindrical massager body. It is noted that the two handles of the hand-hold attachment piece are in a fixed configuration and cannot rotate relative to each other or slide relative to each other.

**P2:** P2 shows the Accused Product when the cover is removed from the housing, exposing an end of the sleeve disposed inside the housing. The sleeve is to accommodate a penis.

**P3:** P3 shows a right side of the massager body, where a slim elongated protrusion is disposed. (the left side of the massager body also includes a slim elongated protrusion in a position symmetrical to the the protrusion on the right side).

**P4:** P4 shows an enlarged view of a right inner wall of the bracket, which includes a slim elongated groove. The left inner wall of the bracket also includes a slim elongated groove. These grooves are configured and dimensioned to snap-fit with the two lateral slim elongated protrusions of the housing when the attachment piece is assembled on the massager body in a operative state, as shown in P5.

**P5:** P5 shows the massager in an assembled and operative state where the attachment piece is installed on the massager body (the grooves on the bracket matching the protrusions on the housing). In this state the handles is entirely fixed on the massager body and cannot slide or rotate.

In view of the above depiction and illustration of the Accused Product:

**(a) The two handles of the Accused Product do not include a "button" as recited in claim 1.**

From the drawings and description of the Patent, a button on a handle is a distinct physical part located on the handle that may be acted thereon, and in response, control the function or operation of the massager. See col. 3, lines 55-68, and Fig. 3 of the Patent shown hereinabove.

Here, the two handles of the attachment piece of the Accused Product only serve the function of being held by hands to control the position of the massager relative to the user's body during use. The handles do not include any button.  The decorative bumps of the plastic shell of the handles shown in P5 are only for decorative purpose only, *they are not pressable, deflectable or deformable, and do not respond to any action by the user to influence the operating status of the*

*massager*.  All control buttons of the Accused Product are located on the massager body. *See* for example, P1 and P5 above (the control buttons are on the upper portion of the shell of the black plastic part of the massager body).

**(b) The two handles of the Accused Product are not "slidably connected to the housing" (recited in claim 14) or "rotatably connected to the housing" (recited in claim 15)**

From the drawings and description of the three embodments in the Patent, the wording "connected" in the phrases "slidably connected" and "rotatably connected" in claims 14 and 15 can only be interpreted to mean that the handles are"structurally or mechanically connected" or otherwise permanently connected (either directly or indirectly) to the housing. *See* the quoted text from the specification and Figs. 7, 13, 15, and 17, hereinabove. The handles must be slidable or rotatable *while being structurally joined or connected to the housing*.

Here, in contrast, the two handles of the Accused Product are attached to the housing by a removable structure, the cylindrical bracket, not structurally or otherwise permanently connected to the housing.

Further, when securely attached to the massager body/housing for use, as shown in P5, the two handles of the Accused Product are in a fixed position with respect to the housing and do not slide along the housing or rotate about the housing.  Thus, the two handles of the Accused Product are not "slidably connected to the housing" (recited in claim 14) or "rotatably connected to the housing" (recited in claim 15).

During an assembly process (attaching the handles to the housing) and/or a disembly process (detaching the handles to the housing) of the Accused Product, the position of the handles on the housing may be varied in a transient manner. However, the handles and the housing in the Accused Product cannot be considered "slidably connected" or "rotatably connected" due to transient adjustment of the position of the handles because any such *imaginary or hypothetical* "sliding" or "rotation" would only occur when the handles and housing are *not connected*.

A concise claim chart comparing the claim elements of independent claims 1, 14, and 15 with the features of the Accused Product is presented in the **Appendix** attached hereto, clearing showing those claim elements of independent claims of the Patent that are not present in the Accused Product.

For a product to infringe a patent claim, the product must include all elements or features of the claim. As explained above (in connection with the non-infringement analysis shown in the Appendix), because my client's Accused Product does not include all the limitations of any of independent claims 1, 14, and 15, the Accused Product does not infringe any of the independent claims of the Patent. All other claims of the Patent are dependent claims, and depend from one of the above independent claims. Therefore, they include all the limitations of these independent claims. **Thus, the Accused Product does not include all the limitations of any claims of the Patent, and consequently does not infringe any claims of the Patent.**

March 12, 2025
Page 8

***Request for Relief***

Based on the foregoing, I hereby respectfully request that my client's product listing under the above ASIN number be reinstated.  At a minimum, I respectfully request that you refer this dispute to Amazon's APEX program which provides a more robust merit-based evaluation on the complaint where my client can present their non-infringement arguments.

I look forward to hearing from you. If you have any questions or require any further information, please feel free to contact me.

Yours Sincerely,

_____
Yong Chen, Partner
Liu, Chen & Hoffman LLP
1 Penn Plz, Ste 2508, New York, NY 10119
ychen@ambizlaw.com
Tel: 212-547-6694

March 12, 2025
Page 9

**APPENDIX**:
Non-infringement Analysis of Amazon ASIN# B0D6BCLFWG ("Accused Product")
Claim Chart for US Patent No. 11,925,592 B1

| Claim Language | Product Features and Analysis |
|---|---|
| **Claim 1** | |
| 1. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |
| at least two handles extending outwardly from an outer circumferential face of the housing for holding of the penis massager, wherein each of the at least two handles comprises a first end and a second end, the first end of each of the at least two handles is connected to an end of the housing away from an open end of the sleeve, and the second end of each of the at least two handles extends away from the housing; and | |
| **at least one button being provided on the first end of at least one of the at least two handles.** | As discussed on pages 4-7 of this letter, the Accused Product does not include these claim elements. |
| **Claim 14** | |
| 14. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |
| at least two handles extending outwardly from an outer face of the housing for holding of the penis massager; | |
| **wherein the at least two handles are slidably connected to the housing.** | As discussed on pages 4-7 of this letter, the Accused Product does not include these claim elements. |
| **Claim 15** | |
| 15. A penis massager, comprising: | |
| a housing defining a space therein; | |
| a sleeve provided in the space of the housing and defining an interior volume for accommodating a penis therein; | |
| a driving device for driving the sleeve to generate motion relative to the housing; and | |

March 12, 2025
Page 10

| | |
|---|---|
| at least two handles extending outwardly from an outer face of the housing for holding of the penis massager; | |
| **wherein the at least two handles are rotatably connected to the housing** | As discussed on pages 4-7 of this letter, the Accused Product does not include these claim elements. |

Exhibit 13

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Lvliang Lishi Linglong Electronic Trade Co. Ltd. et al, | Case No.: 1:25-cv-03453 |
| Plaintiff, | Hon. Judge Sara L. Ellis |
| v. | Hon. Magis. Judge Gabriel A. Fuentes |
| Junpeng Wu, | |
| Defendant | |

### REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Defendant Junpeng Wu ("Wu"), through counsel, submits this reply to Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss [Dkt. 23] and respectfully requests the Court dismiss the Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and improper venue under Fed. R. Civ. P. 12(b)(3).

## I. Plaintiffs' Reliance on Fed. R. Civ. P. 4(k)(2) Is Misplaced Because Wu Lacks Sufficient Contacts with the United States to Satisfy Due Process

Plaintiffs argue that this Court has personal jurisdiction over Wu under Fed. R. Civ. P. 4(k)(2) because Wu is not subject to any state's courts of general jurisdiction and has sufficient contacts with the United States as a whole [Dkt. 23 at 5-6]. Plaintiffs' argument fails for two reasons: (1) Wu's actions do not establish sufficient minimum contacts with the United States to satisfy due process under Rule 4(k)(2), and (2) Plaintiffs misinterpret Wu's statements regarding his complaints to Amazon as a concession of jurisdiction in Washington.

### A. Wu Lacks Sufficient Minimum Contacts with the United States Under Rule 4(k)(2)

Rule 4(k)(2) requires that exercising jurisdiction over a defendant be "consistent with the United States Constitution and laws," meaning the defendant must have sufficient minimum contacts with the United States as a whole to satisfy due process. *M-I Drilling Fluids UK Ltd. v.*

1

*Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018). Here, Wu's sole relevant action—filing patent infringement complaints with Amazon outside of Illinois and the United States (Wu Decl. 8) [Dkt. 20]—does not constitute purposeful availment of the benefits of U.S. laws.

Wu is a Chinese citizen residing in Shenzhen, China, with no physical presence, property, or business operations in the United States (Wu Decl. 3-5). His complaints to Amazon were submitted electronically outside (Wu Decl. 8). The Federal Circuit has held that enforcement activities, such as sending a cease-and-desist letter, do not alone establish personal jurisdiction unless they are part of a broader pattern of activity directed at the forum. *See Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1139 (Fed. Cir. 2018) (a letter threatening infringement litigation, without more, is insufficient for personal jurisdiction). Wu's single act of filing complaints with Amazon, a global platform, does not rise to the level of "ample contacts with the nation as a whole" required for Rule 4(k)(2) jurisdiction. *God, Family & Country LLC v. Marcrest Mfg.*, 2009 U.S. Dist. LEXIS 14513, at *8 (C.D. Ill. Feb. 24, 2009) (Rule 4(k)(2) applies to defendants with scattered but substantial contacts across the U.S., not minimal or isolated actions).

Moreover, the due process analysis under Rule 4(k)(2) requires consideration of fairness factors, including the burden on the defendant and the forum's interest in adjudicating the dispute. *M-I Drilling Fluids UK Ltd.*, 890 F.3d at 1002. As a foreign defendant with no U.S. presence, Wu faces a significant burden in defending this action in Illinois, a forum with no direct connection to his actions (Wu Decl. ¶¶ 3-8). The United States' interest in this dispute is limited, as both parties are Chinese entities, and the core issue involves Amazon's internal complaint process rather than substantive patent enforcement [Dkt. 1 39]. These factors weigh heavily against exercising jurisdiction over Wu under Rule 4(k)(2).

**B. Plaintiffs Misinterpret Wu's Statements as a Concession of Jurisdiction in Washington**

Plaintiffs assert that Wu conceded personal jurisdiction in Washington by stating that his complaints were directed to Amazon's headquarters in Seattle [Dkt. 23 at 6, citing Dkt. 19 at 3]. This is a misinterpretation. Wu's statement was factual: his complaints were sent to Amazon, which is headquartered in Washington. However, Wu did not consent to jurisdiction in Washington or admit that Washington courts have jurisdiction over him. Plaintiffs' attempt to construe this as a concession misrepresents Wu's position and ignores the legal standard for personal jurisdiction.

**Moreover, if Plaintiffs truly believed that the patent complaints were wrongful and malicious, they should have named Amazon—the party that made the decision to remove the accused listings—as a defendant. Yet, they deliberately chose not to do so.**

Even if Wu's complaints to Amazon were considered enforcement activity in Washington, a single act does not establish personal jurisdiction without additional contacts. *See Maxchief Invs. Ltd.*, 909 F.3d at 1139 (isolated enforcement activity, such as a letter, is insufficient). Wu has no other contacts with Washington (Wu Decl. ¶¶ 4-6). Moreover, the decision to remove Plaintiffs' products was made by Amazon, not Wu, further attenuating any connection between Wu's actions and the forum. *See Walden v. Fiore*, 571 U.S. 277, 291 (2014) (jurisdiction requires intentional targeting of the forum, not merely indirect effects).

Plaintiffs' related argument—that Wu's contact with Amazon subjects him to jurisdiction in Illinois because Amazon has an office in Chicago [Dkt. 23 at 7]—is equally flawed. Upon information and belief, Wu's complaints were directed to Amazon's headquarters in Washington, not its Illinois office. The mere presence of an Amazon office in Illinois does not mean Wu purposefully availed himself of Illinois's laws. *Walden*, 571 U.S. at 291. Plaintiffs fail to show any intentional targeting of Illinois by Wu, and thus cannot establish jurisdiction here, whether under Rule 4(k)(2) or otherwise.

## II. Wu's Designation of a U.S. Agent Under 35 U.S.C. § 293 Further Supports Jurisdiction in a Designated Forum, Not Illinois

As a non-resident patentee, Wu is subject to 35 U.S.C. § 293, which requires every patentee not residing in the United States to designate a person within the U.S. to receive service of process. If no such person is designated or can be found, "the United States District Court for the Eastern District of Virginia shall have jurisdiction."

The USPTO record for Wu's patent (U.S. Patent No. 11,925,592) lists Kevin P. Chen in Fort Lee, New Jersey, as the designated agent for service of process. See below[1]:



This designation subjects Wu to personal jurisdiction in New Jersey, where his agent resides, defeating Rule 4(k)(2)'s requirement that Wu not be subject to jurisdiction in any state.

*See God, Family & Country LLC*, 2009 U.S. Dist. LEXIS 14513, at *8-9.

---

[1] This screenshot was taken from https://patentcenter.uspto.gov/applications/18202966/attorney?application= on April 23, 2025.

Even if Wu's agent could not be found, 35 U.S.C. § 293 vests jurisdiction in the Eastern District of Virginia, not the Northern District of Illinois. Plaintiffs' failure to address this statutory provision undermines their jurisdictional argument. Wu's designation of an agent in New Jersey provides an additional basis for jurisdiction in that state, rendering Rule 4(k)(2) inapplicable.

### III. Venue Is Improper in the Northern District of Illinois

Plaintiffs assert venue under 28 U.S.C. § 1391(b)(2) and (b)(3) [Dkt. 23 at 9-10]. However, the venue is improper under both provisions.

#### A. Venue Improper Under § 1391(b)(2)

Section 1391(b)(2) requires that "a substantial part of the events or omissions giving rise to the claim occurred" in the judicial district. Plaintiffs argue that Wu's complaints to Amazon interfered with their sales to Illinois customers [Dkt. 23 at 9]. However, Wu's actions—filing complaints outside of the United States to Amazon's Washington headquarters—occurred outside Illinois (Wu Decl. 8). The indirect effect on Plaintiffs' sales in Illinois does not constitute a "substantial part" of the events giving rise to the claim. *See Roadget Bus. Pte. Ltd. v. Schedule A*, 2024 WL 1858592, at *4 (N.D. Ill. Apr. 29, 2024) (no venue where defendant's actions lacked a direct connection to Illinois). Therefore, no substantial events occurred in Illinois.

Moreover, Plaintiffs failed to even provide any chart or data demonstrating that sales of the accused infringing products in Illinois significantly exceeded those in the other 49 U.S. states. This further undermines their claim that venue is proper under 28 U.S.C. § 1391(b)(2).

#### B. Venue Improper Under § 1391(b)(3)

Section 1391(b)(3) applies only if there is no other district where the action may be brought. Here, as noted above, Wu may be subject to personal jurisdiction in New Jersey (where his agent resides) or the Eastern District of Virginia (under 35 U.S.C. § 293). Because other districts are available, § 1391(b)(3) does not apply. *See Shenzhen Huanyusheng Technology Co.,*

*Ltd. v. MAVIR*, Case No. 1:24-cv-08789 (N.D. Ill. Oct. 1, 2024) (dismissing for improper venue where defendant's actions were directed to Amazon in Washington, not Illinois).

## IV. Conclusion

For the foregoing reasons, the Court lacks personal jurisdiction over Defendant Junpeng Wu under Federal Rule of Civil Procedure 12(b)(2), and venue in the Northern District of Illinois is improper under Rule 12(b)(3). Plaintiffs' reliance on Rule 4(k)(2) is misplaced, as Wu lacks sufficient minimum contacts with the United States to satisfy due process, and Plaintiffs ignore the legal effect of Wu's designation of an agent for service in New Jersey under 35 U.S.C. § 293. Furthermore, Plaintiffs have failed to show that any substantial events occurred in Illinois or that Illinois bears any unique connection to the claims asserted. Accordingly, Defendant respectfully requests that the Court grant his Motion to Dismiss in its entirety under Rules 12(b)(2) and 12(b)(3).

Dated: April 25, 2025

Respectfully Submitted,

**J. Zhang and Associates, P.C.**
***Attorney for Defendant, Junpeng Wu***

*/s/ Jiyuan Zhang*
Jiyuan Zhang, Esq
37-12 Prince Street, Ste 9C
Flushing, NY 11354
T: 718-701-5098
contact@jzhanglaws.com

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies on April 25, 2025 that a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court and served on all counsel of record.

*/s/ Jiyuan Zhang*

Exhibit 14

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LVLIANG LISHI LINGLONG ELECTRONIC ) <br> TRADE CO. LTD., et al., ) <br> ) <br>     Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> JUNPENG WU, ) <br> ) <br>     Defendant. ) | No. 25 C 3453 <br><br> Judge Sara L. Ellis |

## ORDER

The Court grants Defendant Junpeng Wu's motion to dismiss [19] and dismisses this case without prejudice for lack of personal jurisdiction. The Court denies Plaintiffs' motion for entry of a temporary restraining order [10] without prejudice to refiling in a court that has jurisdiction over Wu. Case terminated. See Statement.

## STATEMENT

Defendant Junpeng Wu, a Chinese citizen, is one of the named inventors of and owns by assignment U.S. Patent No. 11,925,592 (the "'592 Patent"). Between February 20 and March 11, 2025, Wu filed complaints with Amazon that certain products sold by Plaintiffs, all Chinese entities, infringed the '592 Patent. After Amazon removed Plaintiffs' listings, Plaintiffs filed this lawsuit, seeking a declaration that their products do not infringe the '592 Patent. In connection with their complaint, Plaintiffs also filed a motion for a temporary restraining order that would compel Wu to withdraw his complaints to Amazon and enjoin him from interfering with Plaintiffs' product listings during the pendency of the suit. Wu appeared and filed a motion to dismiss for lack of personal jurisdiction and venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3). Because Wu acknowledges that Plaintiffs can proceed against him in New Jersey, meaning that Rule 4(k)(2) does not apply, and Plaintiffs have identified no other basis for this Court to exercise jurisdiction over Wu, the Court dismisses this case without prejudice.

Because this is a patent case, the Court applies Federal Circuit law on personal jurisdiction. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009). The federal constitutional and state statutory inquiries are essentially the same, focusing on whether exercising jurisdiction over a defendant comports with due process. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001); *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392–93 (7th Cir. 2020). Plaintiffs only contend that specific jurisdiction over Wu exists, which requires the Court to consider: "(1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is

reasonable and fair." *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (quoting *Inamed*, 249 F.3d at 1360).

Acknowledging that Wu does not have sufficient contacts with Illinois, Plaintiffs seek to take advantage of Federal Rule of Civil Procedure 4(k)(2), which allows for the aggregation of a defendant's contacts with the United States as a whole for non-U.S. resident defendants "whose contacts are so scattered among states that none of them would have jurisdiction." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001). Specifically, Rule 4(k)(2) provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). Plaintiffs contend that Wu is not subject to jurisdiction in any U.S. state, but that this Court nonetheless has jurisdiction over Wu under Rule 4(k)(2) because Wu secured a U.S. patent, intentionally contacted Amazon, a U.S.-based company, and succeeded in halting Plaintiffs' sales within the United States, including Illinois.

The Court need not consider whether Wu has sufficient contacts with the United States to comport with due process because Wu has identified "a forum where jurisdiction would have been proper at the time of filing, regardless of consent" so as to defeat the application of Rule 4(k)(2). *In re Stingray IP Sols., LLC*, 56 F.4th 1379, 1385 (Fed. Cir. 2023). Specifically, Wu points out that 35 U.S.C. § 293 requires a non-resident patentee to designate an agent in the United States for service of process or to submit to the jurisdiction of the United States District Court for the Eastern District of Virginia. 35 U.S.C. § 293. The U.S. Patent and Trademark Office's record for the '592 Patent lists a New Jersey resident as the registered agent, which, as Wu acknowledges, subjects him to personal jurisdiction in New Jersey. This then precludes application of Rule 4(k)(2) here and leaves the Court with no basis for exercising jurisdiction over Wu. *See Lenovo (United States) Inc. v. IPCom GmbH & Co., KG*, No. 19-cv-01389, 2022 WL 2644096, at *5–6 (N.D. Cal. July 8, 2022) (collecting cases); *Kraken Sports, Inc. v. Benvenuti*, No. CV 19-03233, 2021 WL 1124530, at *3–4 (D.D.C. Mar. 24, 2021) (concluding that Rule 4(k)(2) did not apply where non-U.S. resident patentee had not designated a registered agent, meaning that under § 293, the patentee consented to jurisdiction in the Eastern District of Virginia); *Amazon Web Servs., Inc. v. Glob. Equity Mgmt., S.A.*, No. 3:16CV619, 2017 WL 4052381, at *7 (E.D. Va. Sept. 13, 2017) (finding that as a "special long-arm statute," § 293 conferred jurisdiction in the Eastern District of Virginia over a non-U.S. patentee that did not have a designated agent).

Finally, although the Court lacks jurisdiction over Wu and Plaintiffs have not requested transfer, the Court considers whether it should transfer the case to the District of New Jersey pursuant to 28 U.S.C. § 1631.  *See North v. Ubiquity, Inc.*, 72 F.4th 221, 228 (7th Cir. 2023) ("[W]hen federal courts find that they lack jurisdiction, they bear an independent obligation under § 1631 to consider whether to transfer the case—even if neither party requests transfer."). Section 1631 provides that "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed."  28 U.S.C. § 1631.  This obligation is "quite limited," however. *North*, 72 F.4th at 228.  A bar on refiling based on the statute of limitations amounts to a compelling reason to transfer a case.  *Id.* (citing *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)).  But where the statute of limitations would not bar refiling, the Court need not transfer the case pursuant to § 1631.  *Id.*  ("If a plaintiff may, on its own, refile its case in a proper forum, the interests of justice do not demand transfer." (quoting *Danziger v. De Llano*, 948 F.3d 124, 133 (3d Cir. 2020))).  Here, the statute of limitations does not appear to stand as a bar to refiling. Therefore, the Court does not find that the interests of justice require transfer under § 1631.  The Court dismisses this case without prejudice for lack of personal jurisdiction.


Date:  May 9, 2025                                            /s/   Sara L. Ellis_____